# 23-546

IN THE

# United States Court of Appeals

**FOR THE SECOND CIRCUIT**

WINDWARD BORA LLC,

*Plaintiff-Counter-Defendant-Appellee,*

—against—

JOHN SOTOMAYOR, ALEXANDRIA LOAIZA,

*Defendants-Counter-Claimants-Appellants,*

AMERICAN EXPRESS CENTURION BANK, MIDLAND FUNDING LLC, DBA IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC, CAPITAL ONE BANK (USA), N.A., JOHN DOE, JANE DOE,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANTS-COUNTER-CLAIMANTS-APPELLANTS

STEVEN AMSHEN
JAMES TIERNEY
PETROFF AMSHEN LLP
1795 Coney Island Avenue, 3rd Floor
Brooklyn, New York 11230
(718) 336-4200

*Attorneys for Defendants-Counter-Claimants-Appellants*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

JURISDICTION ..... 2

ISSUES PRESENTED ..... 3

STATEMENT OF THE CASE ..... 3

A. The Mortgage Loan ..... 3

B. The Original Plaintiff Accelerated the Loan in 2013 ..... 4

C. Appellants Obtained Summary Judgment Dismissing the Second Foreclosure Action ..... 5

D. The Current (Third) Foreclosure Action is Untimely ..... 6

SUMMARY OF ARGUMENT ..... 8

STANDARD OF REVIEW ..... 10

LEGAL ARGUMENT ..... 11

I. WINDWARD BORA IS NOT THE “ORIGINAL PLAINTIFF” FOR PURPOSES OF CPLR § 205-A, AND THUS CANNOT APPLY THE SAVINGS PROVISION TO SAVE ITS UNTIMELY CLAIM ..... 11

II. DISMISSAL OF THE 2019 ACTION ON SUMMARY JUDGMENT FURTHER BARS APPLICATION OF CPLR § 205-A ..... 16

CONCLUSION ..... 21

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*ACE Securities Corp. v. DB Structured Prods., Inc.*,
38 N.Y.3d 643 (2022) .......... 11, 12, 14

*Adjustrite Systems, Inc. v. GAB Bus. Servs., Inc.*,
145 F.3d 543 (2d Cir. 1998) .......... 10

*Bonilla v. Tutor Perini Corp.*,
134 A.D.3d 869 (2d Dep't 2015) .......... 13, 14

*Carrick v. Central Gen. Hosp.*,
51 N.Y.2d 242 (1980) .......... 18

*Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*,
810 F.3d 861 (2d Cir. 2015) .......... 10

*Diffley v. Allied-Signal, Inc.*,
921 F.2d 421 (2d Cir. 1990) .......... 10, 15

*Favourite Ltd. v. Cico*,
208 A.D.3d 99 (1st Dep't 2022) .......... 13, 14

*George v. Mt. Sinai Hosp.*,
47 N.Y.2d 170 (1979) .......... 13, 15

*Hakala v. Deutsche Bank AG*,
343 F.3d 111 (2d Cir. 2003) .......... 12, 14

*Moran v. County of Suffolk*,
189 A.D.3d 1219 (2d Dep't 2020) .......... 15

*Ray v. Ray*,
22 F.4th 69 (2d Cir. 2021) .......... 15

*U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*,
33 N.Y.3d 72 (2019) .......... 15, 17

*U.S. Bank Nat'l Ass'n v. Fox*,
216 A.D.3d 445 (1st Dep't 2023) .......... 13, 18

**Statutes**

28 U.S.C. § 1291 .......... 3

28 U.S.C. § 1332 .......... 2

Foreclosure Abuse Prevention Act, NY LEGIS 821, 2022 Sess. Law News of N.Y. Ch. 821 (McKinney 2022) (“FAPA”) .......... *passim*

RPAPL § 1303 .......... 6, 17

RPAPL § 1320 .......... 6, 17

RPAPL § 1501(4) .......... 7, 21

RPL § 282 .......... 21

**Rules**

CPLR § 205-a .......... *passim*

CPLR § 205-a(a) .......... 16, 17

CPLR § 205(a) .......... *passim*

CPLR § 205(c) .......... 8

**Other Authorities**

2021 New York Assembly Bill No. 7737, New York Two Hundred Forty-Fourth Legislative Session (May 23, 2021) .......... 19

James Sanders Jr., *Governor Kathy Hochul Signs the “Foreclosure Abuse Prevention Act” (FAPA)*, Press Release (Jan. 11, 2023), https://www.nysenate.gov/newsroom/press-releases/2023/james-sanders/governor-kathy-hochul-signs-foreclosure-abuse-prevention .......... 19

Defendants-Counter-Claimants – Appellants John Sotomayor and Alexandria Loaiza ("Appellants"), by and through their attorneys, Petroff Amshen LLP, respectfully submit the following brief in support of their appeal from the Opinion and Order of the United States District Court for the Southern District of New York (Seibel, J.), dated March 20, 2023 (the "MSJ Order").

## INTRODUCTION

This is the third foreclosure action commenced to enforce the same alleged default on a mortgage loan originally accelerated by a different plaintiff in 2013. Following dismissal of the original plaintiff's first foreclosure action, Plaintiff-Counter-Defendant – Appellee Windward Bora, LLC ("Windward Bora") obtained an interest in the subject loan, and commenced a second foreclosure action on the same default in 2019. Appellants obtained summary judgment dismissing the 2019 action, and Windward Bora subsequently brought this third foreclosure action, more than eight years after the six-year statute of limitations period began to run in connection with the original foreclosure.

Although Windward Bora had no interest in the subject loan when its cause of action accrued, and no involvement in the original foreclosure action, the District Court granted Windward Bora's motion for summary judgment as to Appellants, holding that (i) Windward Bora is the "original plaintiff" for purposes of application

of CPLR § 205-a, and (ii) dismissal of the 2019 action on summary judgment did not preclude application of CPLR § 205-a.

This Court should reverse. By Windward Bora's own admission, it is not – and cannot be – the "original plaintiff" entitled to the benefit of CPLR § 205-a. Even if Windward Bora was the "original plaintiff," however, CPLR § 205-a would still not apply because dismissal of the 2019 action on summary judgment brought it within the exceptions to the statute's remedial function.

## JURISDICTION

On August 25, 2021, Windward Bora commenced the underlying foreclosure action against Appellants and others, alleging subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. (A[1] 1-2, 16-101). On February 16, 2023, the District Court issued an Order directing Windward Bora to provide support for its assertion of diversity of citizenship, noting that it had "not pleaded the citizenship of any of the LLC's members," thereby preventing the Court from determining whether it had subject matter jurisdiction. (A 11 (ECF Doc. No. 85), 411). Apparently satisfied with Windward Bora's submission (A 11 (ECF Doc. No. 86), 423-55), and without addressing the issue further, the District Court issued the MSJ Order on March 20, 2023. (A 11, 456).

[1] References to the Appendix herein shall be denoted with the abbreviation "A".

The District Court granted Windward Bora's motion for summary judgment as to Appellants, denied its motion for default judgment against the remaining defendants, and denied Appellants' cross-motion for summary judgment. (*Id.*). Appellants filed a timely notice of appeal on April 10, 2023. (A 12, 477). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the District Court erred in concluding that Windward Bora is the "original plaintiff" for purposes of CPLR § 205-a, where accrual of the cause of action occurred in connection with a different entity's commencement of the first foreclosure action, and such accrual was not "waive[d], postpone[d], cancel[ed], toll[ed], revive[d], or reset" before Windward Bora commenced this third action more than six years later, outside of the statute of limitations.

2. Whether the District Court erred in concluding that dismissal of the 2019 action for failure to prove compliance with statutory conditions precedent did not bar application of CPLR § 205-a.

## STATEMENT OF THE CASE

### A. The Mortgage Loan.

Windward Bora seeks to enforce a note and mortgage dated January 19, 2007, executed in favor of Wells Fargo Bank, N.A. ("Wells Fargo") (respectively, the "Note" and "Mortgage"), securing repayment of a residential mortgage loan in the

original principal amount of $104,375.00 (the "Loan"). (A 19, 27-52). The Loan matured on February 5, 2022. (*Id.*).

Ownership of the Note and Mortgage appears to have changed hands numerous times before settling with Windward Bora, which allegedly took possession of the Note on August 15, 2018. (A 240-41 (Devico Aff. ¶ 8)). On May 24, 2010, Wells Fargo executed a written assignment of the Mortgage to Partners for Payment Relief DE II, LLC. (A 153-54, 307 (2019 Complaint ¶ 16)). On October 14, 2014, the Mortgage was further assigned to SMR I LLC. (A 307 (2019 Complaint ¶ 17)). No further written transfers of the Mortgage appear in the Record. More specifically, there is no written assignment to Windward Bora.

There are also multiple disjointed allonges to the Note, endorsed as follows: (1) from "Wells Fargo Bank, N.A." to the order of "American Servicing and Recovery Group"; (2) from "American Servicing and Recovery Group, LLC" to the order of "Partners for Payment Relief DE II, LLC"; (3) from "Partners for Payment Relief DEII, LLC" to "SMR I, LLC"; and (4) from "SMR III, LLC" to "Windward Bora LLC". (A 33-36).

**B. The Original Plaintiff Accelerated the Loan in 2013.**

On December 31, 2013, Partners for Payment Relief DE II, LLC (the "Original Plaintiff") commenced a foreclosure action against Appellants and others (the "2013 Action"), stating that it "elects to declare immediately due and payable

the entire unpaid balance of principal," thereby accelerating the Loan. (A 127-35). The Original Plaintiff accelerated the Loan based on a December 5, 2008 default. (A 128 (2013 Complaint ¶ 7)).

On March 2, 2018, the Original Plaintiff discontinued the 2013 Action. (A 184-85, 361). This voluntary discontinuance did not revoke the acceleration that occurred on December 31, 2013, and the statute of limitations continued to run from that date. (A 469-70 ("While the instant motion was pending, New York enacted the Foreclosure Abuse Prevention Act . . . , which effectively overrules *Engel*. . . . Plaintiff does not dispute that *Engel* is no longer good law.")).

Several months later, on August 15, 2018, ownership and possession of the Note and Mortgage were allegedly transferred to Windward Bora. (A 240-41 (Devico Aff. ¶ 8)). Thus, Windward Bora had no interest in the Loan during the entire pendency of the 2013 Action, and no involvement in its commencement or disposition. (A 239-42, 276).

### C. Appellants Obtained Summary Judgment Dismissing the Second Foreclosure Action.

On May 16, 2019, Windward Bora commenced a second foreclosure action (the "2019 Action") on the same default, but unilaterally advanced the default date to June 1, 2013, due to expiration of the statute of limitations to collect payments more than six years in default. (A 188, 218 (T8:1-7) ("Defendants Sotomayor and

Loaiza apparently stopped payment of the mortgage in 2009 [sic][2]. . . . but as the . . . statute of limitations for mortgage foreclosure actions in New York is six years, . . . Plaintiff is alleging only that Defendants failed to make the mortgage payment due June 10th [sic][3], 2013, and all payments due thereafter."), A 304-309 (2019 Complaint ¶ 18)).

On April 15, 2021, after Windward Bora advised that it would be unable to prove its case at trial, particularly with respect to compliance with the notice provisions of RPAPL §§ 1303 and 1320, the District Court granted summary judgment in favor of Appellants, and directed the Clerk of the Court to "enter judgment for Defendants and close the case." (A 186-87, 310-11). The following day, the District Court entered judgment in Appellants' favor in the 2019 Action. (A 312).

### D. The Current (Third) Foreclosure Action is Untimely.

On August 25, 2021, nearly eight (8) years after the Original Plaintiff accelerated the Loan in the 2013 Action, Windward Bora commenced the underlying third foreclosure action. Recognizing that the statute of limitations accrued with the Original Plaintiff's acceleration in 2013 and has continued to run since that time,

---

[2] This appears to be a misstatement, as the original 2013 Action alleged a December 5, 2008 default. (A 128 (2013 Complaint ¶ 7)).

[3] The 2019 Action alleged a June 1, 2013 default. (A 307 at ¶ 18).

Windward Bora unilaterally advanced the default date, and alleged that the Loan is in default as of the payment due August 1, 2015. (A 19 (Complaint ¶ 17), 276). On September 7, 2021, Appellants filed a Verified Answer with Counterclaims, including defenses based on the statute of limitations and *res judicata*, and a counterclaim to quiet title pursuant to RPAPL § 1501(4). (A 4, 107-116).

On January 7, 2022, Windward Bora served a motion for summary judgment and other relief (the "MSJ"). (A 13-286). On February 4, 2022, Appellants served opposition to the MSJ and a cross-motion for summary judgment (the "Cross-Motion"). (A 287-358). On March 7, 2022, Windward Bora served opposition to the Cross-Motion. (A 362-71, 386-402). On March 15, 2022, Appellants served a reply in further support of the Cross-Motion. (A 359-61, 372-85).

In addressing Appellants' statute of limitations defense, Windward Bora acknowledged that it is a different entity than the Original Plaintiff, that it is not acting on behalf of the Original Plaintiff, and that it had no involvement in the 2013 Action or acceleration of the Loan. (A 239-42 (Devico Aff.), 276 (noting that "Plaintiff's predecessor in interest accelerated the loan with a prior foreclosure action," and that the "2013 Action was voluntarily discontinued by Plaintiff's predecessor in interest on March 2, 2018.")). Despite this acknowledgment,

however, Windward Bora also asserted that it was entitled to avail itself of the six-month savings provision of CPLR § 205-a[4] to render this action timely. (A 277-78).

On March 20, 2023, the District Court (Seibel, J.) issued the MSJ Order, which granted Windward Bora's MSJ as to Appellants, denied its motion for default judgment against the remaining defendants, and denied Appellants' Cross-Motion. (A 456-76). As relevant to this appeal, the District Court erroneously held: (1) "[t]he 'original plaintiff' here is Windward – the party that brought the 2019 Action. In other words, CPLR § 205-a is not being applied to the 2013 action brought by PPR, but to the 2019 Action brought by Plaintiff. . . . and [Plaintiff] is thus able to apply the savings provision"; and (2) the "prior grant of summary judgment to Defendants in the 2019 Action . . . was a reason to dismiss the 2019 action but not a finding on the merits that would prevent application of CPLR § 205-a." (A 473-74).

Appellants filed a timely notice of appeal on April 10, 2023. (A 12, 477).

## SUMMARY OF ARGUMENT

The District Court erred in finding that CPLR § 205-a applied to Windward Bora as the "original plaintiff" in this matter. Accrual of the time-barred cause of

[4] Before the District Court rendered its decision, the New York Legislature enacted the Foreclosure Abuse Prevention Act, NY LEGIS 821, 2022 Sess. Law News of N.Y. Ch. 821 (A. 7737-B) (McKinney 2022) ("FAPA"), which amended the CPLR to add Section 205-a. (A 469-70). The parties were permitted to submit supplemental briefing on the impact of FAPA on the pending motions, which the District Court considered in rendering the MSJ Order and applying the new Section 205-a in lieu of Section 205(a), as it no longer applies in mortgage foreclosure actions. (A 403-08); *see also* CPLR §§ 205(c) and 205-a (eff. Dec. 30, 2022).

action Windward Bora seeks to enforce occurred on December 31, 2013, when the Original Plaintiff commenced the initial 2013 Action and accelerated the Loan. The statute of limitations continued to run from that date and expired on December 31, 2019, nearly two years before Windward Bora commenced this action. Windward Bora had no involvement in the 2013 Action, and had no interest in the Loan until months after it was discontinued. Accordingly, Windward Bora is not the "original plaintiff" in this matter and is not entitled to the benefit of CPLR § 205-a.

Even if Windward Bora could be construed as the "original plaintiff" here – which it cannot – the District Court further erred in concluding that it could apply the savings provision of CPLR § 205-a to "relate back" to the 2019 Action and render this action timely. The purpose of the savings clause is remedial in nature – to give the "original plaintiff" a second chance and allow it to relate back to the filing date of the first (*e.g.*, "initial") action, if timely commenced and dismissed due to some sort of remediable deficiency. Just as a plaintiff cannot avail itself of the savings clause more than once, the statute should not be construed to mean that a successor can apply the savings clause to subsequent actions, thereby allowing repeated bites at the apple and frustrating the statute of limitations entirely.

In any event, the savings clause cannot be applied to the 2019 Action because the basis for its dismissal falls into the categories excluded under CPLR § 205-a.

## STANDARD OF REVIEW

The Court of Appeals reviews a district court's decision to grant summary judgment *de novo*. *See Adjustrite Systems, Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 547 (2d Cir. 1998). "Examining the evidence in the light most favorable to the nonmoving party, we are to 'apply a *de novo* standard of review to ensure that the substantive law was correctly applied.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Envtl. Conservation*, 79 F.3d 1298, 1304 (2d Cir. 1996)).

In federal cases "sitting in diversity jurisdiction and determining New York state law claims, [a federal court] must apply 'the law of New York as interpreted by the New York Court of Appeals.'" *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013)). "In diversity cases, 'state statutes of limitations govern the timeliness of state law claims', and state law 'determines the related questions of what events serve to commence an action and to toll the statute of limitations.'" *Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) (quoting *Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir. 1989)).

# LEGAL ARGUMENT

## I. WINDWARD BORA IS NOT THE "ORIGINAL PLAINTIFF" FOR PURPOSES OF CPLR § 205-A, AND THUS CANNOT APPLY THE SAVINGS PROVISION TO SAVE ITS UNTIMELY CLAIM.

The current foreclosure action is time-barred because Windward Bora was not entitled to avail itself of the savings clause under CPLR § 205-a. First, it is undisputed that Windward Bora is a different entity than the Original Plaintiff who commenced the initial 2013 Action that triggered the accrual of the statute of limitations; therefore, "the benefit of CPLR 205(a) is unavailable to save its untimely complaint." *See ACE Securities Corp. v. DB Structured Prods., Inc.*, 38 N.Y.3d 643, 655 (2022). In *ACE Securities Corp.*, the New York Court of Appeals explained:

> We have long recognized that "the benefit provided by [CPLR 205(a)] is *explicitly*, and *exclusively*, bestowed on 'the plaintiff' who prosecuted the initial action" except in the limited scenario where "the plaintiff" dies, the cause of action survives, and an administrator or executor of the deceased plaintiff's estate seeks to commence a new action based on the same occurrence. That is, the savings statute "applies *only* where the second action is brought by the same plaintiff" or an estate representative.
>
> Construing the term "the plaintiff" in CPLR 205(a) to authorize commencement of a new action by any entity seeking to pursue the "same rights" as the prior plaintiff . . . would render the statutory language permitting commencement of new actions by administrators and executors superfluous. An estate representative raising a claim on behalf of a deceased plaintiff is generally, as a matter of course, seeking to vindicate the rights of the original and now-deceased plaintiff. Had the legislature intended the statutory reference to "the plaintiff" to impliedly and broadly allow any entity seeking to vindicate the "same rights" as the original plaintiff or any entity claiming to represent the same "real party in interest" to benefit from CPLR 205(a), there would

> be no need for the statute to specifically bestow such benefit on executors and administrators. Yet, for over a century, an entity different than the original plaintiff has been permitted to rely on the savings statute to commence a subsequent action only in the circumscribed context of a deceased plaintiff's estate.

*Id.* at 652 (emphasis in original) (additional emphasis added) (internal citations omitted).

Nearly two decades before *ACE Securities Corp.*, this Court aptly described the "important remedial function" of CPLR § 205(a) as follows:

> Aggrieved plaintiffs who institute their actions within the time specified by law sometimes suffer a dismissal, intended as provisional, as the result of some remediable deficiency, such as omission of an allegation necessary to the pleading, failure to exhaust an administrative prerequisite, or the like. For reasons the plaintiff is powerless to protect against, such a dismissal may be ordered, as in this case, after the expiration of the time allowed for instituting such a suit, and without offering the plaintiff the opportunity to replead in the original action. . . .
>
> The purpose of § 205(a) is to avert unintended and capricious unfairness by providing that if the first complaint was timely but was dismissed for such curable reasons, the suit may be reinstituted within six months of the dismissal.

*Hakala v. Deutsche Bank AG*, 343 F.3d 111, 115 (2d Cir. 2003) (emphasis added).

Here, the "initial" or "original" action was the 2013 Action commenced by the Original Plaintiff; not the 2019 Action commenced by Windward Bora. By the time Windward Bora obtained its interest in the Loan, the 2013 Action had already been discontinued, but the statute of limitations continued to run on the Original Plaintiff's mortgage foreclosure claim. (A 239-42, 276).

"The six-month period in CPLR 205(a) is not a limitations period but a tolling provision, which has no application where . . . the statute of limitations has not expired at the time the second action is commenced." *Bonilla v. Tutor Perini Corp.*, 134 A.D.3d 869, 870 (2d Dep't 2015). "Basically, the statute is intended to grant a six-month grace period to commence a new and proper action, when it had originally been timely commenced but . . . was dismissed due to a technical defect that can be remedied in the new action." *Favourite Ltd. v. Cico*, 208 A.D.3d 99, 112-13 (1st Dep't 2022).

The fact that Windward Bora commenced the 2019 Action within the limitations period that began running with the 2013 Action is of no moment, as it was not the "original plaintiff" or acting on its behalf in the 2019 Action, and CPLR § 205-a has no application to the timely commenced second foreclosure action. *See U.S. Bank Nat'l Ass'n v. Fox*, 216 A.D.3d 445, 447 (1st Dep't 2023) (in addressing application of CPLR § 205-a, finding that "plaintiff in this action is concededly not the original plaintiff and is not acting on behalf of the original plaintiff. Accordingly, plaintiff is statutorily barred from commencing this action."); *see also George v. Mt. Sinai Hosp.*, 47 N.Y.2d 170, 179 (1979) ("[T]he fact that one party commenced an action which is subsequently dismissed, will not serve to justify application of the subdivision [CPLR § 205(a)] so as to support a later action by a different claimant. Where, however, . . . the claim is the same, and the subsequent claimant is acting as

the representative of the named plaintiff in the prior action, no such difficulty arises."); *Bonilla*, 134 A.D.3d at 870; *Favourite Ltd.*, 208 A.D.3d at 112-13; *ACE Securities Corp.*, 38 N.Y.3d at 652; *Hakala*, 343 F.3d at 115.

Apparently recognizing that the savings provision would not apply to the 2019 Action if a third foreclosure action was commenced outside of the statute of limitations, Windward Bora further unilaterally advanced the default date in this action to August 1, 2015. (A 19 (Complaint ¶ 17), 276). Indeed, if Windward Bora believed it could relate back to the filing date of the timely 2019 Action, there would be no need to further advance the default because the earlier installment payments that were timely in the 2019 Action would remain timely in this action.

Nonetheless, Windward Bora's commencement of the 2019 Action following dismissal of the 2013 Action satisfied the statutory intent of CPLR § 205-a as applicable to an original plaintiff, as it permitted Windward Bora the opportunity to remedy any technical or procedural defects from the original action in a second, timely-filed action. *See Hakala*, 343 F.3d at 115 ("The purpose of § 205(a) is to avert unintended and capricious unfairness by providing that if the first complaint was timely but was dismissed for . . . curable reasons, the suit may be reinstituted within six months of the dismissal."). Thus, this third foreclosure action, brought by a different entity than the Original Plaintiff nearly eight years after the claim originally accrued, and having already had an opportunity to cure any defects from the original

action in a second action that was also dismissed, is time-barred and cannot be revived through the application of the savings clause.

Just as this Court has already determined that CPLR § 205(a) does not operate as a "chain" to permit successive re-filings, it also should not operate to permit a successor entity to use the statute to revive a time-barred claim by relating back to a successive re-filing, rather than to the original claim. *See Ray v. Ray*, 22 F.4th 69, 72-73 (2d Cir. 2021). "[B]oth federal and New York courts have consistently described section 205(a) as authorizing a 'second' opportunity to file a claim after a 'first' or 'initial' claim is dismissed on a non-merits final judgment." *Id.* at 73-74; *see also Diffley.*, 921 F.2d at 423 ("Section 205(a) . . . merely allows the plaintiffs an additional six months in which to bring another action based on the same occurrences, after their timely initial complaint was dismissed for procedural defects." (emphasis added)); *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*, 33 N.Y.3d 72, 75 (2019) ("As a general rule, under CPLR 205(a) a subsequent action may be filed within six months of a non-merits dismissal of the initial timely-filed matter." (emphasis added)); *George.*, 47 N.Y.2d at 178 ("The very function of [section 205(a)] is to provide a second opportunity to the claimant who has failed the first time around because of some error pertaining neither to the claimant's willingness to prosecute in a timely fashion nor to the merits of the underlying claim." (emphases added)); *Moran v. County of Suffolk*, 189 A.D.3d 1219, 1222 (2d

Dep't 2020) ("CLPR 205(a) . . . 'saves only those claims that were timely interposed in the first action.'" (emphasis added) (citation and internal quotation marks omitted)).

## II. DISMISSAL OF THE 2019 ACTION ON SUMMARY JUDGMENT FURTHER BARS APPLICATION OF CPLR § 205-A.

The savings clause is also inapplicable to the 2019 Action because the basis for its dismissal falls into the excluded categories under CPLR § 205-a, which provides:

> If an action upon an instrument described under subdivision four of section two hundred thirteen of this article is timely commenced and is terminated in any manner other than a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for any form of neglect, including, but not limited to those specified in subdivision three of section thirty-one hundred twenty-six, section thirty-two hundred fifteen, rule thirty-two hundred sixteen and rule thirty-four hundred four of this chapter, for violation of any court rules or individual part rules, for failure to comply with any court scheduling orders, or by default due to nonappearance for conference or at a calendar call, or by failure to timely submit any order or judgment, or upon a final judgment upon the merits, the original plaintiff, or, if the original plaintiff dies and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months following the termination, provided that the new action would have been timely commenced within the applicable limitations period prescribed by law at the time of the commencement of the prior action and that service upon the original defendant is completed within such six-month period.

CPLR § 205-a(a) (emphasis added).

The 2019 Action was dismissed on an oral application for summary judgment made after Windward Bora advised the District Court it would be unable to prove its case at trial regarding compliance with the statutory notice requirements of RPAPL §§ 1303 and 1320. (A 186-87, 310-11). While the New York Court of Appeals has recognized pre-FAPA that dismissal of a timely action for noncompliance with a contractually imposed procedural condition precedent (*e.g.*, notice of default and opportunity to cure) does trigger the availability of CPLR § 205(a), the post-FAPA CPLR § 205-a adds a new category of exceptions to its application: "violation of any court rules." *Compare* CPLR § 205-a(a) with CPLR § 205(a); *see also DLJ Mortg. Cap., Inc.*, 33 N.Y.3d at 79 (holding that the notice and cure provisions of a pooling and servicing agreement were a procedural condition precedent and did not bar application of CPLR 205(a)).

This presents an issue of first impression not yet addressed by the New York Courts: whether the dismissal of an action due to a plaintiff's failure to comply with an express statutory notice requirement constitutes a "violation of . . . court rules" barring application of CPLR § 205-a to commence a new action within six months of the dismissal. Appellants respectfully submit that it does.

In any case involving the application of the savings clause, "it is necessary to ascertain not only whether a prior 'action' was timely commenced, but also whether the manner in which the prior action was 'terminated' rendered the plaintiff

ineligible for the six-month extension under the terms of that statute." *Carrick v. Central Gen. Hosp.*, 51 N.Y.2d 242, 250-51 (1980). Here, because CPLR § 205-a is a new statute recently enacted under FAPA to apply specifically in the context of "certain actions related to real property" (including foreclosure actions), the New York Court of Appeals has not yet provided an interpretation of what constitutes a "violation of . . . court rules" precluding application of the savings clause. In one recent case, the First Department held that where, "in affirming the dismissal of the earlier action, [the Court] cited 22 NYCRR 202.27 . . . , the earlier action was dismissed for neglect <u>and</u> 'violation of [a] court rule[].'" *See Fox*, 216 A.D.3d at 446 (emphasis added) (internal citations omitted).

The legislative history and commentary on FAPA are also instructive. First, as noted in the press release issued by State Senator James Sanders Jr., Chair of the Senate Banks Committee, who introduced the bill:

> Before this law went into effect, mortgage lenders had the unilateral ability to manipulate and evade the statute of limitations, which no other litigant enjoys in New York. The new law does not disturb New York's six-year statute of limitations on mortgage foreclosure actions. It simply restores a common-sense principle: no party may unilaterally stop and restart the statute of limitations to revive what would otherwise be a time-barred action. This law ensures the fair application of the statute of limitations. . . .
>
> Assemblymember Helene E. Weinstein said, "<u>This important law will protect homeowners by preventing mortgage lenders from getting an unfair and unwarranted second bite of the mortgage foreclosure apple</u>. The deck has long been stacked against homeowners due to a highly

> flawed mortgage foreclosure process, and this bill will go a long way to adding back some fairness to the process."

James Sanders Jr., *Governor Kathy Hochul Signs the "Foreclosure Abuse Prevention Act" (FAPA)*, Press Release (Jan. 11, 2023), https://www.nysenate.gov/newsroom/press-releases/2023/james-sanders/governor-kathy-hochul-signs-foreclosure-abuse-prevention (emphasis added).

Second, the FAPA bill jacket dated May 23, 2021, describes its "purpose and intent" as follows:

> The legislature finds that there is an ongoing problem with abuses of the judicial foreclosure process; that the problem has been exacerbated by court decisions which, contrary to the intent of the legislature, have given mortgage lenders and loan servicers opportunities to avoid strict compliance with remedial statutes and manipulate statutes of limitation to their advantage; and that the purpose of the present legislation is to clarify the meaning of existing statutes, and to rectify these erroneous judicial interpretations thereof.
>
> Accordingly, this bill amends certain statutes and rules to clarify the existing law and overturn certain court decisions to ensure the laws of this state apply equally to all litigants, including those currently involved in mortgage foreclosure actions. The aim of the bill is to thwart and eliminate abusive and unlawful litigation tactics that have been adopted and pursued in mortgage foreclosure actions to manipulate the law and judiciary to yield to expediency and the convenience of mortgage banking and servicing institutions.

2021 New York Assembly Bill No. 7737, New York Two Hundred Forty-Fourth Legislative Session (May 23, 2021) (emphasis added).

Further, the "summary of specific provisions" describes the new CPLR § 205-a as follows:

> Sections 3 and 4 of the bill create a new "savings" statute expressly for mortgage foreclosure cases, thus ensuring that the Engel case does not work allow [sic] an infinite and/or loosely defined statute of limitations, which would work to allow mortgagees to bring numerous successive actions on the same mortgage, without any limitation in law.

*Id.*

Given FAPA's remedial purpose to address and rectify abuses of the foreclosure process resulting in plaintiffs being given an "unfair and unwarranted second bite of the mortgage foreclosure apple," and allowing "numerous successive actions on the same mortgage, without any limitation in law," it would appear the Legislature intended to give the statute the broadest possible application. Thus, failure to comply with statutory notice requirements should be interpreted as constituting a "violation of . . . court rules" precluding application of the savings clause, as it would serve FAPA's remedial purpose and the legislative intent of preventing mortgagees from bringing numerous successive actions on the same mortgage.

## CONCLUSION

For these reasons, this Court should reverse the MSJ Order, deny Windward Bora's summary judgment motion in its entirety, and grant summary judgment in Appellants' favor (i) dismissing the Complaint with prejudice as time-barred, and (ii) for the relief requested in Appellants' counterclaims pursuant to RPAPL § 1501(4) and RPL § 282.

Dated: Brooklyn, New York
July 21, 2023


**PETROFF AMSHEN LLP**
*Attorneys for Defendants-Counter-Claimants – Appellants,*
John Sotomayor and Alexandria Loaiza

*/s/ Steven Amshen*
Steven Amshen, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 5,048 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Dated: Brooklyn, New York
July 21, 2023

Respectfully submitted,

**PETROFF AMSHEN LLP**
*Attorneys for Defendants-Counter-Claimants – Appellants,*
John Sotomayor and Alexandria Loaiza

*/s/ Steven Amshen*
Steven Amshen, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com

# Special Appendix

**TABLE OF CONTENTS**

PAGE

Opinion and Order of the Honorable Cathy Seibel Appealed From, dated March 20, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
WINDWARD BORA, LLC,

Plaintiff,

- against -

JOHN SOTOMAYOR; ALEXANDRIA LOAIZA; AMERICAN EXPRESS CENTURION BANK; MIDLAND FUNDING LLC D/B/A IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC; CAPITAL ONE BANK (USA), N.A.,

Defendants.
---------------------------------------------------------x

**OPINION & ORDER**

No. 21-CV-7161 (CS)

Appearances:
Mojdeh Malekan
Hasbani & Light, P.C.
New York, New York
*Counsel for Plaintiff*

Steven Amshen
Petroff Amshen LLP
Brooklyn, New York
*Counsel for Defendants John Sotomayor and Alexandria Loaiza*

Seibel, J.

Before the Court is the motion of Plaintiff Windward Bora LLC ("Plaintiff" or "Windward") for summary judgment against Defendants John Sotomayor and Alexandria Loaiza ("Defendants"), and for a default judgment against American Express Centurion Bank, Midland Funding LLC, and Capital One Bank (USA), N.A. (ECF No. 59.) Also before the Court is the cross-motion for summary judgment of Defendants Sotomayor and Loaiza. (ECF No. 68.) For the following reasons, Plaintiff's motion is GRANTED in part and DENIED in part, and Defendants' cross-motion is DENIED.

## I. BACKGROUND

I incorporate the facts set forth in my July 22, 2020 and February 23, 2021 bench rulings in the prior foreclosure action between the same parties regarding the same property, 2359 Maple Avenue, Cortlandt Manor, New York 10567 (the "Property"). *See Windward Bora, LLC v. Sotomayor*, No. 19-CV-4503 (S.D.N.Y. filed May 16, 2019).

The following facts are based on the parties' Local Civil Rule ("LR") 56.1 Statements, (ECF No. 63 ("P's 56.1 Stmt."); ECF No. 73 ("Ds' 56.1 Stmt."); ECF No. 74 ("Ds' 56.1 Resp.")), and the evidentiary materials submitted by the parties, and are undisputed unless otherwise noted.[1]

This action is the third foreclosure proceeding brought against Defendants to foreclose on the Property, which they mortgaged (the "Mortgage") as security for a note signed by Defendant John Sotomayor (the "Note"). (P's 56.1 Stmt. ¶¶ 3-4.) The first action (the "2013 Action") arose on December 31, 2013, when Partners for Payment Relief De II LLC ("PPR") commenced a foreclosure action in Westchester County Supreme Court. (Ds' 56.1 Stmt. ¶ 3). The 2013 Action concluded on March 2, 2018, when PPR voluntarily discontinued the case. (ECF No. 69-

---

[1] Plaintiff failed to comply with LR 56.1 in response to Defendants' 56.1 Statement. LR 56.1 requires the party opposing summary judgment to include "correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of the moving party," LR 56.1(b), and to support each such paragraph with "citation to evidence which would be admissible," *id.* 56.1(d). It further provides that if the non-moving party fails to specifically controvert a statement of the moving party, that statement is deemed admitted for purposes of the motion. *Id.* 56.1(c). In what appears to be an error, Plaintiff submitted a copy of Defendants' Statement and Counterstatement but did not submit its own counterstatement. (*See* ECF No. 65). Plaintiff's failure to respond individually to Defendants' statements permits me to consider those statements admitted, provided Defendants' statements are properly supported by evidence. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001). But that would not necessarily mean Defendant is entitled to summary judgment. "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (emphasis in original).

4 at 60.)[2] On August 15, 2018, Plaintiff became the owner and holder of the Mortgage and Note through the physical delivery of the Note, endorsed to Plaintiff. (P's 561. Stmt. ¶ 6; ECF No. 60 ("Devico Aff.") ¶ 8.)[3]

The second action (the "2019 Action") arose on May 16, 2019, when Plaintiff commenced a foreclosure proceeding in this Court seeking the same relief as the 2013 Action. (Ds' 56.1 Stmt. ¶ 4.) On April 15, 2021, this Court dismissed the 2019 Action following a conference during which "Plaintiff informed the Court that it would be unable to prove at trial that it provided the notices required by [Real Property Actions and Proceedings Law ("RPAPL")] §§ 1303 and 1320." (ECF No. 59-9.) Accordingly, I allowed Defendants to make an oral motion for summary judgment on the grounds that the undisputed facts demonstrated that Plaintiff had not provided those notices, and I entered summary judgment in favor of Defendants on that basis. (*Id.*)

On May 19, 2021, Plaintiff sent Defendants the pre-foreclosure notices required by RPAPL § 1304. (*See* ECF No. 69-7). The instant action was filed on August 25, 2021, (ECF No. 1 ("Compl.")), and Defendants filed their answer and counterclaims on September 7, 2021, (ECF No. 19 ("Answer")). On August 31, 2021, Plaintiff filed copies of the Notice of Pendency of Action and Complaint in the Office of the Westchester County Clerk. (ECF Nos. 77-1, 77-2.) On September 8, 2021, a process server served Defendants Sotomayor and Loaiza at the Property

---

[2] References to ECF No. 59, ECF No. 69, and ECF No. 77 refer to the page numbers generated by the Electronic Case Filing ("ECF") system.

[3] In its 56.1 Statement, Plaintiff alleged, and supported with evidence, that "Plaintiff is the owner of the Note and is in possession of the wet-ink note with a proper allonge. Therefore, Plaintiff is the holder and owner of both the Note and Mortgage on the date of the filing of this [] complaint." (P's 56.1 Stmt. ¶ 6.) Defendants attempt to deny the statement but cite only to their Answer and do not supply evidence. (Ds' 56.1 Resp. ¶ 6.) Accordingly, Plaintiff's statement is accepted as true.

with the summons, a "special summons pursuant to RPAPL § 1320," the complaint, the "notice pursuant to RPAPL 1303 on yellow colored paper," and a COVID-19 hardship letter and declaration of hardship. (ECF No. 59-2 at 1-2.) Following discovery, the instant cross-motions followed.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.[4]

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). "If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2).

This same standard applies to cross-motions for summary judgment. *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *C & A Carbone, Inc. v. County of Rockland*, No. 08-CV-6459, 2014 WL 1202699, at *5 (S.D.N.Y. Mar. 24, 2014). Generally, in deciding cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales*, 249 F.3d at 121; *see Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014). But where, as here, the motion and cross-motion seek a determination of the same issues, the Court can consider them together.

*Chartis Seguros*, 3 F. Supp. 3d at 179; *Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-CV-3770, 2015 WL 5098119, at *2 (S.D.N.Y. Aug. 31, 2015).

## III. DISCUSSION

Plaintiff argues that it is entitled to summary judgment because it has established its foreclosure case as a matter of law and Defendants' affirmative defenses lack merit. (*See generally* ECF No. 62 ("P's Mem.").)

### A. *Prima Facie* Mortgage Foreclosure Case

Plaintiff argues that it has established its *prima facie* case as a matter of law. (*Id.* at 6-7.)

A plaintiff establishes its right to foreclose a mortgage as a matter of law on summary judgment "through the production of the mortgage, the unpaid note, and evidence of default." *Capital One Nat'l Ass'n v. 48-52 Franklin, LLC*, No. 12-CV-3366, 2014 WL 1386609, at *4 (S.D.N.Y. Apr. 8, 2014). "Once the plaintiff has established its prima facie case by presenting the Note, Mortgage and proof of default, the plaintiff mortgagee has a presumptive right to foreclose, which can only be overcome by an affirmative showing by the defendant mortgagor." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 195 (S.D.N.Y. 2018).

Plaintiff physically possesses and has produced the Mortgage and Note with affixed allonges. (ECF No. 60-1; ECF No. 60-2; *see* Devico Aff. ¶ 8.) As noted, in their 56.1 Response, Defendants deny that Plaintiff is the holder and owner of the Note and Mortgage but fail to provide any explanation of the basis on which they dispute this claim, simply stating, "Defendants deny this," and citing generally to their Answer, which does not appear to include any facts negating Plaintiff's ownership. (*See* Ds' 56.1 Resp. ¶ 6.) This is insufficient to raise an issue of fact at the summary judgment stage. *Emanuel v. Griffin*, No. 13-CV-1806, 2015 WL

1379007, at *2 (S.D.N.Y. Mar. 25, 2015) (Court will ignore unsupported assertions in a 56.1 Statement).

Plaintiff has also submitted an affidavit based on personal knowledge and on business records of Plaintiff and its predecessors attesting to Defendants' default, (Devico Aff. ¶¶ 7, 9; *see* ECF No. 60-3), which is sufficient evidence to establish default on summary judgment. *See, e.g.*, *Wells Fargo Bank, Nat'l Ass'n v. Ullah*, No. 13-CV-485, 2015 WL 3735230, at *4 (S.D.N.Y. June 15, 2015); *E. Sav. Bank, F.S.B. v. Ferro*, No. 13-CV-5882, 2015 WL 778345, at *6 (E.D.N.Y. Feb. 24, 2015).[5] Moreover, in the 2019 Action, the signer of the Note, Defendant Sotomayor, admitted the default. (*See* ECF No. 77-4 at 1.)[6]

---

[5] Defendants dispute Plaintiff's proof of default only insofar as Plaintiff's "copies of the prerequisite notices referenc[e] different amounts." (Ds' 56.1 Resp. ¶ 5.) But Defendants put forth no evidence showing that they did not default under the terms of the Note and Mortgage, as is required when raising an affirmative defense once a *prima facie* case of foreclosure has been made as a matter of law. *See Wells Fargo Bank, Nat'l Ass'n as Tr. for Benefit of Holders of Comm 2015-LC19 Mortg. Tr. Com. Mortg. Pass-Through Certificates v. 5615 N. LLC*, No. 20-CV-2048, 2022 WL 15523689, at *7 (S.D.N.Y. Oct. 27, 2022) ("Once a mortgagee's *prima facie* case is established, the mortgagor must make an affirmative showing that a defense to the action exists.") Instead, Defendants argue that the evidence offered by Plaintiff is inadmissible because it includes "(i) a printout improperly entitled 'pay history,' bearing no indication as to who made it, when it was made, and upon what information [it] is based, and (ii) a 'payoff' which, in fact, appears to be a rushed Microsoft Excel calculation, again bearing no indication of its provenance." (ECF No. 72 ("Ds' Mem.") at 24.) But Defendants' concerns about the validity of Plaintiff's records as to the amount by which Defendants are in default goes to the issue of damages, not to whether Defendants defaulted in this case. Because Plaintiff has already established by affidavit that Defendants defaulted, and Defendants have put forth no affirmative evidence to the contrary, Plaintiff has satisfied its burden to establish a *prima facie* case. Further, "[a] dispute as to the exact amount owed by the mortgagor to the mortgagee may be resolved after a reference pursuant to RPAPL 1321, and the existence of such a dispute does not preclude the issuance of summary judgment directing the sale of the mortgaged property." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 82 (E.D.N.Y. 2019); *see CIT Bank,* 328 F. Supp. 3d at 199; *Johnson v. Gaughan*, 513 N.Y.S.2d 244, 245 (App. Div. 1987).

[6] Defendants argue that Sotomayor's statement is hearsay. (ECF No. 76 ("Ds' Reply") at 13.) But as to him, it is not hearsay because it is an opposing party's statement, *see* Fed. R. Evid. 801(d)(2), and as to both Defendants, it could be admissible as a statement in a document

Accordingly, Plaintiff has "established a *prima facie* case and is presumptively entitled to foreclosure," and the burden shifts to Defendants to establish any affirmative defenses. *Freedom Mortg. Corp. v. Heirs*, No. 19-CV-1273, 2020 WL 3639989, at *4 (S.D.N.Y. July 6, 2020).

### B. Affirmative Defenses

#### 1. Notice-Related Affirmative Defenses

Defendants raised several notice-related affirmative defenses in their Answer, including failure to comply with the Mortgage's default-notice provision, (Answer ¶¶ 32-33); failure to comply with RPAPL § 1304, (*id.* ¶¶ 34-35); failure to comply with RPAPL § 1320, (*id.* ¶ 36); failure to comply with RPAPL § 1303, (*id.* ¶ 37); and failure to comply with RPAPL § 1306, (*id.* ¶ 40). Plaintiff addressed all of these defenses in its motion but Defendants in their opposition and cross-motion discussed only Plaintiff's failure to comply with § 1304 and § 1320. Accordingly, Defendants abandoned the notice-related defenses they did not address. *See CIT Bank N.A. v. Elliott*, No. 15-CV-4395, 2018 WL 1701947, at *10 (E.D.N.Y. Mar. 31, 2018) ("In opposition, Elliott argued only the affirmative defense of standing and disregarded Plaintiff's discussion of the counterclaims and remaining affirmative defenses. Accordingly, Elliott abandoned her counterclaims and remaining defenses."); *Onewest Bank, N.A. v. Rosado*, No. 14-CV-9917, 2016 WL 3198305, at *4 (S.D.N.Y. June 7, 2016) ("Plaintiff addressed each of these fifteen affirmative defenses and counterclaims in its brief in support of its motion for summary judgment. In failing to respond on any of these issues, except the sufficiency of the notice of default and the sufficiency of the evidence that the notice of default was mailed, Defendants have abandoned those unaddressed claims.").

---

affecting an interest in property, *see* Fed. R. Evid. 803(15). In any event, even without Sotomayor's statement, Plaintiff has established the default.

Defendants also raise in their opposition and cross-motion an affirmative defense that they did not include in their Answer: Plaintiff's alleged failure to comply with RPAPL § 1331. (Ds' Mem. at 22). But "a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." *Doubleday & Co. v. Curtis*, 763 F.2d 495, 503 (2d Cir. 1985); *see Design Options, Inc. v. BellePointe, Inc*., 940 F. Supp. 86, 91 (S.D.N.Y. 1996) ("[I]f a party fails to plead an affirmative defense, that defense is deemed to have been waived."); *see also Perkins v. Am. Transit Ins. Co.*, No. 10-CV-5655, 2013 WL 174426, at *21 (S.D.N.Y. Jan. 15, 2013) ("An opposition brief is not the place to raise new allegations."). Because Defendants failed to plead this defense in their answer, and have not moved to amend their answer to include it, *see Mooney v. City of N.Y.*, 219 F.3d 123, 127 n.2 (2d Cir. 2000), it is deemed waived, *Minuteman Press Int'l, Inc. v. Matthews*, 232 F. Supp. 2d 11, 17 (E.D.N.Y. 2002). Nevertheless, out of an abundance of caution, I address the merits of this defense below.

a. <u>RPAPL § 1304</u>

RPAPL § 1304 sets forth the notice requirements for a lender, assignee or mortgage loan servicer prior to commencement of legal action against a borrower. The statute sets out the language the notice must contain, RPAPL § 1304(1), and also requires that the notices be sent "in a separate envelope from any other mailing or notice," *id.* § 1304(2). Here, Plaintiff sent to both Defendants notices pursuant to § 1304 dated May 19, 2021. (ECF No. 69-7.) The last page of the notices included the following language beyond that required by § 1304:

> This communication is an attempt to collect a debt and any information obtained will be used for the purpose. However, if you have received a discharge of debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will exercise its rights against the property.

(ECF No. 69-7 at 3, 7.)

Defendants claim that the notices sent to them contained additional language in violation of § 1304 and the principles set forth in *Bank of America, N.A. v. Kessler*, 160 N.Y.S.3d 277 (App. Div. 2021), *rev'd*, No. 4, 2023 WL 1972994 (N.Y. Feb. 14, 2023). (Ds' Mem. at 10-11.) In *Kessler*, the Appellate Division held that the plaintiff noteholder failed to comply with § 1304 when it sent notices to defendants in an envelope that also contained "two notices pertaining to the rights of a debtor in bankruptcy and in military service." 160 N.Y.S.3d at 284. The court concluded that the plaintiff failed to comply with RPAPL § 1304 because it sent "additional material" in the same envelope as the requisite notice. *Id.*

While the instant motions were pending, the New York State Court of Appeals reversed the lower court's holding, concluding that § 1304 does not create a bright line rule that invalidates notices sent with "any additional material or information whatsoever." *Kessler*, 2023 WL 1972994, at *3.[7] Instead, § 1304 requires that the foreclosure notice be sent separately from notices "of a different kind." *Id.* And "accurate statements that further the underlying statutory purpose of providing information to borrowers that is or may become relevant to avoiding foreclosure do not constitute an 'other notice.'" *Id.* at *4.

The reversal defeats Defendants' argument that Plaintiff's inclusion of the challenged language renders the notices invalid under § 1304 and *Kessler*. (Ds' Mem. at 11.) In light of the Court of Appeals' decision, it is clear that this additional language constitutes the type of "accurate statement" that "further[s] the underlying statutory purpose of providing information to borrowers that is or may become relevant to avoiding foreclosure" permitted under § 1304.

---

[7] Even before *Kessler* was reversed, a court in this District had found language similar to the language at issue here to be appropriate, because it was required under the federal Fair Debt Collection Practices Act. *See CIT Bank, N.A. v. Neris*, 605 F. Supp. 3d 521, 528 (S.D.N.Y. 2022).

*Kessler*, 2023 WL 1972994, at *4. The added language merely informs the borrower that the lender is seeking to collect a debt unless the debt has been discharged in bankruptcy or the borrower has an ongoing bankruptcy case. Indeed, the language approved in *Kessler* was essentially the same. *See id*. at *2.

Accordingly, Plaintiff is entitled to summary judgment on this issue.

b. RPAPL § 1320

RPAPL § 1320 requires that "[i]n an action to foreclose a mortgage on a residential property containing not more than three units, in addition to the usual requirements applicable to a summons in the court, the summons shall contain a notice in boldface" with statutorily prescribed language.

Plaintiff included the statutorily prescribed language when it served the summonses on both Defendants, but on a separate piece of paper. (ECF No. 69-6.) Defendants argue, without citing authority, that "[t]here can only be one summons, and in a foreclosure action, it must include the aforementioned special language," and that by serving two summonses, Plaintiff failed to comply with § 1320. (Ds' Mem. at 23.) This argument is nonsensical. As evidenced by the several summonses issued by the Clerk of Court to each named Defendant, (ECF Nos. 14-18), there can indeed be more than one summons. Indeed, Federal Rule of Civil Procedure 4(b) requires that "[a] summons – or a copy of a summons that is addressed to multiple defendants – must be issued for each defendant to be served."

Defendants may intend to argue that § 1320 requires a party to include the statutory language on the summons form itself, rather than on a separate page. (Ds' Mem. at 22-23.) But courts routinely find that a plaintiff complies with § 1320 by serving the notice along with the summons and complaint. *See United States v. Lancor*, No. 19-CV-936, 2022 WL 4551694, at *2

(N.D.N.Y. Sept. 29, 2022) ("Plaintiff has cured this deficiency in connection with the instant motion by providing evidence that Defendant Lancor was re-served with the summons and complaint, together with the Section 1320 notice, on July 12, 2022."); *Ditech Fin. LLC v. Frantz*, No. 16-CV-146, 2017 WL 1184206, at *4 (N.D.N.Y. Mar. 29, 2017) ("Plaintiff also served, with the summons and complaint, notices pursuant to RPAPL § 1303 and § 1320."), *reconsideration granted on other grounds*, 2018 WL 2084166 (N.D.N.Y. May 2, 2018); *Ditech Fin. LLC v. Sterly*, No. 15-CV-1455, 2016 WL 7429439, at *4 (N.D.N.Y. Dec. 23, 2016) (same). Defendants have not cited any case law to the contrary, nor have they suggested how including the required language on a separate sheet served along with the summons in any way undermines the purpose of the statute. Accordingly, the Court rejects Defendants' argument that § 1320 requires the statutory language to be included on the summons form itself and finds that Plaintiff complied with the statute in sending § 1320 notices.

Accordingly, Plaintiff is entitled to summary judgment on this issue.

c. RPAPL § 1331

Defendants argue in their motion for summary judgment that Plaintiff failed to comply with RPAPL § 1331, (Ds' Mem. at 22), which requires

> [t]he plaintiff, at least twenty days before a final judgment directing a sale is rendered, [to] file in the clerk's office of each county where the mortgaged property is situated a notice of the pendency of the action, which shall specify, in addition to other particulars required by law, the date of the mortgage, the parties thereto and the time and place of recording.

RPAPL § 1331. Defendants contend that Plaintiff has failed to comply with RPAPL § 1331 because Plaintiff did not provide evidence that it had complied with § 1331. (Ds' Mem. at 22.)

First, no final judgment of sale has been rendered yet. Second, even if a final judgment of sale had been rendered, Plaintiff has submitted copies of the filed complaint with the notice of

pendency, which are stamped as received by the Office of the Westchester County Clerk on August 31, 2021. (ECF Nos. 77-1, 77-2.)[8] Consequently, Plaintiff has established its compliance with RPAPL § 1331 and is entitled to summary judgment on this issue.

**2. Statute of Limitations**

Defendants argue that they are entitled to summary judgment because Plaintiff's foreclosure action is time-barred. (Ds' Mem. at 12-21; *see* Answer ¶ 39).

In New York, the statute of limitations for foreclosure actions is six years. N.Y. C.P.L.R. § 213. Typically, the statute of limitations starts running from the due date of each unpaid installment. *Plaia v. Safonte*, 847 N.Y.S.2d 101, 102 (App. Div. 2007). But once an installment loan is accelerated, the entire amount comes due, and the statute of limitations begins to run on the full amount. *EMC Mortg. Corp. v. Patella*, 720 N.Y.S.2d 161, 162 (App. Div. 2001). "When acceleration of the mortgage debt on default is made optional with the holder of the note and mortgage," as here, "some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision." *CIT Bank*, 328 F. Supp. 3d at 201 (quoting *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540, 542 (App. Div. 2012)). Such affirmative action must be "clear and unequivocal," *Wells Fargo Bank*, 943 N.Y.S.2d at 542, and commencement of a foreclosure action may suffice, *id.*; *see Your New Home, LLC v. JP Morgan Chase Bank, N.A.*, 92 N.Y.S.3d 851, 854 (Sup. Ct. 2019).

---

[8] Because Defendants raised this affirmative defense for the first time in their opposition to Plaintiff's motion for summary judgment, (*see* Ds' Mem. at 22), the Court considers the supplemental declaration of Mojdeh Malekan and its exhibits submitted on reply, (ECF Nos. 77-1, 77-2.) *See Yorke v. TSE Grp. LLC*, No. 18-CV-5268, 2019 WL 3219384, at *2 (S.D.N.Y. July 17, 2019) (collecting cases for proposition that evidence may be considered in reply when it is responsive to claims raised in opposition briefs); *see Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (district courts have discretion to consider or disregard arguments and evidence raised for first time in reply brief).

Defendants argue that the statute of limitations expired on December 31, 2019,[9] at the latest, because the Mortgage was accelerated on December 31, 2013, when Plaintiff's predecessor in interest, PPR, brought a foreclosure action. (Ds' Mem. at 12.) Plaintiff argues that although the loan was accelerated on December 31, 2013, it was decelerated on March 2, 2018, when PPR voluntarily discontinued the action. (P's Mem. at 15.) In support of its argument, Plaintiff cites to *Freedom Mortgage Corp. v. Engel*, 37 N.Y.3d 1 (2021), in which the New York State Court of Appeals held that, "where acceleration occurred by virtue of the filing of a complaint in a foreclosure action, the noteholder's voluntary discontinuance of that action constitutes an affirmative act of revocation of that acceleration as a matter of law, absent an express, contemporaneous statement to the contrary by the noteholder." *Id.* at 32.

While the instant motion was pending, New York enacted the Foreclosure Abuse Prevention Act ("FAPA"), which effectively overrules *Engel*.[10] (*See* ECF No. 82.) Section 8 of FAPA amends New York Civil Practice Law and Rules ("CPLR") § 3217(3) to add that "the voluntary discontinuance of [a foreclosure] action, whether on motion, order, stipulation or by notice, shall not, in form or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute." A.B. 7737-B, 2021-2022 Assemb., Reg. Sess. § 8 (N.Y. 2021). Further, Section 4

---

[9] Defendants list the date as December 13, 2019 in their brief but this is a typographical error because the 2013 Action was filed on December 31, 2013 and six years from the commencement of the 2013 Action is December 31, 2019.

[10] According to New York State Senator James Sanders Jr.'s press release on the enactment – Governor Kathy Hochul Signs the "Foreclosure Abuse Prevention Act" (FAPA), NY Senate (Jan. 11, 2023), https://www.nysenate.gov/newsroom/press-releases/james-sanders-jr/governor-kathy-hochul-signs-foreclosure-abuse-prevention (last visited Mar. 15, 2023) – "This law restores balance in the foreclosure process since the New York Court of Appeals' decision in Freedom Mtge. v. Engel in 2021. The new law will prevent manipulative foreclosure practices disproportionately harmful to communities of color."

of FAPA, which amends CPLR § 203, provides that once a cause of action has "accrued," "no party may, in form or effect, unilaterally waive, postpone, cancel, toll, revive, or reset the accrual thereof, or otherwise purport to effect a unilateral extension of the limitations period prescribed by law to commence an action and to interpose the claim, unless expressly prescribed by statute." *Id.* § 4.

Plaintiff does not dispute that *Engel* is no longer good law, but instead argues that it filed this action within the statute of limitations period even if the loan was not decelerated on March 2, 2018, citing to the newly enacted CPLR § 205-a. (*See* ECF No. 83 at 1-2.) Section 6 of FAPA creates CPLR § 205-a, a savings provision specific to certain actions related to real property, which provides:

> If [a foreclosure action] is timely commenced and is terminated in a manner other than a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for any form of neglect . . . for violation of any court rules or individual part rules, for failure to comply with any court scheduling orders, or by default due to nonappearance for conference or at a calendar call, or by failure to timely submit any order or judgment, or upon a final judgment upon the merits, the original plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months following the termination, provided that the new action would have been timely commenced within the applicable limitations period prescribed by law at the time of the commencement of the prior action and that service upon the original defendant is completed within such six-month period.

A.B. 7737-B § 6.[11] Plaintiff argues that the instant foreclosure action is timely under CPLR § 205-a because (1) this action, which was filed on August 25, 2021, was filed within six months

---

[11] Because the motion was briefed prior to the enactment of FAPA, the parties cite in their briefs to CPLR § 205(a) rather than § 205-a. Section 205(a) provides,

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new

of the termination of its previous foreclosure action on the Property – the 2019 Action – which was terminated on April 16, 2021; (2) the 2019 Action was timely commenced on May 16, 2019, within six years of the acceleration of the mortgage on December 31, 2013; (3) the 2019 Action was dismissed for reasons other than those listed in the statute, and (4) all Defendants were served by September 10, 2021 – within the six-month period. (ECF No. 83; *see* P's Mem. at 16-17.)

Defendants argue in response that the savings provision cannot be applied to the instant action for two reasons: first, the prior foreclosure action was dismissed on the merits, and

---

> action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period. Where a dismissal is one for neglect to prosecute the action made pursuant to rule thirty-two hundred sixteen of this chapter or otherwise, the judge shall set forth on the record the specific conduct constituting the neglect, which conduct shall demonstrate a general pattern of delay in proceeding with the litigation.

Like § 205-a, §205(a) acts as a "savings statute," generally providing that a timely commenced action dismissed without prejudice can be refiled by "the plaintiff" within six months of dismissal, even if the statute of limitations has expired. *ACE Sec. Corp. v. DB Structured Prod., Inc.*, 38 N.Y.3d 643, 651 (2022) ("The effect of the statute is quite simple: if a timely brought action has been terminated for any reason other than one specified in the statute, the plaintiff may commence another action based on the same transactions or occurrences within six months of the dismissal of the first action" and obtain the benefit of the prior timely filing for statute of limitations purposes."). FAPA created § 205-a

> to provide a specific savings statute for foreclosures in order to address judicial decisions that have been contrary to the spirit of this savings provision which have been overly indulgent of foreclosure plaintiffs whose cases have been dismissed for various forms of neglect, who are not entitled to the six months grace period means for diligent plaintiffs whose cases were dismissed for reasons that do not reflect their own fault.

*U.S. Bank Nat'l Ass'n as Tr. for Residential Asset Sec. Corp., Home Equity Mortg. Asset Backed Pass-Through Certificates, Series 2006-EMX8 v. Pierre*, No. 208030/2022, 2023 WL 2198458, at *1 (N.Y. Sup. Ct. Feb. 23, 2023).

second, FAPA limits Plaintiff's ability to apply the savings provision because it is a successor in interest to PPR. (ECF No. 82.)

Defendants assert that Plaintiff cannot rely on § 205-a because the 2019 Action was terminated upon a final judgment on the merits, and therefore falls into one of the exceptions to the savings provision. (*Id.*; *see* D's Mem. at 12-14.) On April 15, 2021, this Court dismissed the 2019 Action following a conference during which "Plaintiff informed the Court that it would be unable to prove at trial that it provided the notices required by RPAPL §§ 1303 and 1320." (ECF No. 59-9.) Accordingly, I allowed Defendants to make an oral motion for summary judgment on the grounds that the undisputed facts demonstrated that Plaintiff had not provided those notices and I entered summary judgment in favor of Defendants on that basis. (*Id.*) Plaintiff argues that this dismissal was not on the merits because the dismissal arose from the failure to satisfy a condition precedent. (ECF No. 78 ("P's Reply") at 10-11.)

While Defendants may be correct, (*see* Ds' Mem. at 13), that "[a]n order granting summary judgment constitutes an adjudication on the merits for the purposes of *res judicata*," *Flowers v. Conn. Light & Power Co.*, No. 21- CV-860, 2021 WL 5564085, at *1 (2d Cir. Nov. 29, 2021), "failure to comply with a procedural condition precedent may be a fatal flaw to maintaining the prior action and grounds for dismissal but is not a judgment on the merits for purposes of CPLR 205(a)," *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*, 33 N.Y.3d 72, 80 (2019) (citing *Carrick v. Cent. Gen. Hosp.*, 51 N.Y.2d 242 (1980)). *Sabbatini v. Galati*, 842 N.Y.S.2d 539 (App. Div. 2007), is instructive. In *Sabbatini*, the first foreclosure action was dismissed by the lower court at summary judgment on statute of limitations grounds and affirmed by the Appellate Division on the separate ground of plaintiff's failure to comply with RPAPL § 1301(1). *Id.* at 541. After the plaintiff satisfied the relevant condition precedent, he

filed a second foreclosure action seeking the same relief demanded in the original action and now seeking the benefit of CPLR § 205(a). *Id.* at 541-42. In holding that the lower court's grant of the defendants' motion for summary judgment was incorrect, the Appellate Division explicitly stated that the prior dismissal at summary judgment on the basis that plaintiff had failed to comply with RPAPL § 1301(1) was not a final judgment on the merits for purposes of CPLR § 205(a). *See id.* at 542 ("Dismissal of a complaint for the failure to satisfy a condition precedent to suit is not a final judgment on the merits for the purposes of CPLR 205(a)."); *see CitiMortgage, Inc. v. Moran*, 135 N.Y.S.3d 378, 380 (2020) (applying § 205(a) where plaintiff failed to comply with RPAPL § 1304 in prior action). Here, the 2019 Action was similarly dismissed for failure to satisfy a condition precedent to suit – namely, compliance with RPAPL § 1303 and § 1320. (*See* ECF No. 59-9.) Defendants have provided no persuasive reason why *Sabbatini* should not be applied in this case or why I should interpret § 205-a differently than § 205(a) in this context, and cite no cases arising in the RPAPL context. In short, my prior grant of summary judgment to Defendants in the 2019 Action decided nothing more than that Plaintiff had not complied with RPAPL § 1303 and § 1320 prior to commencing that lawsuit. That is the only finding that would be entitled to preclusive effect, and it said nothing about the merits of that lawsuit or the instant one. It was a reason to dismiss the 2019 action but not a finding on the merits that would prevent application of CPLR § 205-a.

Defendants' second argument relies on Section 6 of FAPA, which modifies the savings provision by permitting only an "original plaintiff" to bring the new action and clarifying that "a successor in interest or an assignee of the original plaintiff shall not be permitted to commence the new action, unless pleading and proving that such assignee is acting on behalf of the original plaintiff." A.B. 7737-B § 6. Defendants argue that Plaintiff cannot utilize the savings provision

in the instant action because the "original plaintiff" is PPR, referring to the 2013 Action. (ECF No. 82 at 2-3.) But the "original plaintiff" refers to the plaintiff in the action from which the "new plaintiff" is seeking to extend the statute of limitations period. The "original plaintiff" here is Windward – the party that brought the 2019 Action. In other words, CPLR § 205-a is not being applied to the 2013 action brought by PPR, but to the 2019 Action brought by Plaintiff.[12] *ACE Securities Corp. v. DB Structured Products, Inc.*, 38 N.Y.3d 643 (2022), the only case Defendants cite on this issue, is not to the contrary. There the Court of Appeals held that HSBC could not apply the savings provision under CPLR § 205(a) because the "original plaintiffs" of the prior action upon which HSBC was seeking to extend the statute of limitations period were two certificate holders, not HSBC. *Id.* at 647. Here, Windward was the party that brought both the 2019 Action and the instant action, and is thus able to apply the savings provision.

Accordingly, Plaintiff is entitled to summary judgment on this issue.

**3. Remaining Defenses and Counterclaims**

In their Answer, Defendants raise the following remaining affirmative defenses: failure to state a cause of action, (Answer ¶ 31); standing, (*id.* ¶ 38); statute of frauds, (*id.* ¶ 41); laches, (*id.* ¶ 42); waiver, (*id.* ¶ 43); and res judicata, (*id.* ¶ 44). Defendants also raise counterclaims including a claim to quiet title pursuant to Article 15 of RPAPL, (*id.* ¶¶ 45-56), and a claim for attorneys' fees under New York Real Property Law ("RPL") § 282, (*id.* ¶¶ 57-60). Because Defendants failed to address all remaining affirmative defenses and their quiet title counterclaim in their cross-motion, and failed to respond to Plaintiff's arguments as to them, I find that they are abandoned. *See OneWest Bank*, 2016 WL 3198305, at *4.

---

[12] Plaintiff did not need to utilize CPLR § 205(a) in commencing the 2019 Action because it was brought within the statute of limitations.

Defendants do raise their final counterclaim "seek[ing] attorneys' fees and costs under the terms of th[e] alleged mortgage." (Ds' Mem. at 21-22); *see* RPL § 282(1) (providing that where lender may collect attorneys' fees and costs in foreclosure action, borrower has implied reciprocal right to fees and costs where borrower successfully defends action); *21647 LLC v. MTGLQ Invs., L.P.*, 180 N.Y.S.3d 489, 492 (Sup. Ct. 2022) (RPL § 282 "provides that a covenant contained in a mortgage on residential real property that permits the mortgagee to recover attorney fees in a foreclosure action gives rise to an implied reciprocal covenant by the mortgagee in favor of the mortgagor.").

Because the Court has concluded that Plaintiff is entitled to summary judgment, however, this counterclaim is necessarily dismissed. *See OneWest Bank, N.A. v. Melina*, No. 14-CV-5290, 2015 WL 5098635, at *5-6 (E.D.N.Y. Aug. 31, 2015) ("Because [the plaintiff-mortgagee's] motion for summary judgment is granted, [the defendant-mortgagor] has not successfully defended this action. Accordingly, his counterclaim for attorney's fees is dismissed."), *aff'd*, 827 F.3d 214 (2d Cir. 2016). Similarly, the Court denies Defendants' cross-motion for summary judgment. *See Colavito v. N.Y. Organ Donor Network, Inc.*, 356 F.Supp.2d 237 (E.D.N.Y. 2005) (articulating same reasons to justify both decision to grant summary judgment to one party and decision to deny cross-motion for summary judgment filed by opposing party), *aff'd in part*, 438 F.3d 214 (2d Cir. 2006), *aff'd*, 486 F.3d 78 (2d Cir. 2007).

### C. <u>Default Judgment</u>

Plaintiff seeks a default judgment against American Express Centurion Bank, Midland Funding LLC, and Capital One Bank (USA), N.A., (P's Mem. at 20-22), but has failed to follow the Court's individual practices, which require default judgments to be sought via Order to Show Cause. Accordingly, Plaintiff's motion for default judgment is denied without prejudice to

renewal. Assuming I find it appropriate to enter default judgments as to American Express Centurion Bank, Midland Funding LLC, and Capital One Bank (USA), N.A., and assuming Defendants register no objection to the form of the proposed Judgment of Foreclosure and Sale submitted by Plaintiff, (ECF No. 59-13), I will enter that Judgment. The parties are encouraged to reach agreement on the outstanding balance and on an individual to serve as Special Master.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED in part and DENIED in part. Summary judgment is GRANTED for Plaintiff against Defendants Sotomayor and Loaiza. The cross-motion for summary judgment of Defendants Sotomayor and Loaiza is DENIED. Plaintiff's motion for a default judgment against American Express Centurion Bank, Midland Funding LLC, and Capital One Bank (USA), N.A. is DENIED WITHOUT PREJUDICE. The Clerk of Court is respectfully directed to terminate the pending motions. (ECF Nos. 59, 68.)

**SO ORDERED.**

Dated: March 20, 2023
White Plains, New York

Cathy Seibel
CATHY SEIBEL, U.S.D.J.