# 23-546

IN THE

# United States Court of Appeals

**FOR THE SECOND CIRCUIT**

WINDWARD BORA LLC,

*Plaintiff-Counter-Defendant-Appellee,*

—against—

JOHN SOTOMAYOR, ALEXANDRIA LOAIZA,

*Defendants-Counter-Claimants-Appellants,*

AMERICAN EXPRESS CENTURION BANK, MIDLAND FUNDING LLC, DBA IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC, CAPITAL ONE BANK (USA), N.A., JOHN DOE, JANE DOE,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**APPENDIX**
**VOLUME I OF II**
**(Pages A-1 to A-238)**


RAFI HASBANI
HASBANI & LIGHT, P.C.
450 Seventh Avenue, Suite 1408
New York, New York 10123
(212) 643-6677

SETH D. WEINBERG
THE MARGOLIN & WEINREB LAW GROUP, LLP
165 Eileen Way, Suite 101
Syosset, New York 11791
(516) 921-3838

*Attorneys for Plaintiff-Counter-Defendant-Appellee*

STEVEN AMSHEN
JAMES TIERNEY
PETROFF AMSHEN LLP
1795 Coney Island Avenue, 3rd Floor
Brooklyn, New York 11230
(718) 336-4200

*Attorneys for Defendants-Counter-Claimants-Appellants*

**TABLE OF CONTENTS**

PAGE

Docket Entries .......................................................... A-1

Plaintiff's Notice of Motion for Summary Judgment,
dated January 7, 2022 (filed July 8, 2022) .......................... A-13

Exhibit A—
Complaint, dated August 24, 2021, with exhibits .................. A-16

Exhibit B—
Affidavits of Service ........................................... A-102

Exhibit C—
Defendants John Sotomayor and Alexandria Loaiza's Verified
Answer with Counterclaims, dated September 3, 2021 ............ A-107

Exhibit D—
Clerk's Certificates of Default .................................. A-117

Exhibit E—
Notice of Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i),
dated September 23, 2021 ........................................ A-120

Exhibit F—
Notice of Pendency, dated August 25, 2021 ...................... A-121

Exhibit G—
Summons and Verified Complaint, dated December 20, 2013 ..... A-125

Exhibit H—
Voluntary Discontinuance of Action, dated March 2, 2018 ........ A-184

Exhibit I—
Order of the Honorable Cathy Seibel, dated April 15, 2021 ....... A-186

Exhibit J—
Docket Entries in 7:19-cv-04503-CS ............................. A-188

Exhibit K—
Conference Transcript in 7:19-cv-04503-CS, dated July 22, 2020 .. A-211

PAGE

Exhibit L—
RPAPL 1306 Proof of Filing Statement
(Reproduced herein at pages A-89 to A-90)

Exhibit M—
Proposed Judgment of Foreclosure and Sale ..................... A-231

Affidavit of Yonel Devico in Support of Plaintiff's Motion for
Summary Judgment, sworn to January 3, 2022 .................. A-239

Exhibit A to Devico Affidavit—
Note, dated January 19, 2007
(Reproduced herein at pages A-27 to A-36)

Exhibit B to Devico Affidavit—
Mortgage, dated January 19, 2007
(Reproduced herein at pages A-38 to A-52)

Exhibit C to Devico Affidavit—
Pay History ........................................... A-243

Exhibit D to Devico Affidavit—
Invoice................................................ A-251

Declaration of Mojdeh Malekan in Support of Plaintiff's Motion for
Summary Judgment, dated January 5, 2022...................... A-253

Memorandum of Law in Support of Plaintiff's Motion for Summary
Judgment, dated January 5, 2022 .............................. A-257

Defendants' Statement of Undisputed Material Facts,
dated February 4, 2022........................................ A-287

Defendants' Response to Plaintiff's Statement of Undisputed Material
Facts, dated February 4, 2022 ................................ A-290

Defendants John Sotomayor and Alexandria Loaiza's Notice of
Cross-Motion for Summary Judgment, dated February 4, 2022 .... A-295

PAGE

Declaration of Steven Amshen in Support of Defendants John Sotomayor and Alexandria Loaiza's Cross-Motion for Summary Judgment, dated February 4, 2022 .................... A-297

Exhibit A to Amshen Declaration—
Complaint, dated August 24, 2021, with exhibits
(Reproduced herein at pages A-16 to A-102)

Exhibit B to Amshen Declaration—
Defendants John Sotomayor and Alexandria Loaiza's Verified Answer with Counterclaims, dated September 3, 2021
(Reproduced herein at pages A-107 to A-116)

Exhibit C to Amshen Declaration—
Plaintiff's Verified Reply to Counterclaims, dated October 4, 2021........................................ A-299

Exhibit D to Amshen Declaration—
Summons and Verified Complaint, dated December 20, 2013 and Voluntary Discontinuance of Action, dated March 2, 2018
(Reproduced herein at pages A-125 to A-185)

Exhibit E to Amshen Declaration—
Complaint, dated May 16, 2019; Order, dated April 15, 2021; and Judgment, dated April 16, 2021................................ A-304

Exhibit F to Amshen Declaration—
Summons, dated August 26, 2021.............................. A-313

Exhibit G to Amshen Declaration—
RPAPL 1304 Notices
(Reproduced herein at pages 77 to A-87)

Exhibit H to Amshen Declaration—
2021 NY CLS RPAPL § 1304 ................................. A-316

Affidavit of Alexandra Loaiza in Support of Defendants John Sotomayor and Alexandria Loaiza's Cross-Motion for Summary Judgment, sworn to February 3, 2022 ................. A-322

PAGE


Affidavit of John Sotomayor in Support of Defendants John Sotomayor and Alexandria Loaiza's Cross-Motion for Summary Judgment, sworn to February 3, 2022 .................. A-324

Memorandum of Law in Support of Defendants John Sotomayor and Alexandria Loaiza's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, dated February 4, 2022............................................ A-326

Defendants' Statement of Undisputed Material Facts, dated February 4, 2022............................................ A-351

Defendants' Response to Plaintiff's Statement of Undisputed Material Facts, dated February 4, 2022 .................................... A-354

Declaration of Steven Amshen, dated March 15, 2022................. A-359

Exhibit A to Amshen Declaration— NYSCEF Case Details, in *Partners For Payment Relief De II LLC v. John Sotomayor et al.*, Index No. 70725/2013 ............. A-360

Declaration of Mojdeh Malekan in Further Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendants John Sotomayor and Alexandria Loaiza's Cross-Motion for Summary Judgment, dated March 7, 2022........................ A-362

Exhibit A to Malekan Declaration— Complaint, dated August 24, 2021, with exhibits (Reproduced herein at pages A-16 to A-102)

Exhibit B to Malekan Declaration— Notice of Pendency, dated August 25, 2021 (Reproduced herein at pages A-121 to A-124)

Exhibit C to Malekan Declaration— Affirmation of Sandy J. Stolar in Support of Cancellation of Notice of Pendency, dated March 2, 2018 ....................... A-365

Exhibit D to Malekan Declaration— Opposition to Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts .................................... A-368

PAGE

Exhibit E to Malekan Declaration—
Notice of Appearance, dated August 17, 2015 .................... A-371

Reply Memorandum of Law in Further in Support of Defendants John Sotomayor and Alexandria Loaiza's Cross-Motion for Summary Judgment, dated March 15, 2022 ............................... A-372

Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendants John Sotomayor and Alexandria Loaiza's Cross-Motion for Summary Judgment, dated March 7, 2022 ........................ A-386

Letter from Steven Amshen to the Honorable Cathy Seibel, dated February 14, 2023 ........................................ A-403

Letter from Mojdeh Malekan to the Honorable Cathy Seibel, dated February 14, 2023 ........................................ A-406

Letter from Mojdeh Malekan to the Honorable Cathy Seibel, dated February 15, 2023 ........................................ A-409

Annexed to Letter—
Opinion, dated February 14, 2023 .............................. A-411

Letter from Mojdeh Malekan to the Honorable Cathy Seibel, dated February 21, 2023 ........................................ A-423

Annexed to Letter—
Default Judgment
(Reproduced herein at page A-62)

Annexed to Letter—
Operating Agreement ........................................ A-425

Annexed to Letter—
Certificate of Naturalization of Yonel Devico ................... A-449

Annexed to Letter—
Defendant's Corporate and Business Entity Disclosure............ A-450

PAGE

Annexed to Letter—
Form 8-K Encore Capital Group Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-452

Opinion and Order of the Honorable Cathy Seibel Appealed From,
dated March 20, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-456

Defendants John Sotomayor and Alexandria Loaiza's Notice of
Appeal, dated April 10, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-477

APPEAL,ECF

# U.S. District Court
# Southern District of New York (White Plains)
# CIVIL DOCKET FOR CASE #: 7:21-cv-07161-CS

Windard Bora LLC v. Sotomayor et al
Assigned to: Judge Cathy Seibel
Cause: 15:294 Breach of Contract

Date Filed: 08/25/2021
Jury Demand: None
Nature of Suit: 220 Real Property: Foreclosure
Jurisdiction: Diversity

**Plaintiff**

**Windward Bora LLC** represented by

**Seth Daniel Weinberg**
The Margolin & Weinreb Law Group, LLP
165 Eileen Way
Ste 101
Syosset, NY 10123
516-921-3838
Fax: 516-921-3824
Email: seth@nyfclaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mojdeh Malekan**
Hasbani & Light, P.C.
450 Seventh Avenue, Suite 1408
New York, NY 10123
212-643-6677
Email: mmalekan@hasbanilight.com
*ATTORNEY TO BE NOTICED*

**Rafi Hasbani**
Hasbani & Light, P.C.
450 Seventh Avenue, Suite 1408
New York, NY 10123
212-643-6677
Email: hllawpc@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**John Sotomayor** represented by

**Steven Amshen**
Petroff Amshen LLP
1795 Coney Island Avenue, Ste 3
Brooklyn, NY 11230
718-336-4200
Fax: 718-336-4242
Email: samshen@lawpetroff.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alexandria Loaiza** represented by **Steven Amshen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**American Express Centurion Bank**

**Defendant**

**Midland Funding LLC**
*doing business as*
In New York as Midland Funding of Delaware, LLC

**Defendant**

**Capital One Bank (USA), N.A.**

**Defendant**

**John Doe**
*TERMINATED: 09/23/2021*

**Defendant**

**Jane Doe**
*TERMINATED: 09/23/2021*

**Counter Claimant**

**Alexandria Loaiza** represented by **Steven Amshen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**John Sotomayor** represented by **Steven Amshen**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Windward Bora LLC** represented by **Seth Daniel Weinberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rafi Hasbani**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/25/2021 | 1 | COMPLAINT against American Express Centurion Bank, Capital One Bank (USA), N.A., Jane Doe, John Doe, Alexandria Loaiza, Midland Funding LLC d/b/a in New York as |

| | | |
|---|---|---|
| | | Midland Funding of Delaware LLC, John Sotomayor. (Filing Fee $ 402.00, Receipt Number ANYSDC-24979146)Document filed by WINDWARD BORA, LLC. (Attachments: # 1 Ex A - Schedule A, # 2 Ex B - Note, # 3 Ex C - Mortgage, # 4 Ex D - American Express Judgment, # 5 Ex E - Midland Funding Judgment, # 6 Ex F - Capital One Judgment, # 7 Ex G - Default Letter, # 8 Ex H - 1304 Notices With 1306 Compliance, # 9 Ex I - Covid 19 Declaration, # 10 Help For Homeowners Notice, # 11 RPAPL 1320 Notice).(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 3 | CIVIL COVER SHEET filed..(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 4 | REQUEST FOR ISSUANCE OF SUMMONS as to John Sotomayor, re: 1 Complaint,,. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to Alexandria Loaiza, re: 1 Complaint,,. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 6 | REQUEST FOR ISSUANCE OF SUMMONS as to American Express Centurion Bank, re: 1 Complaint,,. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to Midland Funding LLC, re: 1 Complaint,,. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 8 | REQUEST FOR ISSUANCE OF SUMMONS as to Capital One Bank (USA), N.A., re: 1 Complaint,,. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 9 | **FILING ERROR - DEFICIENT - SUMMONS REQUEST -** REQUEST FOR ISSUANCE OF SUMMONS as to John Doe, re: 1 Complaint,,. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) Modified on 8/26/2021 (vf). (Entered: 08/25/2021) |
| 08/25/2021 | 10 | **FILING ERROR - DEFICIENT- SUMMONS REQUEST -** REQUEST FOR ISSUANCE OF SUMMONS as to Jane Doe, re: 1 Complaint,,. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) Modified on 8/26/2021 (vf). (Entered: 08/25/2021) |
| 08/25/2021 | 11 | NOTICE of NOTICE OF PENDENCY re: 1 Complaint,,. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 12 | NOTICE of Certificate of Merit re: 1 Complaint,,. Document filed by WINDWARD BORA, LLC..(Hasbani, Rafi) (Entered: 08/25/2021) |
| 08/25/2021 | 13 | NOTICE OF APPEARANCE by Seth Daniel Weinberg on behalf of WINDWARD BORA, LLC..(Weinberg, Seth) (Entered: 08/25/2021) |
| 08/26/2021 | | *****NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Rafi Hasbani . The party information for the following party/parties has been modified: WINDWARD BORA, LLC. The information for the party/parties has been modified for the following reason/reasons: party name was entered in all caps. (vf) (Entered: 08/26/2021)** |
| 08/26/2021 | | *****NOTICE TO ATTORNEY REGARDING CIVIL. CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Rafi Hasbani. The following case opening statistical information was erroneously selected/entered:** |

| | | |
|---|---|---|
| | | **County code Westchester. The following correction(s) have been made to your case entry: the County code has been modified to XX Out of State. (vf) (Entered: 08/26/2021)** |
| 08/26/2021 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Cathy Seibel. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(vf) (Entered: 08/26/2021) |
| 08/26/2021 | | Magistrate Judge Judith C. McCarthy is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (vf) (Entered: 08/26/2021) |
| 08/26/2021 | | Case Designated ECF. (vf) (Entered: 08/26/2021) |
| 08/26/2021 | 14 | ELECTRONIC SUMMONS ISSUED as to John Sotomayor. (vf) (Entered: 08/26/2021) |
| 08/26/2021 | 15 | ELECTRONIC SUMMONS ISSUED as to Alexandria Loaiza. (vf) (Entered: 08/26/2021) |
| 08/26/2021 | 16 | ELECTRONIC SUMMONS ISSUED as to American Express Centurion Bank. (vf) (Entered: 08/26/2021) |
| 08/26/2021 | 17 | ELECTRONIC SUMMONS ISSUED as to Midland Funding LLC. (vf) (Entered: 08/26/2021) |
| 08/26/2021 | 18 | ELECTRONIC SUMMONS ISSUED as to Capital One Bank (USA), N.A.. (vf) (Entered: 08/26/2021) |
| 08/26/2021 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Rafi Hasbani to RE-FILE Document No. 10 Request for Issuance of Summons, 9 Request for Issuance of Summons. The filing is deficient for the following reason(s): The Request for Issuance of Summons cannot be issued for the party requested because it does not identify the party subject to service. Pursuant to FRCP Rule 4(a)(1)(A) and FRCP Rule 4(a)(1)(B) : a summons must name the parties and be directed to the defendant. Once the party has been identified, the filing party may request a summons at that time. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (vf)** (Entered: 08/26/2021) |
| 09/07/2021 | 19 | ANSWER to 1 Complaint,,., COUNTERCLAIM against Windward Bora LLC. Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 09/07/2021) |
| 09/07/2021 | 20 | NOTICE OF INITIAL COURT CONFERENCE: Counsel for all parties herein shall appear in a conference for the purpose of case management and scheduling pursuant to Fed. R. Civ. P. 16 on October 14, 2021 at 4:15 p.m. (via telephone). Pursuant to Judge Seibel's Emergency Individual Rules and Practices in light of COVID-19, last revised on July 29, 2021, the parties are directed to attend by phone using the following information: Toll-Free Tele-conference number: (877) 336 1839 to call in and enter access code: 1047966#. The parties should call in from a landline phone (if possible), announce their last name(s) before addressing the Court at any time during the call, and mute their lines (pressing *6 on phone) when not speaking. Initial Conference set for 10/14/2021 at 04:15 |

| | | |
|---|---|---|
| | | PM before Judge Cathy Seibel. Telephone Conference set for 10/14/2021 at 04:15 PM before Judge Cathy Seibel..(kv) (Entered: 09/07/2021) |
| 09/13/2021 | 21 | SUMMONS RETURNED EXECUTED. John Sotomayor served on 9/8/2021, answer due 9/29/2021. Service was accepted by Alexandira Loaiza. Document filed by Windward Bora LLC..(Weinberg, Seth) (Entered: 09/13/2021) |
| 09/13/2021 | 22 | SUMMONS RETURNED EXECUTED. Alexandria Loaiza served on 9/8/2021, answer due 9/29/2021. Service was accepted by Alexandria Loaiza. Document filed by Windward Bora LLC..(Weinberg, Seth) (Entered: 09/13/2021) |
| 09/13/2021 | 23 | SUMMONS RETURNED EXECUTED. American Express Centurion Bank served on 9/7/2021, answer due 9/28/2021. Document filed by Windward Bora LLC..(Weinberg, Seth) (Entered: 09/13/2021) |
| 09/13/2021 | 24 | SUMMONS RETURNED EXECUTED. Midland Funding LLC served on 9/7/2021, answer due 9/28/2021. Document filed by Windward Bora LLC..(Weinberg, Seth) (Entered: 09/13/2021) |
| 09/17/2021 | 25 | NOTICE of MORTGAGORS DECLARATION OF COVID-19-RELATED HARDSHIP. Document filed by John Sotomayor..(Amshen, Steven) (Entered: 09/17/2021) |
| 09/17/2021 | 26 | SUMMONS RETURNED EXECUTED. Capital One Bank (USA), N.A. served on 8/26/2021, answer due 9/16/2021. Document filed by Windward Bora LLC..(Weinberg, Seth) (Entered: 09/17/2021) |
| 09/20/2021 | 27 | LETTER MOTION for Conference re: 25 Notice (Other) *Hearing Concerning Alleged Hardship Asserted by Defendant John Sotomayor* addressed to Judge Cathy Seibel from Seth D. Weinberg, Esq. dated September 20, 2021. Document filed by Windward Bora LLC. (Attachments: # 1 Ex A - Covid Act, # 2 Ex B - Revised Covid Act, # 3 Ex C - Hardship Declaration).(Weinberg, Seth) (Entered: 09/20/2021) |
| 09/20/2021 | 28 | ORDER granting 27 Letter Motion for Conference re: 27 : The proposed hearing will be discussed at the already scheduled 10/14/21 conference. Plaintiff shall state his position, by letter of no more than 3 pages, by 10/7/21. (HEREBY ORDERED by Judge Cathy Seibel) (Text Only Order) (Seibel, Cathy) (Entered: 09/20/2021) |
| 09/23/2021 | 29 | NOTICE OF VOLUNTARY DISMISSAL pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, against the defendant(s) Jane Doe, John Doe. Document filed by Windward Bora LLC. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).**..(Weinberg, Seth) (Entered: 09/23/2021) |
| 09/23/2021 | | *****NOTICE TO COURT REGARDING NOTICE OF VOLUNTARY DISMISSAL Document No. 29 Notice of Voluntary Dismissal, was reviewed and referred to Judge Cathy Seibel for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal and it did not dismiss all of the parties or the action in its entirety. (dt)** (Entered: 09/23/2021) |
| 09/23/2021 | 30 | PARTIAL NOTICE OF DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(i): Pursuant to F.R.C.P. 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff Windward Bora, LLC and/or their counsel, hereby give notice that the above captioned action is voluntarily dismissed as to the defendants "John Doe" and "Jane Doe." SO ORDERED. Jane Doe and John Doe terminated. (Signed by Judge Cathy Seibel on 9/23/2021) (kv) (Entered: 09/23/2021) |
| 09/24/2021 | 31 | AFFIDAVIT OF SERVICE of Notice of Initial Court Conference served on All Defendants on 9/9/2021. Service was made by MAIL. Document filed by Windward Bora LLC.. |

| | | |
|---|---|---|
| | | (Weinberg, Seth) (Entered: 09/24/2021) |
| 10/04/2021 | 32 | LETTER RESPONSE to Motion addressed to Judge Cathy Seibel from John Sotomayor dated October 4, 2021 re: 27 LETTER MOTION for Conference re: 25 Notice (Other) *Hearing Concerning Alleged Hardship Asserted by Defendant John Sotomayor* addressed to Judge Cathy Seibel from Seth D. Weinberg, Esq. dated September 20, 2021. . Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 10/04/2021) |
| 10/04/2021 | 33 | ANSWER to 19 Counterclaim. Document filed by Windward Bora LLC..(Weinberg, Seth) (Entered: 10/04/2021) |
| 10/05/2021 | 34 | LETTER addressed to Judge Cathy Seibel from Seth D. Weinberg dated October 5, 2021 re: Plaintiffs Position Concerning Alleged Hardship. Document filed by Windward Bora LLC. (Attachments: # 1 Ex A - Amended Covid Act, # 2 Ex B - State Foreclosure Docket, # 3 Ex C - State Order Concerning Hardship).(Weinberg, Seth) (Entered: 10/05/2021) |
| 10/11/2021 | 35 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora LLC. (Attachments: # 1 Affirmation In Support of Certificate of Default, # 2 Ex A - Affidavit of Service, # 3 Proposed Certificate).(Weinberg, Seth) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 10/12/2021 (km). (Entered: 10/11/2021) |
| 10/11/2021 | 36 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora LLC. (Attachments: # 1 Affirmation In Support of Certificate of Default, # 2 Ex A - Affidavit of Service, # 3 Proposed Certificate).(Weinberg, Seth) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 10/12/2021 (km). (Entered: 10/11/2021) |
| 10/11/2021 | 37 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora LLC. (Attachments: # 1 Affirmation in Support, # 2 Ex A - Affidavit of Service, # 3 Proposed Certificate).(Weinberg, Seth) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 10/12/2021 (km). (Entered: 10/11/2021) |
| 10/12/2021 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED CLERK'S CERTIFICATE OF DEFAULT: Notice to Attorney Seth Weinberg. RE-FILE Document No. 35 Proposed Clerk's Certificate of Default 36 Proposed Clerk's Certificate of Default 37 Proposed Clerk's Certificate of Default. The filing is deficient for the following reason(s): The clerk's certificates are not as to form. Please use the sample clerk's certificate that is on our website under forms. The documents are not filed correctly, please refer to ECF Rule 16.1. (km)** (Entered: 10/12/2021) |
| 10/13/2021 | 38 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora LLC. (Attachments: # 1 Proposed Clerk's Certificate Judgment, # 2 Affirmation In Support, # 3 Ex A - Affidavit of Service).(Weinberg, Seth) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 10/13/2021 (km). (Entered: 10/13/2021) |
| 10/13/2021 | 39 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora LLC. (Attachments: # 1 Proposed Clerk's Certificate Clerk's Certificate Judgment, # 2 Affirmation In Support, # 3 Ex A - Affidavit of Service).(Weinberg, Seth) **Proposed document to be reviewed and** |

| | | |
|---|---|---|
| | | **processed by Clerk's Office staff (No action required by chambers).** Modified on 10/13/2021 (km). (Entered: 10/13/2021) |
| 10/13/2021 | 40 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora LLC. (Attachments: # 1 Proposed Clerk's Certificate, # 2 Affirmation in Support, # 3 Ex A - Affidavit of Service). (Weinberg, Seth) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 10/13/2021 (km). (Entered: 10/13/2021) |
| 10/13/2021 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED CLERK'S CERTIFICATE OF DEFAULT: Notice to Attorney Seth Weinberg. RE-FILE Document No. 40 Proposed Clerk's Certificate of Default 38 Proposed Clerk's Certificate of Default 39 Proposed Clerk's Certificate of Default. The filing is deficient for the following reason(s): the proposed clerk's certificate of default does not list the name of the person who accepted service of the summons and complaint. The documents are not filed properly. Please refer to ECF Rule 16.1. (km)** (Entered: 10/13/2021) |
| 10/14/2021 | | Minute Entry for proceedings held before Judge Cathy Seibel: Initial Conference held on 10/14/2021. Plaintiff's counsel Seth Weinberg, Esq. appears telephonically. Defendants' counsel Steven Amshen, Esq. appears telephonically. Law Clerk Jennifer Butwin appears telephonically. The Court deems Plaintiff's September 20, 2021 as a Motion. By November 8, 2021, the parties are directed to request documents from each other to bring. By November 15, 2021, the parties are directed to exchange exhibits and also send hard copies of the exhibits to chambers. The Court will hold an evidentiary hearing on November 22, 2021 at 9:30 a.m. at Courtroom TBD. See transcript. (Evidentiary Hearing set for 11/22/2021 at 09:30 AM before Judge Cathy Seibel). (Court Reporter Tabitha Dente) (wc) (Entered: 10/15/2021) |
| 10/27/2021 | 41 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora LLC..(Weinberg, Seth) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 10/27/2021 (km). (Entered: 10/27/2021) |
| 10/27/2021 | 42 | DECLARATION of Seth D. Weinberg re: 41 Proposed Clerk's Certificate of Default *concerning American Express Centurion Bank*. Document filed by Windward Bora LLC. (Attachments: # 1 Ex A - Affidavit of Service).(Weinberg, Seth) (Entered: 10/27/2021) |
| 10/27/2021 | 43 | CLERK'S CERTIFICATE OF DEFAULT as to AMERICAN EXPRESS CENTURION BANK.(km) (Entered: 10/27/2021) |
| 10/27/2021 | 44 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora LLC..(Weinberg, Seth) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 10/27/2021 (km). (Entered: 10/27/2021) |
| 10/27/2021 | 45 | DECLARATION of Seth D. Weinberg re: 44 Proposed Clerk's Certificate of Default *MIDLAND FUNDING LLC D/B/A IN NEW YORK AS MIDLAND FUNDING OF DELAWARE*. Document filed by Windward Bora LLC. (Attachments: # 1 Ex A - Affidavit of Service).(Weinberg, Seth) (Entered: 10/27/2021) |
| 10/27/2021 | 46 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora LLC..(Weinberg, Seth) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 10/27/2021 (km). (Entered: 10/27/2021) |

| | | |
|---|---|---|
| 10/27/2021 | 47 | CLERK'S CERTIFICATE OF DEFAULT as to Midland Funding LLC doing business as In New York as Midland Funding of Delaware, LLC.(km) (Entered: 10/27/2021) |
| 10/27/2021 | 48 | DECLARATION of Seth D. Weinberg re: 46 Proposed Clerk's Certificate of Default, *CAPITAL ONE BANK (USA), N.A.*. Document filed by Windward Bora LLC. (Attachments: # 1 Ex A - Affidavit of Service).(Weinberg, Seth) (Entered: 10/27/2021) |
| 10/27/2021 | 49 | CLERK'S CERTIFICATE OF DEFAULT as to CAPITAL ONE BANK (USA), N.A.(km) (Entered: 10/27/2021) |
| 11/11/2021 | 50 | LETTER addressed to Judge Cathy Seibel from Alexandria Loaiza and John Sotomayor dated November 11, 2021 re: November 22, 2021 evidentiary hearing. Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 11/11/2021) |
| 11/11/2021 | 51 | MEMO ENDORSEMENT on re: 50 Letter filed by Alexandria Loaiza, John Sotomayor. ENDORSEMENT: Instead of the hearing, on 11/22/21 we will discuss scheduling of discovery (if necessary) and motions. SO ORDERED. (Signed by Judge Cathy Seibel on 11/11/2021) (mml) (Entered: 11/12/2021) |
| 11/22/2021 | | Minute Entry for proceedings held before Judge Cathy Seibel: Status Conference held on 11/22/2021. Plaintiff's counsel Rafi Hasbani, Esq. appears telephonically. Defendants' counsel Steven Amshen, Esq. appears telephonically. Law Clerk Jennifer Butwin appears telephonically. Plaintiff's Motion for Summary Judgment to be submitted by January 7, 2022; Defendants' opposition and cross-motion due February 7, 2022; Plaintiff's reply and opposition to Defendants' cross-motion due February 28, 2022; Defendants' reply to cross-motion due March 14, 2022. See transcript. (Court Reporter Tabitha Dente) (wc) (Entered: 11/23/2021) |
| 02/28/2022 | 52 | LETTER MOTION for Extension of Time to File Response/Reply *and Opposition to Cross-Motion* addressed to Judge Cathy Seibel from Rafi Hasbani dated 02/28/2022. Document filed by Windward Bora LLC..(Hasbani, Rafi) (Entered: 02/28/2022) |
| 02/28/2022 | 53 | ORDER granting 52 Letter Motion for Extension of Time to File Response/Reply: Plaintiffs Reply and Opposition to Defendants Cross-Motion, to be served by March 7, 2022. Defendants Reply to Cross-Motion to be served, and all papers to be filed, on March 21, 2022. Please remember to send hard copies to chambers. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 02/28/2022) |
| 03/01/2022 | 54 | NOTICE OF APPEARANCE by Mojdeh Malekan on behalf of Windward Bora LLC.. (Malekan, Mojdeh) (Entered: 03/01/2022) |
| 07/07/2022 | 55 | ORDER: By no later than July 11, 2022, the parties shall provide to the Court a written explanation of why neither party has filed its summary judgment papers on the docket. (HEREBY ORDERED by Judge Cathy Seibel) (Text Only Order) (JR) (Entered: 07/07/2022) |
| 07/07/2022 | 56 | LETTER addressed to Judge Cathy Seibel from Steven Amshen dated July 7, 2022 re: July 7, 2022 Text Order (ECF No. 55). Document filed by Alexandria Loaiza, John Sotomayor.. (Amshen, Steven) (Entered: 07/07/2022) |
| 07/07/2022 | 57 | LETTER addressed to Judge Cathy Seibel from Mojdeh Malekan dated 7/7/2022 re: July 7, 2022 Text Order (ECF No. 55). Document filed by Windward Bora LLC..(Malekan, Mojdeh) (Entered: 07/07/2022) |
| 07/08/2022 | 58 | ORDER re: 56 Letter filed by Alexandria Loaiza, John Sotomayor, 57 Letter filed by Windward Bora LLC : Counsel for Plaintiff shall promptly file all motion papers on the ECF system. (HEREBY ORDERED by Judge Cathy Seibel) (Text Only Order) (Seibel, Cathy) (Entered: 07/08/2022) |

| | | |
|---|---|---|
| 07/08/2022 | 59 | MOTION for Summary Judgment . Document filed by Windward Bora LLC. (Attachments: # 1 Exhibit Ex A - Full Filed Complaint with Exhibits, # 2 Exhibit Ex B - AOS, # 3 Exhibit Ex C - Sotomayor Answer with CC, # 4 Exhibit Ex D - Certificates of Default, # 5 Exhibit Ex E - Dismissal Against Does, # 6 Exhibit Ex F - Notice of Pendency, # 7 Exhibit Ex G - 2013 S&C, # 8 Exhibit Ex H - Voluntary Discontinuance of 2013 Action, # 9 Exhibit Ex I - Order Dismissing 2019 Case, # 10 Exhibit Ex J - 2019 Docket, # 11 Exhibit Ex K - Judge Seibel Decision Transcript, # 12 Exhibit Ex L - 1306 Proof of Filing, # 13 Exhibit Ex M - Proposed JFS).(Malekan, Mojdeh) (Entered: 07/08/2022) |
| 07/08/2022 | 60 | AFFIDAVIT of Yonel Devico in Support re: 59 MOTION for Summary Judgment .. Document filed by Windward Bora LLC. (Attachments: # 1 Exhibit Ex A - Note, # 2 Exhibit Ex B - Mortgage, # 3 Exhibit Ex C - Payment History, # 4 Exhibit Ex D - Payoff).(Malekan, Mojdeh) (Entered: 07/08/2022) |
| 07/08/2022 | 61 | DECLARATION of Mojdeh Malekan in Support re: 59 MOTION for Summary Judgment .. Document filed by Windward Bora LLC..(Malekan, Mojdeh) (Entered: 07/08/2022) |
| 07/08/2022 | 62 | MEMORANDUM OF LAW in Support re: 59 MOTION for Summary Judgment . . Document filed by Windward Bora LLC..(Malekan, Mojdeh) (Entered: 07/08/2022) |
| 07/08/2022 | 63 | RULE 56.1 STATEMENT. Document filed by Windward Bora LLC..(Malekan, Mojdeh) (Entered: 07/08/2022) |
| 07/08/2022 | 64 | **FILING ERROR - WRONG FILER SELECTED -** FIRST MOTION for Summary Judgment *By Defendants and opposition to Plaintiff's MSJ*. Document filed by Windward Bora LLC. Responses due by 7/11/2022 Return Date set for 7/11/2022 at 10:00 AM. (Attachments: # 1 Affidavit Alexandre Loiza, # 2 Affidavit John Sotomayor, # 3 Affidavit Attorney declaration, # 4 Exhibit Complaint, # 5 Exhibit Answer, # 6 Exhibit Plaintiff's reply, # 7 Exhibit 2013 Action, # 8 Exhibit Order, # 9 Exhibit Summons, # 10 Exhibit 1304 notices, # 11 Exhibit 2021 version of 1304, # 12 Exhibit Memo of Law).(Hasbani, Rafi) Modified on 7/12/2022 (kj). (Entered: 07/08/2022) |
| 07/08/2022 | 65 | RULE 56.1 STATEMENT. Document filed by Windward Bora LLC. (Attachments: # 1 Supplement Rule 56.1 Counter statement).(Hasbani, Rafi) (Entered: 07/08/2022) |
| 07/08/2022 | 66 | **FILING ERROR - DEFICIENT DOCKET ENTRY - SIGNATURE ERROR -** FIRST REPLY MEMORANDUM OF LAW in Opposition re: 59 MOTION for Summary Judgment ., 64 FIRST MOTION for Summary Judgment *By Defendants and opposition to Plaintiff's MSJ*. . Document filed by Windward Bora LLC. (Attachments: # 1 Affidavit Attorney declaration, # 2 Exhibit Complaint, # 3 Exhibit LP, # 4 Exhibit Affirmation in support of cancelling LP, # 5 Exhibit 2019 Admissions, # 6 Exhibit 2013 NOA).(Hasbani, Rafi) Modified on 7/12/2022 (kj). (Entered: 07/08/2022) |
| 07/08/2022 | 67 | **FILING ERROR - WRONG FILER SELECTED -** FIRST REPLY MEMORANDUM OF LAW in Support re: 59 MOTION for Summary Judgment ., 64 FIRST MOTION for Summary Judgment *By Defendants and opposition to Plaintiff's MSJ*. . Document filed by Windward Bora LLC. (Attachments: # 1 Affidavit Attorney declaration, # 2 Exhibit Exhibit A).(Hasbani, Rafi) Modified on 7/12/2022 (kj). (Entered: 07/08/2022) |
| 07/08/2022 | | *****NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Rafi Hasbani to RE-FILE Document 64 FIRST MOTION for Summary Judgment *By Defendants and opposition to Plaintiff's MSJ*.. ERROR(S): The wrong filers were selected. The signature does not match the filer. ***REMINDER*** First file the Motion. Then file your Supporting Documents. Supporting Documents are filed separately, each receiving their own document #. (Supporting Documents are found under the Event Type - Replies, Opposition and** |

| | | |
|---|---|---|
| | | **Supporting Documents. Affidavit, Declaration and Memorandum of Law are found under the event list. (kj)** (Entered: 07/12/2022) |
| 07/08/2022 | | *****NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Rafi Hasbani to RE-FILE Document 66 Reply Memorandum of Law in Oppisition to Motion,,. ERROR(S): Incomplete Document (i.e., No signature or s/). ***REMINDER*** Supporting Documents are filed separately, each receiving their own document #. (Supporting Documents are found under the Event Type - Replies, Opposition and Supporting Documents. Memorandum of Law and Declaration are found under the event list. (kj)** (Entered: 07/12/2022) |
| 07/08/2022 | | *****NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Rafi Hasbani to RE-FILE Document 67 Reply Memorandum of Law in Support of Motion,. ERROR(S): The wrong filer was selected. The signature does not match the filer. ***REMINDER*** Supporting Documents are filed separately, each receiving their own document #. (Supporting Documents are found under the Event Type - Replies, Opposition and Supporting Documents. Memorandum of Law and Declaration are found under the event list. (kj)** (Entered: 07/12/2022) |
| 07/13/2022 | 68 | CROSS MOTION for Summary Judgment . Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 07/13/2022) |
| 07/13/2022 | 69 | DECLARATION of Steven Amshen in Support re: 68 CROSS MOTION for Summary Judgment .. Document filed by Alexandria Loaiza, John Sotomayor. (Attachments: # 1 Exhibit A - Complaint, # 2 Exhibit B - Defendants' Answer with Counterclaims, # 3 Exhibit C - Plaintiff's Reply, # 4 Exhibit D - 2013 Action (First Action), # 5 Exhibit E - Complaint, Order, and April 15, 2021 Judgment in 2019 Action, # 6 Exhibit F - Summonses, # 7 Exhibit G - RPAPL 1304 notices, # 8 Exhibit H - 2021 version of RPAPL 1304).(Amshen, Steven) (Entered: 07/13/2022) |
| 07/13/2022 | 70 | AFFIDAVIT of Alexandra Loaiza in Support re: 68 CROSS MOTION for Summary Judgment .. Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 07/13/2022) |
| 07/13/2022 | 71 | AFFIDAVIT of John Sotomayor in Support re: 68 CROSS MOTION for Summary Judgment .. Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 07/13/2022) |
| 07/13/2022 | 72 | MEMORANDUM OF LAW in Support re: 68 CROSS MOTION for Summary Judgment . . Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 07/13/2022) |
| 07/13/2022 | 73 | RESPONSE in Support of Motion re: 68 CROSS MOTION for Summary Judgment . *Rule 56.1 Statement*. Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 07/13/2022) |
| 07/13/2022 | 74 | RESPONSE in Opposition to Motion re: 59 MOTION for Summary Judgment . *Rule 56.1 Counter-Statement*. Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 07/13/2022) |
| 07/13/2022 | 75 | REPLY AFFIRMATION of Steven Amshen in Support re: 68 CROSS MOTION for Summary Judgment .. Document filed by Alexandria Loaiza, John Sotomayor. (Attachments: # 1 Exhibit A - NYSCEF case details for 70725/2013).(Amshen, Steven) (Entered: 07/13/2022) |

| | | |
|---|---|---|
| 07/13/2022 | 76 | REPLY MEMORANDUM OF LAW in Support re: 68 CROSS MOTION for Summary Judgment . . Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 07/13/2022) |
| 07/13/2022 | 77 | DECLARATION of Mojdeh Malekan in Opposition re: 68 CROSS MOTION for Summary Judgment .. Document filed by Windward Bora LLC. (Attachments: # 1 Exhibit A - Complaint, # 2 Exhibit B - LP, # 3 Exhibit C - Affirmation in support of canceling LP in 2013 case, # 4 Exhibit D - Sotomayor 2019 opp and admission, # 5 Exhibit E - 2013 Sotomayor Notice of Appearance).(Malekan, Mojdeh) (Entered: 07/13/2022) |
| 07/13/2022 | 78 | FIRST REPLY MEMORANDUM OF LAW in Opposition re: 68 CROSS MOTION for Summary Judgment . . Document filed by Windward Bora LLC..(Malekan, Mojdeh) (Entered: 07/13/2022) |
| 02/07/2023 | 79 | LETTER addressed to Judge Cathy Seibel from Steven Amshen dated February 7, 2023 re: Foreclosure Abuse Prevention Act. Document filed by Alexandria Loaiza, John Sotomayor. (Attachments: # 1 Exhibit Foreclosure Abuse Prevention Act).(Amshen, Steven) (Entered: 02/07/2023) |
| 02/07/2023 | 80 | MEMO ENDORSEMENT on re: 79 Letter, filed by Alexandria Loaiza, John Sotomayor. ENDORSEMENT: Each side may, no later than 2/14/23, submit a letter-brief of no more than 4 single-spaced pages addressing the effect of the new statute. SO ORDERED. (Signed by Judge Cathy Seibel on 2/7/2023) (mml) (Entered: 02/07/2023) |
| 02/14/2023 | 81 | RESPONSE re: 80 Memo Endorsement, *Foreclosure Abuse Prevention Act*. Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 02/14/2023) |
| 02/14/2023 | 82 | AMENDED RESPONSE re: 81 Response, 80 Memo Endorsement, . Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 02/14/2023) |
| 02/14/2023 | 83 | FIRST LETTER addressed to Judge Cathy Seibel from Mojdeh Malekan dated 2/14/2023 re: Court's so-ordered memo endorsement dated 2/7/2023. Document filed by Windward Bora LLC..(Malekan, Mojdeh) (Entered: 02/14/2023) |
| 02/15/2023 | 84 | LETTER addressed to Judge Cathy Seibel from Mojdeh Malekan dated 2/15/2023 re: Bank of America. N.A. v. Kessler. Document filed by Windward Bora LLC. (Attachments: # 1 Exhibit BOA v. Kessler Decision).(Malekan, Mojdeh) (Entered: 02/15/2023) |
| 02/16/2023 | 85 | ORDER: Accordingly, by 5:00 p.m. on February 21, 2023, Plaintiff shall file a letter via ECF explaining the basis for its assertion that diversity of citizenship exists and providing factual support for that assertion. SO ORDERED. (Signed by Judge Cathy Seibel on 2/16/2023) (vfr) (Entered: 02/16/2023) |
| 02/21/2023 | 86 | LETTER addressed to Judge Cathy Seibel from Mojdeh Malekan dated 2/21/2023 re: Order dated 2/16/2023 regarding Plaintiff's basis for its assertion that diversity of citizenship exists in relation Midland Funding LLC. Document filed by Windward Bora LLC. (Attachments: # 1 Exhibit A - Judgment, # 2 Exhibit B - Operating Agreement, # 3 Exhibit C - Certificate of Naturalization, # 4 Exhibit D - Midland Disclosure Statement, # 5 Exhibit E - Encore Form 8-K).(Malekan, Mojdeh) (Entered: 02/21/2023) |
| 03/20/2023 | 87 | OPINION AND ORDER re: 68 CROSS MOTION for Summary Judgment . filed by Alexandria Loaiza, John Sotomayor, 59 MOTION for Summary Judgment . filed by Windward Bora LLC. For the foregoing reasons, Plaintiff's motion is GRANTED in part and DENIED in part. Summary judgment is GRANTED for Plaintiff against Defendants Sotomayor and Loaiza. The cross-motion for summary judgment of Defendants Sotomayor and Loaiza is DENIED. Plaintiff's motion for a default judgment against American Express Centurion Bank, Midland Funding LLC, and Capital One Bank (USA), N.A. is DENIED WITHOUT PREJUDICE. The Clerk of Court is respectfully directed to terminate the |

| | | |
|---|---|---|
| | | pending motions. (ECF Nos. 59, 68.) SO ORDERED. (Signed by Judge Cathy Seibel on 3/20/2023) (tg) (Entered: 03/20/2023) |
| 04/10/2023 | 88 | NOTICE OF INTERLOCUTORY APPEAL from 87 Memorandum & Opinion,,,. Document filed by Alexandria Loaiza, John Sotomayor. Filing fee $ 505.00, receipt number ANYSDC-27584559. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Tierney, James) (Entered: 04/10/2023) |
| 04/10/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 88 Notice of Interlocutory Appeal,..(nd) (Entered: 04/10/2023) |
| 04/10/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 88 Notice of Interlocutory Appeal, filed by Alexandria Loaiza, John Sotomayor were transmitted to the U.S. Court of Appeals..(nd) (Entered: 04/10/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/18/2023 16:09:48 | | | |
| **PACER Login:** | tierneyj | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 7:21-cv-07161-CS |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WINDWARD BORA, LLC.,

Plaintiff,

-against-

JOHN SOTOMAYOR, ALEXANDRIA LOAIZA; AMERICAN EXPRESS CENTURION BANK, MIDLAND FUNDING LLC D/B/A/ IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC; CAPITAL ONE BANK (USA), N.A.,

Defendants.

Case No: 7:21-CV-07161

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that upon the Declaration of Mojdeh Malekan, Esq., dated January 7, 2022, with Exhibits annexed thereto, the Affidavit of Yonel Devico sworn to on January 3, 2022 with Exhibits annexed thereto, the Statement of Material Facts pursuant to Local Civil Rule 56.1, the Affidavit of Stay-Ann Franklin dated June 24, 2021 with Exhibits annexed thereto, the Memorandum of Law in Support of Mojdeh Malekan, Esq., dated January 7, 2022, the Summons, Complaint, Notice of Pendency; and upon all the papers filed and proceedings that are part of the record, the undersigned submits this motion, before this Court, the Honorable Judge Cathy Seibel presiding at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse located at 300 Quarropas Street, White Plains, New York 10601 for an order:

(a) Granting judgment as matter of law in favor of Windward Bora, LLC against Defendants John Sotomayor and Alexandria Loaiza pursuant to Federal Rule of Civil Procedure (“Fed. R. Civ. P.”) Rule 56(a); and

(b) Granting a default judgment in favor of Plaintiff and against defendants American Express Centurion Bank, Midland Funding d/b/a in New York as Midland Funding of Delaware LLC, and Capital One Bank (USA), N.A., pursuant to Local Civil Rule 55.2.

(c) ascertaining and computing, or alternatively, appointing a Special Master or remands to a Magistrate Judge and directing said Special Master or Magistrate Judge to ascertain and compute the amounts due Plaintiff under the mortgage being foreclosure in this action, and to examine and report whether the mortgage property can be sold in one parcel pursuant to Fed. R. Civ. P. 53; and

(d) awarding damages to Plaintiff in the amount of: (i) the unpaid principal balance of $96,591.97; (ii) the interest and all other sums secured by the mortgage from August 1, 2015 through the entry of judgment at the contract rate of interest; (iii) advances and interest on the judgment at the judgment rate of interest from the entry of judgment through the dale of the foreclosure sale; and

(e) finding that the subject premises may be sold in one parcel; and

(f) granting Plaintiff judgment of foreclosure and sale in the form annexed hereto, including but not limited to appointing a special master, pursuant to Fed. R. Civ. P. 53, or alternatively remanding to a Magistrate Judge to conduct the foreclosure sale, designating the location of the sale and the newspaper within which notice of the sale is to be published, designating the depository for the funds received from the foreclosure sale and for an surplus moneys following distribution of the foreclosure sale proceeds, and adjudicating that the defendant John Sotomayor is liable for an deficiency that may exist following the foreclosure sale; and

(g) granting such other and further relief to Plaintiff as this Court may deem just and proper.

Dated: New York, New York
January 7, 2022

**HASBANI & LIGHT, P.C.**

_*/s/ Mojdeh Malekan*______
Mojdeh Malekan, Esq.
450 Seventh Avenue, Suite 1408
New York, New York 10123
(212) 643-6677
mmalekan@hasbanilight.com
*Counsel for Plaintiff, Windward Bora, LLC*

To:

Petroff Amshen LLP
Steven Amshen, Esq.
*Counsel for Defendants John Sotomayor*
*And Alexandria Loaiza*
1795 Coney Island Avenue, Suite 3
Brooklyn, New York 11230

**HASBANI & LIGHT, P.C.**
Rafi Hasbani, Esq.
450 Seventh Avenue, Suite 1408
New York, New York 10123
Tel: (212) 643-6677
Email: rhasbani@hasbanilight.com
*Counsel for Plaintiff Windward Bora, LLC.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

| | |
|---|---|
| WINDWARD BORA LLC,<br><br>Plaintiff,<br><br>-against -<br><br>JOHN SOTOMAYOR, ALEXANDRIA LOAIZA; AMERICAN EXPRESS CENTURION BANK; MIDLAND FUNDING LLC D/B/A IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC; CAPITAL ONE BANK (USA), N.A.; "JOHN DOE" and "JANE DOE";<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

-------------------------------------------------------------------X

Plaintiff, Windward Bora LLC ("Windward Bora" or "Plaintiff") by its attorneys Hasbani & Light, P.C., hereby alleges upon information and belief.

**<u>NATURE OF THE ACTION</u>**

1. This is an action brought pursuant to New York Real Property Actions and Proceedings Law, Section 1301 et seq., to foreclose on a mortgage encumbering the property commonly known as 2359 Maple Avenue, Cortlandt Manor, New York 10567 (Westchester County Tax Map as Section: 45.10 Block: 3 Lot: 5) in the County of Westchester, and State of New York (the "Property").

2. A copy of the Schedule "A" describing the Property in further detail is annexed hereto as **Exhibit A**.

**PARTIES**

3. Windward Bora, LLC. ("Windward Bora" of "Plaintiff") is a limited liability company organized under the laws of the State of Delaware. Windward Bora is a single member limited liability company whose sole member is lawfully admitted for permanent residence in the United States and is domiciled in the State of Florida. For the purpose of diversity, Windward Bora is a citizen of Florida.

4. John Sotomayor, upon information and belief, is a resident and citizen of the State of New York, having an address at 2359 Maple Avenue, Cortlandt Manor, New York 10567. John Sotomayor is a necessary party defendant to this action by virtue of the fact that he (i) was present at the time of the execution of the Note and Mortgage (as such terms are defined below); (ii) is the borrower of the loan; and (iii) is a Mortgagor under the Mortgage. Copies of the Note and Mortgage are annexed respectively hereto as **Exhibit B** and **Exhibit C**.

5. Alexandria Loaiza, upon information and belief, is a resident and citizen of the State of New York, having an address at 2359 Maple Avenue, Cortlandt Manor, New York 10567. Alexandria Loaiza is a necessary party defendant to this action by virtue of the fact that he (i) was present at the time of the execution of the Note and Mortgage (as such terms are defined below); and (ii) is a Mortgagor under the Mortgage. *See* **Exhibits B** and **C**

6. American Express Centurion Bank is a judgment creditor located at 4315 S. 2700 West, Salt Lake City, Utah 84184. For purposes of diversity jurisdiction, American Express Centurion Bank is a citizen of Utah. American Express Centurion Bank is a necessary party defendant in this action because it is a judgment creditor by virtue of the judgment docketed against the Borrower and/or Property which is subordinate to Plaintiff's Mortgage. A copy of this judgment is attached hereto as **Exhibit D**.

7. Midland Funding LLC d/b/a in New York as Midland Funding of Delaware LLC is a judgment creditor located at 8875 Aero Drive, Ste 200, San Diego, California 92123. For purposes of diversity jurisdiction, Midland Funding LLC is a citizen of California. Midland Funding LLC is a necessary party defendant in this action because it is a judgment creditor by virtue of the judgment docketed against the Borrower and/or Property which is subordinate to Plaintiff's Mortgage. A copy of this judgment is attached hereto as **Exhibit E**.

8. Capital One Bank (USA), N.A. is a judgment creditor located at 4851 Cox Road, Gen Allen, Virginia 23060. For purposes of diversity jurisdiction, Capital One Bank (USA), N.A. is a citizen of Virginia. Capital One Bank (USA), N.A. is a necessary party defendant in this action because it is a judgment creditor by virtue of the judgment docketed against the Borrower and/or Property which is subordinate to Plaintiff's Mortgage. A copy of this judgment is attached hereto as **Exhibit F**.

9. Defendants "JOHN DOE" and "JANE DOE" are additional parties being the tenants, occupants, persons, or corporation, if any, having or claiming an interest in or lien upon the Property. *See* NYRPAPL §§ 1311, 1312 and 1313.

10. Each of the above-named defendant(s) has or claimed to have or may claim to have some interest in or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to, and is subject and subordinate to, the lien of said Mortgage.

## <u>JURISDICTION AND VENUE</u>

11. This Action is between citizens of different states. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Therefore, jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

12. Venue is deemed proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to this action took place within the jurisdiction of this court and the Property is located in this district.

**<u>AS AND FOR A FIRST CAUSE OF ACTION</u>**

13. On or about January 19, 2007, as evidence of a loan in the amount of $104,375.00 (the "Loan"), John Sotomayor executed and delivered to Wells Fargo Bank, N.A. (the "Lender") a note dated January 19, 2007 (the "Note"). *See* **Exhibit B**. Pursuant to the terms of the Note, John Sotomayor promised to pay Lender, or the subsequent holder of the Note the principal sum of $104,375.00. *See* **Exhibit B**.

14. In order to collaterally secure the aforesaid Loan, John Sotomayor and Alexandria Loaiza, on the same day, duly executed, acknowledged and delivered a mortgage to the Lender (the "Mortgage"). *See* **Exhibit C**. The Mortgage encumbers the Property. *See* **Exhibit C**. Said mortgage was recorded in the Westchester County Clerk on February 22, 2007 as Control No.: 470370694.

15. The Note and Mortgage were subsequently assigned by physical transfer of the endorsed Note to Plaintiff. *See* **Exhibit B**.

16. Pursuant to the Mortgage, in any lawsuit for foreclosure, the Lender or its successors or assigns possesses the right to collect all costs and disbursements and additional allowances allowed by the applicable law and will have the right to add all reasonable attorneys' fees to the amount John Sotomayor and Alexandria Loaiza owes Lender or its successor-in-interest which fees shall become part of the sums secured. *See* **Exhibits B** and **C**.

17. John Sotomayor and Alexandria Loaiza of defaulted under the terms of the Note and Mortgage for the payment due on August 1, 2015 (the "Default"). *See* **Exhibits B** and **C**.

18. The Note was then transferred to Plaintiff. Windward, the current owner of the Note by virtue of its physical possession of the wet-ink Note. Therefore, Windward, is the holder and owner of both the Note and Mortgage on the date of the filing of this complaint. *See* **Exhibits B** and **C**.

19. On May 19, 2021, Windward Bora complied with the contractual provisions in the Note and Mortgage by mailing a 30-Day Notice (the "Default Notice") to John Sotomayor and Alexandra Loaiza advising of possible acceleration of the loan and continuing default under the Note and Mortgage together if not cured. Attached hereto as **Exhibit G** are copies of the Default Notice and proof of mailing.

20. On May 19, 2021, Windward Bora complied with the requirements of RPAPL § 1304 by mailing a 90 Day Notice (the "90 Day Notice") to John Sotomayor and Alexandra Loaiza advising of possible legal action if the default under the Note and Mortgage together was not cured. Attached hereto as **Exhibit H** are copies of the 90 Day Notices and proof of mailing.

21. Contemporaneously with the mailing of the 90 Day Notice, on May 19, 2021, Windward Bora complied with the requirements of New York State's COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 by mailing the Hardship Declaration and cover letter with submission instructions to John Sotomayor and Alexandra Loaiza. A copy of Plaintiff's Declaration of compliance with this statue, with exhibits, is annexed hereto as **Exhibit I**.

22. As of the date of this filing, John Sotomayor and Alexandria Loaiza failed to return an executed Hardship Declaration. *See id.*

23. Under the terms and conditions of the Note and Mortgage, the unpaid principal balance under the Note and Mortgage is $96,591.97. Plaintiff is also entitled to collect all unpaid interest and fees due under the Note and Mortgage.

24. During the pendency of this action, Plaintiff, in order to protect the lien of the Mortgage, may be compelled to pay sums due on prior mortgages, insurance premiums, tax assessments, water rates, sewer rates, and other expenses or charges affecting the Property described and Plaintiff prays that any such amounts so paid and so extended during the pendency of this action may be added to its claim and repaid from the proceeds of the sale of the Property together with interest thereon, from the date of making such expenditures, so that the same may be added to, and secured by, the Note and Mortgage.

25. The Note and Mortgage contain provisions entitling Plaintiff to recover attorneys' fees incurred in the prosecution of this action.

26. Plaintiff has complied with section 1306 of the Real Property Actions and Proceedings Law, and the Mortgage was originated in compliance with all provisions of section 595-a of the Banking Law and any rules or regulations promulgated there under, and, if applicable, sections 6-1 or 6-m of the Banking law.

27. Two prior actions were commenced for the foreclosure of said Mortgage, or to recover the amount due under the Note. Neither of these actions or proceedings is now pending. The first action entitled *Partners for Payment Relief DE II, LLC v. Sotomayor et al,* New York State Supreme Court of Westchester County Index No.: 70725/2013 was commenced on December 31, 2013 and voluntarily discontinued on March 2, 2018. The second action entitled *Windward Bora, LLC v. Sotomayor et al,* United States District Court for the Southern District of New York Case No.: 7:19-cv-04503-CS was commenced on May 16, 2019 and dismissed by the Order dated April 15, 2021 and entered April 16, 2021.

28. Each of the above-named defendant(s) has or claims to have some interest in or lien upon the Property or some part thereof, which interest or lien, if any, has accrued subsequent to, and is subject and subordinate to, the lien of the Mortgages.

**AS AND FOR A SECOND CAUSE OF ACTION**

29. Plaintiff repeats and realleges all of the above allegations in paragraphs 1 – 28 as if again set forth. By reason of the aforesaid provisions set forth in the Note and Mortgage, there is due and owing the plaintiff from defendants John Sotomayor and Alexandria Loaiza, reasonable attorneys' fees, plus costs and disbursements, for which demand is hereby made.

**WHEREFORE**, the Plaintiff demands judgment that the defendants herein and all persons claiming under them or any or either of them subsequent to the commencement of this action may be forever barred and foreclosed of all right, claim, lien and equity of redemption in the said Property; that the said premises may be decreed to be sold according to law in "as is" physical order and condition, subject to any covenants, easements, restrictions and reservations of record; any violations of record; any state of facts an accurate survey may show; any zoning regulations or amendments thereto; rights of tenants or persons in possession of the subject premises; any prior mortgage liens of record; any prior lien of record; and any advances or arrears hereunder; that this Court forthwith appoint a receiver of the rents and profits of said premises, during the pendency of this action with the usual powers and duties; that monies arising from the sale may be brought into court; that plaintiff may be paid the amount due on said note and mortgage with interest to the time of such payment, attorney's fees, as set forth in the mortgage, the costs of this action and the expenses of said sale so far as the amount of such monies properly applicable thereto will pay the same; and that defendant John Sotomayor may be adjudged to pay the whole residue, or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after

the sale of the Property and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property and Proceedings Law.

Dated: August 24, 2021
New York, New York

*/s/ Rafi Hasbani*
Rafi Hasbani, Esq.

# A

# NATIONWIDE COURT SERVICES, INC

**TITLE NO. FC21-HL005**

## SCHEDULE A

## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land situate, lying and being in the Town of Cortlandt, County of Westchester, and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Maple Avenue, North 59 degrees 33 minutes 30 seconds West 291.78 feet, North 51 degrees 21 minutes 20 seconds West 78.31 feet, and North 47 degrees 46 minutes 40 seconds West 39.11 feet from a point on the southerly side of Maple Avenue where the same is intersected by the westerly line of lands shown on map of "Dickerson Mountain Est.," filed in the Westchester County Clerk's Office, Division of Land Records, as Map No. 3763;

RUNNING THENCE from said point along lands now or formerly of Paul and Paulette Rosenzweig the following courses and distances: South 54 degrees 54 minutes 30 seconds West 41.59 feet; South 53 degrees 36 minutes 00 seconds West 48.70 feet, South 15 degrees 53 minutes 30 seconds West 36.78 feet, South 21 degrees 39 minutes, 20 seconds East 44.36 feet, South 06 degrees, 30 minutes 00 seconds West 51.08 feet, and South 08 degrees 35 minutes 40 seconds East 101.58 feet to a point;

THENCE continuing along lands of Rosenzweig North 66 degrees 56 minutes 00 seconds West 110.00 feet to a point on the easterly side of Furnace Dock Road;

RUNNING THENCE along the easterly side of Furnace Dock Road the following courses and distances: North 23 degrees 09 minutes 30 seconds East 22.49 feet, North 15 degrees 08 minutes 00 seconds East 38.27 feet, North 02 degrees 49 minutes 00 seconds West 18.53 feet, North 22 degrees 52 minutes, 40 seconds West 76.31 feet, North 23 degrees 11 minutes 30 seconds West 51.47 feet, North 21 degrees 51 minutes 30 seconds West 34.00 feet, North 7 degrees 50 minutes 10 seconds West 121.33 feet, North 49 degrees 01 minutes 30 seconds East 22.97 feet, and South 78 degrees 57 minutes, 00 seconds East 12.26 feet to a point on the southerly side of Maple Avenue;

THENCE running along the southerly side of Maple Avenue the following courses and distances; South 52 degrees 49 minutes 00 seconds East 19.87 feet, South 56 degrees 44 minutes 20 seconds East 100.17 feet, South 62 degrees 48 minutes 00 seconds East 62.34 feet, and South 54 degrees 35 minutes 50 seconds East 43.60 feet to the point or place of BEGINNING.

| | |
|---|---|
| FOR INFORMATION ONLY<br>Premises also known as: | 2359 Maple Avenue<br>Cortlandt Manor NY 10567 |
| Section:45.10 Block:3 Lot:5 | |
| County of: | Westchester |

# B

**Wells Fargo Bank, N.A.**

**NOTE DATE:**
**MATURITY DATE:**
**ACCOUNT#:**
**REFERENCE #:**
[redacted]

---

# FIXED RATE LOAN NOTE
**(Partially Amortizing Payments -- Balloon)**

---

**Borrower Name:**
**JOHN SOTOMAYOR**

**Property Address:**
**2359 MAPLE AVE, CORTLANDT MANOR, NEW YORK 10567**

**Mailing Address for billing purposes (if different):**
**N/A**

## SECTION 1: MY LOAN

In this Note, the words, "I," "me," "my," and "Borrower" (which also means "we," "us," "our," and "Borrowers," if more than one borrower signs below) refer to each person who signs this Note. The words "you," "your," "Lender," and "the Bank" refer to Wells Fargo Bank, N.A., and any successor or assign or subsequent holder of this Note. Each person who signs this Note is jointly and individually bound by its terms and will be directly liable to the Bank for the entire amount owed on this Note, and each is liable as the principal and not merely as a guarantor.

If I make the regularly scheduled payments on this Loan, I will still owe a large sum at maturity. This Loan is payable in full at maturity. I must repay the entire Principal balance of the Loan and unpaid interest then due. The Bank is under no obligation to refinance the Loan at that time. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be the lender I have this Loan with, willing to lend me the money. If I refinance this Loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain refinancing from the same lender.

## SECTION 2: SECURITY INTEREST

I am giving the Bank a deed of trust, mortgage or other security instrument including all modifications, addenda and amendments to them (the "Security Instrument") signed the same date as this Note. The Security Instrument gives you a security interest in the property located at the address shown above (the "Property").

## SECTION 3: MY PROMISE TO PAY

In return for a loan that I have received (the "Loan"), I promise to pay **$104,375.00** (this amount is called "Principal"), plus interest, to the order of the Bank. I understand that the Bank may transfer this Note. I will make all payments under this Note in U.S. Dollars.

**PAYMENTS**

I will pay monthly payments of Principal and interest on the 5TH day of each month beginning on 03-05-2007. My monthly payment will be in the amount of U.S. $881.64.

On 02-05-2022, I will pay a final balloon payment equal to the unpaid Principal plus all remaining interest, fees and other sums owed under this Note and the Security Instrument. I understand that the Bank is not under any obligation to refinance my final balloon payment.

I will make payments at the Bank's address indicated on my payment coupon or my billing statement, unless another payment method is authorized by the Bank. Each non-electronic payment I make will be accompanied by the remittance portion of my billing statement or payment coupon.

I understand that payments I make by mail to the address indicated on my billing statement or payment coupon will be credited to my Loan as of the date received (including Saturdays, Sundays, and holidays) if the Bank receives the payment prior to 5 p.m. local time for the payment address.

Payments I make from a qualified account ("Automatic Payments") pursuant to an Authorization for Automatic Transfer will be credited to my Loan on the date received (including Saturdays, Sundays, and holidays).

Payments I make at a Bank branch and received prior to established cut-off times will be credited to my Loan on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and Bank observed holidays. Payments made at a Bank branch received on a Saturday, Sunday, or Bank observed holiday or after established cut-off times will be credited as of the next business day.

Payments I make online, by ATM, by telephone, or by any other means the Bank may make available to me and received prior to established cut-off times will be credited to my Loan on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and federal holidays. Payments made online, by ATM, by telephone, or by any other means the Bank may make available to me received on a Saturday, Sunday, or federal holiday or after established cut-off times will be credited as of the next business day.

I will not make payment or authorize others to make payment for me by means of a single aggregated payment, which includes payments for this Loan and any other account(s), unless the payment is made in compliance with the Bank's requirements for multiple account payments.

The Bank may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement, without losing any of the Bank's rights under this Note. The Bank's acceptance of checks or money orders labeled "payment in full," or words to that effect, will not constitute an accord and satisfaction nor a waiver of any rights the Bank has to receive full payment. If I intend to condition a payment, pay the Loan in full with less than the total amount owed, or give payment instructions, I will clearly set out such intention, conditions and instructions in a separate letter accompanying my payment, and mail both to Wells Fargo Bank, N.A., P.O. Box 2993, Portland, OR 97208.

**PRINCIPAL PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Principal Reduction." When I make a Principal Reduction, I will tell the Bank in a letter that I am doing so. A Principal Reduction resulting in payoff prior to the maturity of this Note may result in the assessment of a prepayment fee or an origination fee (collection deferred).

## SECTION 4: INTEREST

I will pay interest at a simple annual interest rate of **9.500%**. Interest will be charged on the unpaid Principal until the full amount of Principal has been paid. The interest rate required by this Section 4 is the rate I will pay both before and after any default under this Note.

## SECTION 5: AUTOMATIC PAYMENT DISCOUNT

The Automatic Payment discount is not available for this Loan.

## SECTION 6: ORIGINATION FEE

N/A

## SECTION 7: CLOSING COSTS

In addition to the fees and charges set forth in this Note, I agree to pay the closing costs set forth in the HUD Settlement Statement (if any) at the settlement of my Loan.

## SECTION 8: FEES, COSTS AND CHARGES

I agree to pay the following non-refundable fees and charges.

**LATE CHARGES**
If my scheduled payment is more than ten (10) days past due, I will pay a late charge equal to the greater of five dollars ($5.00) or five percent (5%) of the scheduled payment.

**PREPAYMENT FEE**
I agree to pay a prepayment fee of $500.00. I agree to pay the prepayment fee if I prepay this Note in full at any time within the first three (3) years after the date of this Note. I do not have to pay the prepayment fee if I prepay my Loan in full because of default due to non-payment, casualty loss, or if I refinance my Loan with you or your affiliate.

## SECTION 9: OTHER CHARGES

To the extent allowed by law, I agree to pay the following fees if I request or authorize these additional services:

(a) **Fax Fee**: I agree to pay a fax fee in the amount of ten dollars ($10.00) if I request or authorize others to request the Bank to transmit any document or letter by facsimile (fax) machine.
(b) **Research/Photocopy Fee**: I agree to pay a research/photocopy fee in the amount of five dollars ($5.00) per photocopy if I request or authorize others to request the Bank to provide photocopies of Loan documents.
(c) **Reconveyance or Satisfaction Fee**: I agree to pay reconveyance and satisfaction fees as allowed by applicable law when the Bank reconveys/discharges/releases the Security Instrument.
(d) **Return Check Fee**: I agree to pay a return check fee of twenty-five dollars ($25.00) if I make a payment with a check that is dishonored for any reason.

I also agree to pay any other reasonable fees the Bank may charge.

## SECTION 10: COLLECTION COSTS AND ATTORNEY'S FEES

If I am in default, I agree to pay the Bank's collection costs, attorneys' fees and other expenses of enforcing the Bank's rights under this Note and the Security Instrument unless prohibited by applicable law.

## SECTION 11: TAX DEDUCTIBILITY

I understand that I should consult a tax advisor regarding the deductibility of interest and charges under my Loan.

## SECTION 12: DEFAULT

I will be in default if any one of the following occur:

- I fail to pay the full amount of any payment when due.
- I commit fraud or make a material misrepresentation in connection with this Note.
- A case under the U.S. Bankruptcy Code is started by or against me.
- Any action or inaction by me adversely affects the Bank's security in the Property, including, without limitation, transfer of the Property without the Bank's consent.
- The Bank believes in good faith that I may not be able or willing to pay as promised.
- Any person who has signed this Note dies.
- If I am an executive officer of the Bank and federal law governing credit extended by a bank to its executive officer, including without limitation Section 215.5(d)(4) of Federal Reserve Regulation O (12 CFR § 215.5(d)(4)), permits or requires immediate payment of all outstanding Principal, interest and any other charges that I may owe under this Note.

If I am in default, subject to any notice and right to cure required by applicable law, the Bank may require me to pay immediately all sums I owe under this Note. Even if, at the time when I am in default, the Bank does not require me to pay immediately in full as described above, the Bank will still have the right to do so if I am in default at a later time.

## SECTION 13: FURTHER ASSURANCES

I agree that I will take any steps including but not limited to signing, filing or recording any documents which are necessary, or which the Bank deems appropriate, to be sure that my obligations to the Bank under this Note become and continue to be secured by the Security Instrument.

## SECTION 14: CHANGE IN RESIDENCE OR OWNERSHIP OF THE PROPERTY

I agree to notify the Bank immediately if (a) the Property is my primary residence and I cease to live in the Property as my primary residence, or (b) there is any change in the ownership of the Property. I agree that my Loan will be accelerated and the outstanding balance of my Loan will be due and payable immediately on any sale or other transfer of the Property. In this regard, I understand that the Security Instrument contains the following or a substantially similar provision:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## SECTION 15: WAIVERS

**BORROWER'S WAIVERS**
I waive my rights to require the Bank to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Bank if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, waives these rights. These persons are known as "guarantors, sureties and endorsers."

**BANK'S NON-WAIVER**
The Bank may fail to make use of any of its rights under this Note or the Security Instrument or under applicable law on one or more occasions, or delay or partially exercise such rights, without waiving any of its rights or amending any of my obligations. The Bank may fail to make use of any of its rights or delay or partially exercise such rights against one party, without waiving any of its rights against any other party to this Note.

## SECTION 16: CREDIT REPORTS

My signature on this Note authorizes the Bank to obtain my credit report in connection with (a) renewing, modifying or extending this Note; (b) reviewing my Loan; (c) taking any collection action; and (d) any other legitimate purposes associated with my Loan.

## SECTION 17: GOVERNING LAW; SEVERABILITY

All interest, fees and other amounts charged or accruing in connection with this Note, which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001(a)), shall be governed by and interpreted under South Dakota law. In all other respects, this Note and all related documents, as well as the rights, remedies, and duties of the Bank and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and to the extent not preempted by federal law, the laws of the state in which the Property is located.

If any provision of this Note or the Security Instrument is determined to be invalid or unenforceable by a court of competent jurisdiction, the rest of this Note will remain in full force and effect and enforceable according to its terms. All references in this Note to the singular shall include the plural and vice versa.

## SECTION 18: NOTICES

Unless applicable law requires a different method, any notice that must be given to me or to anyone else who signs, guarantees or endorses this Note may be given by mailing it to my address as set forth above in this Note, or to a different address if I have properly notified the Bank of that different address. Any notice that I may send to the Bank must be given by mailing it to the Bank at the address provided on my billing statement or payment coupon, unless the type of notice is more specifically addressed in this Note and a different address is provided herein.

I agree that the Bank may contact me by telephone. I agree to accept calls from the Bank at any telephone number that I provide to the Bank.

## SECTION 19: ADDENDA

I agree to the following attached addenda:

N/A

## SECTION 20: STATE DISCLOSURES

**N/A**

**NOTICE TO THE BORROWER:**
**DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE THIS NOTE IS SIGNED. READ THIS NOTE BEFORE SIGNING IT.**

**ACKNOWLEDGMENT**

**I have received, read and retained a copy of this Fixed Rate Loan Note, the Security Instrument and the Truth-in-Lending Disclosure Statement, provided to me at the closing, all of which I agree to by signing this Fixed Rate Loan Note. If this Loan is secured by a dwelling, I have also received, read and retained a copy of the Agreement to Provide Insurance and the HUD Settlement Statement provided to me at the closing. In addition, I hereby agree that the terms of this Fixed Rate Loan Note replace the terms of any and all prior oral or written agreements, including by way of example only, commitment letters and pre-approval letters between the Bank and me.**

John Sotomayor (Seal) 1/12/07
BORROWER — DATE SIGNED
JOHN SOTOMAYOR

_____ (Seal) _____
BORROWER — DATE SIGNED

_____ (Seal) _____
BORROWER — DATE SIGNED

_____ (Seal) _____
BORROWER — DATE SIGNED

_____ (Seal) _____
BORROWER — DATE SIGNED

_____ (Seal) _____
BORROWER — DATE SIGNED

_____ (Seal) _____
BORROWER — DATE SIGNED

_____ (Seal) _____
BORROWER — DATE SIGNED

## Allonge for the Purpose of Note Endorsement

Wells Fargo Loan Number: [redacted]
Original Loan Amount: $104,375.00
Note Date: 01/19/2007
Borrower: JOHN SOTOMAYOR AND ALEXANDRA LOAIZA
Property address: 2359 MAPLE AVE
CORTLANDT MANOR, NY 10567

---

**WITHOUT RECOURSE, PAY TO THE ORDER OF:**

American Servicing and Recovery Group

WELLS FARGO BANK, N.A.

By: ______________________

**Danielle Savaria**
**V.P. - Loan Documentation**

DBIAS [redacted] other/ALLONGE_DBIAS

NTC Tracking Number : DBI-[redacted]

*11841993*

## ALLONGE TO PROMISSORY NOTE

**American Servicing and Recovery Group, LLC loan #:** DBI-[redacted]

**Borrower:** SOTOMAYOR, JOHN

**Property Address:** 2359 MAPLE AVE
CORTLANDT MANOR, NY 10567

**Dated:** 1/19/2007

**Amount of:** $104375

**Pay to the order of:** Partners for Payment Relief DE II, LLC

**Without Recourse**
AMERICAN SERVICING AND RECOVERY GROUP, LLC

By: WS Buchanan
William Buchanan, Vice President

STATE OF TEXAS

COUNTY OF DALLAS

On this, the 30th day of July, 2012, before me, the Undersigned, a Notary Public for the said County and State, this instrument was acknowledged before me.

Kelly Tooker
Notary Public

Kelly Tooker
Printed Name

NOTARY PUBLIC STATE OF TEXAS
Kelly Tooker
Notary Public
STATE OF TEXAS
Commission Expires 06-18-2016

My Commission expires:_______________

12010000109
Name: SOTOMAYOR
Customer: WMDA
11
Location: KASOTA
Pool: ASRG12010-WARE

# Allonge for the Purpose of Note Endorsement

To be attached to, and made part of the original note

Loan Number: [redacted]

Original Loan Amount: $104,375.00

Borrower Name: JOHN SOTOMAYOR

Property Address: 2359 MAPLE AVE, CORTLANDT MANOR, NY 10567

---

WITHOUT RECOURSE, PAY TO THE ORDER OF:

SMR I, LLC

**Partners for Payment Relief DEII, LLC**

By: John Sweeney

Name: John Sweeney

Title: Vice President

# Allonge for the Purpose of Note Endorsement

To be attached to, and made part of the original note

Loan Number: [redacted]

Original Loan Amount: $104,375.00

Borrower Name: JOHN SOTOMAYOR

Property Address: 2359 MAPLE AVE, CORTLANDT MANOR, NY 10567

---

WITHOUT RECOURSE, PAY TO THE ORDER OF:

Windward Bora LLC

**SMR III, LLC**

By:________________________

Name: Victoria Varrasse, Esq.

Title: President

# C

*470370694MTG1*

Control Number **470370694**

Instrument Type **MTG**

WESTCHESTER COUNTY SEAL

**WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE**
**(THIS PAGE FORMS PART OF THE INSTRUMENT)**
***** DO NOT REMOVE *****

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:
TYPE OF INSTRUMENT: MTG - MORTGAGE
FEE PAGES: 16 TOTAL PAGES: 16

RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $48.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| TOTAL FEES PAID | $73.00 |

MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | 1/19/2007 |
| MORTGAGE AMOUNT | $104,375.00 |
| EXEMPT | Yes |
| COUNTY TAX | $261.00 |
| YONKERS TAX | $0.00 |
| BASIC | $522.00 |
| ADDITIONAL | $283.20 |
| MTA | $261.00 |
| SPECIAL | $0.00 |
| TOTAL PAID | $1,327.20 |

TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

SERIAL NUMBER: CX55120
DWELLING: 1-2 Family

RECORDING DATE: 2/22/2007
TIME: 10:10:00

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
TOWN OF CORTLANDT

WITNESS MY HAND AND OFFICIAL SEAL

[signature]

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
ATLAS ABSTRACT & SETTLEMENT SERVI
22 SAW MILL RIVER RD

HAWTHORNE, NY 10532

0694
P-15

AAW06-2257

After Recording Return To:

ATLAS ABSTRACT &
SETTLEMENT SERVICES, INC.
22 SAW MILL RIVER ROAD
HAWTHORNE, NEW YORK 10532-1533

This instrument was prepared by:
**Wells Fargo Bank, N.A.**
**DAVID NELSON**
**DOCUMENT PREPARER**
**ONE HOME CAMPUS, MAC X2303-013**
**DES MOINES, IOWA 50328**
**515-324-8125**
(Name & Address of Preparer)

---

**[Space Above This Line For Recording Data]**

Account number: **650-650-4401584-0XXX** Reference number: **20063553129826**
Section **45.10**
Block **3**
Lot **5**
Town of Cortlandt

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated **JANUARY 19, 2007**, together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower." JOHN SOTOMAYOR AND ALEXANDRA LOAIZA**, whose address is **13321 87TH, OZONE PARK, NEW YORK 11417** sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "Lender." Wells Fargo Bank, N.A.** will be called "Lender." Lender is a corporation or association which exists under the laws of the United States of America. Lender's address is **101 North Phillips Avenue, Sioux Falls, SD 57104.**

**(D) "Debt Instrument."** The note signed by Borrower and dated **JANUARY 19, 2007**, will be called the "Debt Instrument." The Debt Instrument shows that I owe Lender **ONE HUNDRED FOUR THOUSAND THREE HUNDRED SEVENTY-FIVE AND 00/100THS** Dollars (U.S. $ **104,375.00**) plus interest and other amounts that may be payable. I have promised to pay this debt in one or more Periodic Payments and to pay the debt in full by **FEBRUARY 05, 2022.**

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means all amounts owed now or hereafter under the Debt Instrument, including without limitation principal, interest, any prepayment charges, late charges and other fees and charges due under the Debt Instrument, and also all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of



cor

Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[N/A] Leasehold Rider

[N/A] Third Party Rider

[N/A] Other(s) [specify] Legal Description

**(I) "Applicable Law."** All controlling applicable federal law and, to the extent not preempted by federal law, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that may be imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 4) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(M) "Periodic Payment."** "Periodic Payment" means the amounts as they become due for principal, interest and other charges as provided for in the Debt Instrument.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Debt Instrument including, but not limited to, all renewals, extensions and modifications of the Debt Instrument;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Debt Instrument.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

EXHIBIT

## SCHEDULE A DESCRIPTION

Title Number **AAW06-2257** Page 1

ALL that certain plot, piece or parcel of land situate, lying, and being in the Town of Cortlandt, County of Westchester, and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Maple Avenue, North 59 degrees 33' 30" West 291.78 feet, North 51 degrees 21' 20" West 78.31 feet, and North 47 degrees 46' 40" West 39.11 feet from a point on the southerly side of Maple Avenue where the same is intersected by the westerly line of lands shown on map of "Dickerson Mountain Est.," filed in the Westchester County Clerk's Office, Division of Land Records, as Map No. 3763;

RUNNING THENCE from said point along lands now or formerly of Paul and Paulette Rosenzweig the following courses and distances: South 54 degrees 54' 30" West 41.59 feet; South 53 degrees 36' 00" West 48.70 feet, South 15 degrees 53' 30" West 36.78 feet, South 21 degrees 39' 20" East 44.36 feet, South 06 degrees 30' 00" West 51.08 feet, and South 08 degrees 35' 40" East 101.58 feet to a point;

THENCE continuing along lands of Rosenzweig North 66 degrees 56' 00" West 110.00 feet to a point on the easterly side of Furnace Dock Road;

RUNNING THENCE along the easterly side of Furnace Dock Road the following courses and distances: North 23 degrees 09' 30" East 22.49 feet, North 15 degrees 08' 00" East 38.27 feet, North 02 degrees 49' 00" West 18.53 feet, North 22 degrees 52' 40" West 76.31 feet, North 23 degrees 11' 30" West 51.47 feet, North 21 degrees 51' 30" West 34.00 feet, North 07 degrees 50' 10" West 121.33 feet, North 49 degrees 01' 30" East 22.97 feet, and South 78 degrees 57' 00" East 12.26 feet to a point on the southerly side of Maple Avenue;

THENCE running along the southerly side of Maple Avenue the following courses and distances: South 52 degrees 49' 00" East 19.87 feet, South 56 degrees 44' 20" East 100.17 feet, South 62 degrees 48' 00" East 62.34 feet, and South 54 degrees 35' 50" East 43.60 feet to the point or place of BEGINNING.

(A) The Property which is located at **2359 MAPLE AVE** [Street]

**CORTLANDT MANOR**, New York **10567**
[City, Town or Village] [Zip Code]

This Property is in **WESTCHESTER** County. It has the following legal description:

**SEE ATTACHED EXHIBIT**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record as of the execution date of this Security Instrument.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Prepayment and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Debt Instrument and any prepayment charges, late charges and other charges due under the Debt Instrument. Payments due under the Debt Instrument and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Debt Instrument or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Debt Instrument and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in (or in accordance with) the Debt Instrument or at such other location as may be designated by Lender in accordance with the notice provisions in Section 13. Subject to Applicable Law, Lender may return any payment or partial payment if the

payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future.

**2. Application of Payments or Proceeds.** Unless other procedures are set forth in the Debt Instrument or Applicable Law, Lender may apply payments in any order that Lender deems appropriate.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Debt Instrument shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) has disclosed such lien to Lender at application for the Loan or agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument and which was not disclosed on the application for the Loan that Borrower provided to Lender, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions satisfactory to Lender set forth above in this Section 3.

To the extent not prohibited by Applicable Law, Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**4. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. To the extent not prohibited by Applicable Law, Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 4 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance. Upon Lender's request, Borrower shall promptly give to Lender copies of all policies, renewal certificates, receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance.

In the event of loss and subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights, the following provisions in this Section 4 shall apply. Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Debt Instrument or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Debt Instrument or this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights.

**5. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless (a) Borrower has disclosed to Lender at application for the Loan that the Property shall not be Borrower's principal residence; (b) Lender otherwise agrees in writing, which consent shall not be unreasonably withheld; or (c) unless extenuating circumstances exist which are beyond Borrower's control.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 4 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, (a) representations concerning Borrower's occupancy of the Property as Borrower's principal residence and (b) liens on the Property that have priority over this Security Instrument.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument or any obligation that is secured by a lien that is superior to this Security Instrument, (b) there is a legal proceeding

that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of any lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, if the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, in the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Joint and Several Liability; Co-mortgagors; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who signs this Security Instrument but does not execute the Debt Instrument (a "co-mortgagor"): (a) is signing this Security Instrument only to mortgage, grant and convey the co-mortgagor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Debt Instrument without the co-mortgagor's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 17) and benefit the successors and assigns of Lender.

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Debt Instrument or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Debt Instrument). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13. Notices.** Unless otherwise described in the Debt Instrument or in another agreement between Borrower and Lender, the following provisions regarding notices shall apply. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address for Borrower under the Loan at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**14. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and, to the extent not preempted by federal law, the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Debt Instrument conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Debt Instrument which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; (c) the word "may" gives sole discretion without any obligation to take any action; and (d) headings that appear at the beginning of the sections of this Security Instrument are inserted for the convenience of the reader only, shall not be deemed to be a part of this Security Instrument, and shall not limit, extend, or delineate the scope or provisions of this Security Instrument.

**15. Borrower's Copy.** Borrower shall be given one copy of the Debt Instrument and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Sale of Debt Instrument; Change of Loan Servicer; Notice of Grievance.** The Debt Instrument or a partial interest in the Debt Instrument (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Debt Instrument and this Security Instrument and performs other mortgage loan servicing obligations under the Debt Instrument, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Debt Instrument. If there is a change of the Loan Servicer, Borrower will be given written notice of the change as required by Applicable Law. If the Debt Instrument is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Debt Instrument, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Debt Instrument unless otherwise provided by the purchaser of the Debt Instrument.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 13) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 17. If Borrower and Lender have entered into an agreement to arbitrate disputes, the provisions of any such arbitration agreement shall supersede any provision in this Section 17 that would conflict with the arbitration agreement.

**18. Hazardous Substances.** As used in this Section 18: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, mold, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**19. Assignment of Leases and Rents.** Borrower irrevocably grants, conveys, sells and assigns to Lender as additional security: (a) all of Borrower's right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases"), and (b) all of the rents, security deposits, issues and profits arising out of or earned in connection with the Property (all referred to as "Rents").

Borrower will promptly provide Lender with true and correct copies of all existing and future Leases. Borrower may collect, receive, enjoy and use the Rents so long as Borrower is not in default under the terms of this Security Instrument. Borrower agrees that this assignment is immediately effective between the parties to this Security Instrument. Borrower agrees that this assignment is effective as to third parties when Lender takes affirmative action prescribed by law, and that this assignment will remain in effect during any redemption period until the Loan is satisfied.

Borrower agrees that Lender may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Borrower of an event of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of an event of default, Borrower will endorse and deliver to Lender any payment of Rents in Borrower's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agent shall be applied first to the

costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by this Security Instrument in the order provided for in Section 2. If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any amounts disbursed by Lender for such purposes shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower warrants that no default exists under the Leases or any applicable landlord/tenant law. Borrower agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**20. Condominiums; Planned Unit Developments.** If the Property is a unit in a condominium project ("Condominium Project") or is part of a planned unit development ("PUD"), Borrower agrees to the following:

A. Obligations. Borrower shall perform all of Borrower's obligations under the Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project or PUD and any condominium association, homeowners association or equivalent entity ("Community Association"); (ii) any by-laws or other rules or regulations of the Community Association; and (iii) other equivalent documents. Borrower shall promptly pay, when due, all Community Association Dues, Fees, and Assessments.

B. Property. For units in a Condominium Project, the Property includes the unit in, together with an undivided interest in the common elements of, the Condominium Project, and Borrower's interest in the Community Association and the uses, proceeds and benefits of Borrower's interest. For PUDs, the Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Constituent Documents, and Borrower's interest in the Community Association and the uses, benefits and proceeds of Borrower's interest.

C. Property Insurance. So long as the Community Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then Borrower's obligation under Section 4 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Community Association policy. Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy. In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements of the Condominium Project or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower, subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights.

D. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Community Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

E. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements of the Condominium Project or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the rights of any lienholder with rights to such proceeds that are superior to Lender's rights. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 9.

F. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Community Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Community Association unacceptable to Lender.

G. Remedies. If Borrower does not pay Community Association Dues, Fees, and Assessments when due,

then Lender may pay them. Any amounts disbursed by Lender under this paragraph G shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**21. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 16 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Debt Instrument and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**Lender may require Immediate Payment in Full under this Section 21 only if all of the following conditions are met:**

**(a) I fail to keep any promise or agreement made in this Security Instrument or the Debt Instrument, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**

**(b) Lender sends to me, in the manner described in Section 13 of this Security Instrument, a notice that states:**

**(1) The promise or agreement that I failed to keep or the default that has occurred;**

**(2) The action that I must take to correct that default;**

**(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;**

**(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;**

**(5) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Debt Instrument and under this Security Instrument, and to present any other defenses that I may have; and**

**(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.**

**22. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Debt Instrument and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**23. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Debt Instrument as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 23.

**24. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 14 of this Security Instrument and in any Rider signed by me and recorded with it.

_________________________ (Seal)
Borrower JOHN SOTOMAYOR

_________________________ (Seal)
Borrower ALEXANDRA LOAIZA

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

For An Individual Acting In His/Her Own Right if
Executed Within New York

State of New York ) ss.:
County of Westchester )

On the 19th day of January in the year 2007 before me, the undersigned, personally appeared JOHN SOTOMAYOR and ALEXANDRA LOAIZA
______________________________, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

______________________________
(Signature and office of individual taking acknowledgement.)

Steven E. De Young
Notary Public, State of New York
No. 02DE4662831
Qualified in Westchester County
Commission Expires March 30, 2007

[NOTARIAL SEAL]

Print Name: ______________________
Notary Public

My commission expires: ______________

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

| | |
|---|---|
| AMERICAN EXPRESS CENTURION BANK,<br><br>Plaintiff,<br><br>-against-<br><br>JOHN SOTOMAYOR,<br><br>Defendant. | Index No.: 09/4587<br><br>**JUDGMENT** |

FILED
11 APR 28 AM 8:20
TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

A motion having been brought by the plaintiff, American Express Centurion Bank before the Honorable Lester B. Adler in Supreme Court issued an Order dated 2/8/10 granting Motion for Default Judgment, a copy of which is attached hereto,

Now, upon the Order of the Judge it is

**ADJUDGED**, that the plaintiff, American Express Centurion Bank, having a place of business at 4315 S. 2700 West, Salt Lake City, Utah 84184, have judgment and recover from defendant, John Sotomayor, residing at 2359 Maple Avenue, Cortlandt Manor, New York 10567, the amount of $24,614.41, plus interest from 3/13/2009 at 9.00% per annum in the amount of $ ~~4,278.86~~ 4,709.78 plus court costs of ~~$525.00~~ $630.00; for a total of $ ~~29,418.27~~ 29,954.19 and that the plaintiff have execution thereof.

Judgment signed this 29th day of April, 2011.

Timothy C. Idoni
Clerk

039195144 08:34:24 04/28/11 JANY JANY NO FEE
JIN
INDEX # 4587-09

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

AMERICAN EXPRESS CENTURION BANK,

Plaintiff,

-against-

JOHN SOTOMAYOR,

Defendant.

Index No.: 09/4587

**BILL OF COSTS**

COSTS

Cost By Statute .................... ~~$50~~ $200

DISBURSEMENTS

Fee for Index Number.................$210
CPLR §8018(a)

Fee for RJI and Motion................$140

Serving copy of Summons
and Complaint ..........................$40
CPLR §8011(h)(1), 8301(d)

~~Clerk's Fee ................................$45~~

Prospective Marshall's Fee ............$40

| | | |
|---|---|---|
| COSTS.................................. | ~~$50~~ | $200 |
| DISBURSMENTS..................... | ~~$475~~ | $430 |
| TOTAL.................................. | ~~$525~~ | $630 |

STATE OF NEW YORK,
ss.:
COUNTY OF NEW YORK

Attorney's Affirmation

The undersigned, an attorney admitted to practice in the courts of this state, affirms that he is the attorney of record for the plaintiff in the above entitled action; that the foregoing disbursements have been or will necessarily be made or incurred in this action and are reasonable in amount.

The undersigned affirms that the foregoing statements are true, under penalties of perjury.

Dated: New York, New York
February 7, 2011

Joshua J. Knurr, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

| | |
|---|---|
| AMERICAN EXPRESS CENTURION BANK,<br>Plaintiff,<br>-against-<br>JOHN SOTOMAYOR,<br>Defendants. | Index No.: 09/4587<br><br>**REQUEST TO DOCKET ORDER AS JUDGMENT** |

TO THE CLERK OF WESTCHESTER COUNTY:

PLEASE TAKE NOTICE THAT you are requested to docket as a Judgment, pursuant to CPLR 2222, the within Short Form Order signed by the Honorable Lester B. Adler, Justice of the Supreme Court, Westchester County, on the 8th day of February, 2010 and entered in the Westchester County Clerk's Office on April 6, 2010, which directs payment of the sum of $24,614.41 with interest from 3/13/2009 in the amount of $ 4,278.86 with costs/disbursements in the amount of $525.00 for a total of $ 29,418.27 to the Plaintiff.

The address of the Judgment Debtor(s) is set forth below:
2359 Maple Avenue
Cortlandt Manor, New York, 10567

The address of the Judgment Creditor is:
200 Vesey Street
New York, NY 10285

Dated: February 7, 2011

Joshua J. Knurr, Esq.
200 Vesey St., Mail Code 01-43-03
New York, NY 10285
1-877-305-0433
Attorney for the Plaintiff,
American Express
**Please send all correspondence to:**
**American Express Legal**
**P.O. Box 278**
**Ramsey, NJ 07446**

FILED AND ENTERED ON 2-9-2010 WESTCHESTER COUNTY CLERK

To commence the statutory time period for appeals as of right (CPLR §5513[a]), you are advised to serve a copy of this order, with notice of entry upon all parties.

SUPREME COURT: STATE OF NEW YORK
COUNTY OF WESTCHESTER

---X

AMERICAN EXPRESS CENTURION BANK,

Plaintiff,

-against-

JOHN SOTOMAYOR,

Defendant.

---X

**SHORT FORM ORDER**

Index No.: 4587/09

ADLER, J.

The following papers numbered 1 to 9 were read in connection with plaintiff's unopposed application pursuant to CPLR §3215 for an order directing that a default judgment be entered against defendant:

| | Papers Numbered |
|---|---|
| Notice of Motion; Attorney's Affirmation and Exhibits | 1-9 |

In this action, *inter alia*, for breach of contract plaintiff moves for a default judgment as to the first cause of action based upon defendant's failure to answer or appear. Plaintiff waives the second cause of action for account stated and the third cause of action for unjust enrichment, as well as its claim for attorney's fees, with prejudice.

In support of the application, plaintiff has submitted proof of service of the summons and complaint, an affidavit by a party of the facts constituting the claim and the amount due (Exhibit E), and proof of default (see CPLR §3215[f]).

Accordingly, it is hereby

ORDERED, that plaintiff's unopposed motion for default judgment as to the first cause of action is GRANTED; and it is further

ORDERED, that the second and third causes of action are waived with prejudice; and it is further

ORDERED, that plaintiff serve a copy of this Decision and Order, with notice of entry, upon the defendant within 20 days and prior to the entry of judgment herein.

This constitutes the Decision and Order of the Court.

Dated: White Plains, New York
February 8, 2010

HON. LESTER B. ADLER
SUPREME COURT JUSTICE

AMERICAN EXPRESS LEGAL
Attorney for Plaintiff
P.O. Box 278
Ramsey, New Jersey 07446
By: Joshua J. Knurr, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

| | |
|---|---|
| AMERICAN EXPRESS CENTURION BANK, Plaintiff, | Index No. 09/4587 |
| -against- | |
| JOHN SOTOMAYOR, Defendant. | Affidavit of Service |

STATE OF NEW JERSEY )
COUNTY OF BERGEN ) SS.:

I, Jewel Russell, being duly sworn, say:

I am not a party to the above-captioned action, am over 18 years of age, and reside in Rockland County, New York.

On 2/17, 20 11 I mailed an Order and Proposed Judgment in the above entitled action via first class mail, by depositing same in a post office or official depository of the U.S. Postal Service, properly addressed to:

John Sotomayor
2359 Maple Avenue
Cortlandt Manor, NY 10567

Jewel Russell
Jewel Russell

## ACKNOWLEDGMENT

STATE OF NEW JERSEY ) SS.:
COUNTY OF BERGEN )

On 2/17, 2011 before me, Colette B. Cobianchi, Notary Public in and for said county, personally appeared JEWEL RUSSELL who has satisfactorily identified herself as the affiant to the above-referenced affidavit.

**COLETTE B. COBIANCHI**
**ID# 2380791**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 12/11/2013**

Colette B. Cobianchi
Signature

2/17/11
Date

## CERTIFICATE OF CONFORMITY

I, Joshua J. Knurr, an attorney-at-law of the State of New Jersey and the State of New York who has an office at 500 North Franklin Turnpike, Borough of Ramsey in the State of New Jersey and is fully acquainted with the laws of the State of New Jersey pertaining to the acknowledgment or proof of deeds of real property to be recorded therein, do hereby certify that I am duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York and hereby certify that the acknowledgement(s) or proof(s) upon the foregoing affidavit(s) was taken by Colette B. Cobianchi, a notary public in the State of New Jersey, in the manner prescribed by the laws of the State of New Jersey and conforms to the laws thereof in all respects.

IN WITNESS WHEREOF, I have hereunto set my signature, this *17th* day of *February*, 2011.

Joshua J. Knurr, Esq.
Attorney at Law, State of New Jersey
and the State of New York

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

AMERICAN EXPRESS CENTURION BANK,

Plaintiff, **Index No. 09/4587**

- against -

JOHN SOTOMAYOR,

Defendants.

**REQUEST TO DOCKET ORDER AS JUDGMENT**

**Plaintiff**

Pursuant to 22 NYCRR 130-1.1a, the undersigned attorney hereby certifies under the penalties of perjury and as an officer of the court that to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of this document or the contentions therein are not frivolous.

Joshua J. Knurr, Esq.
**AMERICAN EXPRESS LEGAL**
200 Vesey St.
Mail Code 01-43-03
New York, NY 10285
1-877-305 0433
Attorney for the Plaintiff,
American Express

**Please send all correspondence to:**
**American Express Legal**
**PO Box 278**
**Ramsey, NJ 07446**

# E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

FILED

3249-11

MIDLAND FUNDING LLC DBA IN NEW YORK AS MIDLAND FUNDING OF DELAWARE LLC
PLAINTIFF,

-AGAINST-

JOHN SOTOMAYOR
DEFENDANT.

INDEX NUMBER 2011 JUL 26 A 10:09
FILE NO. C458171

DEFAULT JUDGMENT

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

| | |
|---|---|
| AMOUNT CLAIMED IN COMPLAINT LESS CREDITS ON ACCOUNT ($0.00)... | $4,768.63 |
| PLUS INTEREST AT 9% FROM June 19, 2008................................................ | $1,219.33 |
| | $5,987.96 |

| | | |
|---|---|---|
| Costs by Statute........................................ | $200.00 | |
| Service of Summons and Complaint........ | $30.00 | |
| Fee for Index Number.............................. | $210.00 | |
| Prospective Execution Fee....................... | $22.50 | |
| Cost of Motion for Default Judgment..................... | $45.00 | |
| Costs taxed at | | $507.50 |
| | Total...... | $6,495.46 |

STATE OF NEW YORK, COUNTY OF NASSAU

The undersigned, an attorney at law of the State of New York, the attorney of record for the Plaintiff herein, subscribes and affirms under penalties of perjury, that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount; that pursuant to the Affidavit of Service of the process server on the file herein, the defendant was served, but have since failed to appear, answer or move herein, and the time to do so has expired so that Plaintiff is entitled to a judgment by default. Pursuant to affidavits of service on file herein, deponent affirms that defendant is not in the military service.

Dated: April 22, 2011

DAVID A. COHEN, ESQ./MITCHELL G. SLAMOWITZ, ESQ.
COHEN & SLAMOWITZ, LLP
199 CROSSWAYS PARK DRIVE, WOODBURY, NY 11797
(516) 364-6006

JUDGMENT ENTERED ON: July 26, 2011

**ADJUDGED** that MIDLAND FUNDING LLC DBA IN NEWYORK AS MIDLAND FUNDING OF DELAWARE LLC, Plaintiff, with offices at 8875 AERO DRIVE - STE 200 SAN DIEGO, CA 92123, recover of JOHN SOTOMAYOR Defendant, residing at 2359 MAPLE AVE CORTLANDT MANOR, NY 10567, the sum of $4,768.63 with interest of $1,219.33, making a total of $5,987.96, together with costs and disbursements of $507.50, amounting in all to the sum of $6,495.46 and that the Plaintiff has execution therefor.

Timothy C. Idoni

CLERK

ID: 121445

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

MIDLAND FUNDING LLC DBA IN NEW YORK AS MIDLAND FUNDING OF DELAWARE LLC
PLAINTIFF,

-AGAINST-

JOHN SOTOMAYOR
DEFENDANT.

INDEX NUMBER 3249/11
FILE NO. C458171

**AFFIRMATION IN SUPPORT OF ENTRY OF JUDGMENT**

David A. Cohen/Mitchell G. Slamowitz, an attorney duly admitted to the practice of law in the State of New York, hereby affirms the following to be true pursuant to CPLR § 2106 and under the penalties of perjury states that:

1. I am a member of Cohen & Slamowitz, LLP, attorneys for the Plaintiff, and I am fully familiar with the facts and circumstances herein.

2. I make this affirmation in additional support of Plaintiff's request for the entry of judgment against JOHN SOTOMAYOR (hereinafter the "Defendant").

**ADDITIONAL MAILING**

3. On **February 08, 2011**, Deponent caused to be mailed a copy of the summons in separate post-paid envelopes in an official depository of the U.S. Postal Service addressed to each defaulting defendant's last known residence address as set forth below, by first class mail in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof that the communication was from an attorney or concerns an alleged debt. More than 20 days have elapsed and the same has not been returned as undeliverable by the U.S. Postal Service; if same was returned, the copy of the summons was re-mailed to the defendant'(s) last known residence.

JOHN SOTOMAYOR

2359 MAPLE AVE CORTLANDT MANOR, NY 10567

## STATUTE OF LIMITATIONS

4. Based upon a reasonable inquiry, I have reason to believe that the Statute of Limitations did not expire at the time when this action was commenced.

## MILITARY STATUS

5. I provided Department of Defense, Defense Manpower Data Center, with the pertinent information about the defendant, in particular the date of birth and/or social security number, which I know because they were provided to me by the Plaintiff. I requested that a military investigation be conducted for the purpose of entry of a judgment.

6. Based upon the response I received from the Department of Defense, Defense Manpower Data Center, dated **April 22, 2011**, I am convinced that the defendant is not in any branch of the United States military.

WHEREFORE, Plaintiff respectfully requests the entry of a default judgment against the Defendant(s).

I certify that, to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the presentation of this paper or the contentions herein are not frivolous as defined in 22 NYCRR §130-1.1(a).

Dated: April 22, 2011

David A. Cohen, Esq./Mitchell G. Slamowitz, Esq.

# F

FILED: WESTCHESTER COUNTY CLERK 03/09/2020 12:21 PM INDEX NO. 63243/2018
NYSCEF DOC. NO. 31 RECEIVED NYSCEF: 03/09/2020

N00000047027895 000005815280
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

R & R File No. 1192491

S 119 N

CAPITAL ONE BANK (USA), N.A.

Plaintiff

-against-

ALEXANDRA LOAIZA

Defendant(s)

**JUDGMENT**

Index No. 63243/2018

| | | |
|---|---|---|
| Amount ~~Claimed in Complaint~~ awarded by Court ........ | | $ 2,613.56 |
| Interest ........ | | .00 |
| | TOTAL $ | 2,613.56 |
| Costs by Statute........ | $** waived | |
| Service of process........ | 25.00 | |
| Fee for Index Number........ | 210.00 | |
| Prospective execution fee........ | ** waived | |
| Transcript and Docket Fee........ | ** waived | |
| Request for Judicial Intervention........ | 95.00 | |
| | | 330.00 |
| | TOTAL $ | 2,943.56 |

STATE OF NEW YORK, COUNTY OF SUFFOLK:
The undersigned, an attorney admitted to practice in the State of New York, associated with the attorneys for plaintiff, under penalties of perjury, affirms the following to be true: The disbursements specified above have been or will necessarily be made or incurred and are reasonable in amount. Plaintiff is entitled to judgment against defendant(s) by reason of a grant of summary judgment.
Dated: February 17, 2020

/S/
JESSICA COONROD
RUBIN & ROTHMAN, LLC
Attorneys for Plaintiff
1787 Veterans Highway
Islandia, N.Y. 11749
(631) 234-1500

NOW, on motion of Rubin and Rothman, LLC, it is adjudged that

CAPITAL ONE BANK (USA), N.A.

located at 4851 COX ROAD, GLEN ALLEN, VA 23060

recover of ALEXANDRA LOAIZA

residing at 2359 MAPLE AVE, CORTLANDT MANOR, NY 10567-6209

the sum of $ 2,943.56 and that the Plaintiff have execution therefor.

Dated: March 9th 2020

Clerk

# G

HASBANI & LIGHT, P.C.
ATTORNEYS AT LAW

450 Seventh Ave
Suite 1408
New York, NY 10123
T. 212.643.6677
F. 347.491.4048

May 19, 2021

**WE ARE DEBT COLLECTOR AND ARE ATTEMPTING TO COLLECT A DEBT. PLEASE BE ADVISED THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**VIA FIRST CLASS AND CERTIFIED U.S. MAIL**
John Sotomayor
2359 Maple Avenue
Cortlandt Manor, New York 10567

**RE:** **NOTICE OF DEFAULT**
**Borrower:** John Sotomayor
**Property:** 2359 Maple Avenue, Cortlandt Manor, New York 10567

AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA: Esta notification es de suma importancia. Puede afectar su derecho a continuar viviendo in su casa. Si no entiende el contendio, obtenga una traduccion immediatamente.

Dear Mr. Sotomayor,

**You are hereby notified that this letter is an attempt to collect a debt. All information obtained will be used for that purpose.** This firm has been designated by Windward Bora, LLC ("Windward Bora" or the "Creditor"), the Creditor and the current owner and holder of the note (the "Note") and mortgage dated January 19, 2007 made by John Sotomayor and Alexandra Loaiza to Wells Fargo Bank, N.A. in the original principal amount of $104,375.00 (the "Mortgage"). The Creditor (also called the Holder or Beneficiary) has authorized this firm to act on its behalf regarding collection of the debt. This firm is relying on information provided by such entities. This firm makes no representation as to the enforceability of the debt. **Further notification pursuant to the Fair Debt Collection Practices Act is provided herein.**

The originating creditor of you loan is Wells Fargo Bank, N.A.. Should you have any questions for our firm, Hasbani & Light, P.C., please contact us at (212) 643-6677.

As of May 19, 2021 the following sums are in arrears:

| | |
|---|---|
| Principal and Interest payments: | $150,094.53 |
| Total Arrears: | $59,951.52 |

HASBANI & LIGHT, P.C.
ATTORNEYS AT LAW

450 Seventh Ave
Suite 1408
New York, NY 10123
T. 212.643.6677
F. 347.491.4048

On or before June 18, 2021 you must submit payment by bank check, money order, or certified funds of the total arrears to: **Windward Bora, LLC, 1688 Meridian Avenue - 6th Floor. Miami Beach, FL 33139**. Any payment(s) and late charge(s), that come due in the interim must also be included. Prior to submitting payment you may wish to call **786-475-5344** to verify the exact amount.

Failure to correct the default by June 18, 2021 may result in acceleration of your loan. Upon acceleration, the total amount of the debt will be immediately due and payable without further demand and a lawsuit to foreclose the mortgage may be commenced. In foreclosure proceedings, we are entitled to collect the total debt in addition to any expenses and costs of the foreclosure including but not limited to reasonable attorneys' fees, where so provided by the terms of the Mortgage. If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure where possible. Creditor or another person may acquire the Property by means of foreclosure and sale. You have the right to assert in court the non-existence of a default, that you kept your promises and agreements under the mortgage and note or any other defense. After acceleration of the debt, but prior to the foreclosure sale, you may have the right to reinstate the mortgage loan, by payment of all sums clue as if immediate payment in full had not been required and to have the lawsuit discontinued, depending on the terms of the note and mortgage. We encourage you to review the provisions of the note and mortgage.

If you have obtained an order of discharge from the Bankruptcy court, which includes this debt, and you have not reaffirmed your liability for this debt, this law firm is not alleging that you have any personal liability for this debt and docs not seek a money judgment against you. However, even if a discharge has been obtained, proceedings to foreclose the loan may still be brought.

IMPORTANT NOTICE TO SERVICEMEMBER AND THEIR DEPENDENTS
If you are a servicemember who is, or recently was, on "active duty" or "active service", or a dependent of such a servicemember, you may be entitled to certain legal rights and protections, including protection from foreclosure or eviction, pursuant to the Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-596), as amended (the SCRA) and possibly, certain similar state statutes. If you believe you may be entitled to rights an protections under SCRA, please contact us al 212-643-6677.
**If at any time, you make a request to this law firm not to be contacted by phone, we will not do so, except by legal action. NO PERSON IN THIS LAW OFFICE WILL GIVE YOU ANY LEGAL ADVICE.**

HASBANI & LIGHT, P.C.
ATTORNEYS AT LAW

**NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT**

1. **The total amount of the Debt as of May 19, 2021: <u>$150,094.53</u>. Remaining principal balance as of May 19, 2021 is <u>$96,591.97</u> plus unpaid accrued interest of <u>$53,502.56.</u>**

2. **Name of the creditor to whom the Debt is owed: Windward Bora, LLC.**

3. **Unless you dispute the validity of the Debt or any portion thereof within thirty (30) days after receipt of this Notice, we will assume that the Debt is valid.**

4. **If you notify us in writing within thirty (30) days after receipt of this Notice that the Debt or any portion thereof is disputed, we will obtain verification of the Debt or a copy of any judgment against you representing the Debt and a copy of such verification or judgment will he mailed to you from our office.**

5. **Upon request in writing within thirty (30) days after receipt of this Notice, we will provide you with the name and address of the original creditor, if different from the current creditor.**

**In the event that there is a manufactured house on the subject premises, should you be unable to bring your account current within thirty (30) days, it is hereby demanded that you turn same over to the Creditor.**

**Failure to bring the loan current or turn over the above referenced manufactured home within thirty (30) days will he deemed a refusal to comply with the terms of this demand.**

**All communication about this matter must he made to Windward Bora, LLC, 1688 Meridian Avenue - 6th Floor. Miami Beach, FL 33139, phone number is 786-475-5344 except those specified in this letter.**

**All payments must be made in certified funds, cashier's check or money order(s) payable to and mailed to Windward Bora, LLC, 1688 Meridian Avenue - 6th Floor. Miami Beach, FL 33139, phone number is 786-475-5344.**

**If you are unable to bring your account current, you are urged to call 786-475-5344 immediately to discuss possible alternatives to foreclosure.**

HASBANI & LIGHT, P.C.
ATTORNEYS AT LAW

Respectfully.

HASBANI & LIGHT, P.C.

Cc:

Windward Bora, LLC

450 Seventh Ave
Suite 1408
New York, NY 10123
T. 212.643.6677
F. 347.491.4048

HASBANI & LIGHT, P.C.
ATTORNEYS AT LAW

May 19, 2021

**WE ARE DEBT COLLECTOR AND ARE ATTEMPTING TO COLLECT A DEBT.**
**PLEASE BE ADVISED THAT ANY INFORMATION OBTAINED**
**WILL BE USED FOR THAT PURPOSE.**

**VIA FIRST CLASS AND CERTIFIED U.S. MAIL**
Alexandra Loaiza
2359 Maple Avenue
Cortlandt Manor, New York 10567

**RE:** **NOTICE OF DEFAULT**
**Borrower:** Alexandra Loaiza
**Property:** 2359 Maple Avenue, Cortlandt Manor, New York 10567

AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA: Esta notification es de suma importancia. Puede afectar su derecho a continuar viviendo in su casa. Si no entiende el contendio, obtenga una traduccion immediatamente.

Dear Ms. Loaiza,

**You are hereby notified that this letter is an attempt to collect a debt. All information obtained will be used for that purpose.** This firm has been designated by Windward Bora, LLC ("Windward Bora" or the "Creditor"), the Creditor and the current owner and holder of the note (the "Note") and mortgage dated January 19, 2007 made by John Sotomayor and Alexandra Loaiza to Wells Fargo Bank, N.A. in the original principal amount of $104,375.00 (the "Mortgage"). The Creditor (also called the Holder or Beneficiary) has authorized this firm to act on its behalf regarding collection of the debt. This firm is relying on information provided by such entities. This firm makes no representation as to the enforceability of the debt. **Further notification pursuant to the Fair Debt Collection Practices Act is provided herein.**

The originating creditor of you loan is Wells Fargo Bank, N.A.. Should you have any questions for our firm, Hasbani & Light, P.C., please contact us at (212) 643-6677.

As of May 15, 2021 the following sums are in arrears:

| | |
|---|---|
| Principal and Interest payments: | $150,094.53 |
| Total Arrears: | $59,951.52 |

HASBANI & LIGHT, P.C.
ATTORNEYS AT LAW

450 Seventh Ave
Suite 1408
New York, NY 10123
T. 212.643.6677
F. 347.491.4048

On or before June 18, 2021 you must submit payment by bank check, money order, or certified funds of the total arrears to: **Windward Bora, LLC, 1688 Meridian Avenue - 6th Floor. Miami Beach, FL 33139**. Any payment(s) and late charge(s), that come due in the interim must also be included. Prior to submitting payment you may wish to call **786-475-5344** to verify the exact amount.

Failure to correct the default by June 18, 2021 may result in acceleration of your loan. Upon acceleration, the total amount of the debt will be immediately due and payable without further demand and a lawsuit to foreclose the mortgage may be commenced. In foreclosure proceedings, we are entitled to collect the total debt in addition to any expenses and costs of the foreclosure including but not limited to reasonable attorneys' fees, where so provided by the terms of the Mortgage. If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure where possible. Creditor or another person may acquire the Property by means of foreclosure and sale. You have the right to assert in court the non-existence of a default, that you kept your promises and agreements under the mortgage and note or any other defense. After acceleration of the debt, but prior to the foreclosure sale, you may have the right to reinstate the mortgage loan, by payment of all sums clue as if immediate payment in full had not been required and to have the lawsuit discontinued, depending on the terms of the note and mortgage. We encourage you to review the provisions of the note and mortgage.

If you have obtained an order of discharge from the Bankruptcy court, which includes this debt, and you have not reaffirmed your liability for this debt, this law firm is not alleging that you have any personal liability for this debt and docs not seek a money judgment against you. However, even if a discharge has been obtained, proceedings to foreclose the loan may still be brought.

IMPORTANT NOTICE TO SERVICEMEMBER AND THEIR DEPENDENTS
If you are a servicemember who is, or recently was, on "active duty" or "active service", or a dependent of such a servicemember, you may be entitled to certain legal rights and protections, including protection from foreclosure or eviction, pursuant to the Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-596), as amended (the SCRA) and possibly, certain similar state statutes. If you believe you may be entitled to rights an protections under SCRA, please contact us al 212-643-6677.
**If at any time, you make a request to this law firm not to be contacted by phone, we will not do so, except by legal action. NO PERSON IN THIS LAW OFFICE WILL GIVE YOU ANY LEGAL ADVICE.**

HASBANI &
LIGHT, P.C.
ATTORNEYS AT LAW

**NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT**

1. **The total amount of the Debt as of May 19, 2021: <u>$150,094.53</u>. Remaining principal balance as of May 19, 2021 is <u>$96,591.97</u> plus unpaid accrued interest of <u>$53,502.56.</u>**

2. **Name of the creditor to whom the Debt is owed: Windward Bora, LLC.**

3. **Unless you dispute the validity of the Debt or any portion thereof within thirty (30) days after receipt of this Notice, we will assume that the Debt is valid.**

4. **If you notify us in writing within thirty (30) days after receipt of this Notice that the Debt or any portion thereof is disputed, we will obtain verification of the Debt or a copy of any judgment against you representing the Debt and a copy of such verification or judgment will he mailed to you from our office.**

5. **Upon request in writing within thirty (30) days after receipt of this Notice, we will provide you with the name and address of the original creditor, if different from the current creditor.**

**In the event that there is a manufactured house on the subject premises, should you be unable to bring your account current within thirty (30) days, it is hereby demanded that you turn same over to the Creditor.**

**Failure to bring the loan current or turn over the above referenced manufactured home within thirty (30) days will he deemed a refusal to comply with the terms of this demand.**

**All communication about this matter must he made to Windward Bora, LLC, 1688 Meridian Avenue - 6th Floor. Miami Beach, FL 33139, phone number is 786-475-5344 except those specified in this letter.**

**All payments must be made in certified funds, cashier's check or money order(s) payable to and mailed to Windward Bora, LLC, 1688 Meridian Avenue - 6th Floor. Miami Beach, FL 33139, phone number is 786-475-5344.**

**If you are unable to bring your account current, you are urged to call 786-475-5344 immediately to discuss possible alternatives to foreclosure.**

HASBANI & LIGHT, P.C.
ATTORNEYS AT LAW

Respectfully.

HASBANI & LIGHT, P.C.

Cc:

Windward Bora, LLC

# H

HASBANI & LIGHT, P.C.
ATTORNEYS AT LAW

450 Seventh Ave, Suite 1408
New York, New York 10123
T. 212.643.6677
F. 347.491.4048

May 19, 2021

**<u>VIA FIRST CLASS U.S. MAIL AND CERTIFIED MAIL/RETURN RECIEPT REQUESTED</u>**
John Sotomayor
2359 Maple Avenue
Cortlandt Manor, New York 10567

**RE: Loan No.: 12723004**
**Property Address: 2359 Maple Avenue, Cortlandt Manor, New York 10567**

Dear Mr. Sotomayor,

"YOU MAY BE AT RISK OF FORECLOSURE. PLEASE READ THE FOLLOWING NOTICE CAREFULLY"

As of May 19, 2021 your home loan is 2099 days and $59,951.52 dollars in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.

Attached to this notice is a list of government approved housing counseling agencies in your area which provide free counseling. You can also call the NYS Office of the Attorney General's Homeowner Protection Program (HOPP) toll-free consumer hotline to be connected to free housing counseling services in your area at 1-855-HOME-456 (1-855-466-3456), or visit their website at http://www.aghomehelp.com/. A statewide listing by county is also available at http://www.dfs.ny.gov/consumer/mortg nys np counseling agencies.htm. Qualified free help is available; watch out for companies or people who charge a fee for these services.

Housing counselors from New York-based agencies listed on the website above are trained to help homeowners who are having problems making their mortgage payments and can help you find the best option for your situation. If you wish, you may also contact us directly at 786-475-5344 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution. The longer you wait, the fewer options you may have.

If you have not taken any actions to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 342-3736 or visit the Department's website at http://www.dfs.ny.gov.

IMPORTANT: You have the right to remain in your home until you receive a court order telling you to leave the property. If a foreclosure action is filed against you in court, you still have the right to remain in the home until a court orders you to leave. You legally remain the owner of and are responsible for the property until the property is sold by you or by order of the court at the conclusion of any foreclosure proceedings. This notice is not an eviction notice, and a foreclosure action has not yet been commenced against you.

Sincerely,

HASBANI & LIGHT P.C.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will exercise its rights against the property.

| | | | | |
|---|---|---|---|---|
| **Westchester** | Community Housing Innovations, Inc. | 75 South Broadway, Ste 340<br>White Plains, NY 10601 | 914-683-1010 | HOPP |
| | Housing Action Council | 55 South Broadway, Tarrytown, NY 10591 | 914-332-4144 | HOPP |
| | Human Development Services of Westchester, Inc. | 28 Adee St. Port Chester, NY 10573 | 914-939-2005 | HOPP<br>Spanish speaking counselors available |
| | Westchester Residential Opportunities | 470 Mamaroneck Ave., Suite 410<br>White Plains, NY 10605 | 914-428-4507<br>OR<br>877-WRO-4YOU | HOPP<br>Spanish and French speaking staff available |
| | Putnam County Housing Corp. | 11 Seminary Hill Rd., Carmel, NY 10512 | 845-225-8493 | HOPP<br>Serving Northern section of county |
| | Greenpath | One Barker Ave., Suite 420<br>White Plains, NY 10601 | 888-366-9140 | |

HASBANI & LIGHT, P.C.
ATTORNEYS AT LAW

450 Seventh Ave, Suite 1408
New York, New York 10123
T. 212.643.6677
F. 347.491.4048

May 19, 2021

**VIA FIRST CLASS U.S. MAIL AND CERTIFIED MAIL/RETURN RECIEPT REQUESTED**
Alexandra Loaiza
2359 Maple Avenue
Cortlandt Manor, New York 10567

**RE: Loan No.: 12723004**
**Property Address:** 2359 Maple Avenue, Cortlandt Manor, New York 10567

Dear Ms. Loaiza,

"YOU MAY BE AT RISK OF FORECLOSURE. PLEASE READ THE FOLLOWING NOTICE CAREFULLY"

As of May 19, 2021 your home loan is 2099 days and $59,951.52 dollars in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.

Attached to this notice is a list of government approved housing counseling agencies in your area which provide free counseling. You can also call the NYS Office of the Attorney General's Homeowner Protection Program (HOPP) toll-free consumer hotline to be connected to free housing counseling services in your area at 1-855-HOME-456 (1-855-466-3456), or visit their website at http://www.aghomehelp.com/. A statewide listing by county is also available at http://www.dfs.ny.gov/consumer/mortg nys np counseling agencies.htm. Qualified free help is available; watch out for companies or people who charge a fee for these services.

Housing counselors from New York-based agencies listed on the website above are trained to help homeowners who are having problems making their mortgage payments and can help you find the best option for your situation. If you wish, you may also contact us directly at 786-475-5344 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution. The longer you wait, the fewer options you may have.

If you have not taken any actions to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 342-3736 or visit the Department's website at http://www.dfs.ny.gov.

IMPORTANT: You have the right to remain in your home until you receive a court order telling you to leave the property. If a foreclosure action is filed against you in court, you still have the right to remain in the home until a court orders you to leave. You legally remain the owner of and are responsible for the property until the property is sold by you or by order of the court at the conclusion of any foreclosure proceedings. This notice is not an eviction notice, and a foreclosure action has not yet been commenced against you.

Sincerely,

HASBANI & LIGHT P.C.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will exercise its rights against the property.

| | | | | |
|---|---|---|---|---|
| **Westchester** | Community Housing Innovations, Inc. | 75 South Broadway, Ste 340<br>White Plains, NY 10601 | 914-683-1010 | HOPP |
| | Housing Action Council | 55 South Broadway, Tarrytown, NY 10591 | 914-332-4144 | HOPP |
| | Human Development Services of Westchester, Inc. | 28 Adee St. Port Chester, NY 10573 | 914-939-2005 | HOPP<br>Spanish speaking counselors available |
| | Westchester Residential Opportunities | 470 Mamaroneck Ave., Suite 410<br>White Plains, NY 10605 | 914-428-4507<br>OR<br>877-WRO-4YOU | HOPP<br>Spanish and French speaking staff available |
| | Putnam County Housing Corp. | 11 Seminary Hill Rd., Carmel, NY 10512 | 845-225-8493 | HOPP<br>Serving Northern section of county |
| | Greenpath | One Barker Ave., Suite 420<br>White Plains, NY 10601 | 888-366-9140 | |

# A-85



CERTIFIED MAIL

ani & Light, P.C.
ashion Ave, Ste 1408
York NY 10123-1408

7021 0350 0000 0379 7130

PITNEY BOWES
$4.71 0
US POSTAGE
FIRST-CLASS
026W0004897229
2000015618
ZIP 11901
MAY 19 2021

Alexandria Loaiza
2359 Maple Ave
Cortlandt Manor NY 10567-6209

CERTIFIED MAIL

i & Light, P.C.
shion Ave, Ste 1408
rk NY 10123-1408

7021 0350 0000 0379 7123

PITNEY BOWES
$4.71 0
US POSTAGE
FIRST-CLASS
026W0004897810
2000015618
ZIP 11901
MAY 19 2021

John Sotomayor
2359 Maple Ave
Cortlandt Manor NY 10567-6209

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Alexandria Loaiza
2359 Maple Ave
Cortlandt Manor, NY 10567-6209

9590 9402 5480 9249 3265 63

2. Article Number *(Transfer from service label)*

7021 0350 0000 0379 7130

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
red Mail
red Mail Restricted Delivery
r $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

John Sotomayor
2359 Maple Ave
Cortlandt Manor, NY 10567-6209

9590 9402 5480 9249 3265 70

2. Article Number *(Transfer from service label)*

7021 0350 0000 0379 7123

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

Hasbani & Light, P.C.
450 Fashion Ave, Ste 1408
New York NY 10123-1408

PITNEY BOWES
$1.11 0
US POSTAGE
FIRST-CLASS
026W0004897811
2000015618
ZIP 11901
MAY,19 2021

John Sotomayor
2359 Maple Ave
Cortlandt Manor NY 10567-6209

Hasbani & Light, P.C.
450 Fashion Ave, Ste 1408
New York NY 10123-1408

PITNEY BOWES
$1.11 0
US POSTAGE
FIRST-CLASS
026W0004897693
2000015618
ZIP 11901
MAY 19 2021

Alexandria Loaiza
2359 Maple Ave
Cortlandt Manor, NY 10567-6209

STATE OF NEW YORK )
): ss
COUNTY OF NEW YORK )

Stay-Ann Franklin, affirms the truth of the following under the penalty of perjury:

I am over eighteen (18) years of age, I am not a party to this action, and I reside in Queens County in the State of New York. On May 19, 2021, I mailed the within 30-Day Default Notice pursuant to the Mortgage, 90 Day Notices pursuant to RPAPL § 1304 (the "1304 Notices") and the Residential Hardship Declaration Letter by First Class U.S. Mail and Certified U.S. Mail, Return Receipt Requested. I addressed the envelopes for the 30-Day Default Notice, 90 Day Notice, Residential Hardship Declaration Letter to be mailed by using the addresses provided by our client. I placed the 30-Day Default Notice, 90 Day Notice with a list of housing counseling agencies and the Residential Hardship Declaration Letter each into their own addressed envelope and sealed each envelope. I completed the Certified Mail Receipts, and the Return Receipt forms for each envelope, affixed them to their respective envelopes and sealed each envelope. I then affixed proper postage to each envelope utilizing the Pitney Bowes - Send Pro application. Finally, I deposited all of the sealed envelopes in an official depository under exclusive care and custody of the United States Postal Service within the State of New York at the last known address set forth after each name:

Alexandria Loaiza
2359 Maple Ave
Cortlandt Manor, NY 10567

John Sotomayor
2359 Maple Ave
Cortlandt Manor, NY 10567

Dated: June 24, 2021
New York, New York

Stay-Ann Franklin

Signed on this 24th
Day of June, 2021

Notary Public

RAFI HASBANI
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02HA6410141
Qualified in New York County
Commission Expires October 19, 2024

**New York State Department of Financial Services**
One State Street Plaza, New York, NY 10004

Proof of Filing Statement

To Whom It May Concern:

Section 1306 of the Real Property Actions and Proceedings Law (RPAPL) requires lenders, assignees or mortgage loan servicers servicing loans on 1-to-4 family residential properties in New York State to file certain information with the Superintendent of the Department Financial Services within three days after the mailing of a 90-Day Pre-Foreclosure Notice.

The information below pertains to a filing submitted to the Department of Financial Services as required in Section 1306 of RPAPL. The information is presented as filed by the lender, assignee or mortgage loan servicer.

**Filer Information:**

| | |
|---|---|
| Name | : Windward Bora, LLC. |
| Address | : 1688 Meridian Avenue, 6th Floor, Miami Beach, FL, 33139, |

**Filing Information:**

| | |
|---|---|
| Tracking Number | : NYS5423155 |
| Mailing Date Step 1 | : 19-MAY-21 12.00.00.000 AM |
| Mailing Date Step 2 | : |
| Judgment Date Step 3 | : |
| Filing Date Step 1 | : 19-MAY-21 05.39.22.000 PM |
| Filing Date Step 1 Orig | : 19-MAY-21 05.37.39.000 PM |
| Filing Date Step 2 | : |
| Filing Date Step 3 | : |
| Owner Occupd at Jdgmnt | : |
| Property Type | : 1 to 4 Family Home |
| Property Address | : 2359 Maple Avenue, , Cortlandt Manor, Westchester, NY, 10567, |
| Date of Original Loan | : 19-JAN-07 12.00.00.000 AM |
| Amt of Original Loan | : 104375 |
| Loan Number Step 1 | : 11111111 |
| Loan Number Step 2 | : |
| Loan Reset Frequency | : |
| Loan Type | : Junior Lien |
| Type of Reverse Mortgage | : Not Applicable |
| HUD Approval Status | : Not Applicable |
| Loan Details | : Fixed Rate |
| Loan Term | : 15 Year |
| Loan Modification | : No |
| Days Delinquent | : Other |
| Borrower's Name | : John Sotomayor |
| Address | : 2359 Maple Avenue, Cortlandt Manor, NY 10567 |
| Borrower's Phone No | : 1111111111 |
| Filing Status | : Step 1 Completed |

Sincerely,

New York State Department of Financial Services

**New York State Department of Financial Services**
One State Street Plaza, New York, NY 10004

Proof of Filing Statement

To Whom It May Concern:

Section 1306 of the Real Property Actions and Proceedings Law (RPAPL) requires lenders, assignees or mortgage loan servicers servicing loans on 1-to-4 family residential properties in New York State to file certain information with the Superintendent of the Department Financial Services within three days after the mailing of a 90-Day Pre-Foreclosure Notice.

The information below pertains to a filing submitted to the Department of Financial Services as required in Section 1306 of RPAPL. The information is presented as filed by the lender, assignee or mortgage loan servicer.

**Filer Information:**

| | |
|---|---|
| Name | : Windward Bora, LLC. |
| Address | : 1688 Meridian Avenue, 6th Floor, Miami Beach, FL, 33139, |

**Filing Information:**

| | |
|---|---|
| Tracking Number | : NYS5423155 |
| Mailing Date Step 1 | : 19-MAY-21 12.00.00.000 AM |
| Mailing Date Step 2 | : |
| Judgment Date Step 3 | : |
| Filing Date Step 1 | : 19-MAY-21 05.39.22.000 PM |
| Filing Date Step 1 Orig | : 19-MAY-21 05.37.39.000 PM |
| Filing Date Step 2 | : |
| Filing Date Step 3 | : |
| Owner Occupd at Jdgmnt | : |
| Property Type | : 1 to 4 Family Home |
| Property Address | : 2359 Maple Avenue, , Cortlandt Manor, Westchester, NY, 10567, |
| Date of Original Loan | : 19-JAN-07 12.00.00.000 AM |
| Amt of Original Loan | : 104375 |
| Loan Number Step 1 | : 11111111 |
| Loan Number Step 2 | : |
| Loan Reset Frequency | : |
| Loan Type | : Junior Lien |
| Type of Reverse Mortgage | : Not Applicable |
| HUD Approval Status | : Not Applicable |
| Loan Details | : Fixed Rate |
| Loan Term | : 15 Year |
| Loan Modification | : No |
| Days Delinquent | : Other |
| Borrower's Name | : Alexandra Loaiza |
| Address | : 2359 Maple Avenue, Cortlandt Manor, NY 10567 |
| Borrower's Phone No | : 1111111111 |
| Filing Status | : Step 1 Completed |

Sincerely,
New York State Department of Financial Services

# I

**HASBANI & LIGHT, P.C.**
Rafi Hasbani, Esq.
450 Seventh Avenue, Suite 1408
New York, New York 10123
Tel: (212) 643-6677
Email: rhasbani@hasbanilight.com
*Counsel for Plaintiff Windward Bora, LLC.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WINDWARD BORA LLC,

Case No.:

Plaintiff,

-against-

JOHN SOTOMAYOR, ALEXANDRIA LOAIZA;; AMERICAN EXPRESS CENTURION BANK; MIDLAND FUNDING LLC D/B/A IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC; NEW YORK STATE TAX COMMISSION; CAPITAL ONE BANK (USA), N.A.; “JOHN DOE” and “JANE DOE”;

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF RAFI HASBANI, ESQ. REGARDING COMPLINACE WITH NEW YORK’S COVID-19 EMERGENCY EVICTION AND FORECLOSURE PREVENTION ACTION OF 2020**

I, Rafi Hasbani, declare as follows:

1. I am an attorney of the Bar of this Court and associated with Hasbani & Light, P.C., counsel for the Plaintiff Windward Bora LLC (the “Plaintiff” or “Windward Bora”) in the above-captioned action. I am fully familiar with the facts set forth herein. I am not a party to this action. I submit this Declaration in order to comply with New York’s Covid-19 Emergency Eviction and Foreclosure Prevention Action of 2020 (the “Act”).

2. On May 19, 2021, my office mailed the RPAPL § 1304 notices to John Sotomayor and Alexandria Loaiza. *See* Complaint **Exhibit H**. Contemporaneously with the mailing of the

RPAPL § 1304, my office also mailed the COVID-19 Hardship Declaration with the required instructions for submission. A copy of this mailing with proof of mailing is annexed hereto as **Exhibit A**.

3. As of the date of this Declaration, my office has not received an executed Hardship Declaration from either John Sotomayor and Alexandria Loaiza

Dated: New York, New York
August 25, 2021

**HASBANI & LIGHT, P.C.**

*/s/ Rafi Hasbani*
Rafi Hasbani, Esq.

# A

HASBANI &
LIGHT, P.C.
ATTORNEYS AT LAW

450 Seventh Ave
Suite 1408
New York, NY 10123

May 19, 2021

**VIA FIRST CLASS U.S. MAIL**
John Sotomayor
2359 Maple Avenue
Cortlandt Manor, New York 10567

Alexandra Loaiza
2359 Maple Avenue
Cortlandt Manor, New York 10567

Re: 2359 Maple Avenue, Cortlandt Manor, New York 10567

Dear Mortgagor(s):

This firm represents Windward Bora, LLC. in connection with a Note and Mortgage held by it secured against the above referenced property dated January 19, 2007 in the amount of $104,375.00 given to Wells Fargo Bank, N.A. Enclosed, please find the "Notice to Mortgagor" and "Mortgagor's Declaration of Covid-19-Related Hardship." Please review the Notice. If applicable, please return it to Hasbani & Light P.C. 450 Seventh Avenue, Suite 1408, New York, New York 10123. Alternatively, the form can be returned via email to info@hasbanilight.com

Thank you.

HASBANI & LIGHT, P.C.
*Attorneys for Windward Bora, LLC*

Index Number (if known/applicable): __________________

County and Court (if known/applicable): __________________

# NOTICE TO MORTGAGOR:

If you have lost income or had increased costs during the COVID-19 pandemic, and you sign and deliver this hardship declaration form to your mortgage lender or other foreclosing party, you cannot be foreclosed on until at least August 31, 2021. If your mortgage lender or other foreclosing party provided you with this form, the mortgage lender or other foreclosing party must also provide you with a mailing address and e-mail address to which you can return this form. If you are already in foreclosure proceedings, you may return this form to the court. You should keep a copy or picture of the signed form for your records. You will still owe any unpaid mortgage payments and lawful fees to your lender. You should also keep careful track of what you have paid and any amount you still owe.

# MORTGAGOR'S DECLARATION OF COVID-19-RELATED HARDSHIP

I am the mortgagor of the property at (address of dwelling unit):

____________________________________

Including my primary residence, I own, whether directly or indirectly, ten or fewer residential dwelling units. I am experiencing financial hardship, and I am unable to pay my mortgage in full because of one or more of the following:

1. Significant loss of household income during the COVID-19 pandemic.

2. Increase in necessary out-of-pocket expenses related to performing essential work or related to health impacts during the COVID-19 pandemic.

3. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member during the COVID-19 pandemic have negatively affected my ability or the ability of someone in my household to obtain meaningful employment or earn income or increased my necessary out-of-pocket expenses.

4. Moving expenses and difficulty I have securing alternative housing make it a hardship for me to relocate to another residence during the COVID-19 pandemic.

5. Other circumstances related to the COVID-19 pandemic have negatively affected my ability to obtain meaningful employment or earn income or have significantly reduced my household income or significantly increased my expenses.

6. One or more of my tenants has defaulted on a significant amount of their rent payments since March 1, 2020.

To the extent I have lost household income or had increased expenses, any public assistance, including unemployment insurance, pandemic unemployment assistance, disability insurance, or paid family leave, that I have received since the start of the COVID-19 pandemic does not fully make up for my loss of household income or increased expenses.

I understand that I must comply with all other lawful terms under my mortgage agreement. I further understand that lawful fees, penalties or interest for not having paid my mortgage in full as required by my mortgage agreement may still be charged or collected and may result in a monetary judgment against me. I also understand that my mortgage lender or other foreclosing party may pursue a foreclosure action against me on or after August 31, 2021, if I do not fully repay any missed or partial payments and lawful fees.

Signed: ______________________________

Printed name: ______________________________

Date signed: ______________________________

**NOTICE:** You are signing and submitting this form under penalty of law. That means it is against the law to make a statement on this form that you know is false.

Case 7:21-cv-107[illegible]-CS Document [illegible] Filed [illegible] Page [illegible] of 86

CERTIFIED MAIL

Hasbani & Light, P.C.
450 Fashion Ave, Ste 1408
New York NY 10123-1408

7021 0350 0000 0379 7215

PITNEY BOWES
$4.11 0
US POSTAGE
FIRST-CLASS
026W0004897694
2000015618
ZIP 11901
MAY 19 2021

Alexandria Loaiza
2359 Maple Ave
Cortlandt Manor NY 10567-6209

CERTIFIED MAIL®

Hasbani & Light, P.C.
450 Fashion Ave, Ste 1408
New York NY 10123-1408

7021 0350 0000 0379 7208

PITNEY BOWES
$4.11 0
US POSTAGE
FIRST-CLASS
026W0004897450
2000015618
ZIP 11901
MAY 19 2021

John Sotomayor
2359 Maple Ave
Cortlandt Manor NY 10567-6209

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Alexandria Loaiza
2359 Maple Ave
Cortlandt Manor, NY 10567-6209

9590 9402 5480 9249 3265 49

2. Article Number *(Transfer from service label)*

7021 0350 0000 0379 7215

PS Form 3811, July 2015 PSN 7530-02-000-9053

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature ☐ Agent ☐ Addressee

X

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

John Sotomayor
2359 Maple Ave
Cortlandt Manor, NY 10567-6209

9590 9402 5480 9249 3265 56

2. Article Number *(Transfer from service label)*

7021 0350 0000 0379 7208

PS Form 3811, July 2015 PSN 7530-02-000-9053

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature ☐ Agent ☐ Addressee

X

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
all Restricted Delivery
)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Hasbani & Light, P.C.
450 Fashion Ave, Ste 1408
New York NY 10123-1408

PITNEY BOWES
$0.51 0
US POSTAGE
FIRST-CLASS
026W0004897483
2000015618
ZIP 11901
MAY 19 2021

John Sotomayor
2359 Maple Ave
Cortlandt Manor NY 10567-6209

Hasbani & Light, P.C.
450 Fashion Ave, Ste 1408
New York NY 10123-1408

PITNEY BOWES
$0.51 0
US POSTAGE
FIRST-CLASS
026W0004897483
2000015618
ZIP 11901
MAY 19 2021

Alexandria Loaiza
2359 Maple Ave
Cortlandt Manor NY 10567-6209

STATE OF NEW YORK )
): ss
COUNTY OF NEW YORK )

Stay-Ann Franklin, affirms the truth of the following under the penalty of perjury:

I am over eighteen (18) years of age, I am not a party to this action, and I reside in Queens County in the State of New York. On May 19, 2021, I mailed the within 30-Day Default Notice pursuant to the Mortgage, 90 Day Notices pursuant to RPAPL § 1304 (the "1304 Notices") and the Residential Hardship Declaration Letter by First Class U.S. Mail and Certified U.S. Mail, Return Receipt Requested. I addressed the envelopes for the 30-Day Default Notice, 90 Day Notice, Residential Hardship Declaration Letter to be mailed by using the addresses provided by our client. I placed the 30-Day Default Notice, 90 Day Notice with a list of housing counseling agencies and the Residential Hardship Declaration Letter each into their own addressed envelope and sealed each envelope. I completed the Certified Mail Receipts, and the Return Receipt forms for each envelope, affixed them to their respective envelopes and sealed each envelope. I then affixed proper postage to each envelope utilizing the Pitney Bowes - Send Pro application. Finally, I deposited all of the sealed envelopes in an official depository under exclusive care and custody of the United States Postal Service within the State of New York at the last known address set forth after each name:

Alexandria Loaiza
2359 Maple Ave
Cortlandt Manor, NY 10567

John Sotomayor
2359 Maple Ave
Cortlandt Manor, NY 10567

Dated: June 24, 2021
New York, New York

Stay-Ann Franklin

Signed on this 24th
Day of June, 2021

Notary Public

RAFI HASBANI
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02HA6410141
Qualified in New York County
Commission Expires October 19, 2024

THE STATE OF NEW YORK
UNITED STATES DISTRICT COURT OF FOR THE SOUTHERN DISTRICT

**Index No.: 21cv7161**
**Filed On: 8/26/2021**

## AFFIDAVIT OF SERVICE

**WINDWARD BORA LLC,**

-against-

**JOHN SOTOMAYOR, ET AL.**

STATE OF NY, COUNTY OF : DUTCHESS.: **(Process Server):** RICKY ESPINAL, being duly sworn, deposes and says: I am over the age of 18 years, am not party to this action, and reside in the State of NEW YORK
That on 9/8/21, at 6:45 ~~am~~/pm at 2359 MAPLE AVE., CORTLANDT MANOR, NY 10567 I served the SUMMONS IN A CIVIL ACTION, SPECIAL SUMMONS PURSUANT TO RPAPL § 1320, COMPLAINT, NOTICE PURSUANT TO RPAPL 1303 ON YELLOW COLORED PAPER AND COVID-19 HARDSHIP LETTER AND DECLARATION OF HARDSHIP bearing Index # 21cv7161 and filed date 8/26/2021 upon JOHN SOTOMAYOR,

[ ] **INDIVIDUAL**
by personally delivering a true copy thereof to said recipient, known by deponent to be said person therein.

[ ] **AGENCY / BUSINESS ENTITY**
by delivering thereat ____ true copy(ies) of each to (name)________________,
(capacity)________________, known by deponent to be an authorized agent of the named defendant therein.
Designated under rule ________________ and tendering the required fee (if applicable).

[x] **SUITABLE AGE PERSON**
by delivering a true copy of each to a person of suitable age and discretion, to wit: (name) ALEXANDRIA LOAIZA
(relationship) CO-RESIDENT who verified that the intended recipient actually lives/works at this location.

[ ] **AFFIXING TO DOOR**
by affixing a true copy of each to the door of said premises, which is recipients usual place of abode or employment. Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, having called thereat on these dates and times:
1) ________, at ________ am/pm 2) ________, at ________ am/pm 3) ________, at ________ am/pm
Deponent verified that the Defendant lived/worked at said premises with ________________

[X] **MAILING COPY**
Deponent enclosed a copy of same in a postpaid sealed wrapper marked "personal and confidential" and properly addressed to recipient at the above address and mailed by first class mail [ ( ) and certified mail # ________________ ] by depositing in an official depository under exclusive care and custody of the US Postal Service in the State of NY on (date) 9/10/21.

[X] **DESCRIPTION**
Sex: F; Color: white; Hair: gray; Approx. Age: 55-63; Approx. Height: 5-5'4"; Approx. Weight: 220-260;
Other: glasses

[ ] **WITNESS FEE**
Deponent tendered to the recipient $________ as traveling expenses, witness fee or other statutory fee.

[ ] **MILITARY SERVICE**
Deponent asked the person spoken to whether the recipient is currently on active duty in the US military service or dependent on someone who is currently on active duty in the US military service and was informed that he/she was not.

[ ] **NON-SERVICE**
Deponent could not effect service for the following reasons: (include attempts and reasons for non-service):

DENIEL A RODRIGUEZ
Notary Public, State of New York
No. 01RO6316495
Qualified in Dutchess County
Commission Expires Dec. 15, 2022

Sworn to before me on

RICKY ESPINAL
Signature of Process Server

Hasbani & Light, P.C.
450 Seventh Ave, Suite 1408
NEW YORK, NY 10123
Phone: 646-490-6677
File No. SOTOMAYOR

RETURN TO: Nationwide Court Services, Inc
761 Koehler Avenue, Suite A
Ronkonkoma, NY 11779
Ph: 631-981-4400
(NCS799265)CMH 1085315

THE STATE OF NEW YORK
UNITED STATES DISTRICT COURT OF FOR THE SOUTHERN DISTRICT

Index No.: 21cv7161
Filed On: 8/26/2021

## AFFIDAVIT OF SERVICE

WINDWARD BORA LLC,

-against-

JOHN SOTOMAYOR, ET AL.

STATE OF NY , COUNTY OF : DUTCHESS : (Process Server): RICKY ESPINAL , being duly sworn, deposes and says: I am over the age of 18 years, am not party to this action, and reside in the State of NY . That on 9/8/21 , at 6:45 am/pm at 2369 MAPLE AVE., CORTLANDT MANOR, NY 10567 I served the SUMMONS IN A CIVIL ACTION, SPECIAL SUMMONS PURSUANT TO RPAPL § 1320, COMPLAINT, NOTICE PURSUANT TO RPAPL 1303 ON YELLOW COLORED PAPER AND COVID-19 HARDSHIP LETTER AND DECLARATION OF HARDSHIP bearing Index # 21cv7161 and filed date 8/26/2021 upon ALEXANDRIA LOAIZA.

[x] **INDIVIDUAL**
by personally delivering a true copy thereof to said recipient, known by deponent to be said person therein

[ ] **AGENCY / BUSINESS ENTITY**
by delivering thereat _____ true copy(ies) of each to (name)________________________ (capacity)________________________, known by deponent to be an authorized agent of the named defendant therein. Designated under rule ________________________ and tendering the required fee (if applicable).

[ ] **SUITABLE AGE PERSON**
by delivering a true copy of each to a person of suitable age and discretion, to wit: (name)________________________ (relationship)________________________ who verified that the intended recipient actually lives/works at this location.

[ ] **AFFIXING TO DOOR**
by affixing a true copy of each to the door of said premises, which is recipients usual place of abode or employment. Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, having called thereat on these dates and times: 1) ____________, at __________ am/pm 2) ____________, at __________ am/pm 3) ____________, at __________ am/pm
Deponent verified that the Defendant lived/worked at said premises with ________________________.

[ ] **MAILING COPY**
Deponent enclosed a copy of same in a postpaid sealed wrapper marked "personal and confidential" and properly addressed to recipient at the above address and mailed by first class mail [ ( ) and certified mail # ________________________ ] by depositing in an official depository under exclusive care and custody of the US Postal Service in the State of ________ on (date) ____________

[x] **DESCRIPTION**
Sex: F ; Color: WHITE ; Hair: GRAY ; Approx. Age: 55-63 ; Approx. Height: 5-5'4" ; Approx. Weight: 220-260 ;
Other: GLASSES

[ ] **WITNESS FEE**
Deponent tendered to the recipient $____________ as traveling expenses, witness fee or other statutory fee.

[x] **MILITARY SERVICE**
Deponent asked the person spoken to whether the recipient is currently on active duty in the US military service or dependent on someone who is currently on active duty in the US military service and was informed that he/she was not.

[ ] **NON-SERVICE**
Deponent could not effect service for the following reasons: (include attempts and reasons for non-service):

DENIEL A RODRIGUEZ
Notary Public, State of New York
No. 01RO6316495
Qualified in Dutchess County
Commission Expires Dec. 15, 20 22

Sworn to before me on

RICKY ESPINAL
Signature of Process Server

Hasbani & Light, P.C.
450 Seventh Ave, Suite 1408
NEW YORK,NY 10123
Phone: 646-490-6677
File No. SOTOMAYOR

RETURN TO: Nationwide Court Services, Inc
761 Koehler Avenue, Suite A
Ronkonkoma, NY 11779
Ph. 631-981-4400
(NCS799265)CMH 1085317>

THE STATE OF NEW YORK
UNITED STATES DISTRICT COURT OF FOR THE SOUTHERN DISTRICT

**Index No.: 21cv7161**
**Filed On: 8/26/2021**

**WINDWARD BORA LLC,**

-against-

**JOHN SOTOMAYOR, ET AL.**

**Affidavit of Service**
**BUSINESS / AGENCY**

STATE OF NEW YORK, COUNTY OF NEW YORK: Andrew Amill, being duly sworn, deposes and says that deponent is not party to this action, is over 18 years of age and resides in the State of New York.

That on 9/7/2021 at 11:34 AM at 28 LIBERY STREET, 42ND FLOOR, NEW YORK, NY 10005 your deponent served the SUMMONS IN A CIVIL ACTION, SPECIAL SUMMONS PURSUANT TO RPAPL § 1320, COMPLAINT, NOTICE PURSUANT TO RPAPL 1303 ON YELLOW COLORED PAPER AND COVID-19 HARDSHKP LETTER AND DECLARATION OF HARDSHIP bearing Index # 21cv7161 and filed date 8/26/2021 upon AMERICAN EXPRESS CENTURION BANK C/O CT CORPORATION, by delivering a true copy to CHRISTOPHER BOYD, INTAKE SPECIALIST. Your deponent knew the person so served to be an agent authorized to accept on behalf of the entity to be served.

Your deponent describes the person so served to the best of deponent's ability at the time and circumstances of service as follows:

Gender: Male
Skin Color: Brown
Hair Color: Bald
Approximate Age: 38 - 42
Approximate Height: 5ft 8in - 6ft 0in
Approximate Weight: 220 - 230

During service of the documents, your deponent has adhered to current CDC and NYS Department of Health Guidelines.

Sworn to before me on 9/9/2021:

LAURANCE KNOX
Notary Public, State of New York
No. 01KN6309229
Qualified in QUEENS County
Commission Expires 08/04/2022

Andrew Amill
NYC License # - 2088353

Hasbani & Light, P.C.
450 Seventh Ave, Suite 1408
NEW YORK, NY 10123
Phone: 646-490-6677
File No. SOTOMAYOR

RETURN TO: Nationwide Court Services, Inc.
761 Koehler Avenue, Suite A
Ronkonkoma, NY 11779
Agency DCA License#: 1037536 Ph: 631-981-4400
(NCS799265)CMH 1085319

THE STATE OF NEW YORK
UNITED STATES DISTRICT COURT OF FOR THE SOUTHERN DISTRICT

**Index No.: 21cv7161**
**Filed On: 8/26/2021**

**WINDWARD BORA LLC,**

-against-

**JOHN SOTOMAYOR, ET AL.**

**Affidavit of Service**
**BUSINESS / AGENCY**

STATE OF NEW YORK, COUNTY OF SUFFOLK: TIM O'DONNELL, being duly sworn, deposes and says that deponent is not party to this action, is over 18 years of age and resides in the State of New York.

That on 9/7/2021 at 2:59 PM at 80 STATE STREET, ALBANY, NY 12207 your deponent served the SUMMONS IN A CIVIL ACTION, SPECIAL SUMMONS PURSUANT TO RPAPL § 1320, COMPLAINT, NOTICE PURSUANT TO RPAPL 1303 ON YELLOW COLORED PAPER AND COVID-19 HARDSHKP LETTER AND DECLARATION OF HARDSHIP bearing Index # 21cv7161 and filed date 8/26/2021 upon MIDLAND FUNDING LLC C/O CORPORATION SERVICE COMPANY, by delivering a true copy to Jane Doe - Name Refused, Legal Representative. Your deponent knew the person so served to be an agent authorized to accept on behalf of the entity to be served.

Your deponent describes the person so served to the best of deponent's ability at the time and circumstances of service as follows:

Gender: Female
Skin Color: White
Hair Color: Gray
Approximate Age: 53 - 57
Approximate Height: 5ft 5in - 5ft 9in
Approximate Weight: 150 - 160

During service of the documents, your deponent has adhered to current CDC and NYS Department of Health Guidelines.

Sworn to before me on 9/8/2021:

**ALEX ZAMBRANO**
**Notary Public, State of New York**
**No. 01ZA6184258**
**Qualified in SUFFOLK County**
**Commission Expires 03/31/2024**

TIM O'DONNELL

**Hasbani & Light, P.C.**
**450 Seventh Ave, Suite 1408**
**NEW YORK,NY 10123**
**Phone: 646-490-6677**
**File No. SOTOMAYOR**

RETURN TO: Nationwide Court Services, Inc
761 Koehler Avenue, Suite A
Ronkonkoma, NY 11779
Ph: 631-981-4400
(NCS799265)CMH 1085321

THE STATE OF NEW YORK
UNITED STATES DISTRICT COURT OF FOR THE SOUTHERN DISTRICT

Index No.: 21cv7161
Filed On: 8/26/2021

**AFFIDAVIT OF SERVICE**

**WINDWARD BORA LLC,**

-against-

**JOHN SOTOMAYOR, ET AL.**

STATE OF VA, COUNTY OF : York : (Process Server): Michael McWhorter, being duly sworn, deposes and says: I am over the age of 18 years, am not party to this action, and reside in the State of VA. That on 9-10-21, at 10:25 am/pm at 100 SHOCKOE SLIP, RICHMOND, VA 23219 I served the SUMMONS IN A CIVIL ACTION, SPECIAL SUMMONS PURSUANT TO RPAPL § 1320, COMPLAINT, NOTICE PURSUANT TO RPAPL 1303 ON YELLOW COLORED PAPER AND COVID-19 HARDSHKP LETTER AND DECLARATION OF HARDSHIP bearing Index # 21cv7161 and filed date 8/26/2021 upon CAPITAL ONE BANK (USA), N.A.,

[ ] **INDIVIDUAL**
by personally delivering a true copy thereof to said recipient, known by deponent to be said person therein.

[✓] **AGENCY / BUSINESS ENTITY**
by delivering thereat 1 true copy(ies) of each to (name) Kevin Nordquist, (capacity) Auth Recipient, known by deponent to be an authorized agent of the named defendant therein. Designated under rule ____________ and tendering the required fee (if applicable).

[ ] **SUITABLE AGE PERSON**
by delivering a true copy of each to a person of suitable age and discretion, to wit: (name)____________ (relationship)____________ who verified that the intended recipient actually lives/works at this location.

[ ] **AFFIXING TO DOOR**
by affixing a true copy of each to the door of said premises, which is recipients usual place of abode or employment. Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, having called thereat on these dates and times: 1) ________, at ________ am/pm 2) ________, at ________ am/pm 3) ________, at ________ am/pm
Deponent verified that the Defendant lived/worked at said premises with ____________.

[ ] **MAILING COPY**
Deponent enclosed a copy of same in a postpaid sealed wrapper marked "personal and confidential" and properly addressed to recipient at the above address and mailed by first class mail [ ( ) and certified mail # ____________ ] by depositing in an official depository under exclusive care and custody of the US Postal Service in the State of ________ on (date) ________.

[✓] **DESCRIPTION**
Sex: F; Color: W; Hair: Blk; Approx. Age: 45-55 Approx. Height: 5'8"; Approx. Weight: 195;
Other: ____________

[ ] **WITNESS FEE**
Deponent tendered to the recipient $________ as traveling expenses, witness fee or other statutory fee.

[✓] **MILITARY SERVICE**
Deponent asked the person spoken to whether the recipient is currently on active duty in the US military service or dependent on someone who is currently on active duty in the US military service and was informed that he/she was not.

[ ] **NON-SERVICE**
Deponent could not effect service for the following reasons: (include attempts and reasons for non-service):

Sworn to before me on : 9-14-21

[signature]

[signature]
Signature of Process Server

Haspani & Light, P.C.
450 Seventh Ave, Suite 1408
NEW YORK, NY 10123
Phone: 646-490-6677
File No. SOTOMAYOR

JEKESIA K. JEFFERSON
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES ... 2023
Registration No. ...

RETURN TO: Nationwide Court Services, Inc
761 Koehler Avenue, Suite A
Ronkonkoma, NY 11779
Ph: 631-981-4400
(NCS799265)CMH 1085324>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Windward Bora LLC,

Plaintiff,

-against-

John Sotomayor, Alexandria Loaiza; American Express Centurion Bank; Midland Funding LLC D/B/A In New York As Midland Funding Of Delaware, LLC; Capital One Bank (USA), N.A.; "John Doe" and "Jane Doe",

Defendants.

Case No. 7:21-cv-07161-CS

**VERIFIED ANSWER WITH COUNTERCLAIMS**

Defendants JOHN SOTOMAYOR and ALEXANDRIA LOAIZA (the "Defendants") by and through their attorneys, Petroff Amshen LLP, now answer Plaintiff's Complaint against them as follows:

## NATURE OF THE ACTION

1. Defendants admit the allegations contained in paragraph 1.

2. Defendants admit the allegations contained in paragraph 2.

## PARTIES

3. Defendants are without sufficient information and/or knowledge to respond to the allegations contained in paragraph 3.

4. Defendants admit that John Sotomayor is a resident of 2359 Maple Avenue, Cortlandt Manor, New York 10537, but deny the remainder of the allegations contained in paragraph 4.

5. Defendants admit that Alexandria Loaiza is a resident of 2359 Maple Avenue, Cortlandt Manor, New York 10537, but deny the remainder of the allegations contained in paragraph 5.

6. Defendants are without sufficient information and/or knowledge to respond to the allegations contained in paragraph 6.

7. Defendants are without sufficient information and/or knowledge to respond to the allegations contained in paragraph 7.

8. Defendants are without sufficient information and/or knowledge to respond to the allegations contained in paragraph 8.

9. Defendants are without sufficient information and/or knowledge to respond to the allegations contained in paragraph 9.

10. Defendants are without sufficient information and/or knowledge to respond to the allegations contained in paragraph 10.

## JURISDICTION AND VENUE

11. Paragraph 11 contains a legal conclusion to which no response is required. However, to the extent that a response is required, Defendants are without sufficient information and/or knowledge to respond to the allegations contained in paragraph 11.

12. Paragraph 12 contains a legal conclusion to which no response is required. However, to the extent that a response is required, Defendants are without sufficient information and/or knowledge to respond to the allegations contained in paragraph 12.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

13. Defendants deny the allegations contained in paragraph 13.

14. Defendants deny the allegations contained in paragraph 14.

15. Defendants deny the allegations contained in paragraph 15.

16. Defendants deny the allegations contained in paragraph 16.

17. Defendants deny the allegations contained in paragraph 17.

18. Defendants deny the allegations contained in paragraph 18.

19. Defendants deny the allegations contained in paragraph 19.

20. Defendants deny the allegations contained in paragraph 20.

21. Defendants deny the allegations contained in paragraph 21.

22. Defendants admit the allegations contained in paragraph 22.

23. Defendants deny the allegations contained in paragraph 23.

24. Defendants deny the allegations contained in paragraph 24.

25. Defendants admit the allegations contained in paragraph 25.

26. Defendants deny the allegations contained in paragraph 26.

27. Defendants admit the allegations contained in paragraph 27.

28. Defendants are without sufficient information and/or knowledge to respond to the allegations contained in paragraph 28.

**AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION**

29. Defendants deny the allegations contained in paragraph 29.

30. Defendants deny that Plaintiff is entitled to any of the relief sought against her in the WHEREFORE paragraph.

**FIRST AFFIRMATIVE DEFENSE**
**FAILURE TO STATE A CAUSE OF ACTION**

31. The Complaint fails to state of a cause of action upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**
**CONDITION PRECEDENT IN MORTGAGE**

32. Plaintiff failed to send Defendant the required written notice pursuant to paragraph 21 of the mortgage.

33. If properly sent, the notice pursuant to paragraph 21 of the mortgage is defective on its face, as it fails to strictly comply with the requirements of the mortgage.

**THIRD AFFIRMATIVE DEFENSE**
**RPAPL § 1304**

34. Plaintiff failed to properly serve the notice required by Real Property Actions and Proceedings Law § 1304.

35. If properly served, the content of the notice does not comply with the requirements of Real Property Actions and Proceedings Law § 1304.

**FOURTH AFFIRMATIVE DEFENSE**
**RPAPL § 1320**

36. Plaintiff failed to properly serve the notice required by Real Property Actions and Proceedings Law § 1320.

**FIFTH AFFIRMATIVE DEFENSE**
**RPAPL § 1303**

37. Plaintiff failed to properly serve the notice required by Real Property Actions and Proceedings Law § 1303.

**SEVENTH AFFIRMATIVE DEFENSE**
**STANDING**

38. Plaintiff lacks standing to foreclose the subject mortgage because it cannot demonstrate that it was in possession of the subject note and mortgage at the time this action was commenced and/or that the subject note and mortgage were duly assigned to it.

**EIGHTH AFFIRMATIVE DEFENSE**
**STATUTE OF LIMITATIONS**

39. The causes of action stated on behalf of the Plaintiff in the Complaint are barred by the applicable Statute of Limitations.

**NINTH AFFIRMATIVE DEFENSE**
**RPAPL § 1306**

40. Plaintiff failed to properly file the notice required by Real Property Actions and Proceedings Law § 1306.

**TENTH AFFIRMATIVE DEFENSE**
**STATUTE OF FRAUDS**

41. The Statute of Frauds applies to invalidate any and all transfers of the mortgage and/or note that were not duly memorialized in writing and executed at the time of the transfers.

**ELEVENTH AFFIRMATIVE DEFENSE**
**LACHES**

42. The Complaint, and each and every alleged cause of action therein, are barred, in whole or in part, by the equitable doctrine of laches.

**TWELFTH AFFIRMATIVE DEFENSE**
**WAIVER**

43. The Complaint, and each and every alleged cause of action therein, are barred by the doctrine of waiver.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**RES JUDICATA**

44. The Complaint, and each and every alleged cause of action therein, are barred by the doctrines of res judicata and/or collateral estoppel.

**<u>DEFENDANTS' FIRST COUNTERCLAIM</u>**
**RPAPL 15 – Quiet Title**

45. This counterclaim is brought pursuant to Article 15 of the New York Real Property Actions and Proceedings Law ("RPAPL") to compel determination of claims to the premises located at 2359 Maple Avenue, Cortlandt Manor, New York 104567 (the "Premises").

46. More specifically, Defendants seek the cancellation and discharge of a mortgage recorded against the Premises, pursuant to RPAPL § 1501(4).

47. On or about February 22, 2007, a mortgage in the amount of $104,375.00 in favor of Wells Fargo Bank, N.A., dated January 19, 2007, was recorded by the Westchester County Clerk's office as a lien against the Premises.

48. On December 31, 2013, Plaintiff's predecessor accelerated said mortgage via the commencement of a foreclosure action in Westchester County Supreme Court, entitled Partners For Payment Relief De II LLC v. John Sotomayor, Alexandra Loaiza, et al., Index Number 70725/2013.

49. Pursuant to New York law, the applicable statute of limitations period within which to commence an action to foreclose a mortgage is six (6) years.

50. It has now been more than six (6) years since Plaintiff (and/or its predecessors-in-interest) first accelerated the Mortgage.

51. The applicable statute of limitations has already expired and, therefore, Plaintiff is now barred from commencing the instant action to foreclose on the aforementioned mortgage.

52. By reason of the foregoing, Defendants have a claim of interest in the subject Premises that is superior to that asserted by Plaintiff and/or any persons or entities claiming under and/or acting in concert with Plaintiff.

53. Moreover, any estate, ownership interest, or claim that Plaintiff, and/or any persons

or entities claiming under and/or acting in concert with Plaintiff, ever had or may claim to have had in the Premises or in any part thereof is null, void, and of no force and effect.

54. Upon information and belief, Plaintiff is not unknown, an infant, mentally retarded, mentally ill, or an alcohol abuser.

55. Upon information and belief, no judgment granted herein will affect any person or persons not in being or ascertained at the commencement of this action, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the Premises, and every person in being who would have been entitled to such estate or interest, if such event had happened immediately before the commencement of the action, is named as a party hereto.

56. Therefore, Defendants are entitled to judgment declaring the mortgage and the note which it secures to be null, void, and unenforceable

**DEFENDANTS' SECOND COUNTERCLAIM**
**N.Y. R.P.L. § 282**

57. New York Real Property Law ("RPL") §282 provides that "[w]henever a covenant contained in a mortgage on residential real property shall provide that in any action or proceeding to foreclose the mortgage that the mortgagee may recover attorneys' fees and/or expenses incurred as the result of the failure of the mortgagor to perform any covenant or agreement contained in such mortgage, or that amounts paid by the mortgagee therefor shall be paid by the mortgagor as additional payment, there shall be implied in such mortgage a covenant by the mortgagee to pay to the mortgagor the reasonable attorneys' fees and/or expenses incurred by the mortgagor as the result of the failure of the mortgagee to perform any covenant or agreement on its part to be performed under the mortgage or in the successful defense of any action or proceeding commenced by the mortgagee against the mortgagor arising out of the contract, and an agreement that such

Case 7:21-cv-07161-CS Document 53 Filed 07/08/22 Page 8 of 10

fees and expenses may be recovered as provided by law in an action commenced against the mortgagee or by way of counterclaim in any action or proceeding commenced by the mortgagee against the mortgagor."

58. Upon information and belief, RPL §282 applies to this action involving a mortgage on residential real property, as well as a prior action commenced in this Court under Case Number 7:19-cv-04503-CS, wherein Defendants were meritorious in their defense against Plaintiff.

59. Upon information and belief, the mortgage referred to in Plaintiff's complaint contains a covenant that provides for recovery of attorneys' fees and/or expenses incurred as the result of the failure of the mortgagor to perform any covenant or agreement contained in such mortgage.

60. Therefore, Defendants are entitled to attorneys' fees.

**WHEREFORE,** Defendants pray to this court for:

a. Judgment dismissing Plaintiff's Complaint.

b. Judgment granting Defendants' Counterclaims.

c. Judgment granting any such further relief to which they may be entitled.

Dated: September 3, 2021
Brooklyn, New York

By: */s/ Steven Amshen*
Steven Amshen, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Windward Bora LLC,<br><br>Plaintiff,<br><br>-against-<br><br>John Sotomayor, Alexandria Loaiza; American Express Centurion Bank; Midland Funding LLC D/B/A In New York As Midland Funding Of Delaware, LLC; Capital One Bank (USA), N.A.; "John Doe" and "Jane Doe",<br><br>Defendants. | Case No. 7:21-cv-07161-CS<br><br>**INDIVIDUAL VERIFICATION** |

STATE OF NEW YORK
COUNTY OF Westchester

ALEXANDRIA LOAIZA, being duly sworn, deposes and says:

That I am the Defendant in this action.

I have read the foregoing Verified Answer With Counterclaims and know the contents thereof and the same is true to the best of my knowledge, except as to those matters herein stated to be alleged upon information and belief and that as to those matters, I believe them to be true.

X [signature]
ALEXANDRIA LOAIZA

Sworn to before me this
7th day of September, 2021

[signature]
NOTARY PUBLIC

CHERYL ANNE MORREALE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MO6350937
Qualified in Westchester County
My Commission Expires 11-21-2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Windward Bora LLC,

Plaintiff,

-against-

John Sotomayor, Alexandria Loaiza; American Express Centurion Bank; Midland Funding LLC D/B/A In New York As Midland Funding Of Delaware, LLC; Capital One Bank (USA), N.A.; "John Doe" and "Jane Doe",

Defendants.

Case No. 7:21-cv-07161-CS

**INDIVIDUAL VERIFICATION**

STATE OF NEW YORK
COUNTY OF Westchester

JOHN SOTOMAYOR, being duly sworn, deposes and says:

That I am the Defendant in this action.

I have read the foregoing Verified Answer With Counterclaims and know the contents thereof and the same is true to the best of my knowledge, except as to those matters herein stated to be alleged upon information and belief and that as to those matters, I believe them to be true.

X [signature]
JOHN SOTOMAYOR

Sworn to before me this
7th day of September, 2021

[signature]
NOTARY PUBLIC

CHERYL ANNE MORREALE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MO6350937
Qualified in Westchester County
My Commission Expires 11-21-2024

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

WINDWARD BORA, LLC

**Plaintiff(s),**

**- against -**

JOHN SOTOMAYOR, ALEXANDRIA LOAIZA;

**Defendant(s),**

------------------------------------------------------------X

21 **Civ.** 07161 (CS)

**CLERK'S CERTIFICATE OF DEFAULT**

**I, RUBY J. KRAJICK, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action was commenced on** 8/25/2021 **with the filing of a summons and complaint, a copy of the summons and complaint was served on defendant(s)** AMERICAN EXPRESS CENTURION BANK **by personally serving** CT Corporation - Christopher Boyd, Intake Specialist**,** ***and proof of service was therefore filed on*** 9/13/2021***, Doc. #(s)*** 23**.**

**I further certify that the docket entries indicate that the defendant(s) has not filed an answer or otherwise moved with respect to the complaint herein. The default of the defendant(s) is/are hereby noted.**

**Dated: New York, New York**

October 27**, 20**21

**RUBY J. KRAJICK**
**Clerk of Court**

**By:** K. Mango
**Deputy Clerk**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

WINDWARD BORA, LLC,

**Plaintiff(s),**

**- against -**

JOHN SOTOMAYOR, ALEXANDRIA LOAIZA;

**Defendant(s),**
-----------------------------------------------------------X

21 **Civ.** 07161 (CS)

**CLERK'S CERTIFICATE OF DEFAULT**

**I, RUBY J. KRAJICK, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action was commenced on** 8/25/2021 **with the filing of a summons and complaint, a copy of the summons and complaint was served on defendant(s)** MIDLAND FUNDING LLC D/B/A IN NEW YORK A **by personally serving** Corporation Service Company - Jane Doe, Legal Representative**,** ***and proof of service was therefore filed on*** 9/13/2021***, Doc. #(s)*** 24**.**

**I further certify that the docket entries indicate that the defendant(s) has not filed an answer or otherwise moved with respect to the complaint herein. The default of the defendant(s) is/are hereby noted.**

**Dated: New York, New York**

October 27, **20**21

**RUBY J. KRAJICK**
**Clerk of Court**

**By:** K. Mango
**Deputy Clerk**

SDNY Web 3/2015

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

WINDWARD BORA, LLC,

**Plaintiff(s),**

**- against -**

JOHN SOTOMAYOR, ALEXANDRIA LOAIZA;

**Defendant(s),**
-----------------------------------------------------------X

21 **Civ.** 07161 (CS)

**CLERK'S CERTIFICATE OF DEFAULT**

**I, RUBY J. KRAJICK, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action was commenced on** 8/25/2021 **with the filing of a summons and complaint, a copy of the summons and complaint was served on defendant(s)** CAPITAL ONE BANK (USA), N.A. **by personally serving** Rene Nordquist - Authorized Recipient**,** ***and proof of service was therefore filed on*** 9/17/2021***, Doc. #(s)*** 26**.** **I further certify that the docket entries indicate that the defendant(s) has not filed an answer or otherwise moved with respect to the complaint herein. The default of the defendant(s) is/are hereby noted.**

**Dated: New York, New York**

October 27**, 20**21

**RUBY J. KRAJICK**
**Clerk of Court**

**By:** K. Mango
**Deputy Clerk**

**HASBANI & LIGHT, P.C.**
Seth D. Weinberg, Esq.
450 Seventh Avenue, Suite 1408
New York, New York 10123
Tel: (212) 643-6677
Email: sweinberg@hasbanilight.com
*Counsel for Plaintiff Windward Bora, LLC.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WINDWARD BORA LLC, Case No.: 7:21-cv-07161-CS
Plaintiff,

-against -

JOHN SOTOMAYOR, ALEXANDRIA LOAIZA; AMERICAN EXPRESS CENTURION BANK; MIDLAND FUNDING LLC D/B/A IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC; CAPITAL ONE BANK (USA), N.A.; "JOHN DOE" and "JANE DOE";
Defendants.
-------------------------------------------------------------------X

**NOTICE OF DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(i)**

Pursuant to F.R.C.P. 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff Windward Bora, LLC and/or their counsel, hereby give notice that the above captioned action is voluntarily dismissed as to the defendants "John Doe" and "Jane Doe."

Dated: New York, New York
September 23, 2021

**HASBANI & LIGHT, P.C.**

*/s/ Seth D. Weinberg*
Seth D. Weinberg, Esq.

**HASBANI & LIGHT, P.C.**
Rafi Hasbani, Esq.
450 Seventh Avenue, Suite 1408
New York, New York 10123
Tel: (212) 643-6677
Email: rhasbani@hasbanilight.com
*Counsel for Plaintiff Windward Bora, LLC.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WINDWARD BORA LLC, Case No.:

Plaintiff,

-against -

JOHN SOTOMAYOR, ALEXANDRIA LOAIZA; AMERICAN EXPRESS CENTURION BANK; MIDLAND FUNDING LLC D/B/A IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC; CAPITAL ONE BANK (USA), N.A.; "JOHN DOE" and "JANE DOE";

Defendants.
------------------------------------------------------------------X

**NOTICE OF PENDENCY**

**NOTICE IS HEREBY GIVEN** that an action was commenced by the filing of the Complaint on August 25, 2021 and is still pending in this Court upon the complaint of Plaintiff against the above named Defendants pursuant to RPAPL § 1301 to foreclose on a mortgage encumbering the property commonly known as 2359 Maple Avenue, Cortlandt Manor, New York 10567, known on the Westchester County Tax Map as Section: 45.10 Block: 3 Lot: 5 in the County of Westchester, and State of New York (the "Property").

**AND NOTICE IS FURTHER GIVEN**, that the premises affected by this foreclosure action, at the commencement of said action, and at the time of filing this notice is located at 2359 Maple Avenue, Cortlandt Manor, New York 10567 (Section: 45.10 Block: 3 Lot: 5) and are

described in said mortgage in the manner set forth in **Exhibit A** annexed hereto and made a part hereof.

To the Clerk of the County of Westchester: You are hereby directed to index the within Notice of Pendency of Action to the name(s) of the Defendants herein and the Premises described herein.

Dated: August 25, 2021
New York, New York

*/s/ Rafi Hasbani*
Rafi Hasbani, Esq.

# A

# NATIONWIDE COURT SERVICES, INC

**TITLE NO. FC21-HL005**

## SCHEDULE A

## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land situate, lying and being in the Town of Cortlandt, County of Westchester, and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Maple Avenue, North 59 degrees 33 minutes 30 seconds West 291.78 feet, North 51 degrees 21 minutes 20 seconds West 78.31 feet, and North 47 degrees 46 minutes 40 seconds West 39.11 feet from a point on the southerly side of Maple Avenue where the same is intersected by the westerly line of lands shown on map of "Dickerson Mountain Est.," filed in the Westchester County Clerk's Office, Division of Land Records, as Map No. 3763;

RUNNING THENCE from said point along lands now or formerly of Paul and Paulette Rosenzweig the following courses and distances: South 54 degrees 54 minutes 30 seconds West 41.59 feet; South 53 degrees 36 minutes 00 seconds West 48.70 feet, South 15 degrees 53 minutes 30 seconds West 36.78 feet, South 21 degrees 39 minutes, 20 seconds East 44.36 feet, South 06 degrees, 30 minutes 00 seconds West 51.08 feet, and South 08 degrees 35 minutes 40 seconds East 101.58 feet to a point;

THENCE continuing along lands of Rosenzweig North 66 degrees 56 minutes 00 seconds West 110.00 feet to a point on the easterly side of Furnace Dock Road;

RUNNING THENCE along the easterly side of Furnace Dock Road the following courses and distances: North 23 degrees 09 minutes 30 seconds East 22.49 feet, North 15 degrees 08 minutes 00 seconds East 38.27 feet, North 02 degrees 49 minutes 00 seconds West 18.53 feet, North 22 degrees 52 minutes, 40 seconds West 76.31 feet, North 23 degrees 11 minutes 30 seconds West 51.47 feet, North 21 degrees 51 minutes 30 seconds West 34.00 feet, North 7 degrees 50 minutes 10 seconds West 121.33 feet, North 49 degrees 01 minutes 30 seconds East 22.97 feet, and South 78 degrees 57 minutes, 00 seconds East 12.26 feet to a point on the southerly side of Maple Avenue;

THENCE running along the southerly side of Maple Avenue the following courses and distances; South 52 degrees 49 minutes 00 seconds East 19.87 feet, South 56 degrees 44 minutes 20 seconds East 100.17 feet, South 62 degrees 48 minutes 00 seconds East 62.34 feet, and South 54 degrees 35 minutes 50 seconds East 43.60 feet to the point or place of BEGINNING.

| | |
|---|---|
| FOR INFORMATION ONLY<br>Premises also known as: | 2359 Maple Avenue<br>Cortlandt Manor NY 10567 |
| Section:45.10 Block:3 Lot:5 | |
| County of: | Westchester |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------------X

PARTNERS FOR PAYMENT RELIEF DE II, LLC,

Plaintiff,

-against-

JOHN SOTOMAYOR; ALEXANDRA LOAIZA; AMERICAN EXPRESS CENTURION BANK; MIDLAND FUNDING LLC; "JOHN DOE #1" through "JOHN DOE #12", said names being fictitious, parties intended being possible tenants or occupants of premises, and corporations, other entities or persons who claim, or may claim, a lien against the premises,

Defendants.

-----------------------------------------------------------------------X

INDEX NO:
D/O/F:

SUMMONS
Premises Address:
2359 Maple Avenue,
Cortlandt, NY 10567

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiff's Attorneys within twenty (20) days after service of this Summons, exclusive of the day of service, where service is made by delivery upon you personally within the State, or within thirty (30) days after completion of service where service is made in any other manner, and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

**NOTICE**
**YOU ARE IN DANGER OF LOSING YOUR HOME**

**If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home.**

**Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property.**

**Sending a payment to your mortgage company will not stop this foreclosure action.**

**YOUR MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.**

The following notice is intended only for the defendants who are owners of the premises sought to be foreclosed or who are liable upon the debt for which the mortgage stands as security.

**YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

TO THE DEFENDANTS, except JOHN SOTOMAYOR: The Plaintiff makes no personal claim against you in this action.

TO THE DEFENDANTS: JOHN SOTOMAYOR: If you have obtained an order of discharge from the Bankruptcy court, which includes this debt, and you have not reaffirmed your liability for this debt, this law firm is not alleging that you have any personal liability for this debt and does not seek a money judgment against you. Even if a discharge has been obtained, this lawsuit to foreclose the mortgage will continue and we will seek a judgment authorizing the sale of the mortgaged premises.

Dated: December 20, 2013

Alan H. Weinreb, Esq.
THE MARGOLIN & WEINREB LAW GROUP, LLP
Attorneys for Plaintiff
165 Eileen Way, Suite 101
Syosset, New York 11791
516-945-6055

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---------------------------------------------------------------X

PARTNERS FOR PAYMENT RELIEF DE II, LLC,

Plaintiff,

-against-

JOHN SOTOMAYOR; ALEXANDRA LOAIZA; AMERICAN EXPRESS CENTURION BANK; MIDLAND FUNDING LLC; "JOHN DOE #1" through "JOHN DOE #12", said names being fictitious, parties intended being possible tenants or occupants of premises, and corporations, other entities or persons who claim, or may claim, a lien against the premises,

Defendants.

---------------------------------------------------------------X

INDEX NO:
D/O/F:

VERIFIED COMPLAINT
Premises Address:
2359 Maple Avenue,
Cortlandt Manor, NY 10567

Plaintiff, by its attorney, THE MARGOLIN & WEINREB LAW GROUP, LLP, complaining of the Defendant(s) alleges, upon information and belief as follows:

1. At all times hereinafter mentioned, plaintiff was and still is duly organized and existing under the laws of the United States of America.

2. At all times hereinafter mentioned, the defendants were, and still are, residents, corporations and/or bodies politics, duly authorized to reside and/or exist in and under the laws of New York State.

3. On or about January 19, 2007, JOHN SOTOMAYOR executed and delivered to Wells Fargo Bank, N.A., a certain note bearing date that day, whereby JOHN SOTOMAYOR covenanted and agreed to pay the sum of $104, 375.00, with interest on the unpaid balance thereof, to be computed from the date of said note, at a rate in accordance with the aforesaid instrument, with the rate being 9.500% per cent per annum by payments of $881.64 on March 5, 2007 and thereafter in payments of $881.64 on the like date of each subsequent month until said note is fully paid, except that the final payment of principal and interest remaining due, if not sooner paid, shall become due and payable on February 5, 2022.

4. Plaintiff (a) is the owner and holder of the subject mortgage and note, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note; and

(b) has complied with all the provisions of section five hundred ninety-five-a of the

Banking Law and any rules and regulations promulgated thereunder, section six-L or six-M of the Banking Law, and

(c) is in compliance with sending the ninety (90) day notice as required by RPAPL §1304.

(d) is in compliance with RPAPL §1306, if applicable.

5. As collateral security for the payment of said indebtedness, the aforesaid defendants JOHN SOTOMAYOR and ALEXANDRA LOAZIA, also executed, acknowledged and delivered to WELLS FARGO BANK, N.A., a mortgage dated January 19, 2007 and recorded in the Office of the Clerk of the County of Westchester on February 22, 2007 in Control number: 470370694. The mortgage tax was duly paid. Said mortgage was duly assigned to the Plaintiff by assignment of mortgage dated May 24, 2010 and recorded on August 6, 2013, in Control number: 532173396.

Said mortgaged premises being known as and by street address: 2359 Maple Avenue, Cortlandt Manor, NY 10567.
SECTION: 45.10 BLOCK: 3 LOT: 5

which premises are more fully described in Schedule "A", annexed hereto and made a part hereof.

6. Said premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

7. That the Mortgagors, their successors, assigns and/or transferees, have failed to comply with the terms and conditions of said above named instrument[s] by failing or omitting to pay the installment which became due and payable as of December 5, 2008 and also by failing or omitting to pay the installment which became due and payable each and every month thereafter, to the date hereof, although duly demanded.

8. That the terms of the above described instruments provide: (1) that the whole of said principal sum and interest shall become due at the option of the Mortgagee after default in the payment of any installment of principal or of interest; (2) that upon any default the Mortgagor will pay to the Mortgagee any sums paid for taxes, charges, assessments, and insurance premiums upon said mortgaged premises; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

9. Pursuant to the terms of said instrument[s] notice of default has been duly given to the defendants if required, and the period to cure, if any, has elapsed and by reason thereof, Plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

10. That the balance of principal due upon said note and mortgage as of the date of said default and as of the time of the Complaint is $102,375 plus interest from November 5, 2008.

11. That in order to protect its security, plaintiff may be compelled during the pendency of this action to make repairs to, board, secure, protect and maintain the premises, to pay taxes, assessments, water rates, sewer rentals, insurance premiums, mortgage insurance premiums, if there be any, and other charges affecting the premises, and the plaintiff requests that any sum so paid be added to the sum otherwise due, with interest as provided in the aforesaid instruments, and be deemed secured by said instrument[s] and adjudged a valid lien on the premises hereinabove described.

12. That the plaintiff requests that in the event this action proceeds to Judgment of Foreclosure and Sale, said premises be sold subject to covenants, restrictions and easements, prior mortgages and liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

13. That no other action has been commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument[s].

14. That the defendants all have or claim to have some interest in or lien[s] upon the said mortgaged premises, or some part thereof, which interest or lien[s], if any, has [have] accrued subsequently to the lien[s] of the said mortgage[s] or was in express terms or by law made subject thereto, or has [have] been duly subordinated thereunto.

15. That the defendants "JOHN DOE #1" through "JOHN DOE #12" may be tenants or may be in possession of the aforementioned premises, or may be corporations, other entities or persons who claim, or may claim, a lien against the premises.

16. That the basis for naming any political subdivision, governmental agency or similar body, if any, is set forth as Exhibit "B".

WHEREFORE, plaintiff demands judgment that the defendants and all persons claiming under them subsequent to the filing of the Notice of Pendency of this action in the County of Westchester may be forever barred and foreclosed from all right, title, claim, lien and equity of redemption in said mortgaged premises, and each and every part thereof; except the right of the United States of America and its political subdivision, if it or they be a party to this action, to redeem as provided for in the applicable laws; that the said premises may be decreed to be sold according to law; that the amount of principal due the plaintiff on said note and mortgage may be adjudged in the sum of $102,375.00 plus interest from November 5, 2008, and that from the money arising from the sale, plaintiff be paid the amount of $102,375.00 principal due it on said note and mortgage with interest and late charges that may be due and owing to the time of such payment plus the expenses of sale and the costs and expenses of this action, together with any sum which may be paid by the plaintiff for repairs to, boarding, securing, protecting and

maintaining the premises, taxes, charges, assessments and insurance premiums upon said mortgaged premises, with appropriate interest thereon so far as such moneys properly applicable thereto will pay the same; that the defendant JOHN SOTOMAYOR be adjudged to pay any deficiency which may remain; that a Receiver, upon plaintiff's application therefore, be forthwith appointed for said mortgaged premises for the benefit of the plaintiff, with all powers of receivers in such actions, and that the plaintiff have such other and further relief as may be just and proper in the premises, together with attorney's fees, costs and disbursements of this action.

Dated: December 20, 2013

Alan H. Weinreb, Esq.
THE MARGOLIN & WEINREB LAW GROUP, LLP
Attorneys for Plaintiff
165 Eileen Way, Suite 101
Syosset, New York 11791
516-945-6055

STATE OF NEW YORK )
COUNTY OF NASSAU ) SS:

Alan H. Weinreb, being duly sworn, deposes and says:

That she/he is the attorney for the Plaintiff, having an office at 165 Eileen Way, Suite 101, Syosset, New York 11791, and that she/he has read the foregoing Summons and Complaint and knows the contents thereof; that the same is true to her/his knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters your deponent believes it to be true. Deponent further states that the grounds of her/his belief as to all matters in the Complaint not stated to be upon her/his knowledge are based upon the original note, mortgage and/or financial statements, together with correspondence.

That the reason this verification is made by your deponent instead of Plaintiff is because the Plaintiff does not reside or have a place of business within the County of Nassau, which is the County where your deponent has her/his office.

Alan H. Weinreb, Esq

Sworn to before me this
20th Day of December 2013

Notary Public

MARGARET WATTERS
Notary Public, State of New York
No. 01WA4989754
Qualified in Nassau County
Commission Expires December 16, 2017

**NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT (THE ACT), 15 U.S.C. SECTION 1601 AS AMENDED**

1. THE AMOUNT OF THE DEBT IS STATED IN THE COMPLAINT HERETO ATTACHED.

2. THE PLAINTIFF AS NAMED IN THE ATTACHED SUMMONS AND COMPLAINT IS THE CREDITOR TO WHOM THE DEBT IS OWED.

3. THE DEBT DESCRIBED IN THE COMPLAINT ATTACHED HERETO WILL BE ASSUMED TO BE VALID BY THE CREDITOR'S LAW FIRM, UNLESS THE DEBTOR, WITHIN THIRTY (30) DAYS AFTER THE RECEIPT OF THIS NOTICE DISPUTES THE VALIDITY OF THE DEBT OR SOME PORTION THEREOF.

4. IF THE DEBTOR NOTIFIES THE CREDITOR'S LAW FIRM WITHIN THIRTY (30) DAYS OF THE RECEIPT OF THIS NOTICE THAT THE DEBT OR ANY PORTION THEREOF IS DISPUTED, THE CREDITOR'S LAW FIRM WILL OBTAIN A VERIFICATION OF THE DEBT AND A COPY OF THE VERIFICIATION WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

5. IF THE CREDITOR NAMED AS PLAINTIFF IN THE ATTACHED SUMMONS AND COMPLAINT IS NOT THE ORIGINAL CREDITOR, AND IF THE DEBTOR MAKES A REQUEST TO THE CREDITOR'S LAW FIRM WITHIN THE THIRTY (30) DAYS FROM THE RECEIPT OF THIS NOTICE, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

6. REQUESTS SHOULD BE ADDRESSED TO THE MARGOLIN & WEINREB LAW GROUP, LLP, 165 EILEEN WAY, SUITE 101, SYOSSET, NY 11791, (516) 945-6055.

7. THE ABOVE REFERENCED THIRTY (30) DAYS TIME PERIOD IN WHICH THE DEBTOR MAY DISPUTE THIS DEBT SHALL IN NO WAY AMEND OR EXTEND SAID DEBTOR'S STATUTORY TIME PERIOD, AS STATED IN THE ATTACHED SUMMONS, TO INTERPOSE AN ANSWER TO THE COMPLAINT IN THIS MATTER.

EXHIBIT

## SCHEDULE A DESCRIPTION



ALL that certain plot, piece or parcel of land situate, lying, and being in the Town of Cortlandt, County of Westchester, and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Maple Avenue, North 59 degrees 33' 30" West 291.78 feet, North 51 degrees 21' 20" West 78.31 feet, and North 47 degrees 46' 40" West 39.11 feet from a point on the southerly side of Maple Avenue where the same is intersected by the westerly line of lands shown on map of "Dickerson Mountain Est.," filed in the Westchester County Clerk's Office, Division of Land Records, as Map No. 3763;

RUNNING THENCE from said point along lands now or formerly of Paul and Paulette Rosenzweig the following courses and distances: South 54 degrees 54' 30" West 41.59 feet; South 53 degrees 36' 00" West 48.70 feet, South 15 degrees 53' 30" West 36.78 feet, South 21 degrees 39' 20" East 44.36 feet, South 06 degrees 30' 00" West 51.08 feet, and South 08 degrees 35' 40" East 101.58 feet to a point;

THENCE continuing along lands of Rosenzweig North 66 degrees 56' 00" West 110.00 feet to a point on the easterly side of Furnace Dock Road;

RUNNING THENCE along the easterly side of Furnace Dock Road the following courses and distances: North 23 degrees 09' 30" East 22.49 feet, North 15 degrees 08' 00" East 38.27 feet, North 02 degrees 49' 00" West 18.53 feet, North 22 degrees 52' 40" West 76.31 feet, North 23 degrees 11' 30" West 51.47 feet, North 21 degrees 51' 30" West 34.00 feet, North 07 degrees 50' 10" West 121.33 feet, North 49 degrees 01' 30" East 22.97 feet, and South 78 degrees 57' 00" East 12.26 feet to a point on the southerly side of Maple Avenue;

THENCE running along the southerly side of Maple Avenue the following courses and distances: South 52 degrees 49' 00" East 19.87 feet, South 56 degrees 44' 20" East 100.17 feet, South 62 degrees 48' 00" East 62.34 feet, and South 54 degrees 35' 50" East 43.60 feet to the point or place of BEGINNING.

**SCHEDULE B**

-AMERICAN EXPRESS CENTURION BANK has been named as a party defendant herein by reason of filed judgment against JOHN SOTOMAYOR in the amount of $29,954.19 plus interest.

-MIDLAND FUNDING LLC has been named as a party defendant herein by reason of filed judgment against JOHN SOTOMAYOR in the amount of $6,496.46 plus interest.

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
---------------------------------------------------------------------X
PARTNERS FOR PAYMENT RELIEF DE II, LLC,

Plaintiff,

-against-

JOHN SOTOMAYOR; et al

Defendants.
---------------------------------------------------------------------

---

SUMMONS AND VERIFIED COMPLAINT

---

THE MARGOLIN & WEINREB LAW GROUP, LLP
Attorneys for Plaintiff
165 Eileen Way, Suite 101
Syosset, New York 11791
516-945-6055

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
---------------------------------------------------------------------X

PARTNERS FOR PAYMENT RELIEF DE II, LLC,

Plaintiff,

-against-

JOHN SOTOMAYOR; ALEXANDRA LOAIZA; AMERICAN EXPRESS CENTURION BANK MIDLAND FUNDING LLC; "JOHN DOE #1" through "JOHN DOE #12", said names being fictitious, parties intended being possible tenants or occupants of premises, and corporations, other entities or persons who claim, or may claim, a lien against the premises,

Defendants.
---------------------------------------------------------------------X

INDEX NO:

CERTIFICATE OF MERIT AFFIRMATION PPURSUANT
Premises Address
2359 Maple Avenue
Cortlandt Manor, NY 10567

Alan H. Weinreb, Esq., pursuant to CPLR §2106 and under the penalties of perjury, affirms as follows:

1. I am an attorney at law duly licensed to practice in the state of New York and am affiliated with The Margolin & Weinreb Law Group, LLP, the attorneys of record for Plaintiff in the above-captioned mortgage foreclosure action. As such, I am fully aware of the underlying action, as well as the proceedings had herein.

2. On December 17, 2013, I communicated with the following representative or representatives of Plaintiff, who informed me that he/she/they (a) personally reviewed plaintiff's documents and records relating to this case for factual accuracy; and (b) confirmed the factual accuracy of the allegations set forth in the Complaint and any supporting affidavits or affirmations filed with the Court, as well as the accuracy of the notarizations contained in the supporting documents filed therewith.

| Name | Title |
|---|---|
| Juli Robinson | Workout specialist |

3. Based upon my communication with Juli Robinson, as well as upon my own inspection, review and other reasonable inquiry under the circumstances, including, but not limited to the review of the facts of the case as well as of the underlying note, mortgage and assignments, if any, modification(s), if any and extension and consolidations, if any, I affirm that, to the best of my knowledge, information, and belief, there is a reasonable basis for the commencement of the within foreclosure action and that the Plaintiff is currently the creditor entitled to enforce the rights of said documents noted above. A copy of the note, mortgage and assignments, if any, modification(s), if any and extension and consolidations, if any, are annexed hereto.

4. I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130.

Dated: December 23, 2013
Syosset, NY

Alan H. Weinreb, Esq.

*470370694MTG1*

Control Number
470370694

Instrument Type
MTG

WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
(THIS PAGE FORMS PART OF THE INSTRUMENT)
*** DO NOT REMOVE ***

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:
TYPE OF INSTRUMENT: MTG - MORTGAGE
FEE PAGES: 16 TOTAL PAGES: 16

RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $48.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| TOTAL FEES PAID | $73.00 |

MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | 1/19/2007 |
| MORTGAGE AMOUNT | $104,375.00 |
| EXEMPT | Yes |
| COUNTY TAX | $261.00 |
| YONKERS TAX | $0.00 |
| BASIC | $522.00 |
| ADDITIONAL | $283.20 |
| MTA | $261.00 |
| SPECIAL | $0.00 |
| TOTAL PAID | $1,327.20 |

TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

SERIAL NUMBER: CX55120
DWELLING: 1-2 Family

RECORDING DATE: 2/22/2007
TIME: 10:10:00

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
TOWN OF CORTLANDT

WITNESS MY HAND AND OFFICIAL SEAL

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
ATLAS ABSTRACT & SETTLEMENT SERVI
22 SAW MILL RIVER RD

HAWTHORNE, NY 10532

0694
P-15

AAW06-2257

After Recording Return To:

ATLAS ABSTRACT &
SETTLEMENT SERVICES, INC.
22 SAW MILL RIVER ROAD
HAWTHORNE, NEW YORK 10532-1533

This instrument was prepared by:
Wells Fargo Bank, N.A.
DAVID NELSON
DOCUMENT PREPARER
ONE HOME CAMPUS, MAC X2303-013
DES MOINES, IOWA 50328
515-324-8125
(Name & Address of Preparer)

[Space Above This Line For Recording Data]

Account number: 650-650-4401584-0XXX
Reference number: 20063553129826

Section 45.10
Block 3
Lot 5
Town of Cortlandt

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated JANUARY 19, 2007, together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."** JOHN SOTOMAYOR AND ALEXANDRA LOAIZA, whose address is 13321 87TH, OZONE PARK, NEW YORK 11417 sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "Lender."** Wells Fargo Bank, N.A. will be called "Lender." Lender is a corporation or association which exists under the laws of the United States of America. Lender's address is 101 North Phillips Avenue, Sioux Falls, SD 57104.

**(D) "Debt Instrument."** The note signed by Borrower and dated JANUARY 19, 2007, will be called the "Debt Instrument." The Debt Instrument shows that I owe Lender ONE HUNDRED FOUR THOUSAND THREE HUNDRED SEVENTY-FIVE AND 00/100THS Dollars (U.S. $ 104,375.00) plus interest and other amounts that may be payable. I have promised to pay this debt in one or more Periodic Payments and to pay the debt in full by FEBRUARY 05, 2022.

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means all amounts owed now or hereafter under the Debt Instrument, including without limitation principal, interest, any prepayment charges, late charges and other fees and charges due under the Debt Instrument, and also all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of



eor

Rights in the Property" sometimes will be called the "Sums Secured."
(H) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

- [N/A] Leasehold Rider
- [N/A] Third Party Rider
- [N/A] Other(s) [specify] Legal Description

(I) **"Applicable Law."** All controlling applicable federal law and, to the extent not preempted by federal law, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."
(J) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that may be imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."
(K) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 4) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."
(M) **"Periodic Payment."** "Periodic Payment" means the amounts as they become due for principal, interest and other charges as provided for in the Debt Instrument.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Debt Instrument including, but not limited to, all renewals, extensions and modifications of the Debt Instrument;
(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument and the Debt Instrument.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

EXHIBIT

## SCHEDULE A DESCRIPTION



ALL that certain plot, piece or parcel of land situate, lying, and being in the Town of Cortlandt, County of Westchester, and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Maple Avenue, North 59 degrees 33' 30" West 291.78 feet, North 51 degrees 21' 20" West 78.31 feet, and North 47 degrees 46' 40" West 39.11 feet from a point on the southerly side of Maple Avenue where the same is intersected by the westerly line of lands shown on map of "Dickerson Mountain Est.," filed in the Westchester County Clerk's Office, Division of Land Records, as Map No. 3763;

RUNNING THENCE from said point along lands now or formerly of Paul and Paulette Rosenzweig the following courses and distances: South 54 degrees 54' 30" West 41.59 feet; South 53 degrees 36' 00" West 48.70 feet, South 15 degrees 53' 30" West 36.78 feet, South 21 degrees 39' 20" East 44.36 feet, South 06 degrees 30' 00" West 51.08 feet, and South 08 degrees 35' 40" East 101.58 feet to a point;

THENCE continuing along lands of Rosenzweig North 66 degrees 56' 00" West 110.00 feet to a point on the easterly side of Furnace Dock Road;

RUNNING THENCE along the easterly side of Furnace Dock Road the following courses and distances: North 23 degrees 09' 30" East 22.49 feet, North 15 degrees 08' 00" East 38.27 feet, North 02 degrees 49' 00" West 18.53 feet, North 22 degrees 52' 40" West 76.31 feet, North 23 degrees 11' 30" West 51.47 feet, North 21 degrees 51' 30" West 34.00 feet, North 07 degrees 50' 10" West 121.33 feet, North 49 degrees 01' 30" East 22.97 feet, and South 78 degrees 57' 00" East 12.26 feet to a point on the southerly side of Maple Avenue;

THENCE running along the southerly side of Maple Avenue the following courses and distances: South 52 degrees 49' 00" East 19.87 feet, South 56 degrees 44' 20" East 100.17 feet, South 62 degrees 48' 00" East 62.34 feet, and South 54 degrees 35' 50" East 43.60 feet to the point or place of BEGINNING.

(A) The Property which is located at 2359 MAPLE AVE [Street]

CORTLANDT MANOR [City, Town or Village], New York 10567 [Zip Code]

This Property is in WESTCHESTER County. It has the following legal description:

SEE ATTACHED EXHIBIT

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record as of the execution date of this Security Instrument.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Prepayment and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Debt Instrument and any prepayment charges, late charges and other charges due under the Debt Instrument. Payments due under the Debt Instrument and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Debt Instrument or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Debt Instrument and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in (or in accordance with) the Debt Instrument or at such other location as may be designated by Lender in accordance with the notice provisions in Section 13. Subject to Applicable Law, Lender may return any payment or partial payment if the

payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future.

2. **Application of Payments or Proceeds.** Unless other procedures are set forth in the Debt Instrument or Applicable Law, Lender may apply payments in any order that Lender deems appropriate.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Debt Instrument shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) has disclosed such lien to Lender at application for the Loan or agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument and which was not disclosed on the application for the Loan that Borrower provided to Lender, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions satisfactory to Lender set forth above in this Section 3.

To the extent not prohibited by Applicable Law, Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

4. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. To the extent not prohibited by Applicable Law, Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 4 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance. Upon Lender's request, Borrower shall promptly give to Lender copies of all policies, renewal certificates, receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance.

In the event of loss and subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights, the following provisions in this Section 4 shall apply. Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Debt Instrument or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Debt Instrument or this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights.

**5. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless (a) Borrower has disclosed to Lender at application for the Loan that the Property shall not be Borrower's principal residence; (b) Lender otherwise agrees in writing, which consent shall not be unreasonably withheld; or (c) unless extenuating circumstances exist which are beyond Borrower's control.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 4 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, (a) representations concerning Borrower's occupancy of the Property as Borrower's principal residence and (b) liens on the Property that have priority over this Security Instrument.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument or any obligation that is secured by a lien that is superior to this Security Instrument, (b) there is a legal proceeding

that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of any lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, if the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, in the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Joint and Several Liability; Co-mortgagors; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who signs this Security Instrument but does not execute the Debt Instrument (a "co-mortgagor"): (a) is signing this Security Instrument only to mortgage, grant and convey the co-mortgagor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Debt Instrument without the co-mortgagor's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 17) and benefit the successors and assigns of Lender.

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Debt Instrument or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Debt Instrument). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13. Notices.** Unless otherwise described in the Debt Instrument or in another agreement between Borrower and Lender, the following provisions regarding notices shall apply. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address for Borrower under the Loan at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**14. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and, to the extent not preempted by federal law, the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Debt Instrument conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Debt Instrument which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; (c) the word "may" gives sole discretion without any obligation to take any action; and (d) headings that appear at the beginning of the sections of this Security Instrument are inserted for the convenience of the reader only, shall not be deemed to be a part of this Security Instrument, and shall not limit, extend, or delineate the scope or provisions of this Security Instrument.

**15. Borrower's Copy.** Borrower shall be given one copy of the Debt Instrument and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Sale of Debt Instrument; Change of Loan Servicer; Notice of Grievance.** The Debt Instrument or a partial interest in the Debt Instrument (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Debt Instrument and this Security Instrument and performs other mortgage loan servicing obligations under the Debt Instrument, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Debt Instrument. If there is a change of the Loan Servicer, Borrower will be given written notice of the change as required by Applicable Law. If the Debt Instrument is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Debt Instrument, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Debt Instrument unless otherwise provided by the purchaser of the Debt Instrument.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 13) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 17. If Borrower and Lender have entered into an agreement to arbitrate disputes, the provisions of any such arbitration agreement shall supersede any provision in this Section 17 that would conflict with the arbitration agreement.

**18. Hazardous Substances.** As used in this Section 18: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, mold, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**19. Assignment of Leases and Rents.** Borrower irrevocably grants, conveys, sells and assigns to Lender as additional security: (a) all of Borrower's right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases"), and (b) all of the rents, security deposits, issues and profits arising out of or earned in connection with the Property (all referred to as "Rents").

Borrower will promptly provide Lender with true and correct copies of all existing and future Leases. Borrower may collect, receive, enjoy and use the Rents so long as Borrower is not in default under the terms of this Security Instrument. Borrower agrees that this assignment is immediately effective between the parties to this Security Instrument. Borrower agrees that this assignment is effective as to third parties when Lender takes affirmative action prescribed by law, and that this assignment will remain in effect during any redemption period until the Loan is satisfied.

Borrower agrees that Lender may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Borrower of an event of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of an event of default, Borrower will endorse and deliver to Lender any payment of Rents in Borrower's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agent shall be applied first to the

costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by this Security Instrument in the order provided for in Section 2. If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any amounts disbursed by Lender for such purposes shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower warrants that no default exists under the Leases or any applicable landlord/tenant law. Borrower agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**20. Condominiums; Planned Unit Developments.** If the Property is a unit in a condominium project ("Condominium Project") or is part of a planned unit development ("PUD"), Borrower agrees to the following:

A. Obligations. Borrower shall perform all of Borrower's obligations under the Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project or PUD and any condominium association, homeowners association or equivalent entity ("Community Association"); (ii) any by-laws or other rules or regulations of the Community Association; and (iii) other equivalent documents. Borrower shall promptly pay, when due, all Community Association Dues, Fees, and Assessments.

B. Property. For units in a Condominium Project, the Property includes the unit in, together with an undivided interest in the common elements of, the Condominium Project, and Borrower's interest in the Community Association and the uses, proceeds and benefits of Borrower's interest. For PUDs, the Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Constituent Documents, and Borrower's interest in the Community Association and the uses, benefits and proceeds of Borrower's interest.

C. Property Insurance. So long as the Community Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then Borrower's obligation under Section 4 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Community Association policy. Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy. In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements of the Condominium Project or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower, subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights.

D. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Community Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

E. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements of the Condominium Project or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the rights of any lienholder with rights to such proceeds that are superior to Lender's rights. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 9.

F. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Community Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Community Association unacceptable to Lender.

G. Remedies. If Borrower does not pay Community Association Dues, Fees, and Assessments when due,

then Lender may pay them. Any amounts disbursed by Lender under this paragraph G shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**21. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 16 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Debt Instrument and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 21 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Debt Instrument, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 13 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Debt Instrument and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**22. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Debt Instrument and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**23. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Debt Instrument as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 23.

**24. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 14 of this Security Instrument and in any Rider signed by me and recorded with it.

_______________________________ (Seal)
Borrower JOHN SOTOMAYOR

_______________________________ (Seal)
Borrower ALEXANDRA LOAIZA

_______________________________ (Seal)
Borrower

_______________________________ (Seal)
Borrower

_______________________________ (Seal)
Borrower

_______________________________ (Seal)
Borrower

_______________________________ (Seal)
Borrower

_______________________________ (Seal)
Borrower

For An Individual Acting In His/Her Own Right if
Executed Within New York

State of New York ) ss.:
County of Westchester )

On the 19th day of January in the year 2007 before me, the undersigned, personally appeared JOHN SOTOMAYOR and ALEXANDRA LOAIZA, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

(Signature and office of individual taking acknowledgement.)

Steven E. De Young
Notary Public, State of New York
No. 02DE4662831
Qualified In Westchester County
Commission Expires March 30, 2007

[NOTARIAL SEAL]

Print Name: ______________
Notary Public

My commission expires: ______________

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

*532173396ASS0013*

# Westchester County Recording & Endorsement Page

## Submitter Information

| | | | |
|---|---|---|---|
| Name: | Partners For Payment Relief LLC | Phone: | 435-374-0173 |
| Address 1: | 3748 West Chester Pike Suite 103 | Fax: | 435-755-9625 |
| Address 2: | | Email: | erandall@ingeo.com |
| City/State/Zip: | Newton Square PA 19073 | Reference for Submitter: | 8776819-Partners For Payment Relief L |

## Document Details

Control Number: **532173396**

Document Type: **Assignment (ASS)**

Package ID: 2013080500170001000

Document Page Count: 1 Total Page Count: 2

## Parties

☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: WELLS FARGO BANK N A | - Other | 1: PARTNERS FOR PAYMENT RELIEF DE II LLC | - Other |
| 2: | | 2: | |

## Property

☐ Additional Properties on Continuation page

Street Address: 2359 MAPLE AVE

Tax Designation: 45.10-3-5

City/Town: CORTLANDT

Village:

## Cross- References

☐ Additional Cross-Refs on Continuation page

1: 470370694 2: 3: 4:

## Supporting Documents

## Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $10.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| Total Recording Fees Paid: | **$50.50** |

## Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

## Mortgage Taxes

| | |
|---|---|
| Document Date: | |
| Mortgage Amount: | |
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$0.00** |

Dwelling Type: Exempt: ☐

Serial #:

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

WESTCHESTER COUNTY SEAL

Recorded: 08/06/2013 at 11:55 AM

Control Number: **532173396**

Witness my hand and official seal

Timothy C. Idoni
Westchester County Clerk

## Record and Return To

☐ Pick-up at County Clerk's office

**Partners For Payment Relief LLC**
**3748 West Chester Pike Suite 103**

**Newton Square, PA 19073**

ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, WELLS FARGO BANK, N.A., WHOSE ADDRESS IS 2324 OVERLAND AVE, BILLINGS, MT 59102, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to Fortress for Payment Relief DE II, LLC. at * , ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Mortgage dated 01/19/2007, made by JOHN SOTOMAYOR AND ALEXANDRA LOAIZA to WELLS FARGO BANK, N.A. in the principal sum of $104,375.00 and recorded on 02/22/2007 in Liber page , CRFN # 470370694 in the office of the Registry of WESTCHESTER County, N.Y.

* 3148 W. Chester Pike, Ste 103. Newtown Square, PA 19073

Prop Addr: 2359 MAPLE AVE CORTLANDT TWP
CORTLANDT MANOR, NY 10567

This mortgage(s) has not been assigned of record.

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

Dated: this 24th day of May, 2010

WELLS FARGO BANK, N.A.

By [signature]
Danielle Savaria
V.P. - Loan Documentation

[Seal: WELLS FARGO BANK, NATIONAL ASSOCIATION]

Witness [signature] Jaye Boston

STATE OF MONTANA COUNTY OF YELLOWSTONE

this 24th day of May, 2010, before me, the undersigned, personally appeared Danielle Savaria, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in YELLOWSTONE County, State of MONTANA

[signature]
Lara M. Robison Notary Public
Residing in the county of YELLOWSTONE
My commission expires:04/16/2013

Document Prepared By: Jessica Fretwell/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
Property ID(S/B/L): SEC 45.10 BL 3 LOT 5
Return by Mail to: Dreambuilder Investments, LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

[Seal: LARA M. ROBISON NOTARIAL SEAL STATE OF MONTANA]

DBIAS 11780726 — WELLS FARGO TRADE BNH2557338 $50.50

*11780726*

FrmSOTLMNY1

Wells Fargo Bank, N.A.

NOTE DATE: 01-19-2007
MATURITY DATE: 02-05-2022

# FIXED RATE LOAN NOTE
## (Partially Amortizing Payments – Balloon)

Borrower Name:
JOHN SOTOMAYOR

Property Address:
2359 MAPLE AVE, CORTLANDT MANOR, NEW YORK 10567

Mailing Address for billing purposes (if different):
N/A

## SECTION 1: MY LOAN

In this Note, the words, "I," "me," "my," and "Borrower" (which also means "we," "us," "our," and "Borrowers," if more than one borrower signs below) refer to each person who signs this Note. The words "you," "your," "Lender," and "the Bank" refer to Wells Fargo Bank, N.A., and any successor or assign or subsequent holder of this Note. Each person who signs this Note is jointly and individually bound by its terms and will be directly liable to the Bank for the entire amount owed on this Note, and each is liable as the principal and not merely as a guarantor.

If I make the regularly scheduled payments on this Loan, I will still owe a large sum at maturity. This Loan is payable in full at maturity. I must repay the entire Principal balance of the Loan and unpaid interest then due. The Bank is under no obligation to refinance the Loan at that time. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be the lender I have this Loan with, willing to lend me the money. If I refinance this Loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain refinancing from the same lender.

## SECTION 2: SECURITY INTEREST

I am giving the Bank a deed of trust, mortgage or other security instrument including all modifications, addenda and amendments to them (the "Security Instrument") signed the same date as this Note. The Security Instrument gives you a security interest in the property located at the address shown above (the "Property").

## SECTION 3: MY PROMISE TO PAY

In return for a loan that I have received (the "Loan"), I promise to pay $104,375.00 (this amount is called "Principal"), plus interest, to the order of the Bank. I understand that the Bank may transfer this Note. I will make all payments under this Note in U.S. Dollars.

**PAYMENTS**

I will pay monthly payments of Principal and interest on the 5TH day of each month beginning on 03-05-2007. My monthly payment will be in the amount of U.S. $881.64.

On 02-05-2022, I will pay a final balloon payment equal to the unpaid Principal plus all remaining interest, fees and other sums owed under this Note and the Security Instrument. I understand that the Bank is not under any obligation to refinance my final balloon payment.

I will make payments at the Bank's address indicated on my payment coupon or my billing statement, unless another payment method is authorized by the Bank. Each non-electronic payment I make will be accompanied by the remittance portion of my billing statement or payment coupon.

I understand that payments I make by mail to the address indicated on my billing statement or payment coupon will be credited to my Loan as of the date received (including Saturdays, Sundays, and holidays) if the Bank receives the payment prior to 5 p.m. local time for the payment address.

Payments I make from a qualified account ("Automatic Payments") pursuant to an Authorization for Automatic Transfer will be credited to my Loan on the date received (including Saturdays, Sundays, and holidays).

Payments I make at a Bank branch and received prior to established cut-off times will be credited to my Loan on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and Bank observed holidays. Payments made at a Bank branch received on a Saturday, Sunday, or Bank observed holiday or after established cut-off times will be credited as of the next business day.

Payments I make online, by ATM, by telephone, or by any other means the Bank may make available to me and received prior to established cut-off times will be credited to my Loan on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and federal holidays. Payments made online, by ATM, by telephone, or by any other means the Bank may make available to me received on a Saturday, Sunday, or federal holiday or after established cut-off times will be credited as of the next business day.

I will not make payment or authorize others to make payment for me by means of a single aggregated payment, which includes payments for this Loan and any other account(s), unless the payment is made in compliance with the Bank's requirements for multiple account payments.

The Bank may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement, without losing any of the Bank's rights under this Note. The Bank's acceptance of checks or money orders labeled "payment in full," or words to that effect, will not constitute an accord and satisfaction nor a waiver of any rights the Bank has to receive full payment. If I intend to condition a payment, pay the Loan in full with less than the total amount owed, or give payment instructions, I will clearly set out such intention, conditions and instructions in a separate letter accompanying my payment, and mail both to Wells Fargo Bank, N.A., P.O. Box 2993, Portland, OR 97208.

**PRINCIPAL PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Principal Reduction." When I make a Principal Reduction, I will tell the Bank in a letter that I am doing so. A Principal Reduction resulting in payoff prior to the maturity of this Note may result in the assessment of a prepayment fee or an origination fee (collection deferred).

## SECTION 4: INTEREST

I will pay interest at a simple annual interest rate of 9.500%. Interest will be charged on the unpaid Principal until the full amount of Principal has been paid. The interest rate required by this Section 4 is the rate I will pay both before and after any default under this Note.

## SECTION 5: AUTOMATIC PAYMENT DISCOUNT

The Automatic Payment discount is not available for this Loan.

## SECTION 6: ORIGINATION FEE

N/A

## SECTION 7: CLOSING COSTS

In addition to the fees and charges set forth in this Note, I agree to pay the closing costs set forth in the HUD Settlement Statement (if any) at the settlement of my Loan.

## SECTION 8: FEES, COSTS AND CHARGES

I agree to pay the following non-refundable fees and charges.

<u>LATE CHARGES</u>
If my scheduled payment is more than ten (10) days past due, I will pay a late charge equal to the greater of five dollars ($5.00) or five percent (5%) of the scheduled payment.

<u>PREPAYMENT FEE</u>
I agree to pay a prepayment fee of $500.00. I agree to pay the prepayment fee if I prepay this Note in full at any time within the first three (3) years after the date of this Note. I do not have to pay the prepayment fee if I prepay my Loan in full because of default due to non-payment, casualty loss, or if I refinance my Loan with you or your affiliate.

## SECTION 9: OTHER CHARGES

To the extent allowed by law, I agree to pay the following fees if I request or authorize these additional services:

(a) <u>Fax Fee</u>: I agree to pay a fax fee in the amount of ten dollars ($10.00) if I request or authorize others to request the Bank to transmit any document or letter by facsimile (fax) machine.
(b) <u>Research/Photocopy Fee</u>: I agree to pay a research/photocopy fee in the amount of five dollars ($5.00) per photocopy if I request or authorize others to request the Bank to provide photocopies of Loan documents.
(c) <u>Reconveyance or Satisfaction Fee</u>: I agree to pay reconveyance and satisfaction fees as allowed by applicable law when the Bank reconveys/discharges/releases the Security Instrument.
(d) <u>Return Check Fee</u>: I agree to pay a return check fee of twenty-five dollars ($25.00) if I make a payment with a check that is dishonored for any reason.

I also agree to pay any other reasonable fees the Bank may charge.

## SECTION 10: COLLECTION COSTS AND ATTORNEY'S FEES

If I am in default, I agree to pay the Bank's collection costs, attorneys' fees and other expenses of enforcing the Bank's rights under this Note and the Security Instrument unless prohibited by applicable law.

**SECTION 11: TAX DEDUCTIBILITY**

I understand that I should consult a tax advisor regarding the deductibility of interest and charges under my Loan.

**SECTION 12: DEFAULT**

I will be in default if any one of the following occur:

- I fail to pay the full amount of any payment when due.
- I commit fraud or make a material misrepresentation in connection with this Note.
- A case under the U.S. Bankruptcy Code is started by or against me.
- Any action or inaction by me adversely affects the Bank's security in the Property, including, without limitation, transfer of the Property without the Bank's consent.
- The Bank believes in good faith that I may not be able or willing to pay as promised.
- Any person who has signed this Note dies.
- If I am an executive officer of the Bank and federal law governing credit extended by a bank to its executive officer, including without limitation Section 215.5(d)(4) of Federal Reserve Regulation O (12 CFR § 215.5(d)(4)), permits or requires immediate payment of all outstanding Principal, interest and any other charges that I may owe under this Note.

If I am in default, subject to any notice and right to cure required by applicable law, the Bank may require me to pay immediately all sums I owe under this Note. Even if, at the time when I am in default, the Bank does not require me to pay immediately in full as described above, the Bank will still have the right to do so if I am in default at a later time.

**SECTION 13: FURTHER ASSURANCES**

I agree that I will take any steps including but not limited to signing, filing or recording any documents which are necessary, or which the Bank deems appropriate, to be sure that my obligations to the Bank under this Note become and continue to be secured by the Security Instrument.

**SECTION 14: CHANGE IN RESIDENCE OR OWNERSHIP OF THE PROPERTY**

I agree to notify the Bank immediately if (a) the Property is my primary residence and I cease to live in the Property as my primary residence, or (b) there is any change in the ownership of the Property. I agree that my Loan will be accelerated and the outstanding balance of my Loan will be due and payable immediately on any sale or other transfer of the Property. In this regard, I understand that the Security Instrument contains the following or a substantially similar provision:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**SECTION 15: WAIVERS**

**BORROWER'S WAIVERS**
I waive my rights to require the Bank to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Bank if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, waives these rights. These persons are known as "guarantors, sureties and endorsers."

**BANK'S NON-WAIVER**
The Bank may fail to make use of any of its rights under this Note or the Security Instrument or under applicable law on one or more occasions, or delay or partially exercise such rights, without waiving any of its rights or amending any of my obligations. The Bank may fail to make use of any of its rights or delay or partially exercise such rights against one party, without waiving any of its rights against any other party to this Note.

## SECTION 16: CREDIT REPORTS

My signature on this Note authorizes the Bank to obtain my credit report in connection with (a) renewing, modifying or extending this Note; (b) reviewing my Loan; (c) taking any collection action; and (d) any other legitimate purposes associated with my Loan.

## SECTION 17: GOVERNING LAW; SEVERABILITY

All interest, fees and other amounts charged or accruing in connection with this Note, which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001(a)), shall be governed by and interpreted under South Dakota law. In all other respects, this Note and all related documents, as well as the rights, remedies, and duties of the Bank and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and to the extent not preempted by federal law, the laws of the state in which the Property is located.

If any provision of this Note or the Security Instrument is determined to be invalid or unenforceable by a court of competent jurisdiction, the rest of this Note will remain in full force and effect and enforceable according to its terms. All references in this Note to the singular shall include the plural and vice versa.

## SECTION 18: NOTICES

Unless applicable law requires a different method, any notice that must be given to me or to anyone else who signs, guarantees or endorses this Note may be given by mailing it to my address as set forth above in this Note, or to a different address if I have properly notified the Bank of that different address. Any notice that I may send to the Bank must be given by mailing it to the Bank at the address provided on my billing statement or payment coupon, unless the type of notice is more specifically addressed in this Note and a different address is provided herein.

I agree that the Bank may contact me by telephone. I agree to accept calls from the Bank at any telephone number that I provide to the Bank.

## SECTION 19: ADDENDA

I agree to the following attached addenda:

N/A

## SECTION 20: STATE DISCLOSURES

N/A

NOTICE TO THE BORROWER:
DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE THIS NOTE IS SIGNED. READ THIS NOTE BEFORE SIGNING IT.

ACKNOWLEDGMENT

I have received, read and retained a copy of this Fixed Rate Loan Note, the Security Instrument and the Truth-in-Lending Disclosure Statement, provided to me at the closing, all of which I agree to by signing this Fixed Rate Loan Note. If this Loan is secured by a dwelling, I have also received, read and retained a copy of the Agreement to Provide Insurance and the HUD Settlement Statement provided to me at the closing. In addition, I hereby agree that the terms of this Fixed Rate Loan Note replace the terms of any and all prior oral or written agreements, including by way of example only, commitment letters and pre-approval letters between the Bank and me.

John Sotomayor (Seal) 1/19/07
BORROWER DATE SIGNED
JOHN SOTOMAYOR

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

*470370694MTG1*

Control Number
470370694

Instrument Type
MTG

WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
(THIS PAGE FORMS PART OF THE INSTRUMENT)
*** DO NOT REMOVE ***

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:
TYPE OF INSTRUMENT: MTG - MORTGAGE
FEE PAGES: 16 TOTAL PAGES: 16

RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $48.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| TOTAL FEES PAID | $73.00 |

TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

RECORDING DATE: 2/22/2007
TIME: 10:10:00

MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | 1/19/2007 |
| MORTGAGE AMOUNT | $104,375.00 |
| EXEMPT | Yes |
| COUNTY TAX | $261.00 |
| YONKERS TAX | $0.00 |
| BASIC | $522.00 |
| ADDITIONAL | $283.20 |
| MTA | $261.00 |
| SPECIAL | $0.00 |
| TOTAL PAID | $1,327.20 |

SERIAL NUMBER: CX55120
DWELLING: 1-2 Family

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
TOWN OF CORTLANDT

WITNESS MY HAND AND OFFICIAL SEAL

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
ATLAS ABSTRACT & SETTLEMENT SERVI
22 SAW MILL RIVER RD

HAWTHORNE, NY 10532

0694
P-15

AAWO6 - 2257

After Recording Return To:

ATLAS ABSTRACT &
SETTLEMENT SERVICES, INC.
22 SAW MILL RIVER ROAD
HAWTHORNE, NEW YORK 10532-1533

This instrument was prepared by:
Wells Fargo Bank, N.A.
DAVID NELSON
DOCUMENT PREPARER
ONE HOME CAMPUS, MAC X2303-013
DES MOINES, IOWA 50328
515-324-8125
(Name & Address of Preparer)

[Space Above This Line For Recording Data]

Account number: 650-650-4401584-0XXX
Section 45.10
Block 3
Lot 5
Town of Cortlandt

Reference number: 20063553129826

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated **JANUARY 19, 2007**, together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."** **JOHN SOTOMAYOR AND ALEXANDRA LOAIZA**, whose address is **13321 87TH, OZONE PARK, NEW YORK 11417** sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "Lender."** **Wells Fargo Bank, N.A.** will be called "Lender." Lender is a corporation or association which exists under the laws of the United States of America. Lender's address is **101 North Phillips Avenue, Sioux Falls, SD 57104.**

**(D) "Debt Instrument."** The note signed by Borrower and dated **JANUARY 19, 2007**, will be called the "Debt Instrument." The Debt Instrument shows that I owe Lender **ONE HUNDRED FOUR THOUSAND THREE HUNDRED SEVENTY-FIVE AND 00/100THS** Dollars (**U.S. $ 104,375.00**) plus interest and other amounts that may be payable. I have promised to pay this debt in one or more Periodic Payments and to pay the debt in full by **FEBRUARY 05, 2022.**

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means all amounts owed now or hereafter under the Debt Instrument, including without limitation principal, interest, any prepayment charges, late charges and other fees and charges due under the Debt Instrument, and also all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of



COR

Rights in the Property" sometimes will be called the "Sums Secured."

(H) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

N/A Leasehold Rider

N/A Third Party Rider

N/A Other(s) [specify] Legal Description

(I) **"Applicable Law."** All controlling applicable federal law and, to the extent not preempted by federal law, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that may be imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 4) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(M) **"Periodic Payment."** "Periodic Payment" means the amounts as they become due for principal, interest and other charges as provided for in the Debt Instrument.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Debt Instrument including, but not limited to, all renewals, extensions and modifications of the Debt Instrument;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Debt Instrument.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

EXHIBIT

## SCHEDULE A DESCRIPTION



ALL that certain plot, piece or parcel of land situate, lying, and being in the Town of Cortlandt, County of Westchester, and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Maple Avenue, North 59 degrees 33' 30" West 291.78 feet, North 51 degrees 21' 20" West 78.31 feet, and North 47 degrees 46' 40" West 39.11 feet from a point on the southerly side of Maple Avenue where the same is intersected by the westerly line of lands shown on map of "Dickerson Mountain Est.," filed in the Westchester County Clerk's Office, Division of Land Records, as Map No. 3763;

RUNNING THENCE from said point along lands now or formerly of Paul and Paulette Rosenzweig the following courses and distances: South 54 degrees 54' 30" West 41.59 feet; South 53 degrees 36' 00" West 48.70 feet, South 15 degrees 53' 30" West 36.78 feet, South 21 degrees 39' 20" East 44.36 feet, South 06 degrees 30' 00" West 51.08 feet, and South 08 degrees 35' 40" East 101.58 feet to a point;

THENCE continuing along lands of Rosenzweig North 66 degrees 56' 00" West 110.00 feet to a point on the easterly side of Furnace Dock Road;

RUNNING THENCE along the easterly side of Furnace Dock Road the following courses and distances: North 23 degrees 09' 30" East 22.49 feet, North 15 degrees 08' 00" East 38.27 feet, North 02 degrees 49' 00" West 18.53 feet, North 22 degrees 52' 40" West 76.31 feet, North 23 degrees 11' 30" West 51.47 feet, North 21 degrees 51' 30" West 34.00 feet, North 07 degrees 50' 10" West 121.33 feet, North 49 degrees 01' 30" East 22.97 feet, and South 78 degrees 57' 00" East 12.26 feet to a point on the southerly side of Maple Avenue;

THENCE running along the southerly side of Maple Avenue the following courses and distances: South 52 degrees 49' 00" East 19.87 feet, South 56 degrees 44' 20" East 100.17 feet, South 62 degrees 48' 00" East 62.34 feet, and South 54 degrees 35' 50" East 43.60 feet to the point or place of BEGINNING.

(A) The Property which is located at 2359 MAPLE AVE
[Street]
CORTLANDT MANOR, New York 10567
[City, Town or Village] [Zip Code]
This Property is in WESTCHESTER County. It has the following legal description:

SEE ATTACHED EXHIBIT

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record as of the execution date of this Security Instrument.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Prepayment and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Debt Instrument and any prepayment charges, late charges and other charges due under the Debt Instrument. Payments due under the Debt Instrument and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Debt Instrument or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Debt Instrument and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in (or in accordance with) the Debt Instrument or at such other location as may be designated by Lender in accordance with the notice provisions in Section 13. Subject to Applicable Law, Lender may return any payment or partial payment if the

payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future.

**2. Application of Payments or Proceeds.** Unless other procedures are set forth in the Debt Instrument or Applicable Law, Lender may apply payments in any order that Lender deems appropriate.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Debt Instrument shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) has disclosed such lien to Lender at application for the Loan or agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument and which was not disclosed on the application for the Loan that Borrower provided to Lender, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions satisfactory to Lender set forth above in this Section 3.

To the extent not prohibited by Applicable Law, Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**4. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. To the extent not prohibited by Applicable Law, Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 4 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance. Upon Lender's request, Borrower shall promptly give to Lender copies of all policies, renewal certificates, receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Debt Instrument up to the amount of the outstanding loan balance.

In the event of loss and subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights, the following provisions in this Section 4 shall apply. Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Debt Instrument or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Debt Instrument or this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights.

**5. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless (a) Borrower has disclosed to Lender at application for the Loan that the Property shall not be Borrower's principal residence; (b) Lender otherwise agrees in writing, which consent shall not be unreasonably withheld; or (c) unless extenuating circumstances exist which are beyond Borrower's control.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 4 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, (a) representations concerning Borrower's occupancy of the Property as Borrower's principal residence and (b) liens on the Property that have priority over this Security Instrument.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument or any obligation that is secured by a lien that is superior to this Security Instrument, (b) there is a legal proceeding

that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of any lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, if the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, in the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights, any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2, subject to the rights of any lienholder with rights to Miscellaneous Proceeds that are superior to Lender's rights.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Joint and Several Liability; Co-mortgagors; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who signs this Security Instrument but does not execute the Debt Instrument (a "co-mortgagor"): (a) is signing this Security Instrument only to mortgage, grant and convey the co-mortgagor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Debt Instrument without the co-mortgagor's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 17) and benefit the successors and assigns of Lender.

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Debt Instrument or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Debt Instrument). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13. Notices.** Unless otherwise described in the Debt Instrument or in another agreement between Borrower and Lender, the following provisions regarding notices shall apply. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address for Borrower under the Loan at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**14. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and, to the extent not preempted by federal law, the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Debt Instrument conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Debt Instrument which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; (c) the word "may" gives sole discretion without any obligation to take any action; and (d) headings that appear at the beginning of the sections of this Security Instrument are inserted for the convenience of the reader only, shall not be deemed to be a part of this Security Instrument, and shall not limit, extend, or delineate the scope or provisions of this Security Instrument.

**15. Borrower's Copy.** Borrower shall be given one copy of the Debt Instrument and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Sale of Debt Instrument; Change of Loan Servicer; Notice of Grievance.** The Debt Instrument or a partial interest in the Debt Instrument (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Debt Instrument and this Security Instrument and performs other mortgage loan servicing obligations under the Debt Instrument, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Debt Instrument. If there is a change of the Loan Servicer, Borrower will be given written notice of the change as required by Applicable Law. If the Debt Instrument is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Debt Instrument, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Debt Instrument unless otherwise provided by the purchaser of the Debt Instrument.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 13) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 17. If Borrower and Lender have entered into an agreement to arbitrate disputes, the provisions of any such arbitration agreement shall supersede any provision in this Section 17 that would conflict with the arbitration agreement.

**18. Hazardous Substances.** As used in this Section 18: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, mold, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**19. Assignment of Leases and Rents.** Borrower irrevocably grants, conveys, sells and assigns to Lender as additional security: (a) all of Borrower's right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases"), and (b) all of the rents, security deposits, issues and profits arising out of or earned in connection with the Property (all referred to as "Rents").

Borrower will promptly provide Lender with true and correct copies of all existing and future Leases. Borrower may collect, receive, enjoy and use the Rents so long as Borrower is not in default under the terms of this Security Instrument. Borrower agrees that this assignment is immediately effective between the parties to this Security Instrument. Borrower agrees that this assignment is effective as to third parties when Lender takes affirmative action prescribed by law, and that this assignment will remain in effect during any redemption period until the Loan is satisfied.

Borrower agrees that Lender may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Borrower of an event of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of an event of default, Borrower will endorse and deliver to Lender any payment of Rents in Borrower's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agent shall be applied first to the

costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by this Security Instrument in the order provided for in Section 2. If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any amounts disbursed by Lender for such purposes shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower warrants that no default exists under the Leases or any applicable landlord/tenant law. Borrower agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**20. Condominiums; Planned Unit Developments.** If the Property is a unit in a condominium project ("Condominium Project") or is part of a planned unit development ("PUD"), Borrower agrees to the following:

A. Obligations. Borrower shall perform all of Borrower's obligations under the Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project or PUD and any condominium association, homeowners association or equivalent entity ("Community Association"); (ii) any by-laws or other rules or regulations of the Community Association; and (iii) other equivalent documents. Borrower shall promptly pay, when due, all Community Association Dues, Fees, and Assessments.

B. Property. For units in a Condominium Project, the Property includes the unit in, together with an undivided interest in the common elements of, the Condominium Project, and Borrower's interest in the Community Association and the uses, proceeds and benefits of Borrower's interest. For PUDs, the Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Constituent Documents, and Borrower's interest in the Community Association and the uses, benefits and proceeds of Borrower's interest.

C. Property Insurance. So long as the Community Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then Borrower's obligation under Section 4 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Community Association policy. Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy. In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements of the Condominium Project or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower, subject to the rights of any lienholder with rights to insurance proceeds that are superior to Lender's rights.

D. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Community Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

E. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements of the Condominium Project or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the rights of any lienholder with rights to such proceeds that are superior to Lender's rights. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 9.

F. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Community Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Community Association unacceptable to Lender.

G. Remedies. If Borrower does not pay Community Association Dues, Fees, and Assessments when due,

then Lender may pay them. Any amounts disbursed by Lender under this paragraph G shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest at the rate applicable to the Debt Instrument from time to time, from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**21. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 16 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Debt Instrument and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 21 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Debt Instrument, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 13 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Debt Instrument and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**22. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Debt Instrument and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**23. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Debt Instrument as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 23.

**24. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 14 of this Security Instrument and in any Rider signed by me and recorded with it.

_________________________ (Seal)
Borrower JOHN SOTOMAYOR

_________________________ (Seal)
Borrower ALEXANDRA LOAIZA

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

_________________________ (Seal)
Borrower

For An Individual Acting In His/Her Own Right if
Executed Within New York

State of New York ) ss.:
County of Westchester )

On the 19th day of January in the year 2007 before me, the undersigned, personally appeared JOHN SOTOMAYOR and ALEXANDRA LOAIZA, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

(Signature and office of individual taking acknowledgement.)

Steven E. De Young
Notary Public, State of New York
No. 02DE4662831
Qualified in Westchester County
Commission Expires March 30, 2007

[NOTARIAL SEAL]

Print Name: ______________
Notary Public

My commission expires: ______________

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

*532173396ASS0013*

# Westchester County Recording & Endorsement Page

## Submitter Information

| | | | |
|---|---|---|---|
| Name: | Partners For Payment Relief LLC | Phone: | 435-374-0173 |
| Address 1: | 3748 West Chester Pike Suite 103 | Fax: | 435-755-9625 |
| Address 2: | | Email: | erandall@ingeo.com |
| City/State/Zip: | Newton Square PA 19073 | Reference for Submitter: | 8776819-Partners For Payment Relief L |

## Document Details

| | | | |
|---|---|---|---|
| Control Number: | **532173396** | Document Type: | **Assignment (ASS)** |
| Package ID: | 2013060500170001000 | Document Page Count: 1 | Total Page Count: 2 |

## Parties

☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: WELLS FARGO BANK N A | - Other | 1: PARTNERS FOR PAYMENT RELIEF DE II LLC | - Other |
| 2: | | 2: | |

## Property

☐ Additional Properties on Continuation page

| | | | |
|---|---|---|---|
| Street Address: | 2359 MAPLE AVE | Tax Designation: | 45.10-3-5 |
| City/Town: | CORTLANDT | Village: | |

## Cross- References

☐ Additional Cross-Refs on Continuation page

1: 470370694 2: 3: 4:

## Supporting Documents

## Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $10.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| Total Recording Fees Paid: | $50.50 |

## Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

## Mortgage Taxes

| | |
|---|---|
| Document Date: | |
| Mortgage Amount: | |
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | $0.00 |
| Dwelling Type: | Exempt: ☐ |
| Serial #: | |

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

WESTCHESTER COUNTY SEAL

Recorded: 06/06/2013 at 11:55 AM

Control Number: **532173396**

Witness my hand and official seal

Timothy C.Idoni
Westchester County Clerk

## Record and Return To

☐ Pick-up at County Clerk's office

Partners For Payment Relief LLC
3748 West Chester Pike Suite 103

Newton Square, PA 19073

ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, WELLS FARGO BANK, N.A., WHOSE ADDRESS IS 2324 OVERLAND AVE, BILLINGS, MT 59102, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to Partners for Payment Relief DE II, LLC, at *, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Mortgage dated 01/19/2007, made by JOHN SOTOMAYOR AND ALEXANDRA LOAIZA to WELLS FARGO BANK, N.A. in the principal sum of $104,375.00 and recorded on 02/22/2007 in Liber page, CRFN # 470370694 in the office of the Registry of WESTCHESTER County, N.Y.

* 3748 W. Chester Pike, Ste 103, Newtown Square, PA 19073

Prop Addr: 2359 MAPLE AVE CORTLANDT TWP
CORTLANDT MANOR, NY 10567

This mortgage(s) has not been assigned of record.

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

Dated: this 24th day of May, 2010

WELLS FARGO BANK, N.A.

By [signature]

Danielle Savarin
V.P. - Loan Documentation

[Seal: WELLS FARGO BANK, NATIONAL ASSOCIATION]

[signature] Joyce Boston
Witness Joyce Boston

STATE OF MONTANA COUNTY OF YELLOWSTONE

this 24th day of May, 2010, before me, the undersigned, personally appeared Danielle Savarin, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in YELLOWSTONE County, State of MONTANA

[signature]

Lara M. Robison Notary Public
Residing in the county of YELLOWSTONE
My commission expires: 04/16/2013

Document Prepared By: Jessica Fretwell/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
Property ID/S/B/L: SEC 45.10 BL 3 LOT 5
Return by Mail to: Dreambuilder Investments, LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

[Seal: LARA M. ROBISON NOTARIAL SEAL STATE OF MONTANA]

DBIAS 11780726 -- WELLS FARGO TRADE ENH2557538 $50.50

*11780726*

Wells Fargo Bank, N.A.

NOTE DATE: 01-19-2007
MATURITY DATE: 02-05-2022

# FIXED RATE LOAN NOTE
## (Partially Amortizing Payments -- Balloon)

Borrower Name:
JOHN SOTOMAYOR

Property Address:
2359 MAPLE AVE, CORTLANDT MANOR, NEW YORK 10567

Mailing Address for billing purposes (if different):
N/A

## SECTION 1: MY LOAN

In this Note, the words, "I," "me," "my," and "Borrower" (which also means "we," "us," "our," and "Borrowers," if more than one borrower signs below) refer to each person who signs this Note. The words "you," "your," "Lender," and "the Bank" refer to Wells Fargo Bank, N.A., and any successor or assign or subsequent holder of this Note. Each person who signs this Note is jointly and individually bound by its terms and will be directly liable to the Bank for the entire amount owed on this Note, and each is liable as the principal and not merely as a guarantor.

If I make the regularly scheduled payments on this Loan, I will still owe a large sum at maturity. This Loan is payable in full at maturity. I must repay the entire Principal balance of the Loan and unpaid interest then due. The Bank is under no obligation to refinance the Loan at that time. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be the lender I have this Loan with, willing to lend me the money. If I refinance this Loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain refinancing from the same lender.

## SECTION 2: SECURITY INTEREST

I am giving the Bank a deed of trust, mortgage or other security instrument including all modifications, addenda and amendments to them (the "Security Instrument") signed the same date as this Note. The Security Instrument gives you a security interest in the property located at the address shown above (the "Property").

## SECTION 3: MY PROMISE TO PAY

In return for a loan that I have received (the "Loan"), I promise to pay $104,375.00 (this amount is called "Principal"), plus interest, to the order of the Bank. I understand that the Bank may transfer this Note. I will make all payments under this Note in U.S. Dollars.

PAYMENTS

I will pay monthly payments of Principal and interest on the 5TH day of each month beginning on 03-05-2007. My monthly payment will be in the amount of U.S. $881.64.

On 02-05-2022, I will pay a final balloon payment equal to the unpaid Principal plus all remaining interest, fees and other sums owed under this Note and the Security Instrument. I understand that the Bank is not under any obligation to refinance my final balloon payment.

I will make payments at the Bank's address indicated on my payment coupon or my billing statement, unless another payment method is authorized by the Bank. Each non-electronic payment I make will be accompanied by the remittance portion of my billing statement or payment coupon.

I understand that payments I make by mail to the address indicated on my billing statement or payment coupon will be credited to my Loan as of the date received (including Saturdays, Sundays, and holidays) if the Bank receives the payment prior to 5 p.m. local time for the payment address.

Payments I make from a qualified account ("Automatic Payments") pursuant to an Authorization for Automatic Transfer will be credited to my Loan on the date received (including Saturdays, Sundays, and holidays).

Payments I make at a Bank branch and received prior to established cut-off times will be credited to my Loan on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and Bank observed holidays. Payments made at a Bank branch received on a Saturday, Sunday, or Bank observed holiday or after established cut-off times will be credited as of the next business day.

Payments I make online, by ATM, by telephone, or by any other means the Bank may make available to me and received prior to established cut-off times will be credited to my Loan on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and federal holidays. Payments made online, by ATM, by telephone, or by any other means the Bank may make available to me received on a Saturday, Sunday, or federal holiday or after established cut-off times will be credited as of the next business day.

I will not make payment or authorize others to make payment for me by means of a single aggregated payment, which includes payments for this Loan and any other account(s), unless the payment is made in compliance with the Bank's requirements for multiple account payments.

The Bank may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement, without losing any of the Bank's rights under this Note. The Bank's acceptance of checks or money orders labeled "payment in full," or words to that effect, will not constitute an accord and satisfaction nor a waiver of any rights the Bank has to receive full payment. If I intend to condition a payment, pay the Loan in full with less than the total amount owed, or give payment instructions, I will clearly set out such intention, conditions and instructions in a separate letter accompanying my payment, and mail both to Wells Fargo Bank, N.A., P.O. Box 2993, Portland, OR 97208.

PRINCIPAL PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Principal Reduction." When I make a Principal Reduction, I will tell the Bank in a letter that I am doing so. A Principal Reduction resulting in payoff prior to the maturity of this Note may result in the assessment of a prepayment fee or an origination fee (collection deferred).

## SECTION 4: INTEREST

I will pay interest at a simple annual interest rate of 9.500%. Interest will be charged on the unpaid Principal until the full amount of Principal has been paid. The interest rate required by this Section 4 is the rate I will pay both before and after any default under this Note.

## SECTION 5: AUTOMATIC PAYMENT DISCOUNT

The Automatic Payment discount is not available for this Loan.

## SECTION 6: ORIGINATION FEE

N/A

## SECTION 7: CLOSING COSTS

In addition to the fees and charges set forth in this Note, I agree to pay the closing costs set forth in the HUD Settlement Statement (if any) at the settlement of my Loan.

## SECTION 8: FEES, COSTS AND CHARGES

I agree to pay the following non-refundable fees and charges.

<u>LATE CHARGES</u>
If my scheduled payment is more than ten (10) days past due, I will pay a late charge equal to the greater of five dollars ($5.00) or five percent (5%) of the scheduled payment.

<u>PREPAYMENT FEE</u>
I agree to pay a prepayment fee of $500.00. I agree to pay the prepayment fee if I prepay this Note in full at any time within the first three (3) years after the date of this Note. I do not have to pay the prepayment fee if I prepay my Loan in full because of default due to non-payment, casualty loss, or if I refinance my Loan with you or your affiliate.

## SECTION 9: OTHER CHARGES

To the extent allowed by law, I agree to pay the following fees if I request or authorize these additional services:

(a) <u>Fax Fee</u>: I agree to pay a fax fee in the amount of ten dollars ($10.00) if I request or authorize others to request the Bank to transmit any document or letter by facsimile (fax) machine.
(b) <u>Research/Photocopy Fee</u>: I agree to pay a research/photocopy fee in the amount of five dollars ($5.00) per photocopy if I request or authorize others to request the Bank to provide photocopies of Loan documents.
(c) <u>Reconveyance or Satisfaction Fee</u>: I agree to pay reconveyance and satisfaction fees as allowed by applicable law when the Bank reconveys/discharges/releases the Security Instrument.
(d) <u>Return Check Fee</u>: I agree to pay a return check fee of twenty-five dollars ($25.00) if I make a payment with a check that is dishonored for any reason.

I also agree to pay any other reasonable fees the Bank may charge.

## SECTION 10: COLLECTION COSTS AND ATTORNEY'S FEES

If I am in default, I agree to pay the Bank's collection costs, attorneys' fees and other expenses of enforcing the Bank's rights under this Note and the Security Instrument unless prohibited by applicable law.

## SECTION 11: TAX DEDUCTIBILITY

I understand that I should consult a tax advisor regarding the deductibility of interest and charges under my Loan.

## SECTION 12: DEFAULT

I will be in default if any one of the following occur:

- I fail to pay the full amount of any payment when due.
- I commit fraud or make a material misrepresentation in connection with this Note.
- A case under the U.S. Bankruptcy Code is started by or against me.
- Any action or inaction by me adversely affects the Bank's security in the Property, including, without limitation, transfer of the Property without the Bank's consent.
- The Bank believes in good faith that I may not be able or willing to pay as promised.
- Any person who has signed this Note dies.
- If I am an executive officer of the Bank and federal law governing credit extended by a bank to its executive officer, including without limitation Section 215.5(d)(4) of Federal Reserve Regulation O (12 CFR § 215.5(d)(4)), permits or requires immediate payment of all outstanding Principal, interest and any other charges that I may owe under this Note.

If I am in default, subject to any notice and right to cure required by applicable law, the Bank may require me to pay immediately all sums I owe under this Note. Even if, at the time when I am in default, the Bank does not require me to pay immediately in full as described above, the Bank will still have the right to do so if I am in default at a later time.

## SECTION 13: FURTHER ASSURANCES

I agree that I will take any steps including but not limited to signing, filing or recording any documents which are necessary, or which the Bank deems appropriate, to be sure that my obligations to the Bank under this Note become and continue to be secured by the Security Instrument.

## SECTION 14: CHANGE IN RESIDENCE OR OWNERSHIP OF THE PROPERTY

I agree to notify the Bank immediately if (a) the Property is my primary residence and I cease to live in the Property as my primary residence, or (b) there is any change in the ownership of the Property. I agree that my Loan will be accelerated and the outstanding balance of my Loan will be due and payable immediately on any sale or other transfer of the Property. In this regard, I understand that the Security Instrument contains the following or a substantially similar provision:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## SECTION 15: WAIVERS

**BORROWER'S WAIVERS**
I waive my rights to require the Bank to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Bank if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, waives these rights. These persons are known as "guarantors, sureties and endorsers."

**BANK'S NON-WAIVER**
The Bank may fail to make use of any of its rights under this Note or the Security Instrument or under applicable law on one or more occasions, or delay or partially exercise such rights, without waiving any of its rights or amending any of my obligations. The Bank may fail to make use of any of its rights or delay or partially exercise such rights against one party, without waiving any of its rights against any other party to this Note.

## SECTION 16: CREDIT REPORTS

My signature on this Note authorizes the Bank to obtain my credit report in connection with (a) renewing, modifying or extending this Note; (b) reviewing my Loan; (c) taking any collection action; and (d) any other legitimate purposes associated with my Loan.

## SECTION 17: GOVERNING LAW; SEVERABILITY

All interest, fees and other amounts charged or accruing in connection with this Note, which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001(a)), shall be governed by and interpreted under South Dakota law. In all other respects, this Note and all related documents, as well as the rights, remedies, and duties of the Bank and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and to the extent not preempted by federal law, the laws of the state in which the Property is located.

If any provision of this Note or the Security Instrument is determined to be invalid or unenforceable by a court of competent jurisdiction, the rest of this Note will remain in full force and effect and enforceable according to its terms. All references in this Note to the singular shall include the plural and vice versa.

## SECTION 18: NOTICES

Unless applicable law requires a different method, any notice that must be given to me or to anyone else who signs, guarantees or endorses this Note may be given by mailing it to my address as set forth above in this Note, or to a different address if I have properly notified the Bank of that different address. Any notice that I may send to the Bank must be given by mailing it to the Bank at the address provided on my billing statement or payment coupon, unless the type of notice is more specifically addressed in this Note and a different address is provided herein.

I agree that the Bank may contact me by telephone. I agree to accept calls from the Bank at any telephone number that I provide to the Bank.

## SECTION 19: ADDENDA

I agree to the following attached addenda:

N/A

## SECTION 20: STATE DISCLOSURES

N/A

NOTICE TO THE BORROWER:
DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE THIS NOTE IS SIGNED. READ THIS NOTE BEFORE SIGNING IT.

ACKNOWLEDGMENT

I have received, read and retained a copy of this Fixed Rate Loan Note, the Security Instrument and the Truth-in-Lending Disclosure Statement, provided to me at the closing, all of which I agree to by signing this Fixed Rate Loan Note. If this Loan is secured by a dwelling, I have also received, read and retained a copy of the Agreement to Provide Insurance and the HUD Settlement Statement provided to me at the closing. In addition, I hereby agree that the terms of this Fixed Rate Loan Note replace the terms of any and all prior oral or written agreements, including by way of example only, commitment letters and pre-approval letters between the Bank and me.

[signature] (Seal) 1/12/07
BORROWER DATE SIGNED
JOHN SOTOMAYOR

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

(Seal)
BORROWER DATE SIGNED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------X Index No: 70725/2013

PARTNERS FOR PAYMENT RELIEF DE II, LLC,

Plaintiff,

VOLUNTARY DISCONTINUANCE OF ACTION

-against-

JOHN SOTOMAYOR; ALEXANDRA LOAIZA; AMERICAN EXPRESS CENTRURION BANK; MIDLAND FUNDING LLC; "JOHN DOE #1" Through "JOHN DOE #12", said names being fictitious, parties intended being possible tenants or occupants of premises, and corporations, other entities or persons who claim, or may claim, a lien against the premises,

Defendants.

-----------------------------------------------------------------X

**WHEREAS**, no party served herein is an infant or incompetent person for whom a committee has been appointed,

IT IS HEREBY STIPULATED AND AGREED by

(a) Attorneys for plaintiff, THE MARGOLIN & WEINREB LAW GROUP LLP
(b) Attorneys for all defendants who have appeared or answered including those who have waived all notices
(c) Defendants who have been served with process and have not appeared but whose time to do so has expired.
(d) Defendants who have appeared in person

that the above entitled action be and the same hereby canceled and discontinued without costs to either party as against the other.

This stipulation may be filed without further notice with the Clerk of the Court.

Dated: March 2, 2018
Syosset, NY 11791

THE MARGOLIN & WEINREB LAW GROUP, LLP
*Attorneys for Plaintiff*

By: Sandy J. Stolar, Esq.
165 Eileen Way, Suite 101
Syosset, NY 11791
516-921-3838

Index No: 70725/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------------X
PARTNERS FOR PAYMENT RELIEF DE II, LLC,

Plaintiff,

-against-

JOHN SOTOMAYOR; et al.

Defendants

---

VOLUNTARY DISCONTINUANCE OF ACTION

---

**THE MARGOLIN & WEINREB LAW GROUP, LLP**
*Attorneys for Plaintiff*
165 Eileen Way, Suite 101
Syosset, New York 11791
516-921-3838

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
WINDWARD BORA, LLC,

Plaintiff,

- against -

JOHN SOTOMAYOR and ALEXANDRIA LOAIZA,

Defendants.
-------------------------------------------------------------x

**ORDER**

No. 19-CV-4503 (CS)

Seibel, J.

The Court will assume familiarity with the facts and procedural history of the case, as described in my summary judgment ruling on February 23, 2021. In that ruling, I granted Plaintiff's motion for summary judgment on all issues other than (1) Plaintiff's compliance with New York's Real Property Actions and Proceedings Law ("RPAPL") § 1303, because there was a genuine issue of material fact regarding whether Plaintiff served Defendant Sotomayor with the complete notice required under that section; (2) Plaintiff's compliance with RPAPL § 1320, because Plaintiff had not established that it provided the notice required under that section or demonstrated that its failure to provide the notice could be excused; and (3) damages. (Minute Entry dated Feb. 23, 2021.) The case is currently scheduled for trial on seven days' notice no earlier than May 10, 2021.

At Plaintiff's request, (*see* Doc. 158), the Court held a conference today, during which Plaintiff informed the Court that it would be unable to prove at trial that it provided the notices required by RPAPL §§ 1303 and 1320. Defendants then made an oral motion for summary judgment on the grounds that the undisputed facts demonstrated that Plaintiff had not provided

those notices, and Plaintiff agreed that the Court should enter summary judgment in favor of Defendants on those grounds.

Accordingly, summary judgment is GRANTED in favor of Defendants. The Clerk of Court is respectfully directed to enter judgment for Defendants and close the case.

**SO ORDERED.**

Dated: April 15, 2021
White Plains, New York

CATHY SEIBEL, U.S.D.J.

Query Reports Utilities Help Log Out

CLOSED,ECF,PRO-SE

# U.S. District Court
# Southern District of New York (White Plains)
# CIVIL DOCKET FOR CASE #: 7:19-cv-04503-CS

Windward Bora, LLC v. Sotomayor et al
Assigned to: Judge Cathy Seibel
Cause: 28:1332 Diversity Action

Date Filed: 05/16/2019
Date Terminated: 04/16/2021
Jury Demand: None
Nature of Suit: 220 Real Property: Foreclosure
Jurisdiction: Diversity

**Plaintiff**

**Windward Bora, LLC**

represented by **Barry Maxwell Golden**
Landy Wolf PLLC
270 Madison Avenue
Suite 1400
New York, NY 10016
212-682-8510
Fax: 212-682-8514
Email: barrygolden21@gmail.com
*ATTORNEY TO BE NOTICED*

**Rafi Hasbani**
Hasbani & Light, P.C.
450 Seventh Avenue, Suite 1408
New York, NY 10123
212-643-6677
Email: hllawpc@gmail.com
*ATTORNEY TO BE NOTICED*

**Seth Daniel Weinberg**
The Margolin & Weinreb Law Group, LLP
165 Eileen Way
Ste 101
Syosset, NY 10123
516-921-3838
Fax: 516-921-3824
Email: seth@nyfclaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**John Sotomayor**

represented by **Steven Amshen**
Petroff Amshen LLP
1795 Coney Island Avenue, Ste 3
Brooklyn, NY 11230

718-336-4200
Fax: 718-336-4242
Email: samshen@lawpetroff.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alexandria Loaiza** represented by **Steven Amshen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States of America Through the IRS**
*TERMINATED: 06/28/2019*

**Defendant**

**American Express Centurion Bank**
*TERMINATED: 10/05/2020*

**Defendant**

**Midland Funding LLC**
*TERMINATED: 10/05/2020*
*doing business as*
Midland Funding of Delaware LLC
*TERMINATED: 10/05/2020*

**Defendant**

**New York State Tax Commission**
*TERMINATED: 08/20/2020*

**Defendant**

**"John Doe"**
*names being fictitious, said parties intended being tenants or occupants, if any, having or claiming an interest in, or lien upon the premises described in the complaint*
*TERMINATED: 07/23/2019*

**Defendant**

**"Jane Doe"**
*names being fictitious, said parties intended being tenants or occupants, if any, having or claiming an interest in, or lien upon the premises described in the complaint*
*TERMINATED: 07/23/2019*

**Counter Claimant**

**Alexandria Loaiza** represented by **Steven Amshen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Windward Bora, LLC** represented by **Barry Maxwell Golden**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Seth Daniel Weinberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/16/2019 | 1 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** -COMPLAINT against WINDWARD BORA, LLC. (Filing Fee $ 400.00, Receipt Number ANYSDC-16900071)Document filed by WINDWARD BORA, LLC. (Attachments: # 1 Exhibit A - IRS Judgment, # 2 Exhibit B - American Express Judgment, # 3 Exhibit C- Midland Judgment, # 4 Exhibit D - NYS Tax Lien, # 5 Exhibit E - Endoresed Note, # 6 Exhibit F - Mortgage, # 7 Exhibit G - Assignment of Mortgage, # 8 Exhibit H - Assingment of Mortgage, # 9 Exhibit I - Affidavit of Possession) (Weinberg, Seth) Modified on 5/17/2019 (pne). (Entered: 05/16/2019) |
| 05/16/2019 | 2 | **FILING ERROR - DEFICIENT SUMMONS REQUEST As To - PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to, re: 1 Complaint,. Document filed by WINDWARD BORA, LLC. (Weinberg, Seth) Modified on 5/17/2019 (pne). (Entered: 05/16/2019) |
| 05/16/2019 | 3 | CIVIL COVER SHEET filed. (Weinberg, Seth) (Entered: 05/16/2019) |
| 05/16/2019 | 4 | FIRST RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by WINDWARD BORA, LLC.(Weinberg, Seth) (Entered: 05/16/2019) |
| 05/16/2019 | 5 | AFFIRMATION of Seth D. Weinberg in Support re: 1 Complaint,. Document filed by WINDWARD BORA, LLC. (Weinberg, Seth) (Entered: 05/16/2019) |
| 05/16/2019 | 6 | NOTICE of Help For Homeowners in Foreclosure. Document filed by WINDWARD BORA, LLC. (Weinberg, Seth) (Entered: 05/16/2019) |
| 05/17/2019 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Cathy Seibel. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (pne) (Entered: 05/17/2019) |
| 05/17/2019 | | Magistrate Judge Paul E. Davison is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (pne) (Entered: 05/17/2019) |
| 05/17/2019 | | Case Designated ECF. (pne) (Entered: 05/17/2019) |
| 05/17/2019 | | *****NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Seth Daniel Weinberg. The party information for the following** |

| | | |
|---|---|---|
| | | **party/parties has been modified: "John Doe", Windward Bora, LLC, Midland Funding LLC. The information for the party/parties has been modified for the following reason/reasons: party name was entered in all caps; alias party information was entered incorrectly. (pne)** (Entered: 05/17/2019) |
| 05/17/2019 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Seth Daniel Weinberg to RE-FILE re: Document No. 1 Complaint,,. The filing is deficient for the following reason(s): all of the parties listed on the pleading were not entered on CM ECF; "Jane Doe" must be added to the case the wrong party/parties whom the pleading is against were selected. Docket the event type Add Party to Pleading found under the event list Complaints and Other Initiating Documents.. Re-file the pleading using the event type Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. ***DO NOT USE GOOGLE CHROME OR SAFARI BROWSERS*** (pne)** (Entered: 05/17/2019) |
| 05/17/2019 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Seth Daniel Weinberg to RE-FILE Document No. 2 Request for Issuance of Summons. The filing is deficient for the following reason(s): the name of the party for whom the summons is being requested must be entered on the docket entry text; each summons request must be filed separately. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (pne)** (Entered: 05/17/2019) |
| 05/17/2019 | | *****NOTICE TO ATTORNEY REGARDING CIVIL CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Seth Daniel Weinberg. The following case opening statistical information was erroneously selected/entered: County code Albany. The following correction(s) have been made to your case entry: the County code has been modified to XX Out of State. (pne)** (Entered: 05/17/2019) |
| 05/17/2019 | 7 | COMPLAINT against "Jane Doe". Document filed by Windward Bora, LLC. (Attachments: # 1 Exhibit A - IRS Judgment, # 2 Exhibit B - American Express Judgment, # 3 Exhibit C- Midland Judgment, # 4 Exhibit D - NYS Tax Lien, # 5 Exhibit E - Endorsed Note, # 6 Exhibit F - Mortgage, # 7 Exhibit G - Assignment of Mortgage, # 8 Exhibit H - Assingment of Mortgage, # 9 Exhibit I - Affidavit of Possession)(Weinberg, Seth) (Entered: 05/17/2019) |
| 05/17/2019 | 8 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to John Sotomayor, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/20/2019 (dnh). (Entered: 05/17/2019) |
| 05/17/2019 | 9 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to Alexandria Loaiza, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/20/2019 (dnh). (Entered: 05/17/2019) |
| 05/17/2019 | 10 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to United States of America Through the IRS, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/20/2019 (dnh). (Entered: 05/17/2019) |
| 05/17/2019 | 11 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to American Express |

| | | |
|---|---|---|
| | | Centurion Bank, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/20/2019 (dnh). (Entered: 05/17/2019) |
| 05/17/2019 | 12 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to Midland Funding LLC, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/20/2019 (dnh). (Entered: 05/17/2019) |
| 05/17/2019 | 13 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to New York State Tax Commission, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/20/2019 (dnh). (Entered: 05/17/2019) |
| 05/17/2019 | 14 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to "John Doe", re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/20/2019 (dnh). (Entered: 05/17/2019) |
| 05/17/2019 | 15 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to "Jane Doe", re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/20/2019 (dnh). (Entered: 05/17/2019) |
| 05/20/2019 | | *****NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Seth Daniel Weinberg. The party information for the following party/parties has been modified: "Jane Doe". The information for the party/parties has been modified for the following reason/reasons: party text was omitted. (dnh)** (Entered: 05/20/2019) |
| 05/20/2019 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Seth Daniel Weinberg to RE-FILE Document No. 8 Request for Issuance of Summons, 10 Request for Issuance of Summons, 15 Request for Issuance of Summons, 14 Request for Issuance of Summons, 13 Request for Issuance of Summons, 9 Request for Issuance of Summons, 11 Request for Issuance of Summons, 12 Request for Issuance of Summons. The filing is deficient for the following reason(s): Plaintiff's Attorney information omitted from the PDF. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (dnh)** (Entered: 05/20/2019) |
| 05/20/2019 | 16 | **FILING ERROR SUMMONS NOT LINKED TO CORRESPONDING PLEADING-** REQUEST FOR ISSUANCE OF SUMMONS as to John Sotomayor, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/21/2019 (dnh). (Entered: 05/20/2019) |
| 05/20/2019 | 17 | **FILING ERROR SUMMONS NOT LINKED TO CORRESPONDING PLEADING-** REQUEST FOR ISSUANCE OF SUMMONS as to Alexandria Loaiza, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/21/2019 (dnh). (Entered: 05/20/2019) |
| 05/20/2019 | 18 | **FILING ERROR SUMMONS NOT LINKED TO CORRESPONDING PLEADING-** REQUEST FOR ISSUANCE OF SUMMONS as to United States of America Through the IRS, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/21/2019 (dnh). (Entered: 05/20/2019) |
| 05/20/2019 | 19 | **FILING ERROR SUMMONS NOT LINKED TO CORRESPONDING PLEADING-** REQUEST FOR ISSUANCE OF SUMMONS as to American Express |

| | | |
|---|---|---|
| | | Centurion Bank, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/21/2019 (dnh). (Entered: 05/20/2019) |
| 05/20/2019 | 20 | **FILING ERROR SUMMONS NOT LINKED TO CORRESPONDING PLEADING-** REQUEST FOR ISSUANCE OF SUMMONS as to Midland Funding LLC, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/21/2019 (dnh). (Entered: 05/20/2019) |
| 05/20/2019 | 21 | **FILING ERROR SUMMONS NOT LINKED TO CORRESPONDING PLEADING-** REQUEST FOR ISSUANCE OF SUMMONS as to New York State Tax Commission, re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/21/2019 (dnh). (Entered: 05/20/2019) |
| 05/20/2019 | 22 | **FILING ERROR SUMMONS NOT LINKED TO CORRESPONDING PLEADING-** REQUEST FOR ISSUANCE OF SUMMONS as to "John Doe", re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/21/2019 (dnh). (Entered: 05/20/2019) |
| 05/20/2019 | 23 | **FILING ERROR SUMMONS NOT LINKED TO CORRESPONDING PLEADING-** REQUEST FOR ISSUANCE OF SUMMONS as to "Jane Doe", re: 7 Complaint, 1 Complaint,,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/21/2019 (dnh). (Entered: 05/20/2019) |
| 05/21/2019 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Seth Daniel Weinberg to RE-FILE Document No. 23 Request for Issuance of Summons, 16 Request for Issuance of Summons, 22 Request for Issuance of Summons, 21 Request for Issuance of Summons, 17 Request for Issuance of Summons, 18 Request for Issuance of Summons, 20 Request for Issuance of Summons, 19 Request for Issuance of Summons. The filing is deficient for the following reason(s): Summonses may only be linked to one pleading; Link the summons request to the pleading accepted by the court 7 . Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (dnh)** (Entered: 05/21/2019) |
| 05/21/2019 | 24 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to John Sotomayor, re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/22/2019 (dnh). (Entered: 05/21/2019) |
| 05/21/2019 | 25 | REQUEST FOR ISSUANCE OF SUMMONS as to Alexandria Loaiza, re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 05/21/2019) |
| 05/21/2019 | 26 | REQUEST FOR ISSUANCE OF SUMMONS as to United States of America Through the IRS, re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 05/21/2019) |
| 05/21/2019 | 27 | REQUEST FOR ISSUANCE OF SUMMONS as to American Express Centurion Bank, re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 05/21/2019) |
| 05/21/2019 | 28 | REQUEST FOR ISSUANCE OF SUMMONS as to Midland Funding LLC, re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 05/21/2019) |
| 05/21/2019 | 29 | REQUEST FOR ISSUANCE OF SUMMONS as to New York State Tax Commission, re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 05/21/2019) |

| | | |
|---|---|---|
| 05/21/2019 | 30 | REQUEST FOR ISSUANCE OF SUMMONS as to "John Doe", re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 05/21/2019) |
| 05/21/2019 | 31 | REQUEST FOR ISSUANCE OF SUMMONS as to "Jane Doe", re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 05/21/2019) |
| 05/22/2019 | 32 | ELECTRONIC SUMMONS ISSUED as to Alexandria Loaiza. (dnh) (Entered: 05/22/2019) |
| 05/22/2019 | 33 | ELECTRONIC SUMMONS ISSUED as to United States of America Through the IRS. (dnh) (Entered: 05/22/2019) |
| 05/22/2019 | 34 | ELECTRONIC SUMMONS ISSUED as to American Express Centurion Bank. (dnh) (Entered: 05/22/2019) |
| 05/22/2019 | 35 | ELECTRONIC SUMMONS ISSUED as to Midland Funding LLC. (dnh) (Entered: 05/22/2019) |
| 05/22/2019 | 36 | ELECTRONIC SUMMONS ISSUED as to New York State Tax Commission. (dnh) (Entered: 05/22/2019) |
| 05/22/2019 | 37 | ELECTRONIC SUMMONS ISSUED as to "John Doe". (dnh) (Entered: 05/22/2019) |
| 05/22/2019 | 38 | ELECTRONIC SUMMONS ISSUED as to "Jane Doe". (dnh) (Entered: 05/22/2019) |
| 05/22/2019 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Seth Daniel Weinberg to RE-FILE Document No. 24 Request for Issuance of Summons. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the issuance of summons is not correct; Defendant name contains a typographical error. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (dnh)** (Entered: 05/22/2019) |
| 05/22/2019 | 39 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to John Sotomayor, re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) Modified on 5/23/2019 (dnh). (Entered: 05/22/2019) |
| 05/23/2019 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Seth Daniel Weinberg to RE-FILE Document No. 39 Request for Issuance of Summons. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the issuance of summons is not correct; Defendant name contains a typographical error. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (dnh)** (Entered: 05/23/2019) |
| 05/23/2019 | 40 | REQUEST FOR ISSUANCE OF SUMMONS as to John Sotomayor, re: 7 Complaint,. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 05/23/2019) |
| 06/03/2019 | 41 | ELECTRONIC SUMMONS ISSUED as to John Sotomayor. (sj) (Entered: 06/03/2019) |
| 06/27/2019 | 42 | AFFIDAVIT OF SERVICE. John Sotomayor served on 6/8/2019, answer due 7/1/2019. Service was accepted by John Sotomayor. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 06/27/2019) |
| 06/27/2019 | 43 | AFFIDAVIT OF SERVICE. Alexandria Loaiza served on 6/11/2019, answer due 7/2/2019. Service was accepted by John Sotomayor. Service was made by Mail. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 06/27/2019) |

| | | |
|---|---|---|
| 06/27/2019 | 44 | AFFIDAVIT OF SERVICE. American Express Centurion Bank served on 6/25/2019, answer due 7/16/2019. Service was accepted by NY State Secretary of State - Nancy Doherty. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 06/27/2019) |
| 06/27/2019 | 45 | AFFIDAVIT OF SERVICE. United States of America Through the IRS served on 6/19/2019, answer due 7/10/2019. Service was made by MAIL. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 06/27/2019) |
| 06/27/2019 | 46 | AFFIDAVIT OF SERVICE. Midland Funding LLC served on 6/13/2019, answer due 7/5/2019. Service was accepted by John Doe - Name Refused. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 06/27/2019) |
| 06/27/2019 | 47 | AFFIDAVIT OF SERVICE. "John Doe" served on 6/8/2019, answer due 7/1/2019. Service was accepted by John Sotomayor. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 06/27/2019) |
| 06/27/2019 | 48 | AFFIDAVIT OF SERVICE. "Jane Doe" served on 6/8/2019, answer due 7/1/2019. Service was accepted by John Sotomayor. Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 06/27/2019) |
| 06/28/2019 | 49 | NOTICE OF VOLUNTARY DISMISSAL pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice and without costs against the defendant(s) United States of America Through the IRS. Document filed by Windward Bora, LLC. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Weinberg, Seth) (Entered: 06/28/2019) |
| 06/28/2019 | | *****NOTICE TO COURT REGARDING NOTICE OF VOLUNTARY DISMISSAL Document No. 49 Notice of Voluntary Dismissal was reviewed and referred to Judge Cathy Seibel for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal and it did not dismiss all of the parties or the action in its entirety. (km)** (Entered: 06/28/2019) |
| 06/28/2019 | 50 | NOTICE OF DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(i): Pursuant to F.R.C.P. 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff Windward Bora, LLC and/or their counsel, hereby give notice that the above captioned action is voluntarily dismissed as to the defendant United States of America Through The IRS. SO ORDERED. United States of America Through the IRS terminated. (Signed by Judge Cathy Seibel on 6/28/2019) (mml) (Entered: 06/28/2019) |
| 06/28/2019 | 51 | NOTICE OF APPEARANCE PRO SE by John Sotomayor. (sc) (Entered: 06/28/2019) |
| 06/28/2019 | 52 | ANSWER to 1 Complaint. Document filed by John Sotomayor.(sc) (Entered: 06/28/2019) |
| 06/28/2019 | 53 | NOTICE OF INITIAL COURT CONFERENCE: Initial Conference set for 7/30/2019 at 11:30 AM in Courtroom 621, 300 Quarropas Street, White Plains, NY 10601 before Judge Cathy Seibel. (rj) (Entered: 07/01/2019) |
| 07/19/2019 | 54 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora, LLC. (Attachments: # 1 Affirmation in Support, # 2 Text of Proposed Order Clerk's Certificate of Default, # 3 Exhibit A-AOS) (Golden, Barry) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 7/19/2019 (km). (Entered: 07/19/2019) |

| | | |
|---|---|---|
| 07/19/2019 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED CLERK'S CERTIFICATE OF DEFAULT: Notice to Attorney Barry Golden. RE-FILE Document No. 54 Proposed Clerk's Certificate of Default. The filing is deficient for the following reason(s): Please refer to ECF Rule 16.1. The request to enter default is no longer needed. The clerk's certificate that is filed is not as to form. Please use the sample clerk's certificate that is on our website. (Also, you need to file one clerk's certificate for each defaulting defendant). Re-file each proposed clerk's certificate as a separate entry, then file the affirmation in support as a separate entry. (Filed under other answers, affirmation in support of a non-motion). (km)** (Entered: 07/19/2019) |
| 07/19/2019 | 55 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora, LLC. (Golden, Barry) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 07/19/2019) |
| 07/19/2019 | 56 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora, LLC. (Golden, Barry) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 07/19/2019) |
| 07/19/2019 | 57 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora, LLC. (Golden, Barry) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 07/19/2019) |
| 07/19/2019 | 58 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora, LLC. (Golden, Barry) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 7/22/2019 (km). (Entered: 07/19/2019) |
| 07/19/2019 | 59 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora, LLC. (Golden, Barry) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 07/19/2019) |
| 07/19/2019 | 60 | AFFIRMATION of Barry M. Golden in Support re: 59 Proposed Clerk's Certificate of Default, 56 Proposed Clerk's Certificate of Default, 57 Proposed Clerk's Certificate of Default, 55 Proposed Clerk's Certificate of Default, 58 Proposed Clerk's Certificate of Default. Document filed by Windward Bora, LLC. (Attachments: # 1 Exhibit A-AOS) (Golden, Barry) (Entered: 07/19/2019) |
| 07/22/2019 | 61 | CLERK'S CERTIFICATE OF DEFAULT as to Alexandria Loaiza. (km) (Entered: 07/22/2019) |
| 07/22/2019 | 62 | CLERK'S CERTIFICATE OF DEFAULT as to American Express Centurion Bank. (km) (Entered: 07/22/2019) |
| 07/22/2019 | 63 | CLERK'S CERTIFICATE OF DEFAULT as to Midland Funding LLC. (km) (Entered: 07/22/2019) |
| 07/22/2019 | 64 | CLERK'S CERTIFICATE OF DEFAULT as to Jane Doe. (km) (Entered: 07/22/2019) |
| 07/22/2019 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED CLERK'S CERTIFICATE OF DEFAULT: Notice to Attorney Barry Golden. RE-FILE Document No. 58 Proposed Clerk's Certificate of Default. The filing is deficient for the following reason(s): The proof of service for the summons and complaint for John Doe needs to be filed on ECF. Document #47 is for Jane Doe. Once the proof of service has been filed, please re-file the clerk's certificate. (km)** (Entered: 07/22/2019) |
| 07/22/2019 | 65 | NOTICE OF APPEARANCE by Barry Golden on behalf of Windward Bora, LLC. (Golden, Barry) (Entered: 07/22/2019) |

| | | |
|---|---|---|
| 07/22/2019 | 66 | NOTICE OF VOLUNTARY DISMISSAL pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice and without costs against the defendant(s) "Jane Doe", "John Doe". Document filed by Windward Bora, LLC. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).**. (Attachments: # 1 Exhibit A-AOS of Jane Doe)(Golden, Barry) (Entered: 07/22/2019) |
| 07/23/2019 | | *****NOTICE TO COURT REGARDING NOTICE OF VOLUNTARY DISMISSAL Document No. 66 Notice of Voluntary Dismissal was reviewed and referred to Judge Cathy Seibel for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal and it did not dismiss all of the parties or the action in its entirety; the plaintiff(s) filed their voluntary dismissal in a Pro Se case. (dt)** (Entered: 07/23/2019) |
| 07/23/2019 | 67 | NOTICE OF DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(i): Pursuant to F.R.C.P. 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff Windward Bora, LLC and/or their counsel, hereby give notice that the above captioned action is voluntarily dismissed as to the defendants John Doe and Jane Doe, the last two names being fictitious, said parties intended being tenants or occupants, if any, having or claiming an interest in, or lien upon the premises described in the complaint. SO ORDERED. "Jane Doe" (names being fictitious, said parties intended being tenants or occupants, if any, having or claiming an interest in, or lien upon the premises described in the complaint) and "John Doe" (names being fictitious, said parties intended being tenants or occupants, if any, having or claiming an interest in, or lien upon the premises described in the complaint) terminated. (Signed by Judge Cathy Seibel on 7/23/2019) (mml) (Entered: 07/23/2019) |
| 07/30/2019 | 68 | CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER: The case is to be tried to a jury. Deposition due by 10/31/2019. Fact Discovery due by 11/30/2019. Case Management Conference set for 12/4/2019 at 04:00 PM before Judge Cathy Seibel. Premotion letters due 11/20/19. Responses 11/27/19. The Clerk shall send a copy of this Order to Defendant. (Signed by Judge Cathy Seibel on 7/30/2019) (mml) Transmission to Docket Assistant Clerk for processing. (Entered: 07/30/2019) |
| 07/30/2019 | | Mailed a copy of 68 Scheduling Order, to John Sotomayor 2359 Maple Ave. Cortlandt Manor, NY 10567. (vba) (Entered: 07/30/2019) |
| 07/30/2019 | | Minute Entry for proceedings held before Judge Cathy Seibel: Initial Conference held on 7/30/2019. Case Management Plan signed. Pre-motion letter(s) to be submitted by November 20, 2019; opposition due November 27, 2019. See transcript. (Status Conference set for 12/4/2019 at 04:00 PM in Courtroom 621, 300 Quarropas Street, White Plains, NY 10601 before Judge Cathy Seibel). (Court Reporter Angie Shaw-Crockett) (wc) (Entered: 07/31/2019) |
| 11/13/2019 | 69 | FIRST LETTER MOTION for Leave to File Motion for Summary Judgment addressed to Judge Cathy Seibel from Seth D. Weinberg dated 11/12/2019. Document filed by Windward Bora, LLC. (Attachments: # 1 Affidavit of Mailing to Pro Se Defendant) (Weinberg, Seth) (Entered: 11/13/2019) |
| 11/13/2019 | 70 | ORDER granting 69 Letter Motion for Leave to File Document: As previously scheduled, Defendant Sotomayor shall respond to Plaintiff's letter by 11/27/19, and the proposed motion will be discussed at the conference already set for 12/4/ 19 at 4 pm. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) Copies of Notice of Electronic Filing To Be Mailed By Clerks Office. (Seibel, Cathy) Transmission to Docket Assistant Clerk for processing. (Entered: 11/13/2019) |

| | | |
|---|---|---|
| 11/14/2019 | | Mailed a copy of 70 Order on Motion for Leave to File Document, to John Sotomayor 2359 Maple Ave. Cortlandt Manor, NY 10567. (aea) (Entered: 11/14/2019) |
| 11/27/2019 | 71 | LETTER addressed to Judge Cathy Seibel from John Sotomayor dated 11/26/19 re: I am requesting this case be dismissed due to a number of factors I will do my best to present. Document filed by Windward Bora, LLC.(sbr) (Entered: 11/27/2019) |
| 12/04/2019 | | Minute Entry for proceedings held before Judge Cathy Seibel: Pre-Motion Conference held on 12/4/2019. Plaintiff's Motion for Summary Judgment to be submitted by January 15, 2020; Defendant Sotomayor's opposition due March 15, 2020; Plaintiff's reply due March 29, 2020. See transcript. (Court Reporter Sabrina D'Emidio) (wc) (Entered: 12/06/2019) |
| 01/13/2020 | 72 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** FIRST MOTION for Summary Judgment *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*. Document filed by Windward Bora, LLC. Responses due by 3/15/2020 (Attachments: # 1 S.D.N.Y. Rule 56.1 Statement, # 2 Declaration of Seth D. Weinberg, Esq., # 3 Weinberg Dec Ex A - Complaint, # 4 Weinberg Dec Ex B - Affidavits of Service, # 5 Weinberg Dec Ex C - Notice of Dismissal, # 6 Weinberg Dec Ex D - Answer, # 7 Weinberg Dec Ex E - Cerfiicates of Default, # 8 Weinberg Dec Ex F - Dismissal Order, # 9 Weinber Dec Ex G - Notice of Pendency, # 10 Weinberg Dec Ex H - 2013 Complaint, # 11 Weinberg Dec - Ex I Clerk's Minutes 2013 Action, # 12 Ex J - Proposed Judgment, # 13 Affidavit of Yonel Devico, # 14 Devico Aff Ex A - Note, # 15 Devico Aff Ex B - Mortgage, # 16 Devico Aff Ex C - Note Possession Affidavit, # 17 Devico Aff Ex D - Statement, # 18 Memorandum of Law)(Weinberg, Seth) Modified on 2/5/2020 (db). (Entered: 01/13/2020) |
| 01/14/2020 | 73 | AFFIDAVIT OF SERVICE of Motion for Summary Judgment (ECF Dkt No. 72)). Document filed by Windward Bora, LLC. (Weinberg, Seth) (Entered: 01/14/2020) |
| 02/05/2020 | | *****NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Seth Daniel Weinberg to RE-FILE Document 72 FIRST MOTION for Summary Judgment *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*. ERROR(S): Supporting Document are filed separately, each receiving their own document #. #. (Supporting Documents are found under the Event Type - Replies, Opposition and Supporting Documents; Rule 56.1 Statement is found under Other Answers). (db)** (Entered: 02/05/2020) |
| 02/06/2020 | 74 | FIRST MOTION for Summary Judgment *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*. Document filed by Windward Bora, LLC. Responses due by 3/15/2020.(Weinberg, Seth) (Entered: 02/06/2020) |
| 02/06/2020 | 75 | RULE 56.1 STATEMENT. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 02/06/2020) |
| 02/06/2020 | 76 | DECLARATION of Seth D. Weinberg in Support re: 74 FIRST MOTION for Summary Judgment *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*., 72 FIRST MOTION for Summary Judgment *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*.. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - Complaint, # 2 Ex B - Affidavits of Service, # 3 Ex C - Notice of Dismissal, # 4 Ex D - Answer, # 5 Ex E - Cerfiicates of Default, # 6 Ex F - Dismissal Order, # 7 Ex G - Notice of Pendency, # 8 Ex H - 2013 Complaint, # 9 Ex I - Clerk's Minutes 2013 Action, # 10 Ex J - Proposed Judgment).(Weinberg, Seth) (Entered: 02/06/2020) |
| 02/06/2020 | 77 | AFFIDAVIT of Yonel Devico in Support re: 74 FIRST MOTION for Summary Judgment |

| | | |
|---|---|---|
| | | *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*., 72 FIRST MOTION for Summary Judgment *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*.. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - Note, # 2 Ex B - Mortgage, # 3 Ex C - Note Possession Affidavit, # 4 Ex D - Statement).(Weinberg, Seth) (Entered: 02/06/2020) |
| 02/06/2020 | 78 | MEMORANDUM OF LAW in Support re: 74 FIRST MOTION for Summary Judgment *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*., 72 FIRST MOTION for Summary Judgment *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*. . Document filed by Windward Bora, LLC.. (Weinberg, Seth) (Entered: 02/06/2020) |
| 02/27/2020 | 79 | LETTER addressed to Judge Cathy Seibel from John Sotomayor dated 2/27/20 re: I am requesting this case be dismissed due to a number of factors, I will do my best to present everything I know about this case and indicate where it can be found. Document filed by John Sotomayor.(sbr) (Entered: 02/27/2020) |
| 02/27/2020 | 80 | MEMO ENDORSEMENT on re: 79 Letter, filed by John Sotomayor. ENDORSEMENT: Defendant is advised that he cannot oppose a summary judgment motion by letter. He must submit a sworn declaration or affidavit containing any facts he wishes the Court to consider, and must authenticate any documents as true and correct copies. Because Plaintiff appears to have violated Local Rule 56.2 by not serving Defendant with the required notice to a pro se litigant, it is hereby ORDERED that Plaintiff re-serve its papers with the notice, no later than 3/2/20. Plaintiff may have until 3/30/20 for his opposition, and Defendant may have until 4/13/20 for its reply. The Clerk shall send a copy of this endorsement to Defendant. SO ORDERED. (Responses due by 3/30/2020, Replies due by 4/13/2020.) (Signed by Judge Cathy Seibel on 2/27/2020) (mml) Transmission to Docket Assistant Clerk for processing. (Entered: 02/27/2020) |
| 02/27/2020 | 81 | CERTIFICATE OF SERVICE of Motion for Summary Judgment served on Defendants on January 14, 2020. Service was made by Mail. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 02/27/2020) |
| 02/28/2020 | | Mailed a copy of 80 Memo Endorsement, Set Deadlines, to John Sotomayor 2359 Maple Ave. Cortlandt Manor, NY 10567. (aea) (Entered: 02/28/2020) |
| 02/28/2020 | 82 | AFFIDAVIT OF SERVICE of Motion for Summary Judgment served on John Sotomayor on February 28, 2020. Service was made by First Class U.S. Mail. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 02/28/2020) |
| 04/14/2020 | 83 | LETTER addressed to Judge Cathy Seibel from Seth D. Weinberg, Esq, Hasbani & Light, P.C. dated April 14, 2020 re: Plaintiffs First Motion for Summary Judgment. Document filed by Windward Bora, LLC. (Attachments: # 1 Affidavit of Mailing).(Hasbani, Rafi) (Entered: 04/14/2020) |
| 06/01/2020 | 84 | RESPONSE to Motion re: 74 FIRST MOTION for Summary Judgment *Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale*.. Document filed by John Sotomayor..(ks) (Entered: 06/02/2020) |
| 06/05/2020 | 85 | LETTER addressed to Judge Cathy Seibel from Seth D. Weinberg; Hasbani & Light, P.C. dated June 5, 2020 re: Response to Defendants Letter Filed June 1, 2020. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 06/05/2020) |
| 06/05/2020 | 86 | CERTIFICATE OF SERVICE of Plaintiff's Response to Defendants Letter Filed June 1, 2020 served on John Sotomayor on June 5, 2020. Service was made by U.S. Mail. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 06/05/2020) |
| 06/23/2020 | 87 | LETTER addressed to Judge Cathy Seibel from Seth D. Weinberg; Hasbani & Light, P.C. |

| | | |
|---|---|---|
| | | dated June 23, 2020 re: Response to Defendants Letter Dated June 18, 2020. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - June 18, 2020 Letter from Sotomayor, # 2 Certificate of Service).(Weinberg, Seth) (Entered: 06/23/2020) |
| 06/29/2020 | 88 | NOTICE OF COURT CONFERENCE: A Bench Ruling on the pending motion(s) is scheduled for July 22, 2020 at 9:45 a.m. (via telephone) before the Honorable Cathy Seibel at the Charles L. Brieant United States District Courthouse, 300 Quarropas Street, White Plains, New York 10601 in Courtroom 621. Person(s) appearing via telephone are reminded of the general prohibition against any forms of recording and rebroadcasting of Court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Pursuant to Judge Seibel's Emergency Individual Rules and Practices in light of COVID-19, last revised on March 19, 2020, the parties are directed to attend by phone using the following information: Toll-Free Tele-conference number: (877) 336 1839 to call in and enter access code: 1047966#. Telephone Conference set for 7/22/2020 at 09:45 AM in Courtroom 621, 300 Quarropas Street, White Plains, NY 10601 before Judge Cathy Seibel..(mml) (Entered: 06/29/2020) |
| 06/29/2020 | 89 | LETTER addressed to Judge Cathy Seibel from John Sotomayor, dated 6/24/20 re: "RESPONSE TO PLAINTIFF'S LETTER DATED 6/23/20" - I request again that this case be dismissed with prejudice due to the purposeful omission of information, erroneous information and misleading information. Document filed by John Sotomayor. (sc) (Entered: 06/29/2020) |
| 06/29/2020 | 90 | CERTIFICATE OF SERVICE of Courts Electronic Notice of Court Conference served on John Sotomayor on 6/29/2020. Service was made by Mail. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 06/29/2020) |
| 07/02/2020 | 91 | LETTER addressed to Judge Cathy Seibel from J. Sotomayor, dated 6/18/29 re: I am writing this letter to have this case dismissed for a number of reasons which I have uncovered and have also mentioned in the past over the past months. The plaintiff has provided inaccurate information and incomplete information which should immediately cause a dismissal and bring forth the statute of limitations on this loan etc. Document filed by John Sotomayor.(sc) (Entered: 07/06/2020) |
| 07/22/2020 | | Minute Entry for proceedings held before Judge Cathy Seibel: Bench Ruling held on 7/22/2020 re: 74 FIRST MOTION for Summary Judgment Default Judgment, Awarding Damages, and Judgment of Foreclosure and Sale filed by Windward Bora, LLC. Plaintiff's counsel Seth Weinberg, Esq. appears telephonically. Defendant John Sotomayor appears telephonically. Law Clerk Julia MacAllister appears telephonically. For the reasons stated on the record, the Court DENIES Plaintiff's Motion(s) for Summary Judgment and Jdgment of Foreclosure and Sale without prejudice. The Court also DENIES Plaintiff's Motion for Default Judgment as to the non-appearing Defendant(s) without prejudice. Plaintiff's counsel is directed to refer to the Court's individual practices for the proper procedure as to making an application for Default Judgment. Plaintiff's renewed Motion for Summary Judgment to be submitted by August 21, 2020; Defendant's opposition due September 21, 2020; Plaintiff's reply due October 5, 2020. See transcript. (Court Reporter Sue Ghorayeb) (wc) (Entered: 07/27/2020) |
| 07/30/2020 | 92 | SUMMONS RETURNED EXECUTED Summons and Complaint, Complaint,, served. New York State Tax Commission served on 6/13/2019, answer due 7/4/2019. Service was accepted by Nicole Poole, Tia. Document filed by Windward Bora, LLC..(Golden, Barry) (Entered: 07/30/2020) |
| 08/11/2020 | 93 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora, LLC. (Attachments: # 1 Affirmation, # 2 Exhibit A-Affidavit of Service).(Golden, |

| | | |
|---|---|---|
| | | Barry) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 08/11/2020) |
| 08/11/2020 | | *****NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED CLERK'S CERTIFICATE OF DEFAULT: Notice to Attorney Barry Golden regarding Document No. 93 Proposed Clerk's Certificate of Default. The filing is deficient for the following reason(s): An attorney's affidavit in support of the clerk's certificate needs to be filed as a separate entry (filed under other answers, affidavit in support of a non-motion). (km)** Modified on 8/11/2020 (km). (Entered: 08/11/2020) |
| 08/11/2020 | 94 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Windward Bora, LLC..(Golden, Barry) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 08/11/2020) |
| 08/11/2020 | 95 | AFFIDAVIT of Barry M. Golden in Support re: 94 Proposed Clerk's Certificate of Default, 92 Summons Returned Executed. Document filed by Windward Bora, LLC. (Attachments: # 1 Exhibit A-Affidavit of Service).(Golden, Barry) (Entered: 08/11/2020) |
| 08/11/2020 | 96 | CLERK'S CERTIFICATE OF DEFAULT as to New York State Tax Commission.(km) (Entered: 08/11/2020) |
| 08/20/2020 | 97 | NOTICE OF VOLUNTARY DISMISSAL pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice and without costs against the defendant(s) New York State Tax Commission. Document filed by Windward Bora, LLC. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers)**...(Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | | *****NOTICE TO COURT REGARDING NOTICE OF VOLUNTARY DISMISSAL Document No. 97 Notice of Voluntary Dismissal was reviewed and referred to Judge Cathy Seibel for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal in a Pro Se case. (km)** (Entered: 08/20/2020) |
| 08/20/2020 | 98 | PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document filed by Windward Bora, LLC..(Weinberg, Seth) **Proposed Order to Show Cause to be reviewed by Clerk's Office staff.** (Entered: 08/20/2020) |
| 08/20/2020 | 99 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - Complaint, # 2 Ex B - Affidavits of Service, # 3 Ex C - Notice of Dismissal, # 4 Ex D - Answer, # 5 Ex E - Certificates of Default, # 6 Ex F - Dismissal Orders, # 7 Ex G - LP, # 8 Ex H - Decision Transcript, # 9 Ex I - Affidavit In Support).(Weinberg, Seth) **Proposed Order to Show Cause to be reviewed by Clerk's Office staff.** Modified on 8/20/2020 (dt). (Entered: 08/20/2020) |
| 08/20/2020 | 100 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document filed by Windward Bora, LLC..(Weinberg, Seth) **Proposed Order to Show Cause to be reviewed by Clerk's Office staff.** Modified on 8/20/2020 (dt). (Entered: 08/20/2020) |
| 08/20/2020 | | *****NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Seth Weinberg to RE-FILE Document 99 Proposed Order to Show Cause Without Emergency Relief. Use the event type Declaration in Support of a Non-Motion found under the event list Other Answers. (dt)** (Entered: 08/20/2020) |

| | | |
|---|---|---|
| 08/20/2020 | | *****NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Seth Weinberg to RE-FILE Document 100 Proposed Order to Show Cause Without Emergency Relief. Use the event type Proposed Default Judgment found under the event list Proposed Orders. (dt)** (Entered: 08/20/2020) |
| 08/20/2020 | 101 | DECLARATION of Seth D. Weinberg in Support re: 99 Proposed Order to Show Cause Without Emergency Relief,,. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - Complaint, # 2 Ex B - Affidavits of Service, # 3 Ex C - Notice of Dismissal, # 4 Ex D - Answer, # 5 Ex E - Certificates of Default, # 6 Ex F - Dismissal, # 7 Ex G - LP, # 8 Ex H - Decision Transcript, # 9 Ex I - Affidavit In Support).(Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | 102 | PROPOSED DEFAULT JUDGMENT pursuant to FRCP 55(b)(2). Document filed by Windward Bora, LLC..(Weinberg, Seth) **Proposed Default Judgment to be reviewed by Clerk's Office staff.** (Entered: 08/20/2020) |
| 08/20/2020 | | *****NOTICE TO COURT REGARDING PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document No. 98 Proposed Order to Show Cause Without Emergency Relief was reviewed and approved as to form. (km)** (Entered: 08/20/2020) |
| 08/20/2020 | | *****NOTICE TO COURT REGARDING PROPOSED DEFAULT JUDGMENT. Document No. 102 Proposed Default Judgment was reviewed and approved as to form. (km)** (Entered: 08/20/2020) |
| 08/20/2020 | 103 | NOTICE OF DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(i). Pursuant to F.R.C.P. 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff Windward Bora, LLC and/or their counsel, hereby give notice that the above captioned action is voluntarily dismissed as to the defendant New York State Tax Commission. The Clerk of Court is respectfully requested to terminate defendant New York State Tax Commission. So ordered. New York State Tax Commission terminated. (Signed by Judge Cathy Seibel on 8/20/2020) (rjm) (Entered: 08/20/2020) |
| 08/20/2020 | 104 | SECOND MOTION for Summary Judgment . Document filed by Windward Bora, LLC. Responses due by 9/21/2020.(Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | 105 | RULE 56.1 STATEMENT. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | 106 | NOTICE of S.D.N.Y. RULE 56.2 NOTICE TO PRO SE LITIGANT WHO OPPOSES A MOTION FOR SUMMARY JUDGMENT. Document filed by Windward Bora, LLC.. (Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | 107 | DECLARATION of Seth D. Weinberg, Esq. in Support re: 104 SECOND MOTION for Summary Judgment .. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - Complaint, # 2 Ex B - Affidavits of Service, # 3 Ex C - Notices of Dismissal, # 4 Ex D - Answer, # 5 Ex E - Certificates of Default, # 6 Ex F - Dismissal Orders, # 7 Ex G - LP, # 8 Ex H - Prior Foreclosure Complaint, # 9 Ex I - Clerk's Minutes, # 10 Ex J - Decision Transcript, # 11 Ex K - Proposed Judgment).(Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | 108 | AFFIDAVIT of Yonel Devico in Support re: 104 SECOND MOTION for Summary Judgment .. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - Note, # 2 Ex B - Mortgage, # 3 Ex C - Note Affidavit, # 4 Ex D - Proof of Default).(Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | 109 | AFFIRMATION of Alan Weinreb, Esq. in Support re: 104 SECOND MOTION for Summary Judgment .. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex 1 - |

| | | |
|---|---|---|
| | | 90 Day Notice, # 2 Ex 2 - 90 day Notice Envelopes, # 3 Ex 3 - 90 day Certified Mailing Receipts, # 4 Ex 4 - Affidavit of Mailing, # 5 Ex 5 - Step 1 Filing, # 6 Ex 6 - Proof of Delivery of 90 day Notice, # 7 Ex 7 - Default Notice, # 8 Ex 8 - Default Notice Envelopes, # 9 Ex 9 - Certified Receipts for Demand Notice, # 10 Ex 10 - Proof of Delievery for Demand Notice).(Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | 110 | MEMORANDUM OF LAW in Support re: 104 SECOND MOTION for Summary Judgment . . Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | 111 | CERTIFICATE OF SERVICE of Plaintiffs Notice of Motion for Summary Judgment dated August 20, 2020, Plaintiffs S.D.N.Y. Local Civil Rule 56.1 Statement dated August 20, 2020, Plaintiffs S.D.N.Y Rule 56.2 Notice with attachments, the Declaration of Seth D. Weinberg, Esq. In Support of Plaintiffs Renewed Motion for Summary Judgment dated August 20, 2020 with exhibits, the Affidavit of Yonel Devico in Support of Plaintiffs Renewed Motion for Summary Judgment dated August 17, 2020 with exhibits, the Affirmation of Alan H. Weinreb Concerning Mailing of Notices dated August 11, 2020 with exhibits, and the Memorandum of Law In Support of Plaintiffs Renewed Motion for Summary Judgment dated August 20, 2020 served on John Sotomayor on 8/20/2020. Service was made by Mail. Document filed by Windward Bora, LLC.. (Weinberg, Seth) (Entered: 08/20/2020) |
| 08/20/2020 | 112 | ORDER TO SHOW CAUSE. It is hereby; ORDERED, that the defendants Alexandria Loaiza, American Express Centurion Bank, and Midland Funding LLC d/b/a in New York as Midland Funding of Delaware (collectively the "Defendants") show cause before the Honorable Judge Cathy Seibel in Courtroom 621 of the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601 on September 21, 2020, at 10:00 a.m., or as soon thereafter as counsel may be heard, why an order should not be entered granting default judgment against the Defendants, and as further set forth in this Order to Show Cause. ORDERED that the Defendants must file opposition papers to the Plaintiff's Order to Show Cause no later than September 10, 2020. So ordered. (Show Cause Hearing set for 9/21/2020 at 10:00 AM in Courtroom 621, 300 Quarropas Street, White Plains, NY 10601 before Judge Cathy Seibel. Show Cause Response due by 9/10/2020). (Signed by Judge Cathy Seibel on 8/20/2020) (rjm) (Entered: 08/20/2020) |
| 08/26/2020 | 113 | AFFIDAVIT OF SERVICE of Order To Show Cause served on Alexandria Loaiza, American Express Centurion Bank, Midland Funding LLC on 8/26/2020. Service was made by USPS Priority Mail Express. Document filed by Windward Bora, LLC.. (Weinberg, Seth) (Entered: 08/26/2020) |
| 09/01/2020 | 114 | ORDER denying 74 Motion for Summary Judgment: See 7/22/20 minute entry and accompanying transcript. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 09/01/2020) |
| 09/10/2020 | 115 | LETTER addressed to Judge Cathy Seibel from J. Sotomayor, dated 9/10/20 re: "RESPONSE-OPPOSITION TO ORDER TO SHOW CAUSE DATED 8/20/20" - I am not a lawyer but am representing both Alexandra Loaiza and myself etc. Therefore, as a result, Alexandra did not intentionally miss any response as I responded for both of us. Moving forward she will respond with me. Document filed by John Sotomayor.(sc) (Entered: 09/10/2020) |
| 09/10/2020 | 116 | PRO SE CONSENT TO RECEIVE ELECTRONIC SERVICE. The following party: John Sotomayor consents to receive electronic service via the ECF system. Document filed by John Sotomayor.(sc) (Entered: 09/10/2020) |
| 09/10/2020 | 117 | MEMO ENDORSEMENT on re: 115 Letter, filed by John Sotomayor. ENDORSEMENT: The Order to Show Cause is not directed to Mr. Sotomayor. It is |

| | | |
|---|---|---|
| | | directed to the other Defendants, including Ms. Loaiza, who have not responded to the Complaint. Mr. Sotomayor is not a lawyer and cannot represent other parties. His opposition to the summary judgment motion is due 9/21/20. The Clerk shall send a copy of this endorsement to Mr. Sotomayor and Ms. Loaiza. SO ORDERED. (Signed by Judge Cathy Seibel on 9/10/2020) (mml) Transmission to Docket Assistant Clerk for processing. (Entered: 09/10/2020) |
| 09/10/2020 | | Set/Reset Deadlines: Responses due by 9/21/2020. (mml) (Entered: 09/10/2020) |
| 09/10/2020 | 118 | LETTER addressed to Judge Cathy Seibel from Seth D. Weinberg; Hasbani & Light, P.C. dated 9/10/2020 re: Alexandria Loaiza. Document filed by Windward Bora, LLC. (Attachments: # 1 Certificate of Service).(Weinberg, Seth) (Entered: 09/10/2020) |
| 09/10/2020 | | Mailed a copy of 117 Memo Endorsement, to Alexandria Loaiza at 2359 Maple Avenue, Cortlandt Manor, New York 10567. (dsh) (Entered: 09/10/2020) |
| 09/10/2020 | 119 | NOTICE OF COURT CONFERENCE: A Show Cause Conference is scheduled for September 21, 2020 at 10:00 a.m. (via telephone) before the Honorable Cathy Seibel at the Charles L. Brieant United States District Courthouse, 300 Quarropas Street, White Plains, New York 10601 in Courtroom 621. Toll-Free Tele-conference number: (877) 336 - 1839 to call in and enter access code: 1047966#. (Telephone Conference set for 9/21/2020 at 10:00 AM in Courtroom 621, 300 Quarropas Street, White Plains, NY 10601 before Judge Cathy Seibel.) (rro) (Entered: 09/10/2020) |
| 09/19/2020 | 120 | LETTER addressed to Judge Cathy Seibel from J. Sotomayor,dated 9/10/20 re: OPPOSITION - TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRUE. Document filed by John Sotomayor.(sc) (Entered: 09/21/2020) |
| 09/21/2020 | | Minute Entry for proceedings held before Judge Cathy Seibel: Show Cause Hearing held on 9/21/2020. Plaintiff's counsel Seth Weinberg, Esq. appears telephonically. Defendant John Sotomayor appears telephonically. Defendant Alexandria Loaiza appears telephonically. Law Clerk Jennifer Butwin appears telephonically. Defendant Alexandria Loaiza informs the Court that she intends to represent herself for this case. The Court will vacate the entry of Default as to Defendant Loaiza. Defendant Loaiza's Answer is to be submitted by October 5, 2020. If Defendant Loaiza does not file an Answer by October 5th, then the Court will issue a Default against her. The Court will issue an Order granting Default Judgment in favor of Plaintiff against Defendant(s) American Express and Midland Funding and striking the language regard sale of the home. See transcript. (Court Reporter Angie Shaw-Crockett) (wc) (Entered: 09/21/2020) |
| 09/23/2020 | 121 | LETTER MOTION for Extension of Time to File Response/Reply as to 120 Letter, 104 SECOND MOTION for Summary Judgment . *and to increase page limit for Reply* addressed to Judge Cathy Seibel from Seth D. Weinberg; Hasbani & Light, P.C. dated 9/23/2020. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 09/23/2020) |
| 09/23/2020 | 122 | ORDER granting 121 Letter Motion for Extension of Time to File Response/Reply: Plaintiff may have until 10/9/20 for its reply. Plaintiff may have up to 25 pages if really necessary. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 09/23/2020) |
| 09/24/2020 | 123 | LETTER addressed to Judge Cathy Seibel from J. Sotomayor, dated 9/10/20 re: "OPPOSITION - TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRUE:" - I am attaching samples of the RPAPL 1303 I received on another case within the past two months(as indicated). It is a complete RPAPL 1303, whereas the one |

| | | |
|---|---|---|
| | | provided by the plaintiff's attorney, Hasbani and Light, is not complete nor correct etc. Document filed by John Sotomayor. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit).(sc) Modified on 9/24/2020 (sc). (Entered: 09/24/2020) |
| 09/24/2020 | 124 | LETTER MOTION for Leave to File Strike Untimely Additional Opposition addressed to Judge Cathy Seibel from Seth D. Weinberg; Hasbani & Light, P.C. dated 9/24/2020. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 09/24/2020) |
| 09/24/2020 | 125 | ORDER granting in part and denying in part 124 Letter Motion for Leave to File Document: Because Defendant is pro se, Doc. 123 is brief, and I have already given Plaintiff extra time for its reply, I will not strike Doc. 123, but Defendant Sotomayor is directed that he is not to file anything further in opposition to the motion for summary judgment. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 09/24/2020) |
| 09/24/2020 | 126 | LETTER addressed to Judge Cathy Seibel from J. Sotomayor, dated 9/24/20 re: "OPPOSITION TO PLAINTIFF'S REQUEST TO STRIKE UNTIMELY SUPPLEMENTAL OPPOSITION" - I submitted a letter today with attachments. That letter was submitted since 9/21/20. I was able to speak to someone today at the Pro Se Unit and was informed about full size and type. My attachments were not PDF and, as a result were not accepted. They informed me how to submit properly, and I submitted it today etc. Document filed by John Sotomayor.(sc) (Entered: 09/25/2020) |
| 10/02/2020 | 127 | PRO SE CONSENT TO RECEIVE ELECTRONIC SERVICE. The following party: Alexandra Loaiza consents to receive electronic service via the ECF system. Document filed by Alexandria Loaiza.(sc) (Entered: 10/02/2020) |
| 10/05/2020 | 128 | LETTER addressed to Judge Cathy Seibel from Alexandra Loaiza dated 10/5/20 re: "ANSWER TO PLAINTIFF'S SHOW CAUSE" - I request to have Discovery made available here so we can obtain evidence (documents or any form of admission) from the plaintiff for review. And a trial etc. As a result of the information presented here, we request based on RPAPL 1504(4), that the note and mortgage held by the plaintiff and described herein(as indicated) be deemed null and void and unenforceable. Document filed by Alexandria Loaiza, John Sotomayor.(sc) (Entered: 10/05/2020) |
| 10/05/2020 | 129 | NOTICE OF COURT CONFERENCE: Status Conference is scheduled for October 27, 2020 at 3:30 p.m. (via telephone) before the Honorable Cathy Seibel at the Charles L. Brieant United States District Courthouse, 300 Quarropas Street, White Plains, New York 10601 in Courtroom 621. Telephone Conference set for 10/27/2020 at 03:30 PM in Courtroom 621, 300 Quarropas Street, White Plains, NY 10601 before Judge Cathy Seibel..(kv) (Entered: 10/05/2020) |
| 10/05/2020 | 130 | DEFAULT JUDGMENT OF FORECLOSURE AND SALE: Now, upon proof of due notice of this application upon all parties who have not waived the same, and this matter having regularly come on to be heard, and there being no opposition thereto, ON MOTION of Hasbani & Light, P.C., attorneys for Plaintiff, it is ORDERED, that Plaintiff's motion is granted in part and it is further ORDERED, that a default judgment is issued in favor of Plaintiff and against defendants American Express Centurion Bank and Midland Funding d/b/a in New York as Midland Funding of Delaware LLC, as further set forth. American Express Centurion Bank and Midland Funding LLC terminated. (Signed by Judge Cathy Seibel on 10/5/2020) (mml) (Entered: 10/05/2020) |
| 10/09/2020 | 131 | REPLY MEMORANDUM OF LAW in Support re: 104 SECOND MOTION for Summary Judgment . . Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 10/09/2020) |
| 10/09/2020 | 132 | REPLY AFFIDAVIT of Yonel Devico in Support re: 104 SECOND MOTION for |

| | | |
|---|---|---|
| | | Summary Judgment .. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 10/09/2020) |
| 10/09/2020 | 133 | CERTIFICATE OF SERVICE of Reply Memo of Law and Affidavit served on John Sotomayor on 10/9/2020. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 10/09/2020) |
| 10/27/2020 | | Minute Entry for proceedings held before Judge Cathy Seibel: Status Conference held on 10/27/2020. Plaintiff's counsel Seth Weinberg, Esq. appears telephonically. Defendant John Sotomayor appears telephonically. Defendant Alexandria Loaiza appears telephonically. Law Clerk Jennifer Butwin appears telephonically. The Court grants Defendant Loaiza leave to file Answer. Defendant Loaiza's Answer to be submitted by November 4, 2020. Plaintiff's Motion for Summary Judgment to be submitted by November 25, 2020; Defendant Loaiza's opposition due December 31, 2020; Plaintiff's reply due January 11, 2021. See transcript. (Court Reporter Angie Shaw-Crockett) (wc) (Entered: 10/28/2020) |
| 11/04/2020 | 134 | NOTICE OF APPEARANCE by Steven Amshen on behalf of Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 11/04/2020) |
| 11/04/2020 | 135 | LETTER MOTION for Extension of Time to File Answer addressed to Judge Cathy Seibel from Steven Amshen, on behalf of Defendants dated November 4, 2020. Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 11/04/2020) |
| 11/04/2020 | 136 | ORDER denying without prejudice 135 Letter Motion for Extension of Time to Answer: Application denied without prejudice to renewal in compliance with item 1.E of my Individual Practices (including what the opposing side's position is). (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 11/04/2020) |
| 11/04/2020 | 137 | LETTER MOTION for Extension of Time to File Answer re: 136 Order on Motion for Extension of Time to Answer, addressed to Judge Cathy Seibel from Steven Amshen, on behalf of Defendants dated November 4, 2020. Document filed by Alexandria Loaiza, John Sotomayor..(Amshen, Steven) (Entered: 11/04/2020) |
| 11/04/2020 | 138 | ANSWER to 1 Complaint,,., COUNTERCLAIM against Windward Bora, LLC. Document filed by Alexandria Loaiza..(Amshen, Steven) (Entered: 11/04/2020) |
| 11/04/2020 | 139 | ORDER denying as moot 137 Letter Motion for Extension of Time to Answer: I held off on this request to see if Plaintiff (who was only contacted at 1:40 pm this afternoon) had an objection, but in the meantime Defendant answered, so the motion is moot. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 11/04/2020) |
| 11/05/2020 | 140 | ORDER re: 135 LETTER MOTION for Extension of Time to File Answer addressed to Judge Cathy Seibel from Steven Amshen, on behalf of Defendants dated November 4, 2020. filed by Alexandria Loaiza, John Sotomayor: To the extent Defendant Sotomayor seeks to resubmit his opposition to Plaintiff's renewed motion for summary judgment, the application is denied. No explanation has been provided for why Mr. Sotomayor should get a do-over, when he has long been aware of this matter and waited until now to retain counsel. Further, Plaintiff has already replied to Mr. Sotomayor's opposition and would be prejudiced if it had to reply to a new opposition. (HEREBY ORDERED by Judge Cathy Seibel) (Text Only Order) (Seibel, Cathy) (Entered: 11/05/2020) |
| 11/23/2020 | 141 | FIRST LETTER MOTION for Extension of Time to File *motion for summary judgment as to defendant Alexandria Loaiza* addressed to Judge Cathy Seibel from Seth D. |

| | | |
|---|---|---|
| | | Weinberg; Hasbani & Light, P.C. dated 11/23/2020. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 11/23/2020) |
| 11/23/2020 | 142 | ORDER granting 141 Letter Motion for Extension of Time to File: Motion due 12/9/20. Opposition due 1/14/20. Reply due 1/25/20. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 11/23/2020) |
| 12/09/2020 | 143 | FIRST MOTION for Summary Judgment *aginst Defendant Alexandria Loaiza*. Document filed by Windward Bora, LLC. Responses due by 1/12/2012.(Weinberg, Seth) (Entered: 12/09/2020) |
| 12/09/2020 | 144 | RULE 56.1 STATEMENT. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 12/09/2020) |
| 12/09/2020 | 145 | DECLARATION of Seth D. Weinberg, Esq. in Support re: 143 FIRST MOTION for Summary Judgment *aginst Defendant Alexandria Loaiza*.. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - Complaint, # 2 Ex B - Affidavits of Service, # 3 Ex C - Notice of Dismissal for IRS, # 4 Ex D - Loaiza Answer, # 5 Ex E - Certificates of Default, # 6 Ex F - Dismissal Orders, # 7 Ex G - LP, # 8 Ex H - Prior Foreclosure Complaint, # 9 Ex I - Clerk's Minutes, # 10 Ex J - Decision Transcript).(Weinberg, Seth) (Entered: 12/09/2020) |
| 12/09/2020 | 146 | AFFIDAVIT of Yonel Devico in Support re: 143 FIRST MOTION for Summary Judgment *aginst Defendant Alexandria Loaiza*.. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - Note, # 2 Ex B - Mortgage, # 3 Ex C - Note Affidavit, # 4 Ex D - Proof of Default).(Weinberg, Seth) (Entered: 12/09/2020) |
| 12/09/2020 | 147 | AFFIRMATION of Alan Weinreb, Esq. in Support re: 143 FIRST MOTION for Summary Judgment *aginst Defendant Alexandria Loaiza*.. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex 1 - 90 Day Notice, # 2 Ex 2 - 90 day Notice Envelopes, # 3 Ex 3 - 90 day Certified Mailing Receipts, # 4 Ex 4 - Affidavit of Mailing, # 5 Ex 5 - Step 1 Filing, # 6 Ex 6 - Proof of Delivery of 90 day Notice, # 7 Ex 7 - Default Notice, # 8 Ex 8 - Default Notice Envelopes, # 9 Ex 9 - Certified Receipts for Demand Notice, # 10 Ex 10 - Proof of Delievery for Demand Notice).(Weinberg, Seth) (Entered: 12/09/2020) |
| 12/09/2020 | 148 | MEMORANDUM OF LAW in Support re: 143 FIRST MOTION for Summary Judgment *aginst Defendant Alexandria Loaiza*. . Document filed by Windward Bora, LLC.. (Weinberg, Seth) (Entered: 12/09/2020) |
| 12/09/2020 | 149 | CERTIFICATE OF SERVICE of Plaintiffs Notice of Motion for Summary Judgment dated December 9, 2020, Plaintiffs S.D.N.Y. Local Civil Rule 56.1 Statement dated December 9, 2020, the Declaration of Seth D. Weinberg, Esq. In Support of Plaintiffs Renewed Motion for Summary Judgment dated December 9, 2020 with exhibits, the Affidavit of Yonel Devico in Support of Plaintiffs Renewed Motion for Summary Judgment dated August 17, 2020 with exhibits, the Affirmation of Alan H. Weinreb Concerning Mailing of Notices dated August 11, 2020 with exhibits, and the Memorandum of Law In Support of Plaintiffs Motion for Summary Judgment dated December 9, 2020 served on Petroff Amshen LLP, Steven Amshen, Esq. Counsel For Alexandria Loaiza on 12/9/2020. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 12/09/2020) |
| 01/11/2021 | 150 | DECLARATION of Steven Amshen in Opposition re: 143 FIRST MOTION for Summary Judgment *aginst Defendant Alexandria Loaiza*.. Document filed by Alexandria Loaiza. (Attachments: # 1 Exhibit A - Complaint, # 2 Exhibit B - Summons, # 3 Exhibit C - Answer, # 4 Exhibit D - Answer to Plaintiffs Show Cause, # 5 Exhibit E - PACER results, # 6 Rule 56.1 Counterstatement, # 7 Affidavit Affidavit of Alexandra Loaiza, # 8 Memorandum of Law in Opposition).(Amshen, Steven) (Entered: 01/11/2021) |

| | | |
|---|---|---|
| 01/25/2021 | 151 | LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Cathy Seibel from Seth D. Weinberg; Hasbani & Light, P.C. dated 1/25/2021. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 01/25/2021) |
| 01/25/2021 | 152 | ORDER granting in part and denying in part 151 Letter Motion for Extension of Time to File Response/Reply: This case has been kicking around for long enough. If the parties are going to settle, let's just get it done. Reply due by 2/16/2021. No further extensions. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 01/25/2021) |
| 02/16/2021 | 153 | REPLY AFFIDAVIT of Seth D. Weinberg, Esq. in Support re: 143 FIRST MOTION for Summary Judgment *aginst Defendant Alexandria Loaiza*.. Document filed by Windward Bora, LLC. (Attachments: # 1 Ex A - Complaint filed with the Westchester County Clerk, # 2 Ex B - Notice of Pendency filed with the Westchester County Clerk, # 3 Ex C - John Sotomayors Opposition to Plaintiffs Motion for Summary Judgment).(Weinberg, Seth) (Entered: 02/16/2021) |
| 02/16/2021 | 154 | REPLY MEMORANDUM OF LAW in Support re: 143 FIRST MOTION for Summary Judgment *aginst Defendant Alexandria Loaiza*. . Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 02/16/2021) |
| 02/17/2021 | 155 | NOTICE OF COURT CONFERENCE: A Bench Ruling on the pending Motion(s) is scheduled for February 23, 2021 at 2:30 p.m. (via telephone). Toll-Free Tele-conference number: (877) 336 1839 to call in and enter access code: 1047966#. Telephone Conference set for 2/23/2021 at 02:30 PM before Judge Cathy Seibel. (va) (Entered: 02/17/2021) |
| 02/23/2021 | | Minute Entry for proceedings held before Judge Cathy Seibel: Bench Ruling held on 2/23/2021 re: 104 SECOND MOTION for Summary Judgment filed by Windward Bora, LLC, 143 FIRST MOTION for Summary Judgment against Defendant Alexandria Loaiza filed by Windward Bora, LLC. Plaintiff's counsel Danielle Light, Esq. appears telephonically. Defendants' counsel Steven Amshen, Esq. appears telephonically. Law Clerk(s) Joshua Cohen and Jennifer Butwin appear telephonically. For the reasons stated on the record, the Court hereby GRANTS Plaintiff's Motion(s) as to all issues other than the following: (1) RPAPL § 1303, which is DENIED as to Defendant Sotomayor because there is a genuine issue of material fact regarding whether Defendant Sotomayor was served with the complete RPAPL § 1303 notice; (2) RPAPL § 1320, which is DENIED because Plaintiff has not proved that it provided the requisite notice or demonstrated that a failure to provide the notice could be excused; and (3) Damages, which should be easy enough to prove at trial rather than through the special master or magistrate Judge that Plaintiff requests. The Clerk is directed to terminate the Motions (Doc # 104 and 143). The Court sets a trial schedule: Joint Pre-Trial Order to be submitted by April 8, 2021. Motion(s) in Limine to be submitted by April 15, 2021; opposition due April 22, 2021. Proposed voir dire and jury questions (or proposed Findings of Fact and Conclusions of Law if parties seek to have bench trial) to be submitted by April 29, 2021. The earliest date for trial on seven (7) days' Notice is May 10, 2021. See transcript. Motion(s) terminated: 143 FIRST MOTION for Summary Judgment against Defendant Alexandria Loaiza filed by Windward Bora, LLC, 104 SECOND MOTION for Summary Judgment filed by Windward Bora, LLC. (Court Reporter Christina Arends-Dieck) (wc) (Entered: 02/23/2021) |
| 04/08/2021 | 156 | PROPOSED PRE-TRIAL ORDER. Document filed by Windward Bora, LLC.. (Weinberg, Seth) (Entered: 04/08/2021) |
| 04/13/2021 | 157 | JOINT PRETRIAL ORDER: Having conferred among themselves and with the Court pursuant to Rule 16 of the Federal Rules of Civil Procedure, the parties adopt the following statements, directions and agreements as the Joint Pretrial Order: Plaintiff has |

| | | |
|---|---|---|
| | | not demanded a jury trial. Defendants have not demanded a jury trial. The parties have consented to a bench trial. Trial in this matter is expected to take one day. The parties have not consented to trial of the case by a magistrate judge, as further set forth. (Signed by Judge Cathy Seibel on 4/13/2021) (mml) (Entered: 04/13/2021) |
| 04/14/2021 | 158 | LETTER MOTION for Conference addressed to Judge Cathy Seibel from Seth D. Weinberg, Esq. / Hasbani & Light, P.C. dated April 14, 2021. Document filed by Windward Bora, LLC..(Weinberg, Seth) (Entered: 04/14/2021) |
| 04/14/2021 | 159 | NOTICE OF COURT CONFERENCE: A Telephone Conference is scheduled for April 15, 2021 at 12:00 p.m. (via telephone). Person(s) appearing via telephone are reminded of the general prohibition against any forms of recording and rebroadcasting of Court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Pursuant to Judge Seibel's Emergency Individual Rules and Practices in light of COVID-19, last revised on March 19, 2020, the parties are directed to attend by phone using the following information: Toll-Free Tele-conference number: (877) 336 1839 to call in and enter access code: 1047966#. The parties should call in from a landline phone (if possible), announce their last name(s) before addressing the Court at any time during the call, and mute their lines (pressing *6 on phone) when not speaking. Telephone Conference set for 4/15/2021 at 12:00 PM before Judge Cathy Seibel. (mml) (Entered: 04/14/2021) |
| 04/15/2021 | 160 | NOTICE OF APPEARANCE by Rafi Hasbani on behalf of Windward Bora, LLC.. (Hasbani, Rafi) (Entered: 04/15/2021) |
| 04/15/2021 | 161 | ORDER terminating 158 Letter Motion for Conference. At Plaintiff's request, (see Doc. 158), the Court held a conference today, during which Plaintiff informed the Court that it would be unable to prove at trial that it provided the notices required by RPAPL §§ 1303 and 1320. Defendants then made an oral motion for summary judgment on the grounds that the undisputed facts demonstrated that Plaintiff had not provided those notices, and Plaintiff agreed that the Court should enter summary judgment in favor of Defendants on those grounds. Accordingly, summary judgment is GRANTED in favor of Defendants. The Clerk of Court is respectfully directed to enter judgment for Defendants and close the case. SO ORDERED. (Signed by Judge Cathy Seibel on 4/15/2021) (mml) Transmission to Orders and Judgments Clerk for processing. (Entered: 04/15/2021) |
| 04/15/2021 | | Minute Entry for proceedings held before Judge Cathy Seibel: Telephone Conference held on 4/15/2021. Plaintiff's counsel(s) Rafi Hasbani, Esq. and Seth Weinberg, Esq. appear telephonically. Defendants' counsel Steven Amshen, Esq. appears telephonically. Law Clerk Joshua Cohen appears telephonically. The Court hereby GRANTS Defendants' oral application for Summary Judgment based on the undisputed facts and in light of the RPAPL § 1303 Notice and RPAPL § 1320 Notice not provided to the Defendant(s). The Court enters Judgment in favor of the Defendant(s) and will issue an Order reflecting the Court's decision. See transcript. (Court Reporter Angela O'Donnell) (wc) (Entered: 04/15/2021) |
| 04/16/2021 | 162 | CLERK'S JUDGMENT re: 161 Order on Motion for Conference. in favor of Alexandria Loaiza, John Sotomayor against Windward Bora, LLC. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Order dated April 15, 2021, Summary Judgment is granted in favor of Defendants, and judgment is entered in favor of Defendants; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 4/16/2021) (Attachments: # 1 Notice of Right to Appeal) (dt) (Entered: 04/16/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/06/2022 12:54:28 | | | |
| **PACER Login:** | mojdehmalekan | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 7:19-cv-04503-CS |
| **Billable Pages:** | 20 | **Cost:** | 2.00 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
WINDWARD BORA, LLC,

Plaintiff,

v. 19 CV 4503 (CS)

JOHN SOTOMAYOR, ET AL.,

Defendants.
------------------------------------x
U.S. Courthouse
White Plains, N.Y.
July 22, 2020
9:45 a.m.

(Telephone Conference)

Before: HON. CATHY SEIBEL,
United States District Judge

APPEARANCES

SETH D. WEINBERG, Esq.
Attorney for Plaintiff

JOHN SOTOMAYOR,
Pro Se Defendant

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter

THE COURT: Hi, Walter. It's me.

THE CLERK: Good morning, Judge. Judge, this matter is Windward Bora v. Sotomayor. On the line we have for the Plaintiff Mr. Seth Weinberg and we have Defendant John Sotomayor.

THE COURT: All right. Good morning everybody.

Let me remind you, if you say anything, the first word out of your mouth has to be your last name. Don't say, "this is John Smith for Plaintiff," just say "Smith," so the court reporter knows right upfront who is speaking.

We have a motion for summary judgment pending. Does either side have anything to add that's not covered by the papers?

Mr. Weinberg, anything to add?

MR. WEINBERG: No, Your Honor.

THE COURT: All right. Thank you.

Mr. Sotomayor, anything to add that's not covered by the papers?

MR. SOTOMAYOR: No, no. Thank you.

THE COURT: All right. Let me tell you where I come out and you either want to keep notes on my ruling or purchase the transcript from the court reporter.

Before me is the motion of the Plaintiff Windward Bora, LLC, for summary judgment against Defendant John Sotomayor; for default judgments against the nonappearing

Defendants Alexandria Loaiza, American Express Centurion Bank, Midland Funding, LLC d/b/a as Midland Funding of Delaware, LLC, and the New York State Tax Commission; and for a judgment of foreclosure and sale.

I'm going to start with the procedural background.

On May 16th of last year, Plaintiff filed the Complaint against Defendants Sotomayor, Loaiza -- I'm sure I'm saying her name wrong -- and several other nonappearing Defendants. Defendant Sotomayor answered on June 28th. On July 22nd, the Clerk of Court issued certificates of default as to Loaiza, American Express Centurion Bank, Midland Funding, and Jane Doe.

On June 28th, the U.S.A. through the IRS was dismissed, and the Does were dismissed on July 22nd.

On November 13th, Plaintiff filed a pre-motion letter requesting a conference to discuss its anticipated motion for summary judgment. Defendant Sotomayor responded on November 26th. We held the conference on December 4th.

Plaintiff filed the instant motions on February 26th of this year, along with its Local Rule 56.1 Statement, which is docket entry 75, a declaration of Mr. Weinberg, an affidavit of someone named Devico in support of the motion, as well as a memorandum of law.

On February 27th, Defendant filed a letter in response, which is docket entry 79, and that same day, I

advised him that a letter was not sufficient to oppose the summary judgment motion and I gave him -- I directed him to submit by March 30th a sworn declaration or affidavit containing any facts he wanted me to consider and to authenticate any documents as true and correct copies. That's docket entry 80.

On April 13th, having received no opposition, Plaintiff asked that I consider Plaintiff's motion to be unopposed.

By letter dated May 18th, Defendant indicated that he would submit his opposition that same week and that any delay was caused by the COVID-19 pandemic. No opposition was filed that week as promised, but Defendant Sotomayor apparently sent a letter dated June 18th, 2020, which Plaintiff received and brought to my attention on June 23rd. That's docket entry 87, and it attached Defendant's letter as docket entry 87-1.

Plaintiff apparently mailed it to the Court on June 18th, per the postmark, but for reasons I don't know, it was not received by the Pro Se Office until July 2nd. It may be due to lack of staffing due to the pandemic. Anyway, docket entry 91 shows that it got to the court or stamped by the court on July 2nd. I do think there was staffing in the Pro Se Office, so I don't, I don't really know why it took two weeks to get to the Court.

Anyway, on June 29th, in the meantime, Defendant filed another letter with the Court stating that due to COVID-19, he could not find anyone to notarize his information.

Rule 56.1 of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York put a burden on the party opposing a motion for summary judgment to submit a counter-statement controverting the moving party's statement of material facts, indicating which facts are in dispute that would require a trial. Local Rule 56.1(b).

Under Rule 56.1(c), "if the opposing party then fails to controvert a fact set forth in the moving party's Rule 56.1 statement, that fact is deemed admitted." Giannullo v. City of New York, 322 F.3d 139, at 140. Thus, "where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts." D'Nelson v. Costco, 2006 Westlaw 767866, at Page 3 (Eastern District March 24th, 2006) (collecting cases). Pro se litigants are not excused from this requirement. SEC v. Tecumseh Holdings, 765 F.Supp.2d 340, at 344 note 4 (Southern District 2011).

And, by the way, my chambers will send Mr. Sotomayor copies of any of the unreported cases that I cite.

Here, Defendant Sotomayor failed to file a Rule 56.1 counter-statement, so, ordinarily, I would consider the facts in Plaintiff's 56.1 Statement undisputed; see Fuller v. Advanced Recovery, 2018 Westlaw 6725325, at Page 1 (Southern District December 20th, 2018), especially because Defendant Sotomayor was advised that letters do not suffice to oppose a motion for summary judgment. See docket entry 80. However, Local Rule 56.2 requires a party moving for summary judgment against a pro se party to serve on that party and file with the Court a notice, the content of which is spelled out in the rule. The record contains no indication that Plaintiff complied with Rule 56.2 in this case, which is especially surprising given that I ordered Plaintiff to re-serve his papers on Defendant with that notice. See docket entry 80.

Plaintiff filed an affidavit of service showing that it re-served the motion papers, but there is no showing that Defendant was ever served with the Local Rule 56.2 notice. See docket entry 82. I may deny Plaintiff's motion for that reason alone. Further, due to Plaintiff's failure to comply with my order and Local Rule 56.2, I will consider Defendant Sotomayor's opposition even though it is in the wrong form. Much of it, though, is irrelevant.

Now, turning to the facts, which come from the

Plaintiff's Local Rule 56.1 Statement and supporting materials, as well as Defendant's submissions, Documents 79, 87-1 and 89, and these facts are undisputed unless otherwise noted.

Plaintiff is a single-member limited liability company organized under Delaware law. On January 19th, 2007, Defendants Sotomayor and Loaiza obtained a mortgage loan from Wells Fargo Bank, N.A., in the principal amount of $104,375.00, and that was memorialized in a note that same day. The Note is found at docket entry 7-5.

Exhibit A to the Weinberg Declaration, which is Document 75, is the Complaint filed in this case as docket entry 7 and it has attachments, including the Note, which is 7-5; the Mortgage, which is 7-6; two mortgage assignments, 7-7 and 7-8, and an affidavit of possession, which is docket entry 9.

For clarity, when I cite to the documents attached to the Complaint, the citations will be to docket entry 7 and its exhibits, and I will refer to page numbers generated by the Court's ECF system.

The loan was secured by a mortgage, also dated January 19th, 2007, on property located at 2350 Maple Avenue, in Cortland Manor. That's docket entry 7-6.

On May 24th, 2010, the Mortgage was assigned to Partners for Payment Relief DE II, LLC. That's Document 7-7.

Defendants Sotomayor and Loaiza apparently stopped payment of the mortgage in 2009. See docket entry 52, at Page 3, but as the statute -- the statute of limitations for mortgage foreclosure actions in New York is six years, under New York C.P.L.R. Section 213(4), Plaintiff is alleging only that Defendants failed to make the mortgage payment due June 10th, 2013, and all payments due thereafter. See Plaintiff's 56.1 Statement Paragraph 6; Devico Affidavit Paragraph 9, and Exhibit D.

I note that Plaintiff's 56.1 Statement says the due date was June 1st, 2013, but the affidavit and payoff statement prepared by Plaintiff's sole member, who reviewed the business records related to the loan, say that the due date was June 10, 2013. See the Devico Affidavit Paragraph 9 and Exhibit D. The exact payment date is immaterial for purposes of this motion.

Plaintiff states that Defendant defaulted under the Note for $104,375; that's in Paragraph 6 of the 56.1, but that default amount is not supported by the evidence cited, which is Paragraph 20 of the Complaint and Exhibit I of the Complaint; rather, the evidence shows that on June 10, 2013, the unpaid principal balance of the Note and Mortgage was $100,974.32. See Devico Affidavit Paragraph 9 and Exhibit D. Further, in its motion for summary judgment, the Plaintiff says the unpaid principal balance is $100,974.32. See docket

entry 74, at Page 2.

On December 31st, 2013, Partners for Payment Relief filed a foreclosure action in New York State Court, which I'm going to call the 2013 action. See the Weinberg Declaration Paragraph 9 and Exhibit H.

Exhibit H is not paginated and the page numbers generated by the Court's ECF system are illegible, because it appears that Plaintiff filed a version of Exhibit H that had previously been stamped by the system. There is a previous version of the Weinberg Declaration and its exhibits at docket entry 72, but those page numbers are also illegible apparently for the same reason. So, if I cite to a page number of Exhibit H, I'm using the page numbers indicated by the Court's PDF software.

The summons in the 2013 action is dated December 20th, 2013 and states in bold, underlined, capital letters, "Notice" and "You are in danger of losing your home." That's Weinberg Declaration, Exhibit H at 2. It also says in capital bold type, "You are hereby put on notice that we are attempting to collect a debt." Exhibit H at 3. The 2013 action was discontinued on March 2nd, 2018. Weinberg Declaration Exhibit I.

On October 14th, 2014, the Mortgage was assigned to SMR I, LLC. On August 15th, 2018, Plaintiff became the owner and holder of the Mortgage and Note through the physical

delivery of the Note, endorsed to Plaintiff. See 56.1 Statement Paragraphs 6 and 7; Document 7-9 Paragraphs 8 to 9, and the Note at Page 10.

Plaintiff says that "no payment ... has been made to Plaintiff from Mr. Sotomayor despite demand." That's in Paragraph 6 of the 56.1. Defendant's failure to pay is supported by Plaintiff's business records, which state that a total of $165,191.18 is now due to Plaintiff; see Devico Affidavit Paragraphs 9 to 11 and Exhibit D, but Plaintiff did not provide evidence that demand was made.

Now, turning to the legal standard. Summary judgment is appropriate when the moving party shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. That's Rule 56(a).

"The dispute about a material fact is genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, at 248. A fact is "material" if it "might affect the outcome of the suit under governing law. Factual disputes that are irrelevant or unnecessary will not be counted," and the evidence in favor of a nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson at 255.

The moving party bears the initial burden of

showing "the absence of a genuine issue of fact," and if it does that, the burden then shifts to the nonmoving party to "present evidence sufficient to satisfy every element of the claim." Holcomb v. Iona College, 521 F.3d 130, at 137.

"The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant." Anderson, at 252. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Electric v. Zenith, 475 U.S. 574, at 586, and "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu v. Federal Express, 247 F.3d 423, at 428.

"A party" -- asserting a fact that is -- "asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, affidavits or declarations, admissions," et cetera. That's under Rule 56(c)(1).

For an affidavit or declaration indeed to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible, and show that the affiant or declarant is competent to testify on the matters stated." That's Rule 56(c)(4); see Major League Baseball Properties v. Salvino, 542 F.3d 290, at 310.

If the party fails to properly address another party's assertion of fact as required by Rule 56(c), the Court may, under Rule 56(e), among other things, consider the fact undisputed for purposes of the motion or grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the moving party is entitled to it.

Pro se litigants must be afforded "special solicitude," Tracy v. Freshwater, 623 F.3d 90, at 101, "particularly where motions for summary judgment are concerned." Jackson v. Federal Express, 766 F.3d 189, at 195.

Now, turning to the merits, I consider first whether Plaintiff has made a prima facie case, and then I'll consider affirmative defenses.

"It is settled that in moving for summary judgment in an action to foreclose a mortgage, a plaintiff establishes its case as a matter of law through the production of the mortgage, the unpaid note, and evidence of default." Capital One v. 48-52 Franklin, 2014 Westlaw 1386609, at Page 4 (Southern District April 8th, 2014), quoting Village Bank v. Wild Oaks, 601 New York Supp.2d 940, at 941 (Appellate Division 1993).

"Once the plaintiff has made its prima facie case by presenting the note, mortgage, and proof of default, the

mortgagee has the presumptive right to foreclose, which can only be overcome by an affirmative showing" by the mortgagor that the mortgagee has engaged in "fraud, duress, oppressive or unconscionable actions, or bad faith." Regency Saving Bank v. Merritt Park Lands Associates, 139 F.Supp.2d 462, at 465 to 66 (Southern District 2001), citing First National Bank of Highland v. J. & J. Milano, 553 New York Supp.2d 448, at 449 (Appellate Division 1990).

"The lender is entitled to summary judgment if it establishes by documentary evidence the facts underlying its cause of action and the absence of a triable fact." U.S. Bank v. Squadron, 504 Fed. Appendix 30, at 32.

Plaintiff has produced the Note and the Mortgage; see Documents 7-5, 7-6, 7-7, 7-8 and 9, and Defendant has not disputed Plaintiff's showing by affidavit of its representative, in the Devico Affidavit Paragraphs 9 to 11, that the mortgage loan is in default. Indeed, Defendant has -- admits that he has not paid the mortgage loan since 2009. That's in his Answer at Page 3. Plaintiff has thus established a prima facie case. See U.S. Bank v. Dingman, 2016 Westlaw 6902480, at Page 3 (Southern District November 22nd, 2016), and East Savings Bank v. Rabito, 2012 Westlaw 3544755, at Page 5 (E.D.N.Y. August 16th, 2012).

Even if the motion were unopposed, I would have to examine the record, including the Answer, to determine

whether any material issues of fact remain for trial. See Buckley v. County of Suffolk, 2013 Westlaw 122972, at Page 1 (Eastern District January 9th, 2013). That examination reveals three possible defenses:

In his Answer, Defendant alleges that his mortgage "was originally with Wells Fargo and purchased by Partners for Payment Relief on May 24th, 2010," which was the last firm to speak with him about the mortgage in early 2014. That's in Defendant's Answer at Page 3. Defendant says that he never heard from the new service provider until Plaintiff's counsel contacted him through this lawsuit. Also at Page 3. Granting Defendant "special solicitude," I find that the Answer raises an affirmative defense of notice, which defense Plaintiff did not take up in its papers.

Further, in Defendant's letter dated June 18, 2020, Defendant states that Plaintiff "has never submitted or given the Defendant the 90-day notice;" that's docket entry 87-1 at Page 2, referring to the notice required under New York State Real Property Actions and Proceedings Law or RPAPL Section 1304 to be provided 90 days before a foreclosure action is initiated.

Defendant also raises a statute of limitations defense in the Answer.

Finally, although Defendant has not explicitly claimed that Plaintiff has engaged in fraud, duress,

oppression, unconscionable conduct, or bad faith, he suggests the same in his Answer at Pages 3 to 4.

That last argument is easily dispatched, however, because it seems to be based on the fact that Plaintiff has not agreed to a modification, and it is well-settled that that is not evidence of fraud, bad faith, or the like. Kilgore v. Ocwen Loan Servicing, 89 F.Supp.3d 526, at 533 (Eastern District 2015), which says, "Under New York law, a loan servicer is under no obligation to modify the terms of plaintiff's mortgage;" and Miller v. HSBC, 2015 Westlaw 585589, at Page 3 (Southern District February 10, 2015), collecting cases to the same effect. So, I reject that third argument, but I turn to the notice and statute of limitations defense -- excuse me, defenses. First, notice.

RPAPL Section 1304 "requires lenders, assignees, or mortgage loan servicers to transmit a notice to the borrower at least 90 days prior to commencing a legal action for mortgage foreclosure;" CIT Bank v. Neris, 385 F.Supp.3d 241, at 244 (Southern District 2019), and prescribes the particular language and typeface required in such notice.

"Proper service of RPAPL Section 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." Deutsche Bank v. Spanos, 961 New York Supp.2d 200, at 202

(Appellate Division 2013). Plaintiff's failure to exhibit strict compliance with the statutory requirements requires dismissal of the action. See Aurora Loan Services v. Weisblum, 923 New York Supp.2d 609, at 614 (Appellate Division 2011).

"A defense based on noncompliance with RPAPL 1304 may be raised at any time during the action;" JP Morgan Chase Bank v. Akanda, 111 New York Supp.3d 642, at 645 (Appellate Division 2019), and where a defendant raises compliance with RPAPL 1304 and plaintiff does not address it, "the failure to show compliance with Section 1304 ... requires denial of plaintiff's motion." CIT Bank, 385 F.Supp.3d at 244.

Defendant alleges that he last heard about the Mortgage in early 2014 from Partners for Payment Relief and did not hear from any other service provider until Plaintiff's counsel contacted him through the lawsuit. Drawing the inference in favor of the nonmoving party, there is a fact question as to whether Plaintiff fulfilled the ninety-day notice requirement of RPAPL Section 1304. And although Defendant raised the issue of notice in his Answer, and explicitly raised the RPAPL Section 1304 issue in his belated letter of June 18th, 2020, Plaintiff never addressed it substantively.

In Plaintiff's request for a pre-motion conference, Plaintiff stated, and this is docket entry 69 at Page 1,

"After mailing both demand letters and notices in compliance with N.Y.R.P.A.P.L. Section 1304, Plaintiff commenced the Foreclosure Action on May 16th, 2019," but it does not offer proof supporting the assertion that notices were mailed.

In U.S. Bank v. Cope, 107 New York Supp.3d 104, at 107 (Appellate Division 2019), the Second Department found that the affidavit of a loan servicer's representative was insufficient to establish that the notice had been sent where the representative did not provide evidence of a standard office mailing procedure and provided no independent evidence of the actual mailing.

Here, Plaintiff offers only an unsupported assertion in a lawyer's letter, not even an affidavit, and thus has not established its compliance with RPAPL Section 1304. Accordingly, Plaintiff's motion for summary judgment is denied. See Citibank v. Conti-Scheurer, 98 New York Supp.3d 273, at 277 (Appellate Division 2019); see also Pennymac v. DiPrima, 42 New York Supp.3d 755, at 760 (Supreme Court 2016), which said, "A plaintiff seeking summary judgment should establish that none of the affirmative defenses asserted in the answer have merit."

So that's my ruling, but for the guidance of the parties going forward, I turn to Defendant's affirmative defense, raised in the Answer and in Defendant's letters, that the statute of limitations has run. That's in the

Answer at Pages 3 to 4. Plaintiff argues in its brief at Pages 7 to 8 that the instant action was timely. I agree with Plaintiff.

In New York, the statute of limitations for foreclosure actions is six years under C.P.L.R. Section 213. Typically, the statute of limitations starts to run from the due date of each unpaid installment. Plaia v. Safonte, 847 New York Supp.2d 101, at 102 (Appellate Division 2007). But once an installment loan is accelerated, the entire amount becomes due and the statute of limitations begins to run on the full amount. EMC Mortgage v. Patella, 720 New York Supp.2d 161, at 162 (Appellate Division 2001).

"Where the acceleration of the maturity of a mortgage debt on default is made optional with the holder of the note and mortgage," as it is here, "some affirmative action must be taken evidencing the holder's election to take advantage of the acceleration provision." CIT Bank, 328 F.Supp.3d, at 201. Such affirmative action must be "clear and unequivocal," Wells Fargo Bank v. Burke, 943 New York Supp.2d 540, at 542 (Appellate Division 2012), and commencement of a foreclosure action may suffice. Wells Fargo at 542; see Your New Home v. JP Morgan Chase Bank, 92 New York Supp.3d 851, at 854 (Supreme Court 2019).

Here, Plaintiff acknowledges that the 2013 action filed December 31, 2013, accelerated the loan. That's in his

brief at Pages 7 to 8. The Complaint in that action provides that, under the loan instrument, "Plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of the principal." Weinberg Declaration, Exhibit H at 5.

Defendant, in his Answer at Page 3, admits that Partners for Payment Relief commenced a foreclosure action and does not seem to dispute that the loan accelerated. Rather, he suggests in his Answer that Partners for Payment Relief sought full payment of the loan beginning in 2010 and continuing "for over three years." That's in his Answer at 3. If the loan had accelerated at some point before May 17th, 2013, this action would be time-barred because the instant action commenced May 17th, 2019. But Defendant has not cited to particular facts or materials in the record, as required under Rule 56(c)(1), and raises only "metaphysical doubt" as to the date of acceleration. See Matsushita at 586.

The Plaintiff has shown that Partners for Payment Relief clearly and unequivocally elected to accelerate on December 31, 2013, and Defendant has failed to dispute that showing. Thus, based on the instant record, the action is not time-barred because it was commenced within six years of December 31st, 2013, the date of acceleration. See EMC Mortgage Corp., 720 New York Supp.2d at 162.

If Plaintiff renews its motion for summary judgment, Defendant will have the opportunity to demonstrate that Partners for Payment Relief accelerated the mortgage before May 17th, 2013.

So, for the foregoing reasons, the motion -- Plaintiff's motions for summary judgment and for judgment of foreclosure and sale are denied without prejudice. See KeyBank v. Barrett, 114 New York Supp.3d 451 (Appellate Division 2019), which denied summary judgment where plaintiff failed to establish strict compliance with RPAPL 1304, and cf. CIT Bank, 2019 Westlaw 6334894, at Page 3, which denied summary judgment without prejudice where the plaintiff failed to clearly establish the required facts.

Plaintiff's motion for default judgment as to the nonappearing Defendants is also denied without prejudice. Plaintiff did not follow my individual practices with respect to default judgments. So, Plaintiff can try again on all of his motions.

The Clerk of Court needs to terminate motion number 74. ****

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WINWARD BORA, LLC.,

Plaintiff,

-against-

JOHN SOTOMAYOR, ALEXANDRIA LOAZIA; AMERICAN EXPRESS CENTURION BANK, MIDLAND FUNDING LLC D/B/A/ IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC; CAPITAL ONE BANK (USA), N.A.et al.,

Defendants.

Case No: 7:21-cv-07161

**UDGMENT OF FORECLOSURE AND SALE**

On the Complaint duly filed in this action on August 25, 2021, the Notice of Pendency of Action filed with the Westchester County Clerk, and all papers filed in and proceedings had thereon, and on reading and filing the Declaration in Support of Plaintiff s Motion of Mojdeh Malekan, Esq., counsel for Plaintiff, dated January 5, 2022, from which it appears that each of the named defendants herein have been duly served with the Summons and Complaint in this action, or have voluntarily appeared personally or by their respective attorneys, or are not indispensable parties to this action, and stating that more than the legally required number of days had elapsed since said defendants were served and/or appeared; and that none of the defendants had served any answer to said Complaint, nor had their time to do so been extended; and that the Notice of Pendency containing all the particulars required to be stated therein was duly filed in the Office of the Clerk of the County of Westchester and has not been amended to add new parties or to embrace real property not described in the Complaint,

And, on reading and filing the Affidavit of Yonel Devico sworn to on January 3, 2022, with exhibits annexed thereto, it appears that the sum due to Plaintiff for unpaid principal, interest, is $155,625.76 through January 03, 2022 and that the Premises should be sold as one parcel, and on reading and filing the Motion of Windward Bora, LLC ("Plaintiff"), the Declaration of Mojdeh Malekan, Esq. with exhibits annexed thereto, and Plaintiff s Memorandum of Law;

Now, upon proof of due notice of this application upon all parties who have not waived the same, and this matter having regularly come on to be heard, and there being no opposition thereto,

**ON MOTION** of Hasbani Light, P.C., attorneys for Plaintiff, it is

**ORDERED,** that Plaintiff s motion is granted; and it is further

**ORDERED,** that summary judgment is granted in favor of Plaintiff against defendants John Sotomayor and Alexandria Loaiza; and it is further

**ORDERED,** that a default judgment is issued in favor of Plaintiff and against defendants, American Express Centurion Bank, Midland Funding d/b/a in New York as Midland Funding of Delaware LLC, and Capital One Bank (USA), N.A.; and it is further

**ORDERED, AD UDGED AND DECREED** that the mortgaged premises, commonly known as 2359 Maple Avenue, Cortlandt Manor, New York 10567 and identified on the Westchester County Tax Map as Section: 45.10 Block: 3 Lot: 5 and more particularly described in Schedule "A" annexed hereto (the "Premises") be sold, in one parcel, at public auction in the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, Room , White Plains, New York 10601 on any day of the week the courthouse is open at a time selected by the Referee, by and under the direction of Special Master or U.S.

Magistrate Judge Hon. who is hereby appointed Referee for that purpose (hereinafter "Referee"), that the said Referee set the date of sale and give public notice of the time and place of such sale in accordance with New York Real Property Actions and Proceedings Law ("RPAPL") 231 in the published in Westchester County, New York; and it is further

**ORDERED, AD UDGED AND DECREED** that said Referee shall accept at such sale the highest bid offered by a bidder, who shall present government-issued photo identification to the Referee, and shall require that such successful bidder immediately pay to the Referee in cash or certified or bank check payable to such Referee, ten (10 ) percent of the sum bid and shall execute Referee s Terms of Sale for the purchase of the Premises, unless such successful bidder is Plaintiff herein, in which case, no deposit against the purchase price shall be required; and it is further

**ORDERED, AD UDGED AND DECREED** that in the event the first successful bidder fails to immediately pay the ten percent deposit as provided herein or fails to execute the Terms of Sale immediately following the bidding upon the Premises, the Premises shall thereafter immediately, on the same day, be re-offered at auction; and it is further

**ORDERED, AD UDGED AND DECREED** that the closing of title shall take place at the office of the Referee at or at such other location as the Referee shall determine within thirty (30) days, unless otherwise stipulated by Plaintiff, the Referee, and the purchaser; and it is further

**ORDERED, AD UDGED AND DECREED** that the Referee deposit all funds received pursuant to this Judgment in his own name as Referee for the benefit of this action with the Clerk of this Court, which proceeds of sale may be withdrawn on his own order in

connection with the closing of title pursuant to this Judgment; and it is further

**ORDERED, AD UDGED AND DECREED** that said Referee on receiving the proceeds of such sale shall forthwith pay therefrom:

FIRST: The statutory fees and commissions of said Referee, if any. In the event a scheduled sale is adjourned, cancelled, or postponed, Plaintiff shall compensate the Referee in the sum of $250.00 for each adjournment, cancellation, or postponement, unless the Referee has requested the adjournment, cancellation, or postponement, should the Referee be entitled to such compensation. Such compensation may be recouped from the proceeds of sale as a cost to Plaintiff. This Judgment shall constitute the necessary prior authorization for compensation as set forth herein.

SECOND: The expenses of the sale, including the cost of advertising as shown on the bills presented and certified by said Referee to be correct, copies of which shall be annexed to the Report of Sale.

THIRD: Pursuant to RPAPL 1354, in accordance with their priority according to law, taxes, assessments, sewer rents, water rates and any charges placed upon the Premises by a municipal agency which have priority over the foreclosed mortgage, which are liens on the Premises at the time of sale with such penalties which may have lawfully accrued thereon to the date of payment.

FOURTH: Said Referee shall then pay to Plaintiff or to Plaintiff s attorneys the sum of $155,625.76, the said amount so reported due as aforesaid, together with interest thereon from January 03, 2020, the date the interest was calculated to in said Report at the Note rate, to the date of entry of this Judgment, and thereafter at the statutory post-judgment rate to the date of transfer of title, or so much thereof as the purchase money of the Premises

will pay of the same, together with any advances as provided for in the instrument which Plaintiff may have made for taxes, insurance, principal and interest and any other charges due to prior mortgages or to inspect, repair, appraise and/or maintain the Premises pending the consummation of this foreclosure sale, not previously included in the computation and upon presentation to the Referee of receipts for said expenditures, all together with interest thereon pursuant to the Note and Mortgage, as above provided, and copies of such receipts shall be annexed to the Referee s Report of Sale pursuant to RPAPL 1355; and it is further

**ORDERED, AD UDGED AND DECREED** that in case Plaintiff be the purchaser of said mortgaged Premises at said sale, said Referee shall not require Plaintiff or Plaintiff s assignee to pay in cash the entire amount bid at said sale, but shall execute and deliver only to Plaintiff or to Plaintiff s assignee a Deed of the Premises sold upon the payment to said Referee of the sum awarded to him or her under the above provisions marked "FIRST", "SECOND", and "THIRD" if such expenses were paid by the Referee, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing the payment thereof. The balance of the amount bid, after deducting therefrom the aforementioned payments for Referee for compensation and expenses, taxes, assessments, sewer rates, water rates, and priority liens of a municipal agency, shall be allowed to Plaintiff and applied by said Referee upon the amounts due to Plaintiff as specified above in item marked "FOURTH". If upon so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to Plaintiff, then Plaintiff shall pay to said Referee, upon delivery to Plaintiff of said Referee s Deed, the amount of such surplus, which shall be applied by the Referee, upon motion made pursuant to RPAPL 1351(3) and proof satisfactory to the Referee of the sums due thereon, to any subordinate

mortgage duly recorded against the Premises, pursuant to RPAPL 1345(3), which payment shall be reported in the Referee s Report of Sale. Any surplus remaining after all payments as herein provided shall be deposited into Court in accordance with RPAPL 1345(4) and the Referee shall give notice of such surplus to the owner of the mortgaged Premises as identified by Plaintiff at the time of the sale; and it is further

**ORDERED, AD UDGED AND DECREED** that said Referee take the receipt of Plaintiff or Plaintiffs attorney for the amounts paid as herein before directed in item marked "FOURTH", and file it with his/her Report of Sale, that he/she deposit the surplus monies, if any, with the Clerk of this Court within five (5) days after the same shall be received unless such period be deemed extended by the filing of an application for additional compensation as set further herein, to the credit of this action, to be withdrawn only on the order of the Court, signed by a judge of the Court; that the said Referee make his/her Report of such Sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the person to whom payments were made and file it with the Clerk of this Court within thirty (30) days after completing the sale and executing the proper conveyance to the purchaser, or within thirty days of the decision of the Court with respect to any application for additional compensation; and it is further

**ORDERED, AD UDGED AND DECREED** that if the proceeds of such sale be insufficient to pay the amount reported due to Plaintiff with interest and costs as aforesaid, Plaintiff may recover of defendant John Sotomayor the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the debt remaining unsatisfied after the sale of the mortgaged Premises and the application of proceeds thereof, provided a motion for deficiency judgment shall be made as prescribed by RPAPL 1371

within ninety (90) days of the delivery of the Deed by the Referee, and the amount thereof is determined and awarded by an order of this Court as provided for in said action; and it is further

**ORDERED, AD UDGED AND DECREED** that the purchaser or purchasers at such sale be let into possession of the Premises on production of the Referee s Deed or Deeds; and it is further

**ORDERED, AD UDGED AND DECREED,** that each and all of the defendants in this action, and all persons claiming under any of them after the filing of such Notice of Pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged Premises and each of every part thereof; and it is further

**ORDERED, AD UDGED AND DECREED,** that said Premises to be sold in one parcel in "as is" physical order and condition on the day of sale, subject to:

- any state of facts that an inspection of the Premises would disclose;
- any state of facts that an accurate survey of the Premises would disclose;
- sums, if any, of real estate taxes, and assessments, water, sewer, and vault charges, with interest and penalties, including lien and certificate sales for delinquent items, unless paid from the proceeds of the foreclosure sale;
- covenants, reservations, restrictions, easements, declarations, rights of way and public utility agreements of record, if any;
- any building and zoning ordinances of the municipality in which the mortgaged Premises is located and any violations of same;
- any and all rights of tenants, or persons in possession of the Premises other than

tenants, or any portion thereof;

- any equity of redemption of the United States of America to redeem the Premises or any portion thereof within one hundred twenty (120) days from date of sale; and
- prior lien(s) of record to the mortgage being foreclosed, if any, except those liens addressed in RPAPL 1354;

and it is further

**ORDERED,** that in the absence of the Referee, the Court may designate a Substitute Referee forthwith; and it is further

**ORDERED,** that a copy of this Judgment with Notice of Entry shall be served upon the designated Referee, the owner of the equity of redemption as of the date of filing of the Notice of Pendency, any tenants or occupants named in this action, and any other party entitled to notice.

The description of the Premises encumbered by the mortgage being foreclosed is annexed hereto as Schedule "A".

**ENTER:**

Honorable Justice Cathy Seibel
United States District Court
Southern District of New York